# Exhibit E

IN NAAM VAN DE KONING

# arrest

**GERECHTSHOF DEN HAAG**

Afdeling civiel recht

Uitspraakdatum : 29 maart 2022

Zaaknummer : 200.277.991

**Arrest**

in de zaak van:

1. Greg Evan LINDBERG,
   wonende te Durham, North Carolina, Verenigde Staten van Amerika,
2. TRIER HOLDING B.V.,
   gevestigd te Hoofddorp,
3. NETHERLANDS INSURANCE HOLDINGS, INC.,
   gevestigd te Wilmington, Delaware, Verenigde Staten van Amerika,
4. NIH CAPITAL, LLC,
   gevestigd te Wilmington, Deleware, Verenigde Staten van Amerika,

eisers,

hierna te noemen: Lindberg, Trier Holding, NIH en NIHC, tezamen: Lindberg c.s.

advocaat: mr. D. Knottenbelt (Rotterdam),

tegen

Mr. W.J.M. van Andel en mr. E.L. Zetteler in hun hoedanigheid van curatoren in het faillissement van Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.,

gevestigd te Utrecht,

gedaagde,

hierna te noemen: de curatoren; de failliet: Conservatrix,

advocaat: mr. D. Horeman (Amsterdam).

Case 1:23-cv-00879-CCE-JEP Document 1-5 Filed 10/17/23 Page 2 of 23

## Korte omschrijving van het geschil

Lindberg c.s. vorderen vernietiging van een tussen partijen gewezen arbitraal vonnis. In dat vonnis is (i) Trier Holding op vordering van Conservatrix veroordeeld om door middel van kapitaalinbreng de solvabiliteitspositie van Conservatrix op peil te brengen en te houden en zijn (ii) Lindberg, NIH en NIHC verplicht (hoofdelijk en op straffe van een dwangsom) om te bewerkstelligen dat Trier Holding aan die veroordeling zal voldoen. Lindberg c.s. zijn het hier niet mee eens. Hieronder wordt ingegaan op de door hen aangevoerde vernietigingsgronden. De conclusie zal zijn dat die niet tot toewijzing van hun vordering tot vernietiging van het arbitraal vonnis kunnen leiden.

## Het verloop van het geding

Lindberg c.s. hebben Conservatrix op 23 april 2020 – overeenkomstig het bepaalde in artikel 1064a Rv – gedagvaard om voor dit hof te verschijnen. Vervolgens zijn de volgende processtukken gewisseld:
- een akte overlegging producties van Lindberg c.s.;
- een conclusie van antwoord met producties van Conservatrix;
- een conclusie van repliek van Lindberg c.s.;
- een conclusie van dupliek van Conservatrix.

Conservatrix is daarna, te weten op 8 december 2020, failliet verklaard. De curatoren hebben de procedure overgenomen en namens de boedel voortgezet. Bij gelegenheid van de (digitaal) gehouden mondelinge behandeling hebben mr. D. Horeman voornoemd en zijn kantoorgenoot mr. M.F. Eliëns de zaak namens hen bepleit. Aan de andere zijde – namens Lindberg c.s. – gebeurde dat door mr. D. Knottenbelt voornoemd en zijn kantoorgenoot mr. R.J. Theissen. De pleitnoties die hierbij aan weerszijden zijn gebezigd maken deel uit van de processtukken. Aan het einde van de mondelinge behandeling is bepaald dat arrest zal worden gewezen.

## De beoordeling van het hoger beroep

*enkele feiten*

1. Hieronder staan enkele feiten die niet in geschil zijn. Een kanttekening daarbij is dat niet is gestreefd naar volledigheid; het niet vermeld zijn van feiten betekent niet dat die in geschil zijn.

(i) Conservatrix is/was een Nederlandse levensverzekeraar met ongeveer 80.000 polishouders. Nederlandse verzekeraars, zoals Conservatrix, moeten voldoen aan bepaalde solvabiliteitseisen. Dat is onder meer geregeld in de Solvency II Richtlijn (Richtlijn 2009/138/EG betreffende de toegang tot en uitoefening van het verzekerings- en het herverzekeringsbedrijf) en de daarbij behorende Gedelegeerde Verordening (EU) 2015/35. In 2017 verkeerde Conservatrix (al geruime tijd) in financieel zwaar weer. Omdat de toenmalige aandeelhouder van Conservatrix (a) niet bereid was om het kapitaal aan te vullen en (b) in plaats daarvan eenzijdig de aanspraken van de verzekerden wilde beperken, heeft De Nederlandsche Bank (hierna: DNB) – die prudentieel toezicht uitoefent op Nederlandse verzekeraars, waaronder Conservatrix – een proces tot verplichte verkoop van de aandelen in Conservatrix in gang gezet. Koper werd Trier Holding. De verkoop/overdracht van de aandelen aan haar verliep volgens een door DNB opgesteld overdrachtsplan in de zin van art. 3:159c lid 1 (oud) van de Wet op het financieel toezicht (Wft). Dat plan is door de rechtbank Amsterdam goedgekeurd bij beschikking van 15 mei 2017 (ECLI:NL:RBAMS:2017:3309 – hierna: de beschikking). Daarin 'verstaat' de rechtbank dat de aandelen in Conservatrix overgaan op Trier Holding. Het cassatieberoep van Conservatrix Groep S.A.R.L (gevestigd te Luxemburg) tegen de beschikking heeft de Hoge Raad verworpen (HR 17 mei 2019, ECLI:NL:HR:2019:746).

(ii) Trier Holding is een vennootschap van Lindberg; meer precies worden de aandelen in Trier Holding gehouden door NIH, een dochtervennootschap van NIH Capital waarvan Lindberg 100% aandeelhouder is. Lindberg is ook eigenaar van het financieel conglomeraat Eli Global, waartoe o.a. het verzekeringsbedrijf Colorado

Case 1:23-cv-00879-CCE-JEP Document 1-5 Filed 10/17/23 Page 4 of 23

Bankers Life Insurance Company (hiera: CBL) behoort. Schematisch ziet een en ander er als volgt uit:




(iii) De voorwaarden waaronder de (gedwongen) aandelenoverdracht aan Trier Holding plaatsvond zijn neergelegd in een aantal op 15 mei 2017 getekende documenten, waarvan hier worden genoemd:

(a) Submission Protocol, ondertekend door DNB en Trier Holding;

(b) Confirmation Letter van Trier Holding, als Annex 1 gevoegd bij het Submission Protocol, ondertekend door Trier Holding;

(c) Agreement re Post-Completion Covenants, als Annex 2 gevoegd bij het hiervoor genoemde Submission Protocol, ondertekend door DNB en Lindberg c.s.;

(d) Recapitalization Commitment, als Annex 1 gevoegd bij de hiervoor genoemde Agreement re Post-Completion Covenants, ondertekend door Lindberg c.s., alsook, maar dan 'for acknowledgement and receipt', door DNB.

Deze documenten (a), (c) en (d) zijn (ook) als respectievelijk Annex 2, 3 en 4 genoemd in/gevoegd bij (e) de Recapitalization Agreement tussen Trier Holding, Standard Financials Ltd., NIH en Conservatrix van 15 mei 2017.

(iv) De hiervoor – (iii) sub d – bedoelde Recapilization Commitment houdt na een aanhef onder meer het volgende in:

*'WHEREAS:*

*[...]*

*(D) As part of the Submission Protocol, DNB, the Transferee* (Trier Holding, opm. hof) *and the Indirect Shareholders* (Lindberg, NIH en NIHCl, opm. hof) *have entered into an agreement re post-completion covenants. In light of that agreement, the Transferee and the Indirect Shareholders hereby wish to confirm certain commitments in relation to the recapitalization of the Company* (Conservatrix, opm. hof).

*1. COMMITMENT*

*1.1 Unless otherwise agreed with DNB in writing, subject to Completion occurring, the Transferee and Indirect Shareholders hereby commit to maintain a minimum solvency capital ratio of 135% within the Company (as outlined in the Solvency II Directive, Directive 2009/138/EC) (the Proposed Minimum SCR Ratio) as of Completion (the Commitment);*

*1.2 The Commitment is subject to the following terms and conditions:*

*(a) Subject to the provision set out below under (b), the Transferee will, and the Indirect Shareholders will procure that the Transferee will, replenish any shortfall in the Proposed Minimum SCR Ratio with core equity contributions.*

*(b) As soon as the Company is stabilized, the Commitment shall be limited in the sense that further capitalization of the Company over and above the initial amount of capitalization by the Transferee on Completion, shall be based on a viable business case for the Company (the analysis thereof may include taking into account the interest of the shareholder).*

*(c) Notwithstanding paragraph (b) above, Lindberg will use all his reasonable (voting) powers to ensure that the Company will at all times comply with applicable law and regulations.*

*(d) DNB will reasonably consider to waive the requirement of the Commitment to the extent provided by Lindberg, provided that sufficient alternative comfort can be offered via an irrevocable Company group guarantee. For the avoidance of doubt, such guarantee shall not be automatically terminated upon the Company group no longer being affiliated to the Company.*

*(e) DNB may only invoke the Commitment after the expiry of six (6) months of the moment that the Company does no longer comply with the Proposed Minimum SCR Ratio.*

*(f) The Company shall not make any changes in the Proposed Minimum SCR Ratio without the prior written confirmation of DNB.*

*1.3 The validity and enforceability of the Commitment and the terms and conditions thereto as set out under clause 1.1 and 1.2 is confirmed by the legal opinion given by Houthoff Buruma New York B.V. dated 17 March 2017, as attached hereto as Schedule 1. The due authorization of Shareholder 1* (NIH, opm. hof) *and Shareholder 2* (NIHC, opm. hof) *is*

*confirmed by the legal opinion given by McGuireWoods LLP dated 17 March 2017, as attached hereto as Schedule 2.*

*2. GOVERNING LAW AND JURISDICTION*

*2.1 The recapitalization commitment is governed by Dutch law. All disputes arising out of or in connection with this recapitalization commitment shall be referred to arbitration in accordance with the Arbitration Rules of the Netherlands Arbitration Institute (Nederlands Arbitrage Instituut, NAI).*

(v) Ten tijde van de overname van de Conservatrix-aandelen in 2017 had Conservatrix een aanzienlijk financieel tekort. Dat tekort is door Lindberg c.s. op dat moment (slechts) voor een klein deel teruggebracht door een kapitaalstorting; het grootste deel werd aangevuld door Conservatrix een herverzekeringsovereenkomst te laten afsluiten met CBL. Bij CBL werd echter in 2019 door de Amerikaanse overheid een zogenoemde Rehabilitator (een soort bewindvoerder) aangesteld. Dit vanwege financiële problemen waarin CBL verkeerde. In reactie daarop heeft AM Best, een kredietbeoordelaar, op 27 juni 2019 de kredietwaardigheid van CBL verlaagd. De Rehabilator heeft aangekondigd de herverzekeringsovereenkomst te zullen ontbinden (disavowal). Begin 2020 is hij in de USA een procedure tegen Conservatrix begonnen. Tegen Lindberg is in 2019 in de USA een strafrechtelijke procedure gestart wegens een poging tot omkoping van de toezichthouder voor verzekeraars in North Carolina.

(vi) Conservatrix en DNB hebben Lindberg c.s. er in 2019 meermalen op gewezen dat moest worden voldaan aan de herkapitalisatieverplichting omdat (volgens de berekeningen van Conservatrix) de SCR-ratio van Conservatrix onder de 135% was gezakt. Op 20 december 2019 heeft DNB aan Conservatrix bevestigd dat Lindberg c.s. verplicht waren zich aan de Recapitalization Commitment te houden, dat deze verplichting op 6 november 2019 opeisbaar was geworden en dat het nakomen van de herkapitalisatieverplichting des te dringender was geworden omdat de SCR-ratio onder de 100% was gedaald.

(vii) Bij brief van 20 december 2019 heeft DNB aan Conservatrix geschreven:

*'Re:*

*Arbitration*

*[...]*

*[…] (DNB) has been informed that […] (Conservatrix) intends to initiate arbitration proceedings against Trier Holding B.V., Netherlands Insurance Holdings Inc., NIH Capital, LLC and Mr Greg Lindberg ("the Shareholders") in order to enforce the […] ("Commitment") that DNB and the Shareholders have agreed upon for the benefit of Conservatrix on 17 March 2017.*

*DNB is of the opinion that the Shareholders are obliged to comply with the Commitment and that the Commitment is due and payable as per 6 November 2019. Compliance with the Commitment is all the more pressing in light of the fact that the SCR ratio of the Company is now below 100%.*

*For further clarification DNB refers to her attached letters to Trier Holding B.V. of 12 June 2019, 6 September 2019, 2 October 2019 and 20 December 2019.*

*[…]'*

(viii) Op 22 december 2019 heeft Conservatrix een arbitraal kort geding en tegelijkertijd ook een arbitrale bodemprocedure tegen Lindberg c.s. aanhangig gemaakt bij het Nederlands Arbitrage Instituut (NAI). Op 24 december 2019 bevestigde het NAI de benoeming van professor mr. dr. C.A. Schwarz tot arbiter in het arbitraal kort geding. Het scheidsgerecht heeft op 31 januari 2020 vonnis gewezen in het arbitraal kort geding. In het vonnis is onder meer het volgende beslist (randnummer 9.1):

*'Therefore, the arbitral tribunal, with reference to article 36(1) of the NAI Rules 2015, in accordance with the rules of law, decides as follows:*

*a) Orders Trier Holding […] to replenish the shortfall in the solvency capital ratio of […] "Conservatrix" N.V. to 135% with core equity contributions, within 60 days after the award, and thereafter to maintain a minimum solvency capital ratio of 135% in accordance with the Recapitalization Commitment;*

*b) Orders Mr. […] Lindberg, Netherlands Insurance Holdings, Inc. and NIH Capital, LLC, jointly and severally, to procure that Trier Holding […] will replenish the shortfall in the solvency capital ratio of […] "Conservatrix" N.V. to a solvency capital ratio of 135% with core equity contributions, within 60 days after the award and thereafter to procure that Trier Holding […] maintains a minimum solvency capital ratio of […]*

*"Conservatrix" N.V. of 135% in accordance with the Recapitalization Commitment;*

*c) Orders Mr. [...] Lindberg, Netherlands Insurance Holdings, Inc. and NIH Capital, LLC, to pay [...] "Conservatrix" N.V. an immediately payable penalty (in Dutch: dwangsom) of one hundred fifty million euros (€ 150M) (in total) if the obligations under sub b) of these rulings are not timely complied with in whole or in part;*

*[...]'*

(ix) Op 17 februari 2020 heeft de voorzieningenrechter van de rechtbank Rotterdam verlof tot tenuitvoerlegging van dit arbitraal vonnis verleend.

*bespreking van de door Lindberg c.s. aangevoerde vernietigingsgronden*

2.1 Lindberg c.s. stellen zich in de eerste plaats op het standpunt dat een geldige overeenkomst tot arbitrage tussen Lindberg c.s. en Conservatrix ontbrak – artikel 1065, lid 1 sub a, Rv. Daarover het volgende.

2.2 Het scheidsgerecht heeft zijn bevoegdheid doen steunen op de (hiervoor in 1 (iv) geciteerde) arbitrageclausule in de Recapitalization Commitment (artikel 2.1), ondertekend door Lindberg c.s. en 'for acknowledgement and receipt' door DNB. In die Recapitalization Commitment bevestigen Lindberg c.s. de – aan de aandelenovername gekoppelde – verplichting om de SCR-ratio van Conservatrix op minimaal 135% te houden. Naar het oordeel van het scheidsgerecht vormt deze verplichting – gezien onder meer de bewoordingen ervan en de samenhang met de overige transactiedocumenten – een derdenbeding waarop Conservatrix zich kon beroepen. Door aanvaarding van dat beding is Conservatrix toegetreden tot de overeenkomst zoals die in de Recapitalization Commitment besloten ligt en is zij uit dien hoofde gerechtigd om ook een beroep te doen op het daarvan deel uitmakende arbitraal beding.

2.3 Lindberg c.s. zijn het niet eens met deze uitleg/interpretatie van de Recapitalization Commitment. Waar zij het wel mee/over eens zijn – en met hen

Conservatrix – is dat bij die uitleg van beslissende betekenis zijn: alle omstandigheden van het concrete geval, gewaardeerd naar wat de maatstaven van redelijkheid en billijkheid meebrengen. Het arbitraal vonnis – waarin wordt uitgegaan van de toepasselijkheid van Nederlands recht, waarover Lindberg c.s. niet hebben geklaagd – noemt in dit verband ook het arrest HR 1 oktober 2004, NJ 2005, 499, waarin de Hoge Raad overweegt dat onjuist is de opvatting dat alleen dán mag worden aangenomen dat een derdenbeding is tot stand gekomen wanneer blijkt dat zulks door de oorspronkelijke partijen bewust is beoogd.

2.4 Toepassing van deze uitlegregels leidt in dit geval tot de conclusie dat de in de Recapitalization Commitment bevestigde verplichting van Lindberg c.s. inderdaad kwalificeert als een door Conservatrix inroepbaar derdenbeding. Voor een andere uitleg ontbreken voldoende aanknopingspunten. Dat geldt meer in het bijzonder ook voor de door Lindberg c.s. – voor het eerst in deze vernietigingsprocedure – verdedigde uitleg van de verplichting als een vorm van sterkmaking waaraan Conservatrix geen rechten kan ontlenen. Hierbij wordt onder meer het volgende in aanmerking genomen.

(i) De prestatie waartoe Lindberg c.s. zich in het kader van de overname hebben verplicht – te weten: de herkapitalisatie/het verbeteren van de solvabiliteitspositie van Conservatrix – was in het belang van Conservatrix en daarmee van haar polishouders. Conservatrix was bovendien de aangewezen ontvanger van deze prestatie; niet DNB.

(ii) De hiervoor in 1 (vii) aangehaalde brief van DNB van 20 december 2019 – waarin staat dat de Recapitalization Commitment was 'agreed upon for the benefit of Conservatrix' – vormt een bevestiging dat sprake was van een derdenbeding ten gunste van Conservatrix. Dat het de eerste keer was dat DNB een bericht met deze inhoud stuurde, doet aan de aannemelijkheid en juistheid ervan niet af. Er zijn geen (eerdere of latere) berichten van DNB die inhouden dat de afgesproken verplichting niet ten gunste van Conservatrix strekte en/of dat Conservatrix, hoewel die verplichting haar direct aanging en zij van de naleving ervan afhankelijk was, er geen beroep op kon doen.

(iii) Lindberg c.s. zijn ook in de onderhavige procedure niet gekomen met feiten en omstandigheden, dan wel een aannemelijke verklaring, op basis waarvan zij er

redelijkerwijs op mochten vertrouwen dat DNB – die als toezichthouder de gedwongen overname in gang had gezet en daarbij als voorwaarde het op peil brengen en houden van de solvabiliteitsratio van Conservatrix had bedongen – enkel zelf naleving van die door Lindberg c.s. aanvaarde verplichting zou mogen verlangen, en Conservatrix, hoewel het om haar solvabiliteitsratio ging, niet. Een aannemelijke verklaring is niet dat het prudentieel toezicht door DNB, als legitimatie voor het ingrijpen, (mede) dient ter bescherming van de polishouders van Conservatrix. Het belang van de polishouders van Conservatrix was ermee gediend dat de SCR van Conservatrix op het met DNB afgesproken peil werd gebracht en gehouden. Dat belang verzet zich er niet tegen dat Conservatrix zelf vraagt om naleving van de verplichting die in dit verband op Lindberg c.s. rustte. Uit de Recapitalization Commitment volgt niet, evenmin als uit de andere transactiedocumenten, dat de verplichting slechts gold, of alleen dan behoefde te worden nageleefd, indien het DNB zelf was die dit vanuit haar toezichthoudende rol van Lindberg c.s. eiste. Lindberg c.s. hebben ook niet duidelijk gemaakt dat zij er nadeel van hebben ondervonden dat Conservatrix als eisende partij is opgetreden en niet (tevens) DNB. Zij hebben geen verklaring/bevestiging van de zijde van DNB gepresenteerd waaruit blijkt dat DNB op het punt van het (niet-)naleven van de kapitalisatieverplichting door Lindberg c.s. een afwijkend standpunt inneemt ten opzichte van dat van Conservatrix. Het ligt ook niet voor de hand dat DNB een dergelijk afwijkend standpunt zou innemen. DNB heeft (in haar rol als toezichthouder) er immers belang bij dat afspraken, zoals zij die in het belang van (het aan haar toezicht onderworpen) Conservatrix en haar polishouders heeft gemaakt, worden nageleefd, ook zonder dat DNB daar zelf een procedure voor moet starten of daarin intervenieert. Hier geldt: toezicht is goed, naleven is beter. Anders dan Lindberg c.s. menen wekt het om al deze redenen geen bevreemding dat niet (tevens) DNB als eisende partij is opgetreden.

(iv) De Recapitalization Commitment laat zich, anders dan Lindberg c.s. voorstaan, niet aldus lezen/verstaan dat de daarin bevestigde verplichting van Lindberg c.s. slechts gold indien Conservatrix er (aantoonbaar) niet zelf op andere wijze in slaagde om haar SCR-ratio op het afgesproken peil te brengen en te houden. Dat dit niettemin wel de bedoeling is geweest, volgt onvoldoende uit wat Lindberg c.s. hebben aangevoerd.

(v) De stelling van Lindberg c.s. dat (met name) Lindberg de Recapitalization Commitment nimmer zou hebben getekend indien daarin een derdenbeding was vervat, mist een voldoende (verklarende) onderbouwing en is bovendien betwist. Ook hiervoor geldt dat niet is gebleken dat Conservatrix iets meer of anders van Lindberg heeft geëist dan waartoe hij zich in het kader van de overname heeft verplicht. Evenmin blijkt dat hij anderszins in een nadeligere positie is komen te verkeren doordat niet (ook) DNB als eisende partij is opgetreden. Aan bedoelde stelling wordt en kon daarom worden voorbijgegaan.

(vi) Dat Conservatrix, als belanghebbende bij en ontvanger van de prestatie, de Recapitalization Commitment niet mede heeft ondertekend is, anders dan Lindberg c.s. menen, niet een omstandigheid die pleit voor de door Lindberg c.s. voorgestane uitleg en tegen die van Conservatrix; Conservatrix was geen contracterende partij bij de in het document bevestigde overeenkomst, maar is door aanvaarding van het derdenbeding tot die overeenkomst toegetreden (art. 6:254 BW). Overigens zou zij volgens Lindberg c.s. wél partij zijn bij en rechten kunnen ontlenen aan de hiervoor in 1 (iii) (d) bedoelde Confirmation Letter, terwijl dat document evenmin door haar (Conservatrix) is ondertekend. Dat Trier Holding in die eenzijdige, alleen door haarzelf ondertekende, Confirmation Letter – onder meer inhoudende (artikel. 5.2 (e)) dat zij 'shall capitalize the Company in line with the arrangements agreed with DNB' – spreekt over 'parties' en daaronder ook Conservatrix verstaat, betekent niet dat Conservatrix dus geen rechten kan ontlenen aan de Recapitalization Commitment, die eveneens gaat over/betrekking heeft op Conservatrix als the Company waarvan een 'shortfall in the Proposed Minimum SCR Ratio' zal worden aangevuld 'with core equity-contributions'.

2.5 Het oordeel van het scheidsgerecht dat Conservatrix zich kan beroepen op het in de Recapitalization Commitment opgenomen arbitraal beding is eveneens juist. Dit arbitraal beding voorziet in een wijze van beslechting van geschillen die uit of in verband met de Recapitalization Commitment rijzen. Het beding vormt een integraal onderdeel van de in dat document neergelegde/bevestigde overeenkomst. Die overeenkomst bestaat, na een considerans, uit slechts twee artikelen, waarvan het tweede het, helder geformuleerde en duidelijk kenbare, arbitraal beding betreft. Als

toetredende partij kon Conservatrix er daarom gebruik van maken. Het arbitraal beding kan ook worden gezien als een zelfstandig ten behoeve van Conservatrix overeengekomen en door haar aanvaard derdenbeding. Voor het resultaat maakt dat niet uit. Overigens is door Lindberg c.s. niet betwist dat, indien de verplichting aangaande de SCR als een door Conservatrix aanvaard derdenbeding wordt gezien, Conservatrix ook een beroep kan doen op het arbitraal beding. In het arbitraal vonnis is dan ook terecht overwogen (6.10) dat het arbitraal beding ongetwijfeld is bedoeld om Conservatrix – na aanvaarding ervan – de mogelijkheid te bieden om een arbitrale procedure te starten en nakoming van de verplichtingen uit de Recapitalization Commitment te vorderen.

3.1 De tweede door Lindberg c.s. aangevoerde vernietigingsgrond is dat het scheidsgerecht op onjuiste wijze is samengesteld – artikel 1065 lid 1 sub b Rv.

3.2 Het betoog van Lindberg c.s. komt er in de kern op neer dat voor de geschillen die rijzen uit of in verband met de Recapitalization Commitment, niet het in de Recapitalization Commitment opgenomen arbitraal beding geldt, maar een ander arbitraal beding, te weten het andersluidende arbitrale beding uit het hierboven in 1 (iii) (a) genoemde Submission Protocol. Dit betoog kan niet als juist worden aanvaard, onder meer niet om de volgende redenen:

(i) Met betrekking tot de overname en de in dat verband gemaakte afspraken zijn verscheidene documenten opgesteld en ondertekend. Vrijwel elk document bevat een geschillenbeslechtingsclausule. Onderling verschillen die clausules. Terwijl bijvoorbeeld de Recapitalization Agreement, waaraan de Recapitalization Commitment als bijlage is toegevoegd, een forumkeuze voor de rechtbank in Amsterdam bevat, verklaart de Agreement re Post-Completion Covenants, waarbij de Recapitalization Commitment eveneens een bijlage is, de uitgebreide arbitrageclausule uit het Submission Protocol van overeenkomstige toepassing. Het ligt dan voor de hand om bij een dispuut over een verplichting uit een bepaald document gebruik te maken van de

geschillenbeslechtingsclausule uit dat specifieke document, aangezien die clausule het dichtst bij de verplichting ligt.

(ii) Indien het de bedoeling was geweest dat de in het Submission Protocol omschreven arbitrageclausule ook zou gelden voor geschillen over de verplichting uit de Recapitalization Commitment had het voor de hand gelegen om niet als artikel 2 van de uit twee artikelen bestaande Recapitalization Commitment een zelfstandige (in opzet en bewoordingen) afwijkende arbitrageclausule op te nemen, maar simpel te verwijzen naar de arbitrageclausule uit de Submission Protocol en die van overeenkomstige toepassing te verklaren (zoals dit in de Agreement re Post-Completion Covenants is gebeurd).

(iii) De omstandigheden (i) en (ii) gelden eens te meer nu de contracten zijn gesloten door professionele partijen, die zijn bijgestaan door deskundige adviseurs en juristen.

(iv) Daarbij komt ook nog dat het Submission Protocol een overeenkomst is tussen Trier Holding en DNB. De (indirect) aandeelhouders van Trier Holding zijn dus niet gebonden aan het in dat protocol opgenomen arbitraal beding; daarentegen wél aan het arbitraal beding zoals opgenomen in de door hen meegetekende Recapitalization Commitment, die (anders dan het Submission Protocol en de Confirmation Letter) was toegespitst op de herkapitalisatie van Conservatrix.

(v) De schakelbepaling 11.4 van het Submission Protocol - luidende: 'This clause 11 shall also apply to disputes arising in connection with other agreements which are connected with this Protocol, unless the relevant agreement expressly provides otherwise.' – voorziet in de mogelijkheid van uitdrukkelijke afwijking in de samenhangende overeenkomst. Welnu, de Recapitalization Commitment kent een eigen, afwijkend, arbitraal beding. Die afwijking is evident. Er behoefde daarom niet nog eens apart te worden benoemd dat met het arbitraal beding in de Recapitalization Commitment wordt afgeweken van het arbitraal beding in het Submission Protocol.

3.3 Uitgaande van het arbitraal beding zoals opgenomen in de Recapitalization Commitment betwisten Lindberg c.s. niet dat het scheidsgerecht op juiste, reglementaire, wijze was samengesteld. Wat de persoon van de arbiter betreft en diens

kwaliteiten, blijkt niet dat Lindberg c.s. daartegen tijdens het arbitraal beding op de voorgeschreven wijze bezwaar hebben gemaakt.

4.1 De derde en vierde vernietigingsgrond waar Lindberg c.s. zich op beroepen zijn (3) dat het scheidsgerecht zich niet aan zijn opdracht heeft gehouden – artikel 1065 lid 1 sub c Rv – en (4) dat het scheidsgerecht de motiveringsplicht heeft geschonden – artikel 1065 lid 1 sub d Rv. Deze gronden worden tezamen besproken omdat er een overlap zit in de toelichting erop.

4.2 Aan het beroep op deze vernietigingsgronden hebben Lindberg c.s. ten grondslag gelegd dat het scheidsgerecht verscheidene, door hen als essentieel aangemerkte, verweren onbehandeld heeft gelaten. Als – niet-behandelde, essentiële – verweren hebben zij in hun dagvaarding (7.10) genoemd:

a. de behandeling van het geschil in een arbitraal kort geding;
b. het bestaan van een derdenbeding in de Recapitalization Commitment;
c. de gehanteerde berekeningsmethode van de SCR-ratio;
d. de door Conservatrix gehanteerde interpretatie van de overeenkomsten;
e. de eigen verantwoordelijkheid van Conservatrix.

Conservatrix heeft gemotiveerd betwist dat het arbitraal vonnis geen gemotiveerde weerlegging bevat van deze verweren, die naar haar mening bovendien ten onrechte als 'essentieel' worden gepresenteerd. Tegen de achtergrond van deze betwisting is opmerkelijk dat in de door de advocaten van Lindberg c.s. voorgelezen pleitnotities staat (4.12) dat Lindberg c.s. in het arbitraal geding in de kern twee hoofdverweren hebben gevoerd, te weten (i) dat er geen sprake was van een tekort in de SCR-ratio van Conservatrix en (ii) dat, als er een tekort zou zijn, onduidelijk is hoe dat berekend moet worden. Onduidelijk is of Lindberg c.s. daarnaast toch ook handhaven dat de (andere van de) hiervoor sub a tot en met sub e bedoelde verweren onbehandeld zijn gelaten en/of dat het ook daarbij in hun optiek nog steeds gaat om *essentiële* verweren. Wellicht daarom (deels) onnodig wordt hieronder toch ingegaan op elk van die verweren, waarbij tegelijk ook de 'twee hoofdverweren' zullen worden meegenomen (o.a. bij 4.5.4.3 en 4.5.4.1 en verder).

4.3.1 Ad 4.2.a – De behandeling en toewijzing van de vordering van Conservatrix in een arbitraal kort geding.

4.3.2 Onjuist is de stelling van Lindberg c.s. dat het scheidsgerecht niet is ingegaan op hun betwisting van het spoedeisend belang en bewering dat de materie te complex is voor een beoordeling in kort geding. Wat het spoedeisend belang betreft heeft Conservatrix onder meer gewezen op de door haar in punt 62 van haar conclusie van dupliek geciteerde overweging uit het arbitraal vonnis, waaruit blijkt dat en waarom Conservatrix naar het oordeel van het scheidsgerecht een spoedeisend belang heeft bij de gevraagde voorziening. Toegevoegd wordt nog, ten overvloede, dat evenzeer onjuist is de opvatting van Lindberg c.s. dat zij slechts dan tot naleving van de kapitalisatieverplichting gehouden waren indien DNB vanuit haar toezichthoudende rol daadwerkelijk zou ingrijpen en dat alleen in dat geval sprake zou zijn van een spoedeisend belang. Een dergelijke voorwaarde voor naleving staat niet in de Recapitalization Commitment en ligt ook niet voor de hand; naleving van de overeengekomen verplichting was in het belang van de continuïteit van de onderneming van Conservatrix en daarmee in het belang van haar polishouders. Die, niet anderszins gegarandeerde, continuïteit maakte een belang bij naleving spoedeisend, los van de vraag of DNB zelf naleving eiste en/of met ingrijpen dreigde. Ook dit ligt voldoende besloten in het arbitraal vonnis (onderdeel B in combinatie met onderdeel C).

4.3.3 Wat het punt van de complexiteit betreft stellen Lindberg c.s. dat het hun niet gaat om de – door hen bevestigend beantwoorde – vraag of het scheidsgerecht discretionaire bevoegdheid had om de gevorderde voorlopige voorziening vanwege de complexiteit van het geschil te weigeren, maar om het onbehandeld laten van het complexiteitsverweer door het scheidsgerecht. Ook deze stelling berust op een onvolledige, althans onjuiste, lezing van het arbitraal vonnis, want daarin gaat het scheidsgerecht wel degelijk gemotiveerd in op het argument van Lindberg c.s. dat het geschil te complex zou zijn voor een voorlopige voorziening. Zie (de door Conservatrix in punt 63 van haar conclusie van dupliek geciteerde) overweging 6.26 uit het arbitraal

vonnis. Van een onbehandeld/onbesproken laten van dit verweer is dan ook geen sprake. Ten overvloede wordt toegevoegd dat, nu de mogelijkheid tot het weigeren van een voorlopige voorziening wegens de complexiteit van het geschil een discretionaire bevoegdheid betreft, het niet gebruikmaken van die bevoegdheid en toewijzen van de voorlopige voorziening, ook zonder nadere motivering, impliceert dat het complexiteitsverweer niet is gehonoreerd. Het gaat hierbij niet om een essentieel verweer dat, bij gebreke aan een gemotiveerde bespreking ervan, die er hier dus wel is, een zelfstandige grond voor vernietiging van het arbitraal vonnis oplevert.

4.4.1 Ad 4.2.b – Het bestaan van een derdenbeding in de Recapitalization Commitment.

4.4.2 Zoals hiervoor is overwogen bevat de Recapitalization Commitment inderdaad een door Conservatrix inroepbaar derdenbeding. Dat was ook het oordeel van het scheidsgerecht. De motivering daarbij is te lezen in de overwegingen 6.6 tot en met 6.13 van het arbitraal vonnis. Daaruit blijkt dat en waarom de betwisting van het derdenbeding door Lindberg c.s. geen doel heeft getroffen. Lindberg c.s. zijn het daar niet mee eens, maar dat is iets anders dan dat een motivering ontbreekt. Die motivering is er en is – anders dan de betwisting van het derdenbeding door Lindberg c.s. – bovendien steekhoudend. In de overwegingen 6.16 en 6.17 van het arbitraal vonnis zet het scheidsgerecht daarnaast uiteen waarom onjuist is het subsidiaire argument van Lindberg c.s. dat het arbitraal beding uit het Submission Protocol geldt en niet dat uit de Recapitalization Commitment. Zie in dit verband wat hierboven onder 3.2 is overwogen.

4.5.1 Ad 4.2.c – Verweren van Lindberg c.s. met betrekking tot de berekening van de SCR-ratio. Lindberg c.s. noemen in dit verband de volgende, direct hierna behandelde, verweren (i), (ii) en (iii).

4.5.2.1 Ad (i) Conservatrix berekent de SCR-ratio onterecht op basis van een proxy.

4.5.2.2 Naar aanleiding van deze kritiek wordt in de eerste plaats overwogen dat uit het arbitraal vonnis niet blijkt dat de daarin tegen Lindberg c.s. uitgesproken veroordeling berust op (door Conservatrix wekelijks gemaakte berekeningen op basis van) proxies. Voor die veroordeling verwijst het arbitraal vonnis naar de lagere rating van CBL en het in 3.28 van het vonnis aangehaalde bericht van 22 december 2019 van de Rehabilitator van CBL aan Conservatrix, inhoudende: '[a]s a result of this disavowal, the Treaty is deemed to be void ab initio, and we will be seeking a judicial determination as to the proper distribution of assets in the Trust Account.' Het scheidsgerecht verwerpt de tegenwerping van Lindberg c.s. dat 'the write-down of the value of the reinsurance contract has no influence on the Solvency Capital Requirement and thus also not on the SCR.' En overweegt dan: 'The arbiter tribunal accepts the fact that there is a shortfall in the SCR and assumes that the downgrading of CBL, also in view of the recent disavowal of the reinsurance agreement by the Rehabilitat in CBL as mentioned under 3.28 above, must in all likelihood have its effect on the outcome of the actual calculation of the SCR, using the calculation method as used by the board of Conservatrix since March 2017.'

4.5.2.3 Los hiervan heeft Conservatrix er onweersproken op gewezen dat zij in het arbitraal geding niet alleen proxies heeft overgelegd, maar ook de berekeningen zoals die waren vervat in de kwartaalrapportages aan DNB. Die berekeningen lieten over 2019 een (sterk) dalende SCR-ratio zien. Naar het oordeel van het scheidsgerecht bestond tussen partijen overeenstemming over de wijze waarop die berekeningen waren uitgevoerd: 'On this basis, the arbitral tribunal is satisfied that Respondents agreed with the method of calculation, which was the basis of Conservatrix' reporting to DNB.' Zie ook hieronder: 4.5.4.2.

4.5.3.1 Ad (ii) SCR-ratio berekend zonder inachtneming van art. 135q Wft (oud).

4.5.3.2 Lindberg c.s. stellen (a) dat dit artikel het mogelijk maakt om af te wijken van de gangbare berekeningsmethode van de SCR-ratio en (b) dat van die mogelijkheid gebruik is gemaakt. Nadat Conservatrix er bij conclusie van antwoord op had gewezen

dat onduidelijk was op welke afwijking werd gedoeld, hebben Lindberg c.s. bij conclusie van repliek gesteld (4.5.13) dat in de transactiedocumenten is afgesproken dat het risico mitigerende effect van de herverzekering en het onderpand meegenomen zou worden in de berekening van de SCR-ratio. Daarmee is echter niet gezegd dat de problemen waarin herverzekeraar CBL en Lindberg na de overname waren terechtgekomen en de (krediet)risico's die dit voor Conservatrix meebracht, buiten beschouwing zouden moeten worden gelaten. Het andersluidende standpunt is in het arbitraal vonnis (terecht en) gemotiveerd verworpen (zie de citaten aan het slot van 4.5.2.2 hiervoor en zie ook de verwijzingen genoemd in de conclusie van antwoord, pag. 38 tweede alinea).

4.5.4.1 Ad (iii) Daling rating CBL niet relevant. Meenemen collateral/onderpand.

4.5.4.2 Het arbitraal vonnis behelst als constatering (6.31) dat de wijze waarop de SCR-ratio ten tijde van de overname in 2017 was berekend in de periode nadien niet is gewijzigd. Die berekeningsmethode was, zoals Conservatrix heeft toegelicht, in overeenstemming met de relevante regelgeving. Om ervoor te zorgen dat aan de (met inachtneming van die berekeningswijze) vastgestelde SCR-ratio van 135% in 2017 werd voldaan, hebben Lindberg c.s. een herverzekeringsconstructie toegepast; het leeuwendeel van de kapitaalversterking van Conservatrix bestond uit een herverzekering die zij Conservatrix lieten aangaan met CBL. Het spreekt voor zich dat die herverzekering minder risicolimitering bood toen (a) CBL vanwege liquiditeitszorgen onder 'rehabilitation' werd geplaatst, (b) haar rating als gevolg daarvan werd verlaagd, en (c) haar 'Rehabilitator' de herverzekering met terugwerkende kracht ongeldig achtte en zocht naar 'a judicial determination as to proper distribution of assets in the Trust Account.'

4.5.4.3 Lindberg c.s. dienden er volgens de in de Recapitalization Commitment bevestigde afspraak voor te zorgen dat de SCR-ratio van Conservatrix weer op het afgesproken niveau werd gebracht. Het andersluidende betoog van Lindberg c.s. is in

het arbitraal vonnis besproken en verworpen (onderdeel C.1 en C.2 van het arbitraal vonnis).
De (veronder)stelling van Lindberg c.s. dat de lagere rating van CBL niet relevant is of behoort te zijn 'gegeven de zogeheten equivalentie van de Verenigde Staten en de overeenkomst tussen DNB en met Conservatrix' mist een behoorlijke toelichting en onderbouwing. Dit gebrek aan toelichting en onderbouwing is er ook met betrekking tot hun stelling dat een vordering van US$ 70 miljoen op CBL ten onrechte niet op dezelfde wijze is behandeld als een vordering op een Europese herverzekeraar. Lindberg c.s. hebben niets aangevoerd dat erop wijst dat, wat Conservatrix ontkent, de financiële problemen en lagere rating van CBL buiten beschouwing zouden zijn of moeten worden gelaten indien CBL een Europese herverzekeraar zou zijn geweest. Lindeberg c.s. hebben daarmee niet duidelijk gemaakt dat de equivalentie van belang was voor het oordeel van het scheidsgerecht dat de herverzekering bij CBL minder risicolimitering bood vanwege de problemen bij CBL. Er is daarom geen grond voor het oordeel dat het scheidsgerecht het punt van de equivalentie expliciet had moeten benoemen, althans vanwege die equivalentie niet had mogen concluderen tot een verwerping van het standpunt van Lindberg c.s. dat de financiële problemen bij en lagere rating van CBL geen negatieve invloed hadden op de SCR-ratio van Conservatrix.

4.5.4.4 Wat het onderpand/collateral betreft heeft Conservatrix erop gewezen dat wat Lindberg c.s. collateral/onderpand noemen een andere benaming is voor het 'trust account', waar in het (aan het slot van 4.5.4.2 bedoelde) bericht van de Rehabilitatior op wordt gedoeld. Diens beroep op 'disavowal' had, afgaande op dat bericht, ook effect op de verdeling van dit onderpand. Lindberg c.s. hebben niet gemotiveerd uiteengezet waarom dit bericht niettemin buiten beschouwing kon worden gelaten. Het risico van de disavowal is door het scheidsgerecht (dan ook terecht) meegewogen bij het oordeel dat sprake was van een solvabiliteitstekort. Lindberg c.s. hebben hier tegenover niet aannemelijk gemaakt (i) dat de gehele herverzekering door collateral/de trust was afgedekt, (ii) dat ondanks de lagere rating van de herverzekeraar de collateral/de trust, of onderdelen daarvan, voldoende zekerheid bood/boden om de SCR-ratio van

Conservatrix op de afgesproken 135% te houden, en (iii), even belangrijk, dat zij dit, anders dan in de onderhavige procedure, wel gemotiveerd hebben uiteengezet in het arbitraal geding. Ook in het arbitraal geding hebben zij niet, bijvoorbeeld, een bevestiging van de Rehabilitator overgelegd dat er voor Conservatrix voldoende zekerheid/onderpand overbleef om de afgesproken SCR-ratio te halen.
Overigens zijn Lindberg c.s. ook dubbel in hun stellingname. Want terwijl zij enerzijds – zonder onderbouwing – stellen dat er voldoende onderpand was, verwijten zij Conservatrix anderzijds dat het wegvallen van de herverzekering en van het onderpand op het conto van Conservatrix zelf komt; zie hun conclusie van repliek 4.7.2, waarover hieronder nader.

4.6.1 Ad 4.2.d – Essentiele verweren ten aanzien van de interpretatie van de overeenkomsten niet behandeld.

4.6.2 Ook voor dit verwijt van Lindberg c.s. geldt dat een behoorlijke toelichting en onderbouwing ontbreekt. In hun conclusie van repliek stellen zij (4.6.1 e.v.) dat de Recapitalization Commitment 'valt of staat op grond van het begrip "viable business case" zoals dat door [...] Conservatrix moet worden uitgevoerd en met DNB overeengekomen.' Volgens de Recapitalization Commitment (artikel 1.2 sub b) geldt het vereiste van een 'viable business case' echter voor verdere kapitalisatie zodra Conservatrix 'is stabilized'. In het arbitraal vonnis is het door Lindberg c.s. aangevoerde argument dat Conservatrix was 'stabilized' genoemd (in 6.38 sub b), besproken en verworpen (6.44 en 6.45). Daarom konden Lindberg c.s. zich – om aan hun verplichting inzake de afgesproken SCR-ratio te ontkomen – volgens het arbitraal vonnis niet met succes beroepen op het ontbreken van een 'viable business case'. Van een voorbijgaan aan een al dan niet essentieel verweer is hier geen sprake.

4.7.1 Ad 4.2.e – Essentiële verweren ten aanzien van de eigen verantwoordelijkheid van Conservatrix onbehandeld gelaten.

4.7.2 Naar aanleiding van dit verwijt/deze stelling van Lindberg c.s. heeft Conservatrix erop gewezen (c.v.a. onder 5.3.4) dat het arbitraal vonnis onder meer inhoudt (6.48): '[…] Respondents have failed to sufficiently substantiate where Conservatrix caused the situation on itself. Moreover, Respondents overlook that Conservatrix, not having been qualified to have been stabilized, is still in a situation that DNB had imposed certain limitations in respect of its business operations.' Gelet op dit citaat is onjuist de stelling van Lindberg c.s. (dagvaarding, punt 7.39) dat het 'Scheidsgerecht […] geen woord [heeft] besteed aan de eigen verantwoordelijkheid van Conservatrix,'
Het scheidsgerecht heeft daarnaast verworpen (6.36) 'the submission of Respondents that the write-down of the value of the reinsurance contract has no influence on the Solvency Capital Requirement and thus also not on the SCR.' Het was dan ook terecht, zo ligt in het toewijzende arbitrale vonnis besloten, dat Conservatrix actie heeft ondernomen naar aanleiding van deze waardedaling (en de negatieve impact op haar SCR-ratio). Voor zover Lindberg c.s. haar hiervan niettemin bedoeld heeft een verwijt te maken, is dat verwijt ongegrond. Daarin is dus geen grond gelegen voor het oordeel dat het scheidsgerecht in de motivering had moeten betrekken dat de negatieve gevolgen voor haar SCR-ratio (toch ook) aan Conservatrix zelf zijn te wijten.

4.8 De balans opmakend moet worden geconstateerd dat (ook) alle stellingen die Lindberg c.s. hebben geponeerd met betrekking tot de in hun ogen onjuist, want te laag, vastgestelde SCR-ratio wegens feitelijke onjuistheid of een gebrek aan onderbouwing moeten worden verworpen. Hetzelfde geldt voor hun stellingen die op die of andere gronden opkomen tegen hun veroordeling tot versterking van de kapitaalpositie van Conservatrix. Zij kunnen niet leiden tot een geslaagd beroep op een vernietigingsgrond.

*Slotsom*

5. De slotsom is dat de vordering van Lindberg c.s. tot vernietiging van het tussen partijen gewezen arbitrale vonnis dient te worden afgewezen. Aan bewijsvoering wordt

niet toegekomen; de stellingen van Lindberg c.s. zijn gemotiveerd betwist en tegenover die betwisting niet voorzien van een behoorlijke onderbouwing.
Lindberg c.s. moeten als de in het ongelijk gestelde partij de proceskosten dragen.

**De beslissing**

Het hof:

- wijst de vordering af;
- veroordeelt Lindberg c.s. hoofdelijk in de kosten van het geding – inclusief de gebruikelijke nakosten (zowel zonder als met betekening) – te vermeerderen met de wettelijke rente vanaf veertien dagen na de datum van dit arrest, welke kosten tot aan deze uitspraak aan de zijde van de curatoren van het failliete Conservatrix worden bepaald op € 760,- aan verschotten en op € 4.320,- aan salaris voor de advocaat;
- verklaart deze uitspraak ten aanzien van de kostenveroordeling uitvoerbaar bij voorraad.

Aldus gewezen door mrs. J.M. van der Klooster, P. Volker en J. van der Kluit en uitgesproken ter openbare terechtzitting van 29 maart 2022 in aanwezigheid van de griffier.

Voor grosse aan:
Uitgegeven aan mr. D. Hareman
Advocaat van app./geint.
De Griffier van het Gerechtshof
te Den Haag