# EXHIBIT F

IN THE NAME OF THE KING

# ruling

## COURT OF APPEAL OF THE HAGUE

Civil law division

Date of judgment : 29 March 2022

Case number : 200.277.991

**Ruling**

in the case of:

1. Greg Evan LINDBERG,
   residing in Durham, North Carolina, United States of America,
2. TRIER HOLDING B.V.,
   with its registered office in Hoofddorp,
3. NETHERLANDS INSURANCE HOLDINGS, INC.,
   with its registered office in Wilmington, Delaware, United States of America,
4. NIH CAPITAL, LLC,
   with its registered office in Wilmington, Delaware, United States of America,

claimants,
hereinafter referred to as: Lindberg, Trier Holding, NIH and NIHC, jointly: Lindberg et al.
lawyer: D. Knottenbelt, LLM (Rotterdam),

versus

W.J.M. van Andel, LLM and E.L. Zetteler, LLM, in their capacity as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij van Levensverzekering 'CONSERVATRIX' N.V.,
with its registered office in Utrecht,
respondent,
hereinafter referred to as: the insolvency practitioners; the insolvent party: Conservatrix,
→ lawyer: D. Horeman, LLM (Amsterdam).

R. Dalauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

**Brief description of the dispute**

Lindberg et al. demand that the arbitral award given between the parties be set aside. In that award, (i) Trier Holding was ordered, at the suit of Conservatrix, to replenish the shortfall in the solvency capital ratio of Conservatrix and maintain this solvency capital ratio by means of a capital contribution, and (ii) Lindberg, NIH and NIHC were obliged (jointly and severally subject to an incremental penalty payment) to ensure that Trier Holding complies with this order. Lindberg et al. do not agree with this. The grounds put forward by them for setting aside this arbitral award are discussed below. The conclusion will be that this cannot lead to their demand to set aside the arbitral award being allowed.

**The course of the proceedings**

On 23 April 2020, in accordance with the provisions of Section 1064a of the Dutch Code of Civil Procedure (hereinafter: DCCP) Lindberg et al. summoned Conservatrix to appear before this Court of Appeal. Subsequently the following pleadings and other documents were exchanged:

- a document containing exhibits from Lindberg et al.;
- a statement of defence with exhibits from Conservatrix;
- a statement of reply from Lindberg et al.;
- a rejoinder from Conservatrix.

Following this, namely on 8 December 2020, Conservatrix was put into liquidation. The insolvency practitioners took over and continued the proceedings on behalf of the liquidation assets. At the time of the oral hearing held online, the aforementioned D. Horeman, LLM and his colleague M.F. Eliëns, LLM pleaded the case on their behalf. For the other party, i.e. on behalf of Lindberg et al., this was done by D. Knottenbelt, LLM and his colleague R.J. Theissen, LLM. The memoranda of oral pleadings used by both parties form part of the pleadings and other documents. At the end of the oral hearing, it was directed that judgment will be delivered.

R. Datauker Kroese sworn translator beëdigd vertaler Wbtv-nr. 3133

**The assessment of the appeal**

*a few facts*

1. A few facts are set out below that are not in dispute. It should be noted that the aim has not been to provide a full account: the absence of certain facts does not mean that they are subject to dispute.

(i) Conservatrix is/was a Dutch life insurance company with around 80,000 policyholders. Dutch insurers, such as Conservatrix, must meet certain solvency requirements. This is regulated in legislation such as the Solvency II Directive (Directive 2009/138/EC on the taking-up and pursuit of the business of Insurance and Reinsurance) and the associated Commission Delegated Regulation (EU) 2015/35. In 2017 Conservatrix had already been in financial difficulties for some time. Since the then shareholder of Conservatrix (a) was not willing to replenish the capital and (b) instead wished unilaterally to limit the claims of policyholders, the Dutch Central Bank (*De Nederlandsche Bank*, hereinafter DNB), which exercises prudential supervision of Dutch insurers, including Conservatrix, initiated a process for the compulsory sale of the shares in Conservatrix. The purchaser was Trier Holding. The sale and transfer of the shares to it took place according to a transfer plan within the meaning of Section 3:159c(1) of the Financial Supervision Act (*Wet op het Financieel Toezicht, Wft*) (old) and drawn up by the DNB. That plan was approved by the Court of Amsterdam in a decision of 15 May 2017 (ECLI:NL:RBAMS:2017:3309) (hereinafter: 'the decision'). In this decision the Court directs that the shares in Conservatrix are transferred to Trier Holding. The appeal in cassation by Conservatrix Group S.A.R.L (with its registered office in Luxembourg) against the decision was dismissed by the Supreme Court (Supreme Court 17 May 2019, ECLI:NL:HR:2019:746).

(ii) Trier Holding is a company owned by Lindberg; more precisely the shares in Trier Holding are held by NIH, a subsidiary of NIH Capital, of which Lindberg is 100% shareholder. Lindberg is also the owner of the financial conglomerate Eli Global, to which Colorado Bankers Life Insurance Company (hereinafter: CBL), amongst others, belongs.




This can be shown in diagram form as follows:

(iii) The conditions under which the (forced) transfer of shares to Trier Holding took place are recorded in a number of documents signed on 15 May 2017, among which are the following:

(a) Submission Protocol, signed by DNB and Trier Holding;

(b) Confirmation Letter of Trier Holding, appended as Annex 1 to the Submission Protocol, signed by Trier Holding;

(c) Agreement re Post-Completion Covenants, appended as Annex 2 to the aforementioned Submission Protocol, signed by DNB and Lindberg et al.;

(d) Recapitalization Commitment, appended as Annex 1 to the aforementioned Agreement re Post-Completion Covenants, signed by Lindberg et al., as well as, but merely 'for acknowledgement and receipt', by DNB.

These documents (a), (c) and (d) are also referred to as Annexes 2, 3 and 4 respectively and added to (e) the Recapitalization Agreement between Trier Holding, Standard Financials Ltd., NIH and Conservatrix of 15 May 2017.

(iv) The Recapitalization Commitment referred to above in (iii)(d) includes, following a preamble, these words:

R. Dalauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

*'WHEREAS:*

*[... ]*

*(D) As part of the Submission Protocol, DNB, the Transferee* (Trier Holding, n. Supreme Court) *and the Indirect Shareholders* (Lindberg, NIH and NIHCI, n. Supreme Court) *have entered into an agreement re post-completion covenants. In light of that agreement, the Transferee and the Indirect Shareholders hereby wish to confirm certain commitments in relation to the recapitalization of the Company* (Conservatrix, n. Supreme Court).

*1. COMMITMENT*

*1.1 Unless otherwise agreed with DNB in writing, subject to Completion occurring, the Transferee and Indirect Shareholders hereby commit to maintain a minimum solvency capital ratio of 135% within the Company (as outlined in the Solvency II Directive, Directive 2009/138/EC) (the Proposed Minimum SCR Ratio) as of Completion (the Commitment);*

*1.2 The Commitment is subject to the following terms and conditions:*

*(a) Subject to the provision set out below under (b), the Transferee will, and the Indirect Shareholders will procure that the Transferee will, replenish any shortfall in the Proposed Minimum SCR Ratio with core equity contributions.*

*(b) As soon as the Company is stabilized, the Commitment shall be limited in the sense that further capitalization of the Company over and above the initial amount of capitalization by the Transferee on Completion, shall be based on a viable business case for the Company (the analysis thereof may include taking into account the interest of the shareholder).*

*(c) Notwithstanding paragraph (b) above, Lindberg will use all his reasonable (voting) powers to ensure that the Company will at all times comply with applicable law and regulations.*

*(d) DNB will reasonably consider to waive the requirement of the Commitment to the extent provided by Lindberg, provided that sufficient alternative comfort can be offered via an irrevocable Company group guarantee. For the avoidance of doubt, such guarantee shall not be automatically terminated upon the Company group no longer being affiliated to the Company.*

*(e) DNB may only invoke the Commitment after the expiry of six (6) months of the moment that the Company does no longer comply with the Proposed Minimum SCR Ratio.*

*(f) The Company shall not make any changes in the Proposed Minimum SCR Ratio without the prior written confirmation of DNB.*

*1.3 The validity and enforceability of the Commitment and the terms and conditions thereto as set out under clause 1.1 and 1.2 is confirmed by the legal opinion given by Houthoff Buruma New York B.V. dated 17 March 2017, as attached hereto as Schedule 1. The due authorization of Shareholder 1* (NIH, n.

R. Datauker Kroese sworn translator beëdigd vertaler Wbtv-nr. 3133

Supreme Court) *and Shareholder 2* (NIHC, n. Supreme Court) *is confirmed by the legal opinion given by McGuireWoods LLP dated 17 March 2017, as attached hereto as Schedule 2.*

*2. GOVERNING LAW AND JURISDICTION*

*2.1 The recapitalization commitment is governed by Dutch law. All disputes arising out of or in connection with this recapitalization commitment shall be referred to arbitration in accordance with the Arbitration Rules of the Netherlands Arbitration Institute (Nederlands Arbitrage Instituut, NAI).*

(v) At the time of the acquisition of the Conservatrix shares in 2017, Conservatrix had a considerable financial shortfall. Only a small amount of that shortfall was reduced by Lindberg et al. by means of a capital contribution; the major part was replenished through a reinsurance agreement Conservatrix concluded with CBL. However, in 2019 the United States government appointed a Rehabilitator (a kind of administrator) at CBL, due to the financial problems that CBL found itself in. In response to this, on 27 June 2019 AM Best, a credit ratings agency, lowered CBL's credit rating. The Rehabilitator announced that he would terminate the reinsurance agreement (disavowal). In early 2020 he initiated proceedings against Conservatrix in the USA. Criminal proceedings were initiated in the USA against Lindberg in 2019 due to attempted bribery of the supervisory body for insurers in North Carolina.

(vi) Conservatrix and DNB drew Lindberg et al.'s attention several times in 2019 to the fact that the recapitalization obligation had to be met because (according to Conservatrix's calculations) the SCR ratio of Conservatrix had fallen below 135%. On 20 December 2019 DNB confirmed to Conservatrix that Lindberg et al. were obliged to honour the Recapitalization Commitment, that this obligation had become due on 6 November 2019 and that compliance with the recapitalization obligation had become even more pressing because the SCR ratio had fallen below 100%.

(vii) In a letter of 20 December 2019, DNB wrote to Conservatrix:

*'Re:*

*Arbitration*

*[...]*

*[...] (DNB) has been informed that [...] (Conservatrix) intends to initiate arbitration proceedings against Trier Holding B.V., Netherlands Insurance Holdings Inc., NIH Capital, LLC and Mr Greg Lindberg ("the Shareholders ") in order to enforce the [...] ("Commitment') that DNB and the Shareholders have agreed upon for the benefit of Conservatrix on 17 March 2017.*

R. Datauker Kroese sworn translator Wbtv-nr 3133 beëdigd vertaler

*DNB is of the opinion that the Shareholders are obliged to comply with the Commitment and that the Commitment is due and payable as per 6 November 2019. Compliance with the Commitment is all the more pressing in light of the fact that the SCR ratio of the Company is now below 100%.*
*For further clarification DNB refers to her attached letters to Trier Holding B.V of 12 June 2019, 6 September 2019, 2 October 2019 and 20 December 2019.*
*[...]'*

(viii) On 22 December 2019 Conservatrix brought arbitral preliminary relief proceedings and at the same time arbitration proceedings on the merits against Lindberg et al. before the Dutch Arbitration Institute (*Nederlands Arbitrage Instituut*, NAI). On 24 December 2019 the NAI confirmed the appointment of Professor C.A. Schwarz, LLM as arbitrator in the arbitral preliminary relief proceedings.

On 31 January 2020 the arbitral tribunal gave its judgment in the arbitral preliminary relief proceedings. The judgment included the following decision (marginal 9.1):

*'Therefore, the arbitral tribunal, with reference to article 36(1) of the NAI Rules 2015, in accordance with the rules of law, decides as follows:*

*a) Orders Trier Holding[...] to replenish the shortfall in the solvency capital ratio of [...] "Conservatrix" N.V. to 135% with core equity contributions, within 60 days after the award, and thereafter to maintain a minimum solvency capital ratio of 135% in accordance with the Recapitalization Commitment;*

*b) Orders Mr. [. ..] Lindberg, Netherlands Insurance Holdings, Inc. and NIH Capital, LLC, jointly and severally, to procure that Trier Holding [...] will replenish the shortfall in the solvency capital ratio of [...] "Conservatrix" N.V. to a solvency capital ratio of 135% with core equity contributions, within 60 days after the award and thereafter to procure that Trier Holding [...] maintains a minimum solvency capital ratio of [...] "Conservatrix" N.V. of 135% in accordance with the Recapitalization Commitment;*

*c) Orders Mr. [. ..] Lindberg, Netherlands Insurance Holdings, Inc. and NIH Capital, LLC, to pay [...] "Conservatrix" N.V. an immediately payable penalty (in Dutch: dwangsom) of one hundred fifty million euros (€ 150M) (in total) if the obligations under sub b) of these rulings are not timely complied with in whole or in part;*

*[...]'*

R. Datauker Kroese sworn translator beëdigd vertaler Wbtv-nr. 3133

(ix) On 17 February 2020 the judge in preliminary relief proceedings of the Court of Rotterdam granted leave to enforce this arbitral award.

*Discussion of the grounds put forward by Lindberg et al. to set aside the award*

2.1 In the first place, Lindberg et al. take the view that there was no valid agreement for arbitration between Lindberg et al. and Conservatrix – Section 1065(1)(a) DCCP. The following can be said about this.

2.2 The arbitral tribunal based its jurisdiction on the arbitration clause (cited above in 1(iv)) in the Recapitalization Commitment (Article 2.1) signed by Lindberg et al. and 'for acknowledgement and receipt' by DNB. In that Recapitalization Commitment, Lindberg et al. confirm the obligation – linked to the acquisition of shares – to maintain the SCR ratio of Conservatrix at a minimum of 135%. According to the opinion of the arbitral tribunal, this obligation, in view of, amongst other things, its wording and relationship with the other transaction documents, is a third-party clause which Conservatrix could invoke. By accepting that clause, Conservatrix became party to the agreement as contained in the Recapitalization Commitment, and for that reason is entitled also to invoke the arbitration clause forming part of it.

2.3 Lindberg et al. do not agree with this explanation/interpretation of the Recapitalization Commitment. What they do agree on – and with them Conservatrix – is that of crucial significance in that interpretation are: all circumstances of the specific case, assessed according to standards of reasonableness and fairness. The arbitral award – in which the applicability of Dutch law is assumed and which Lindberg et al. have not disputed – also mentions in this respect the ruling of the Supreme Court of 1 October 2004, Dutch Law Reports 2005, 499, in which the Supreme Court held that the view that it may only be assumed that a third-party clause has arisen if it is apparent that it was purposely intended by the parties is incorrect.

R. Datauker Kroese sworn translator
Beëdigd vertaler Wbtv-nr. 3133

2.4 The application of these rules of interpretation leads in this case to the conclusion that Lindberg et al.'s obligation confirmed in the Recapitalization Commitment does indeed qualify as a third-party clause that can be invoked by Conservatrix. There are insufficient points of reference for a different interpretation. More specifically, this also applies to the interpretation of the obligation defended by Lindberg et al. – for the first time in these set-aside proceedings – as a form of surety undertaking from which Conservatrix cannot derive any rights. Amongst other things, the following is considered here.

(i) The performance to which Lindberg et al. committed themselves as part of the acquisition – namely: the recapitalization/improvement of Conservatrix's solvency capital ratio, was in the interest of Conservatrix, and with it its policyholders. Conservatrix was also the obvious recipient of this performance; not DNB.

(ii) The letter from DNB of 20 December 2019 cited above in 1(vii) – which states that the Recapitalization Commitment was '*agreed upon for the benefit of Conservatrix*' – is confirmation of a third-party clause in favour of Conservatrix. The fact that this was the first time that DNB had sent a message with these contents does not detract from its plausibility and correctness. There are no other earlier or later communications from DNB stating that the agreed obligation was not in favour of Conservatrix and/or that Conservatrix, even though it was directly affected by this obligation and depended on its compliance, could not invoke it.

(iii) Lindberg et al. have not produced any facts and circumstances in these proceedings either, nor a plausible explanation, on the basis of which they could reasonably have trusted that only DNB – which as the regulator had initiated the forced acquisition and stipulated as a condition the replenishment and maintenance of Conservatrix's solvency ratio – was entitled to require compliance with that obligation accepted by Lindberg et al. and Conservatrix, although its solvency ratio was at stake, was not. A plausible explanation is not that the prudential supervision by DNB, as justification for the intervention, serves (also) to protect Conservatrix's policyholders. The interest of Conservatrix's policyholders was served by replenishing and maintaining Conservatrix's SCR at the level agreed with DNB. That interest does not preclude Conservatrix itself from requesting compliance with the obligation imposed on Lindberg et al. in this regard. It does not follow from the Recapitalization Commitment, nor from the other transaction documents, that the obligation only applied or needed to be complied with if it was DNB itself that, in its supervisory role,

R. Daauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

demanded this of Lindberg et al. Lindberg et al. have not made it clear either than they were disadvantaged by the fact that Conservatrix was acting as the claimant, and DNB was not. They have not presented any explanation or confirmation from DNB showing that DNB, on the matter of compliance or noncompliance with the capitalization obligation of Lindberg et al., takes a different view to that of Conservatrix. It is not logical either that DNB would take such a different view. After all, it is in the interest of DNB, in its role as regulator, that the agreements such as those it made in the interests of Conservatrix (which is subject to its supervision) and its policyholders are complied with, even without DNB itself having to initiate proceedings or intervene in the matter. In this case, supervision is good, compliance is better. Contrary to the view of Lindberg et al., for all these reasons it is not surprising that DNB has not (also) acted as claimant.

(iv) Contrary to that advocated by Lindberg et al., the Recapitalization Commitment cannot therefore be read or understood to mean that the obligation of Lindberg et al. confirmed therein only applied if Conservatrix itself demonstrably failed to replenish and maintain its SCR at the agreed level. That this was nevertheless the intention does not sufficiently follow from what Lindberg et al. has put forward.

(v) Lindberg et al.'s argument that Lindberg in particular would never have signed the Recapitalization Commitment if it contained a third-party clause lacks sufficient foundation to explain this, and moreover is disputed. Here too, it has not been shown that Conservatrix has demanded from Lindberg anything more or different to what he had committed himself to do as part of the acquisition. Nor is it apparent that he has found himself in a more disadvantaged position because DNB has not (also) appeared as claimant. This assertion could therefore be passed over and will be ignored.

(vi) Contrary to the view of Lindberg et al., the fact that Conservatrix, as the interested party to and recipient of the performance, has not co-signed the Recapitalization Commitment is not a circumstance in favour of the explanation advocated by Lindberg et al. and against that of Conservatrix; Conservatrix was not a contracting party to the agreement confirmed in the document, but by accepting the third-party clause became party to that agreement (Section 6:254 of the Dutch Civil Code). Incidentally, according to Lindberg et al. it would be a party to and could derive rights from the Confirmation Letter referred to above in 1 (iii) (d), even though it (Conservatrix) had not signed that document either. The fact that Trier Holding mentions 'parties', which is also taken to mean

R. Dataulker Kroese sworn translator Wbtv-nr 3133 beëdigd vertaler

Conservatrix, in that unilateral Confirmation Letter signed only by itself, stating amongst other things (Article 5.2 (e)) that it *'shall capitalize the Company in line with the arrangements agreed with DNB'*, does not mean that Conservatrix cannot therefore derive any rights from the Recapitalization Commitment, which also concerns/relates to Conservatrix as the Company, where a *'shortfall in the Proposed Minimum SCR Ratio'* will be replenished *'with core equity-contributions'*.

2.5 The judgment of the arbitral tribunal that Conservatrix can invoke the arbitration clause in the Recapitalization Commitment is also correct. This arbitration clause provides for a method of dealing with disputes that arise from or in connection with the Recapitalization Commitment. The clause forms an integral part of the agreement laid down and confirmed in that document. That agreement comprises, following a preamble, just two articles, of which the second concerns the clearly formulated and recognizable arbitration clause. As the party to the agreement, Conservatrix could therefore make use of it. The arbitration clause can also be viewed as an independent third-party clause agreed for the benefit of and accepted by Conservatrix. This makes no difference for the result. Incidentally, Lindberg et al. have not disputed that, if the obligation regarding the SCR is viewed as a third-party clause accepted by Conservatrix, Conservatrix can also invoke the arbitration clause. Accordingly, the arbitral award rightly considered (6.10) that the arbitration clause was undoubtedly intended to provide Conservatrix – after it had accepted it – with the opportunity to initiate arbitration proceedings and claim performance of the obligations under the Recapitalization Commitment.

3.1 The second ground for setting aside put forward by Lindberg et al. is that the arbitral tribunal was incorrectly composed– Section 1065(1)(b) DCCP.

3.2 The essence of Lindberg et al.'s argument is that the disputes arising from or in connection with the Recapitalization Commitment are not subject to the arbitration clause contained in the Recapitalization Commitment, but a different arbitration clause, namely the alternatively worded arbitration clause referred to in the Submission Protocol referred to in 1 (iii) (a) above. This argument cannot be accepted as correct for the following reasons, amongst others:

R. Dataul<er Kroese beëdigd vertaler sworn translator Wbtv-nr. 3133

NEDERLANDS GENOOTSCHAP VAN TOLKEN EN VERTALERS BEEDIGD VERTALER



(i) Various documents were drawn up and signed in connection with the acquisition and the agreements made in that respect. Virtually every document contains a dispute resolution clause. These clauses differ between themselves. While the Recapitalization Agreement, for example, to which the Recapitalization Commitment is appended, contains a choice of forum for the Court of Amsterdam, the Agreement re Post-Completion Covenants, to which the Recapitalization Commitment is also appended, declares that the detailed arbitration clause from the Submission Protocol is applicable by analogy. It is therefore logical, in the case of a dispute about an obligation contained in a particular document, to make use of the dispute resolution clause from that specific document, since that clause is closest to the obligation.

(ii) If it had been the intention for the arbitration clause described in the Submission Protocol also to apply to disputes on the obligation from the Recapitalization Commitment, it would have been logical not to include as Article 2 from the two-article Recapitalization Commitment an independent (in intent and wording) different arbitration clause, but simply to refer to the arbitration clause from the Submission Protocol and declare it applicable by analogy (as was done in the Agreement re Post-Completion Covenants).

(iii) Circumstances (i) and (ii) are particularly applicable since the contracts were concluded by professional parties, assisted by expert advisers and lawyers.

(iv) What's more, the Submission Protocol is an agreement between Trier Holding and DNB. The direct and indirect shareholders of Trier Holding are therefore not bound by the arbitration clause contained in that protocol; on the other hand they are indeed bound by the arbitration clause as contained in the Recapitalization Commitment co-signed by them, which (unlike the Submission Protocol and the Confirmation Letter) focused on the recapitalization of Conservatrix.

(v) The mutatis mutandis clause 11.4 of the Submission Protocol, which reads: *'This clause shall also apply to disputes arising in connection with other agreements which are connected with this Protocol, unless the relevant agreement expressly provides otherwise.'* – provides for the option for explicit deviations in the related agreement. Well, the Recapitalization Commitment has its own, deviating arbitration clause. This deviation is obvious. For that reason, it does not need to be mentioned separately that the arbitration clause in the Recapitalization Commitment deviates from the arbitration clause in the Submission Protocol.

R. Dataüker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

3.3 Assuming the arbitration clause as contained in the Recapitalization Commitment, Lindberg et al. do not dispute that the arbitral tribunal was composed in a correct manner according to the regulations. As far as the person and the qualities of the arbitrator are concerned, it is not evident that Lindberg et al. had objected to this in the prescribed manner during the arbitration clause[1].

4.1 The third and fourth grounds for setting aside invoked by Lindberg et al. are that (3) the arbitral tribunal did not act in accordance with its assignment – Section 1065(1)(c) DCCP and (4) the arbitral tribunal failed to fulfil its obligation to provide reasons – Section 1065(1)(d) DCCP. These grounds will be discussed together because there is some overlap in the explanations of them.

4.2 In relying on these grounds for setting aside, Lindberg et al. based their argument on the fact that the arbitral tribunal failed to address a number of defences that they considered essential. They referred in their summons (7.10) to the following essential defences that were not addressed:

a. the hearing of the dispute in arbitral preliminary relief proceedings;
b. the existence of a third-party clause in the Recapitalization Commitment;
c. the calculation method used for the SCR ratio;
d. the interpretation given by Conservatrix of the agreements;
e. Conservatrix's own responsibility.

Conservatrix contested, with reasons, that the arbitral award does not contain a reasoned refutation of these defences, which in its opinion are also wrongly being presented as 'essential'. Against the background of this contention, it is striking that the pleadings read out by Lindberg et al.'s lawyers (in 4.12) state that Lindberg et al. had put forward two essential key defences in the arbitration proceedings, namely that (i) that there was not a shortfall in the SCR ratio of Conservatrix and (ii) if there was indeed a shortfall, it is unclear how this should be calculated. Furthermore, it is unclear whether Lindberg et al. still maintain that the defences other than those referred to above from a. to e. were also left unaddressed and/or that in their view these too are still essential defences. It is perhaps

[1] Translator's note: this seems to be a typing error in the source text (*beding* → *geding*) (what is probably meant here is 'arbitral proceedings')

R. Detaille-Kroese sworn translator Wbtv-nr. 3133 Beëdigd vertaler

therefore not necessary, at least in part, to consider these defences below, while at the same time the 'two key defences' will be considered (such as in 4.5.4.3, 4.5.4.1 and further).

4.3.1 Re 4.2.a – The handling and awarding of Conservatrix's claim in arbitral preliminary relief proceedings.

4.3.2 Lindberg et al.'s argument that the arbitral tribunal did not address their challenge to the urgent interest and assertion that the matter is too complex for assessment in preliminary relief proceedings is incorrect. As far as the urgent interest is concerned, Conservatrix referred amongst other things to the ground in the arbitral award it cites in paragraph 62 of its rejoinder, which shows that, and why, in the arbitral tribunal's opinion, Conservatrix has an urgent interest in the relief sought. It is added, superfluously, that Lindberg et al.'s view that they were only obliged to comply with the capitalization obligation if DNB were actually to intervene in its supervisory role, and only in that case would there be an urgent interest, is also incorrect. There is no such condition for compliance in the Recapitalization Commitment, and it is also not logical; compliance with the agreed obligation was in the interests of the continuity of Conservatrix's business and therefore in the interests of its policyholders. That continuity, not otherwise guaranteed, made an interest in compliance urgent, quite apart from the question whether DNB itself demanded compliance and/or threatened to intervene. This too is sufficiently set out in the arbitral award (part B in combination with part C).

4.3.3 On the matter of complexity, Lindberg et al. argue that they are not concerned about the question – answered by them in the affirmative – whether the arbitral tribunal had discretionary powers to refuse the provisional relief requested due to the complexity of the dispute, but about the failure of the arbitral tribunal to address the defence of complexity. This argument, too, rests on an incomplete, at least inaccurate, interpretation of the arbitral award, because in that arbitral award the arbitral tribunal does indeed give reasoned consideration to Lindberg et al.'s argument that the dispute would be too complex for provisional relief. See ground 6.26 in the arbitral award (cited by Conservatrix in point 63 of its rejoinder). There is no question, therefore, of this defence having been left unconsidered or passed over. It is added, superfluously, that since the option to refuse provisional relief due to the complexity of the dispute concerns a discretionary power, the

R. Datauker Kroese sworn translator beëdigd vertaler Wbtv-nr. 3133

failure to use this power and award provisional relief, even without further reasons, implies that the defence of complexity has not been allowed. This is not an essential defence that, in the absence of a reasoned discussion of it, which discussion is indeed made here, provides an independent ground for setting aside the arbitral award.

4.4.1 Re 4.2.b – The existence of a third-party clause in the Recapitalization Commitment.

4.4.2 As considered above, the Recapitalization Commitment does indeed contain a third-party clause that can be invoked by Conservatrix. That was also the opinion of the arbitral tribunal. The reasoning given can be read in grounds 6.6 to 6.13 of the arbitral award, which states that, and why, Lindberg et al.'s challenge to the third-party clause was unfounded. Lindberg et al. do not agree with this, but that is different to the question whether there is a lack of reasons. Those reasons exist and – contrary to Lindberg et al.'s challenge to the third-party clause – moreover are well-founded. In addition, the arbitral tribunal explains in grounds 6.16 and 6.17 why Lindberg et al.'s subsidiary argument that the arbitration clause from the Submission Protocol applies and not the one from the Recapitalization Commitment is incorrect. See in this connection what is considered above in 3.2.

4.5.1 Re 4.2.c - Lindberg et al.'s defences concerning the calculation of the SCR ratio. In this respect Lindberg et al. refer to the following defences (i), (ii) and (iii) which are dealt with directly below.

4.5.2.1 Re (i) Conservatrix wrongly calculates the SCR ratio on the basis of a proxy.

4.5.2.2 In response to this criticism, initially it is held that the arbitral award does not show that the judgment given against Lindberg et al. rests on proxies used by Conservatrix in its weekly calculations. For this judgment, the arbitral award refers to CBL's lower credit rating and the message of 22 December 2019 cited in 3.28 of the judgment, sent by the Rehabilitator of CBL to Conservatrix, which reads as follows: '*[a]s a result of this disavowal, the Treaty is deemed to be void ab initio, and we will be seeking a judicial*

R. Dataukar Kroese sworn translator beëdigd vertaler Wbtv-nr. 3133

*determination as to the proper distribution of assets in the Trust Account.*' The arbitral tribunal rejects the counter-argument of Lindberg et al. that '*the write-down of the value of the reinsurance contract has no influence on the Solvency Capital Requirement and thus also not on the SCR.*' And then finds: '*The arbiter tribunal accepts the fact that there is a shortfall in the SCR and assumes that the downgrading of CBL, also in view of the recent disavowal of the reinsurance agreement by the Rehabilitat in CBL as mentioned under 3.28 above, must in all likelihood have its effect on the outcome of the actual calculation of the SCR, using the calculation method as used by the board of Conservatrix since March 2017.*'

4.5.2.3 Separate from this, Conservatrix has pointed out that in the arbitration proceedings it submitted not only proxies, but also calculations as were contained in the quarterly reports to DNB, and this has not been contradicted. These calculations showed a (sharply) falling SCR ratio during 2019. In the opinion of the arbitral tribunal, there was agreement between the parties about the way in which these calculations were made: '*On this basis, the arbitral tribunal is satisfied that Respondents agreed with the method of calculation, which was the basis of Conservatrix' reporting to DNB.*' See also below under 4.5.4.2.

4.5.3.1 Re (ii) SCR ratio calculated without due regard for Section 135q of the Financial Supervision Act (old).

4.5.3.2 Lindberg et al. argue that (a) this section allows for the option to deviate from the customary calculation method for the SCR ratio and (b) this option was taken up. After Conservatrix had pointed out in its statement of defence that it was unclear which deviation was being referred to, Lindberg et al. argued in their statement of reply (4.5.13) that it had been agreed in the transaction documents that the risk-mitigating effect of the reinsurance and security would be included in the calculation of the SCR ratio. This does not mean, however, that the problems encountered by reinsurer CBL and Lindberg following the acquisition and the risks, including credit risks, this entailed for Conservatrix should be ignored. The alternative viewpoint was rejected, rightly and with reasons, in the arbitral award (see the citations at the end of 4.5.2.2. above, and also the references referred to in paragraph 2 of page 38 of the statement of defence).

4.5.4.1 Re (iii) Fall in CBL's credit rating not relevant. Include collateral/security

R. Dalauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

4.5.4.2 The arbitral award makes the observation (6.31) that the way in which the SCR ratio was calculated at the time of the acquisition in 2017 has not been changed in the period since then. This calculation method was, as Conservatrix has explained, in accordance with the relevant regulations. In order to ensure that the established SCR ratio of 135% was complied with in 2017 (with due regard for that calculation method), Lindberg et al. applied a reinsurance construction; the lion's share of the capital reinforcement of Conservatrix consisted of a reinsurance it allowed Conservatrix to take out with CBL. It goes without saying that this reinsurance offered less risk limitation when (a) CBL was placed under rehabilitation due to liquidity concerns, (b) its credit rating was lowered as a result, and (c) its Rehabilitator deemed the reinsurance to be invalid with retrospective effect and sought a '*judicial determination as to proper distribution of assets in the Trust Account.*'

4.5.4.3 According to the agreement confirmed in the Recapitalization Commitment, Lindberg et al. were required to ensure that the SCR ratio of Conservatrix would be replenished to the agreed level. Lindberg et al.'s argument to the contrary was discussed in the arbitral award and rejected (part C.1 and C.2 of the arbitral award).
Lindberg et al.'s argument (and assumption) that CBL's lower credit rating is not relevant or should not be so 'given the so-called equivalence of the United States and the agreement between DNB and with Conservatrix' lacks proper explanation and substantiation. There is also a lack of explanation and substantiation concerning their argument that a claim of USD 70 million on CBL has, wrongly, not been treated in the same manner as a claim on a European reinsurer.
Lindberg et al. have not put anything forward that indicates, which is denied by Conservatrix, that CBL's financial problems and lower credit rating would have been ignored or must be omitted if CBL had been a European reinsurer. Lindberg et al. have therefore not made clear that the equivalence was important for the judgment by the arbitral tribunal that the reinsurance with CBL offered less risk limitation due to the problems at CBL. There are therefore no grounds for the judgment that the arbitral tribunal should have explicitly referred to the point of equivalence, at least due to that equivalence should not have dismissed Lindberg et al.'s viewpoint that CBL's financial problems and lower credit rating had no negative effect on the SCR ratio of Conservatrix.

R. Dalauker Kroese sworn translator Wbtv-nr. 3133 Beëdigd vertaler

4.5.4.4 As regards the security/collateral, Conservatrix has pointed out that what Lindberg et al. refer to as collateral/security is another name for the 'trust account', which is what is meant in the message from the Rehabilitator (referred to at the end of 4.5.4.2). Judging from that message, the Rehabilitator's reliance on 'disavowal' also had an effect on the allocation of this security. Lindberg et al. did not provide a reasoned explanation why this message could nevertheless be ignored. The risk of the disavowal was weighed up – therefore rightly – by the arbitral tribunal in the judgment that there was a solvency shortfall. Against this, Lindberg et al. have not argued convincingly that (i) the entire reinsurance was covered by the collateral/the trust, (ii) despite the lower credit rating of the reinsurer the collateral/the trust, or parts thereof, offered sufficient security to maintain the SCR ratio of Conservatrix at the agreed 135%, and (iii), equally important, other than in these proceedings they had indeed explained this with reasons in the arbitration proceedings. In the arbitration proceedings too, they did not, for example, submit confirmation from the Rehabilitator that sufficient security/collateral remained for Conservatrix to achieve the agreed SCR ratio.
Incidentally, Lindberg et al. are ambiguous in their argument, because on the one hand they argue – without substantiation – that there was sufficient security, while on the other hand they argue that the loss of the reinsurance and of the security is attributable to Conservatrix itself; see 4.7.2 in their statement of reply, about which in more detail below.

4.6.1 Re 4.2.d – Essential defences concerning the interpretation of the agreements passed over.

4.6.2 Here too, Lindberg et al.'s accusations lack proper explanation and substantiation. In their statement of reply they argue (4.6.1 et seq.) that the Recapitalization Commitment 'stands or falls on the grounds of the term 'viable business case' as must be pursued by [... ] Conservatrix and agreed with DNB.' According to the Recapitalization Commitment (Article 1.2(b)), however, a 'viable business case' applies to further capitalization as soon as Conservatrix 'is stabilized'. In the arbitral award, Lindberg et al.'s argument that Conservatrix was 'stabilized' was mentioned (in 6.38(b)), discussed and rejected (6.44 and 6.45). For that reason, according to the arbitral award Lindberg et al. – in order to escape their obligation concerning the agreed SCR – could not rely successfully on the lack of a 'viable business case'. There is no question here of passing over a defence, essential or otherwise.

R. Dalauker Kroese sworn translator beëdigd vertaler Wbtv-nr. 3133

4.7.1 Re 4.2.e – Essential defences with respect to Conservatrix's own responsibility passed over.

4.7.2 In response to this accusation/argument by Lindberg et al., Conservatrix pointed out (statement of defence: 5.3.4) that the arbitral award also states (6.48): ' [... ] *Respondents have failed to sufficiently substantiate where Conservatrix caused the situation on itself. Moreover, Respondents overlook that Conservatrix, not having been qualified to have been stabilized, is still in a situation that DNB had imposed certain limitations in respect of its business operations*.' In view of this citation, Lindberg et al.'s argument (summons, point 7.39) that the 'arbitral tribunal [...] did not express any opinion on Conservatrix's own responsibility' is incorrect.

Furthermore, the arbitral tribunal rejected (6.36) '*the submission of Respondents that the write-down of the value of the reinsurance contract has no influence on the Solvency Capital Requirement and thus also not on the SCR*.' It was therefore justifiable, as set out in the arbitral award in favour of the claimant, that Conservatrix took action following this fall in value (and the negative impact on its SCR ratio). In so far as Lindberg et al. nevertheless intended to make an accusation, this accusation is unfounded. There is therefore no basis in this for the opinion that the arbitral tribunal should have included in its reasoning that the negative impact on its SCR ratio could also be blamed after all on Conservatrix itself.

4.8 Taking everything into consideration, it must be noted that all the contentions put forward by Lindberg et al. in relation to the SCR ratio, which they considered to be incorrectly calculated because it is too low, must also be dismissed for factual inaccuracy or lack of substantiation. The same applies to their contentions challenging the order for them to replenish Conservatrix's capital position on those or other grounds. They cannot lead to a ground for setting aside being successfully invoked.

*Conclusion*

5. The conclusion is that Lindberg et al.'s demand for the arbitral award given between the parties to be set aside must be dismissed. The furnishing of proof will be ignored; Lindberg et al.'s arguments have been contested with reasons, and have not been properly

R. Datauker Kroese beëdigd vertaler sworn translator Wbtv-nr.

substantiated in refutation of such contestation. Lindberg et al., as the party found against, is ordered to pay the costs of the proceedings.

**The decision**

The Court of Appeal:

- dismisses the claim;
- orders Lindberg et al., jointly and severally, to pay the costs of the proceedings – including the customary subsequent costs (both with and without service) – plus statutory interest from fourteen days of the date of this ruling, which costs until the date of this ruling on the part of the insolvency practitioners of the insolvent Conservatrix are set at € 760 for disbursements and € 4,320 for the lawyer's fees;
- declares this ruling provisionally enforceable with respect to the order to pay costs.

pronounced in open court by J.M. van der Klooster, LLM, P. Volkeren, LLM and J. van der Kluit, LLM on 29 March 2022 in the presence of the clerk of the court.

*(signature)* *(signature)*

Issued as a first enforceable
authenticated copy to: D. Horeman, LLM
Lawyer of claimant/respondent
The Registrar of the Court of Appeal of The Hague
*(signature)*

R. Datauker Kroese sworn translator beëdigd vertaler Wbtv-nr. 3133

*I, Rozemarijne Datauker-Kroese, sworn translator for the English and Dutch language, sworn in at the District Court of Amsterdam, the Netherlands (application number 430685 / KG RK 09-2564), having offices at Anemoonstraat 65 in Koog aan de Zaan, the Netherlands, certify the above text of 20 pages (Ruling of the Court of Appeal of The Hague of 29 March 2022 re Lindberg et al. versus the insolvent Conservatrix N.V.) to be a true and complete translation from Dutch into English of the attached source text seen by me, in witness whereof signed and stamped:*

*10 May 2023*

R. Datauker

R. Datauker Kroese sworn translator Wbtv-nr. 3133 Beëdigd vertaler

IN NAAM VAN DE KONING

# arrest

## GERECHTSHOF DEN HAAG

Afdeling civiel recht

Uitspraakdatum : 29 maart 2022
Zaaknummer : 200.277.991

**Arrest**

in de zaak van:

1. Greg Evan LINDBERG,
   wonende te Durham, North Carolina, Verenigde Staten van Amerika,
2. TRIER HOLDING B.V.,
   gevestigd te Hoofddorp,
3. NETHERLANDS INSURANCE HOLDINGS, INC.,
   gevestigd te Wilmington, Delaware, Verenigde Staten van Amerika,
4. NIH CAPITAL, LLC,
   gevestigd te Wilmington, Deleware, Verenigde Staten van Amerika,

eisers,
hierna te noemen: Lindberg, Trier Holding, NIH en NIHC, tezamen: Lindberg c.s.
advocaat: mr. D. Knottenbelt (Rotterdam),

tegen

Mr. W.J.M. van Andel en mr. E.L. Zetteler in hun hoedanigheid van curatoren in het faillissement van Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.,
gevestigd te Utrecht,
gedaagde,
hierna te noemen: de curatoren; de failliet: Conservatrix,
advocaat: mr. D. Horeman (Amsterdam).

R. Dalauker-Kroese sworn translator beëdigd vertaler Wbtv-nr. 3133

**Korte omschrijving van het geschil**

Lindberg c.s. vorderen vernietiging van een tussen partijen gewezen arbitraal vonnis. In dat vonnis is (i) Trier Holding op vordering van Conservatrix veroordeeld om door middel van kapitaalinbreng de solvabiliteitspositie van Conservatrix op peil te brengen en te houden en zijn (ii) Lindberg, NIH en NIHC verplicht (hoofdelijk en op straffe van een dwangsom) om te bewerkstelligen dat Trier Holding aan die veroordeling zal voldoen. Lindberg c.s. zijn het hier niet mee eens. Hieronder wordt ingegaan op de door hen aangevoerde vernietigingsgronden. De conclusie zal zijn dat die niet tot toewijzing van hun vordering tot vernietiging van het arbitraal vonnis kunnen leiden.

**Het verloop van het geding**

Lindberg c.s. hebben Conservatrix op 23 april 2020 – overeenkomstig het bepaalde in artikel 1064a Rv – gedagvaard om voor dit hof te verschijnen. Vervolgens zijn de volgende processtukken gewisseld:
- een akte overlegging producties van Lindberg c.s.;
- een conclusie van antwoord met producties van Conservatrix;
- een conclusie van repliek van Lindberg c.s.;
- een conclusie van dupliek van Conservatrix.

Conservatrix is daarna, te weten op 8 december 2020, failliet verklaard. De curatoren hebben de procedure overgenomen en namens de boedel voortgezet. Bij gelegenheid van de (digitaal) gehouden mondelinge behandeling hebben mr. D. Horeman voornoemd en zijn kantoorgenoot mr. M.F. Eliëns de zaak namens hen bepleit. Aan de andere zijde – namens Lindberg c.s. – gebeurde dat door mr. D. Knottenbelt voornoemd en zijn kantoorgenoot mr. R.J. Theissen. De pleitnoties die hierbij aan weerszijden zijn gebezigd maken deel uit van de processtukken. Aan het einde van de mondelinge behandeling is bepaald dat arrest zal worden gewezen.

R. Datauker-Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

## De beoordeling van het hoger beroep

*enkele feiten*

1. Hieronder staan enkele feiten die niet in geschil zijn. Een kanttekening daarbij is dat niet is gestreefd naar volledigheid; het niet vermeld zijn van feiten betekent niet dat die in geschil zijn.

(i) Conservatrix is/was een Nederlandse levensverzekeraar met ongeveer 80.000 polishouders. Nederlandse verzekeraars, zoals Conservatrix, moeten voldoen aan bepaalde solvabiliteitseisen. Dat is onder meer geregeld in de Solvency II Richtlijn (Richtlijn 2009/138/EG betreffende de toegang tot en uitoefening van het verzekerings- en het herverzekeringsbedrijf) en de daarbij behorende Gedelegeerde Verordening (EU) 2015/35. In 2017 verkeerde Conservatrix (al geruime tijd) in financieel zwaar weer. Omdat de toenmalige aandeelhouder van Conservatrix (a) niet bereid was om het kapitaal aan te vullen en (b) in plaats daarvan eenzijdig de aanspraken van de verzekerden wilde beperken, heeft De Nederlandsche Bank (hierna: DNB) – die prudentieel toezicht uitoefent op Nederlandse verzekeraars, waaronder Conservatrix – een proces tot verplichte verkoop van de aandelen in Conservatrix in gang gezet. Koper werd Trier Holding. De verkoop/overdracht van de aandelen aan haar verliep volgens een door DNB opgesteld overdrachtsplan in de zin van art. 3:159c lid 1 (oud) van de Wet op het financieel toezicht (Wft). Dat plan is door de rechtbank Amsterdam goedgekeurd bij beschikking van 15 mei 2017 (ECLI:NL:RBAMS:2017:3309 – hierna: de beschikking). Daarin 'verstaat' de rechtbank dat de aandelen in Conservatrix overgaan op Trier Holding. Het cassatieberoep van Conservatrix Groep S.A.R.L (gevestigd te Luxemburg) tegen de beschikking heeft de Hoge Raad verworpen (HR 17 mei 2019, ECLI:NL:HR:2019:746).

(ii) Trier Holding is een vennootschap van Lindberg; meer precies worden de aandelen in Trier Holding gehouden door NIH, een dochtervennootschap van NIH Capital waarvan Lindberg 100% aandeelhouder is. Lindberg is ook eigenaar van het financieel conglomeraat Eli Global, waartoe o.a. het verzekeringsbedrijf Colorado

R. Datauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

RO

Bankers Life Insurance Company (hiera: CBL) behoort. Schematisch ziet een en ander er als volgt uit:




(iii) De voorwaarden waaronder de (gedwongen) aandelenoverdracht aan Trier Holding plaatsvond zijn neergelegd in een aantal op 15 mei 2017 getekende documenten, waarvan hier worden genoemd:
(a) Submission Protocol, ondertekend door DNB en Trier Holding;
(b) Confirmation Letter van Trier Holding, als Annex 1 gevoegd bij het Submission Protocol, ondertekend door Trier Holding;
(c) Agreement re Post-Completion Covenants, als Annex 2 gevoegd bij het hiervoor genoemde Submission Protocol, ondertekend door DNB en Lindberg c.s.;
(d) Recapitalization Commitment, als Annex 1 gevoegd bij de hiervoor genoemde Agreement re Post-Completion Covenants, ondertekend door Lindberg c.s., alsook, maar dan 'for acknowledgement and receipt', door DNB.
Deze documenten (a), (c) en (d) zijn (ook) als respectievelijk Annex 2, 3 en 4 genoemd in/gevoegd bij (e) de Recapitalization Agreement tussen Trier Holding, Standard Financials Ltd., NIH en Conservatrix van 15 mei 2017.
(iv) De hiervoor – (iii) sub d – bedoelde Recapilization Commitment houdt na een aanhef onder meer het volgende in:

R. Dalauker-Kroese beëdigd vertaler sworn translator Wbtv-nr. 3133

RD

*'WHEREAS:*

*[...]*

*(D) As part of the Submission Protocol, DNB, the Transferee* (Trier Holding, opm. hof) *and the Indirect Shareholders* (Lindberg, NIH en NIHCI, opm. hof) *have entered into an agreement re post-completion covenants. In light of that agreement, the Transferee and the Indirect Shareholders hereby wish to confirm certain commitments in relation to the recapitalization of the Company* (Conservatrix, opm. hof).

*1. COMMITMENT*

*1.1 Unless otherwise agreed with DNB in writing, subject to Completion occurring, the Transferee and Indirect Shareholders hereby commit to maintain a minimum solvency capital ratio of 135% within the Company (as outlined in the Solvency II Directive, Directive 2009/138/EC) (the Proposed Minimum SCR Ratio) as of Completion (the Commitment);*

*1.2 The Commitment is subject to the following terms and conditions:*

*(a) Subject to the provision set out below under (b), the Transferee will, and the Indirect Shareholders will procure that the Transferee will, replenish any shortfall in the Proposed Minimum SCR Ratio with core equity contributions.*

*(b) As soon as the Company is stabilized, the Commitment shall be limited in the sense that further capitalization of the Company over and above the initial amount of capitalization by the Transferee on Completion, shall be based on a viable business case for the Company (the analysis thereof may include taking into account the interest of the shareholder).*

*(c) Notwithstanding paragraph (b) above, Lindberg will use all his reasonable (voting) powers to ensure that the Company will at all times comply with applicable law and regulations.*

*(d) DNB will reasonably consider to waive the requirement of the Commitment to the extent provided by Lindberg, provided that sufficient alternative comfort can be offered via an irrevocable Company group guarantee. For the avoidance of doubt, such guarantee shall not be automatically terminated upon the Company group no longer being affiliated to the Company.*

*(e) DNB may only invoke the Commitment after the expiry of six (6) months of the moment that the Company does no longer comply with the Proposed Minimum SCR Ratio.*

*(f) The Company shall not make any changes in the Proposed Minimum SCR Ratio without the prior written confirmation of DNB.*

*1.3 The validity and enforceability of the Commitment and the terms and conditions thereto as set out under clause 1.1 and 1.2 is confirmed by the legal opinion given by Houthoff Buruma New York B.V. dated 17 March 2017, as attached hereto as Schedule 1. The due authorization of Shareholder 1* (NIH, opm. hof) *and Shareholder 2* (NIHC, opm. hof) *is*

R. Dataulker Kroese beëdigd vertaler sworn translator Wbtv-nr. 3133

*confirmed by the legal opinion given by McGuireWoods LLP dated 17 March 2017, as attached hereto as Schedule 2.*

*2. GOVERNING LAW AND JURISDICTION*

*2.1 The recapitalization commitment is governed by Dutch law. All disputes arising out of or in connection with this recapitalization commitment shall be referred to arbitration in accordance with the Arbitration Rules of the Netherlands Arbitration Institute (Nederlands Arbitrage Instituut, NAI).*

(v) Ten tijde van de overname van de Conservatrix-aandelen in 2017 had Conservatrix een aanzienlijk financieel tekort. Dat tekort is door Lindberg c.s. op dat moment (slechts) voor een klein deel teruggebracht door een kapitaalstorting; het grootste deel werd aangevuld door Conservatrix een herverzekeringsovereenkomst te laten afsluiten met CBL. Bij CBL werd echter in 2019 door de Amerikaanse overheid een zogenoemde Rehabilitator (een soort bewindvoerder) aangesteld. Dit vanwege financiële problemen waarin CBL verkeerde. In reactie daarop heeft AM Best, een kredietbeoordelaar, op 27 juni 2019 de kredietwaardigheid van CBL verlaagd. De Rehabilator heeft aangekondigd de herverzekeringsovereenkomst te zullen ontbinden (disavowal). Begin 2020 is hij in de USA een procedure tegen Conservatrix begonnen. Tegen Lindberg is in 2019 in de USA een strafrechtelijke procedure gestart wegens een poging tot omkoping van de toezichthouder voor verzekeraars in North Carolina.

(vi) Conservatrix en DNB hebben Lindberg c.s. er in 2019 meermalen op gewezen dat moest worden voldaan aan de herkapitalisatieverplichting omdat (volgens de berekeningen van Conservatrix) de SCR-ratio van Conservatrix onder de 135% was gezakt. Op 20 december 2019 heeft DNB aan Conservatrix bevestigd dat Lindberg c.s. verplicht waren zich aan de Recapitalization Commitment te houden, dat deze verplichting op 6 november 2019 opeisbaar was geworden en dat het nakomen van de herkapitalisatieverplichting des te dringender was geworden omdat de SCR-ratio onder de 100% was gedaald.

(vii) Bij brief van 20 december 2019 heeft DNB aan Conservatrix geschreven:

*'Re:*

*Arbitration*

*[...]*

R. Datauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

*[...] (DNB) has been informed that [...] (Conservatrix) intends to initiate arbitration proceedings against Trier Holding B.V., Netherlands Insurance Holdings Inc., NIH Capital, LLC and Mr Greg Lindberg ("the Shareholders") in order to enforce the [...] ("Commitment") that DNB and the Shareholders have agreed upon for the benefit of Conservatrix on 17 March 2017.*

*DNB is of the opinion that the Shareholders are obliged to comply with the Commitment and that the Commitment is due and payable as per 6 November 2019. Compliance with the Commitment is all the more pressing in light of the fact that the SCR ratio of the Company is now below 100%.*

*For further clarification DNB refers to her attached letters to Trier Holding B.V. of 12 June 2019, 6 September 2019, 2 October 2019 and 20 December 2019.*

*[...]'*

(viii) Op 22 december 2019 heeft Conservatrix een arbitraal kort geding en tegelijkertijd ook een arbitrale bodemprocedure tegen Lindberg c.s. aanhangig gemaakt bij het Nederlands Arbitrage Instituut (NAI). Op 24 december 2019 bevestigde het NAI de benoeming van professor mr. dr. C.A. Schwarz tot arbiter in het arbitraal kort geding. Het scheidsgerecht heeft op 31 januari 2020 vonnis gewezen in het arbitraal kort geding. In het vonnis is onder meer het volgende beslist (randnummer 9.1):

*'Therefore, the arbitral tribunal, with reference to article 36(1) of the NAI Rules 2015, in accordance with the rules of law, decides as follows:*

*a) Orders Trier Holding [...] to replenish the shortfall in the solvency capital ratio of [...] "Conservatrix" N.V. to 135% with core equity contributions, within 60 days after the award, and thereafter to maintain a minimum solvency capital ratio of 135% in accordance with the Recapitalization Commitment;*

*b) Orders Mr. [...] Lindberg, Netherlands Insurance Holdings, Inc. and NIH Capital, LLC, jointly and severally, to procure that Trier Holding [...] will replenish the shortfall in the solvency capital ratio of [...] "Conservatrix" N.V. to a solvency capital ratio of 135% with core equity contributions, within 60 days after the award and thereafter to procure that Trier Holding [...] maintains a minimum solvency capital ratio of [...]*

R. Datauker Kroese sworn translator beëdigd vertaler Wbtv-nr. 3133

*"Conservatrix" N.V. of 135% in accordance with the Recapitalization Commitment;*

c) *Orders Mr. [...] Lindberg, Netherlands Insurance Holdings, Inc. and NIH Capital, LLC, to pay [...] "Conservatrix" N.V. an immediately payable penalty (in Dutch: dwangsom) of one hundred fifty million euros (€ 150M) (in total) if the obligations under sub b) of these rulings are not timely complied with in whole or in part;*

*[...]'*

(ix) Op 17 februari 2020 heeft de voorzieningenrechter van de rechtbank Rotterdam verlof tot tenuitvoerlegging van dit arbitraal vonnis verleend.

*bespreking van de door Lindberg c.s. aangevoerde vernietigingsgronden*

2.1 Lindberg c.s. stellen zich in de eerste plaats op het standpunt dat een geldige overeenkomst tot arbitrage tussen Lindberg c.s. en Conservatrix ontbrak – artikel 1065, lid 1 sub a, Rv. Daarover het volgende.

2.2 Het scheidsgerecht heeft zijn bevoegdheid doen steunen op de (hiervoor in 1 (iv) geciteerde) arbitrageclausule in de Recapitalization Commitment (artikel 2.1), ondertekend door Lindberg c.s. en 'for acknowledgement and receipt' door DNB. In die Recapitalization Commitment bevestigen Lindberg c.s. de – aan de aandelenovername gekoppelde – verplichting om de SCR-ratio van Conservatrix op minimaal 135% te houden. Naar het oordeel van het scheidsgerecht vormt deze verplichting – gezien onder meer de bewoordingen ervan en de samenhang met de overige transactiedocumenten – een derdenbeding waarop Conservatrix zich kon beroepen. Door aanvaarding van dat beding is Conservatrix toegetreden tot de overeenkomst zoals die in de Recapitalization Commitment besloten ligt en is zij uit dien hoofde gerechtigd om ook een beroep te doen op het daarvan deel uitmakende arbitraal beding.

2.3 Lindberg c.s. zijn het niet eens met deze uitleg/interpretatie van de Recapitalization Commitment. Waar zij het wel mee/over eens zijn – en met hen

R. Datauker-Kroese beëdigd vertaler sworn translator Wbtv-nr. 3133

Conservatrix – is dat bij die uitleg van beslissende betekenis zijn: alle omstandigheden van het concrete geval, gewaardeerd naar wat de maatstaven van redelijkheid en billijkheid meebrengen. Het arbitraal vonnis – waarin wordt uitgegaan van de toepasselijkheid van Nederlands recht, waarover Lindberg c.s. niet hebben geklaagd – noemt in dit verband ook het arrest HR 1 oktober 2004, NJ 2005, 499, waarin de Hoge Raad overweegt dat onjuist is de opvatting dat alleen dán mag worden aangenomen dat een derdenbeding is tot stand gekomen wanneer blijkt dat zulks door de oorspronkelijke partijen bewust is beoogd.

2.4 Toepassing van deze uitlegregels leidt in dit geval tot de conclusie dat de in de Recapitalization Commitment bevestigde verplichting van Lindberg c.s. inderdaad kwalificeert als een door Conservatrix inroepbaar derdenbeding. Voor een andere uitleg ontbreken voldoende aanknopingspunten. Dat geldt meer in het bijzonder ook voor de door Lindberg c.s. – voor het eerst in deze vernietigingsprocedure – verdedigde uitleg van de verplichting als een vorm van sterkmaking waaraan Conservatrix geen rechten kan ontlenen. Hierbij wordt onder meer het volgende in aanmerking genomen.

(i) De prestatie waartoe Lindberg c.s. zich in het kader van de overname hebben verplicht – te weten: de herkapitalisatie/het verbeteren van de solvabiliteitspositie van Conservatrix – was in het belang van Conservatrix en daarmee van haar polishouders. Conservatrix was bovendien de aangewezen ontvanger van deze prestatie; niet DNB.

(ii) De hiervoor in 1 (vii) aangehaalde brief van DNB van 20 december 2019 – waarin staat dat de Recapitalization Commitment was 'agreed upon for the benefit of Conservatrix' – vormt een bevestiging dat sprake was van een derdenbeding ten gunste van Conservatrix. Dat het de eerste keer was dat DNB een bericht met deze inhoud stuurde, doet aan de aannemelijkheid en juistheid ervan niet af. Er zijn geen (eerdere of latere) berichten van DNB die inhouden dat de afgesproken verplichting niet ten gunste van Conservatrix strekte en/of dat Conservatrix, hoewel die verplichting haar direct aanging en zij van de naleving ervan afhankelijk was, er geen beroep op kon doen.

(iii) Lindberg c.s. zijn ook in de onderhavige procedure niet gekomen met feiten en omstandigheden, dan wel een aannemelijke verklaring, op basis waarvan zij er

R. Dataukar Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

redelijkerwijs op mochten vertrouwen dat DNB – die als toezichthouder de gedwongen overname in gang had gezet en daarbij als voorwaarde het op peil brengen en houden van de solvabiliteitsratio van Conservatrix had bedongen – enkel zelf naleving van die door Lindberg c.s. aanvaarde verplichting zou mogen verlangen, en Conservatrix, hoewel het om haar solvabiliteitsratio ging, niet. Een aannemelijke verklaring is niet dat het prudentieel toezicht door DNB, als legitimatie voor het ingrijpen, (mede) dient ter bescherming van de polishouders van Conservatrix. Het belang van de polishouders van Conservatrix was ermee gediend dat de SCR van Conservatrix op het met DNB afgesproken peil werd gebracht en gehouden. Dat belang verzet zich er niet tegen dat Conservatrix zelf vraagt om naleving van de verplichting die in dit verband op Lindberg c.s. rustte. Uit de Recapitalization Commitment volgt niet, evenmin als uit de andere transactiedocumenten, dat de verplichting slechts gold, of alleen dan behoefde te worden nageleefd, indien het DNB zelf was die dit vanuit haar toezichthoudende rol van Lindberg c.s. eiste. Lindberg c.s. hebben ook niet duidelijk gemaakt dat zij er nadeel van hebben ondervonden dat Conservatrix als eisende partij is opgetreden en niet (tevens) DNB. Zij hebben geen verklaring/bevestiging van de zijde van DNB gepresenteerd waaruit blijkt dat DNB op het punt van het (niet-)naleven van de kapitalisatieverplichting door Lindberg c.s. een afwijkend standpunt inneemt ten opzichte van dat van Conservatrix. Het ligt ook niet voor de hand dat DNB een dergelijk afwijkend standpunt zou innemen. DNB heeft (in haar rol als toezichthouder) er immers belang bij dat afspraken, zoals zij die in het belang van (het aan haar toezicht onderworpen) Conservatrix en haar polishouders heeft gemaakt, worden nageleefd, ook zonder dat DNB daar zelf een procedure voor moet starten of daarin intervenieert. Hier geldt: toezicht is goed, naleven is beter. Anders dan Lindberg c.s. menen wekt het om al deze redenen geen bevreemding dat niet (tevens) DNB als eisende partij is opgetreden.

(iv) De Recapitalization Commitment laat zich, anders dan Lindberg c.s. voorstaan, niet aldus lezen/verstaan dat de daarin bevestigde verplichting van Lindberg c.s. slechts gold indien Conservatrix er (aantoonbaar) niet zelf op andere wijze in slaagde om haar SCR-ratio op het afgesproken peil te brengen en te houden. Dat dit niettemin wel de bedoeling is geweest, volgt onvoldoende uit wat Lindberg c.s. hebben aangevoerd.

R. Datauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

(v) De stelling van Lindberg c.s. dat (met name) Lindberg de Recapitalization Commitment nimmer zou hebben getekend indien daarin een derdenbeding was vervat, mist een voldoende (verklarende) onderbouwing en is bovendien betwist. Ook hiervoor geldt dat niet is gebleken dat Conservatrix iets meer of anders van Lindberg heeft geëist dan waartoe hij zich in het kader van de overname heeft verplicht. Evenmin blijkt dat hij anderszins in een nadeligere positie is komen te verkeren doordat niet (ook) DNB als eisende partij is opgetreden. Aan bedoelde stelling wordt en kon daarom worden voorbijgegaan.

(vi) Dat Conservatrix, als belanghebbende bij en ontvanger van de prestatie, de Recapitalization Commitment niet mede heeft ondertekend is, anders dan Lindberg c.s. menen, niet een omstandigheid die pleit voor de door Lindberg c.s. voorgestane uitleg en tegen die van Conservatrix; Conservatrix was geen contracterende partij bij de in het document bevestigde overeenkomst, maar is door aanvaarding van het derdenbeding tot die overeenkomst toegetreden (art. 6:254 BW). Overigens zou zij volgens Lindberg c.s. wél partij zijn bij en rechten kunnen ontlenen aan de hiervoor in 1 (iii) (d) bedoelde Confirmation Letter, terwijl dat document evenmin door haar (Conservatrix) is ondertekend. Dat Trier Holding in die eenzijdige, alleen door haarzelf ondertekende, Confirmation Letter – onder meer inhoudende (artikel. 5.2 (e)) dat zij 'shall capitalize the Company in line with the arrangements agreed with DNB' – spreekt over 'parties' en daaronder ook Conservatrix verstaat, betekent niet dat Conservatrix dus geen rechten kan ontlenen aan de Recapitalization Commitment, die eveneens gaat over/betrekking heeft op Conservatrix als the Company waarvan een 'shortfall in the Proposed Minimum SCR Ratio' zal worden aangevuld 'with core equity-contributions'.

2.5 Het oordeel van het scheidsgerecht dat Conservatrix zich kan beroepen op het in de Recapitalization Commitment opgenomen arbitraal beding is eveneens juist. Dit arbitraal beding voorziet in een wijze van beslechting van geschillen die uit of in verband met de Recapitalization Commitment rijzen. Het beding vormt een integraal onderdeel van de in dat document neergelegde/bevestigde overeenkomst. Die overeenkomst bestaat, na een considerans, uit slechts twee artikelen, waarvan het tweede het, helder geformuleerde en duidelijk kenbare, arbitraal beding betreft. Als

Beëdigd vertaler R. Dataulker Kroese sworn translator Wbtv-nr. 3133

toetredende partij kon Conservatrix er daarom gebruik van maken. Het arbitraal beding kan ook worden gezien als een zelfstandig ten behoeve van Conservatrix overeengekomen en door haar aanvaard derdenbeding. Voor het resultaat maakt dat niet uit. Overigens is door Lindberg c.s. niet betwist dat, indien de verplichting aangaande de SCR als een door Conservatrix aanvaard derdenbeding wordt gezien, Conservatrix ook een beroep kan doen op het arbitraal beding. In het arbitraal vonnis is dan ook terecht overwogen (6.10) dat het arbitraal beding ongetwijfeld is bedoeld om Conservatrix – na aanvaarding ervan – de mogelijkheid te bieden om een arbitrale procedure te starten en nakoming van de verplichtingen uit de Recapitalization Commitment te vorderen.

3.1 De tweede door Lindberg c.s. aangevoerde vernietigingsgrond is dat het scheidsgerecht op onjuiste wijze is samengesteld – artikel 1065 lid 1 sub b Rv.

3.2 Het betoog van Lindberg c.s. komt er in de kern op neer dat voor de geschillen die rijzen uit of in verband met de Recapitalization Commitment, niet het in de Recapitalization Commitment opgenomen arbitraal beding geldt, maar een ander arbitraal beding, te weten het andersluidende arbitrale beding uit het hierboven in 1 (iii) (a) genoemde Submission Protocol. Dit betoog kan niet als juist worden aanvaard, onder meer niet om de volgende redenen:

(i) Met betrekking tot de overname en de in dat verband gemaakte afspraken zijn verscheidene documenten opgesteld en ondertekend. Vrijwel elk document bevat een geschillenbeslechtingsclausule. Onderling verschillen die clausules. Terwijl bijvoorbeeld de Recapitalization Agreement, waaraan de Recapitalization Commitment als bijlage is toegevoegd, een forumkeuze voor de rechtbank in Amsterdam bevat, verklaart de Agreement re Post-Completion Covenants, waarbij de Recapitalization Commitment eveneens een bijlage is, de uitgebreide arbitrageclausule uit het Submission Protocol van overeenkomstige toepassing. Het ligt dan voor de hand om bij een dispuut over een verplichting uit een bepaald document gebruik te maken van de

R. Dataıker Kroese beëdigd vertaler sworn translator Wbtv-nr. 3133

geschillenbeslechtingsclausule uit dat specifieke document, aangezien die clausule het dichtst bij de verplichting ligt.

(ii) Indien het de bedoeling was geweest dat de in het Submission Protocol omschreven arbitrageclausule ook zou gelden voor geschillen over de verplichting uit de Recapitalization Commitment had het voor de hand gelegen om niet als artikel 2 van de uit twee artikelen bestaande Recapitalization Commitment een zelfstandige (in opzet en bewoordingen) afwijkende arbitrageclausule op te nemen, maar simpel te verwijzen naar de arbitrageclausule uit de Submission Protocol en die van overeenkomstige toepassing te verklaren (zoals dit in de Agreement re Post-Completion Covenants is gebeurd).

(iii) De omstandigheden (i) en (ii) gelden eens te meer nu de contracten zijn gesloten door professionele partijen, die zijn bijgestaan door deskundige adviseurs en juristen.

(iv) Daarbij komt ook nog dat het Submission Protocol een overeenkomst is tussen Trier Holding en DNB. De (indirect) aandeelhouders van Trier Holding zijn dus niet gebonden aan het in dat protocol opgenomen arbitraal beding; daarentegen wél aan het arbitraal beding zoals opgenomen in de door hen meegetekende Recapitalization Commitment, die (anders dan het Submission Protocol en de Confirmation Letter) was toegespitst op de herkapitalisatie van Conservatrix.

(v) De schakelbepaling 11.4 van het Submission Protocol - luidende: 'This clause 11 shall also apply to disputes arising in connection with other agreements which are connected with this Protocol, unless the relevant agreement expressly provides otherwise.' – voorziet in de mogelijkheid van uitdrukkelijke afwijking in de samenhangende overeenkomst. Welnu, de Recapitalization Commitment kent een eigen, afwijkend, arbitraal beding. Die afwijking is evident. Er behoefde daarom niet nog eens apart te worden benoemd dat met het arbitraal beding in de Recapitalization Commitment wordt afgeweken van het arbitraal beding in het Submission Protocol.

3.3 Uitgaande van het arbitraal beding zoals opgenomen in de Recapitalization Commitment betwisten Lindberg c.s. niet dat het scheidsgerecht op juiste, reglementaire, wijze was samengesteld. Wat de persoon van de arbiter betreft en diens

R. Dalsuker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

kwaliteiten, blijkt niet dat Lindberg c.s. daartegen tijdens het arbitraal beding op de voorgeschreven wijze bezwaar hebben gemaakt.

4.1 De derde en vierde vernietigingsgrond waar Lindberg c.s. zich op beroepen zijn (3) dat het scheidsgerecht zich niet aan zijn opdracht heeft gehouden – artikel 1065 lid 1 sub c Rv – en (4) dat het scheidsgerecht de motiveringsplicht heeft geschonden – artikel 1065 lid 1 sub d Rv. Deze gronden worden tezamen besproken omdat er een overlap zit in de toelichting erop.

4.2 Aan het beroep op deze vernietigingsgronden hebben Lindberg c.s. ten grondslag gelegd dat het scheidsgerecht verscheidene, door hen als essentieel aangemerkte, verweren onbehandeld heeft gelaten. Als – niet-behandelde, essentiële – verweren hebben zij in hun dagvaarding (7.10) genoemd:

a. de behandeling van het geschil in een arbitraal kort geding;
b. het bestaan van een derdenbeding in de Recapitalization Commitment;
c. de gehanteerde berekeningsmethode van de SCR-ratio;
d. de door Conservatrix gehanteerde interpretatie van de overeenkomsten;
e. de eigen verantwoordelijkheid van Conservatrix.

Conservatrix heeft gemotiveerd betwist dat het arbitraal vonnis geen gemotiveerde weerlegging bevat van deze verweren, die naar haar mening bovendien ten onrechte als 'essentieel' worden gepresenteerd. Tegen de achtergrond van deze betwisting is opmerkelijk dat in de door de advocaten van Lindberg c.s. voorgelezen pleitnotities staat (4.12) dat Lindberg c.s. in het arbitraal geding in de kern twee hoofdverweren hebben gevoerd, te weten (i) dat er geen sprake was van een tekort in de SCR-ratio van Conservatrix en (ii) dat, als er een tekort zou zijn, onduidelijk is hoe dat berekend moet worden. Onduidelijk is of Lindberg c.s. daarnaast toch ook handhaven dat de (andere van de) hiervoor sub a tot en met sub e bedoelde verweren onbehandeld zijn gelaten en/of dat het ook daarbij in hun optiek nog steeds gaat om *essentiële* verweren. Wellicht daarom (deels) onnodig wordt hieronder toch ingegaan op elk van die verweren, waarbij tegelijk ook de 'twee hoofdverweren' zullen worden meegenomen (o.a. bij 4.5.4.3 en 4.5.4.1 en verder).

R. Dataukar Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

4.3.1 Ad 4.2.a – De behandeling en toewijzing van de vordering van Conservatrix in een arbitraal kort geding.

4.3.2 Onjuist is de stelling van Lindberg c.s. dat het scheidsgerecht niet is ingegaan op hun betwisting van het spoedeisend belang en bewering dat de materie te complex is voor een beoordeling in kort geding. Wat het spoedeisend belang betreft heeft Conservatrix onder meer gewezen op de door haar in punt 62 van haar conclusie van dupliek geciteerde overweging uit het arbitraal vonnis, waaruit blijkt dat en waarom Conservatrix naar het oordeel van het scheidsgerecht een spoedeisend belang heeft bij de gevraagde voorziening. Toegevoegd wordt nog, ten overvloede, dat evenzeer onjuist is de opvatting van Lindberg c.s. dat zij slechts dan tot naleving van de kapitalisatieverplichting gehouden waren indien DNB vanuit haar toezichthoudende rol daadwerkelijk zou ingrijpen en dat alleen in dat geval sprake zou zijn van een spoedeisend belang. Een dergelijke voorwaarde voor naleving staat niet in de Recapitalization Commitment en ligt ook niet voor de hand; naleving van de overeengekomen verplichting was in het belang van de continuïteit van de onderneming van Conservatrix en daarmee in het belang van haar polishouders. Die, niet anderszins gegarandeerde, continuïteit maakte een belang bij naleving spoedeisend, los van de vraag of DNB zelf naleving eiste en/of met ingrijpen dreigde. Ook dit ligt voldoende besloten in het arbitraal vonnis (onderdeel B in combinatie met onderdeel C).

4.3.3 Wat het punt van de complexiteit betreft stellen Lindberg c.s. dat het hun niet gaat om de – door hen bevestigend beantwoorde – vraag of het scheidsgerecht discretionaire bevoegdheid had om de gevorderde voorlopige voorziening vanwege de complexiteit van het geschil te weigeren, maar om het onbehandeld laten van het complexiteitsverweer door het scheidsgerecht. Ook deze stelling berust op een onvolledige, althans onjuiste, lezing van het arbitraal vonnis, want daarin gaat het scheidsgerecht wel degelijk gemotiveerd in op het argument van Lindberg c.s. dat het geschil te complex zou zijn voor een voorlopige voorziening. Zie (de door Conservatrix in punt 63 van haar conclusie van dupliek geciteerde) overweging 6.26 uit het arbitraal

R. Dalauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

vonnis. Van een onbehandeld/onbesproken laten van dit verweer is dan ook geen sprake. Ten overvloede wordt toegevoegd dat, nu de mogelijkheid tot het weigeren van een voorlopige voorziening wegens de complexiteit van het geschil een discretionaire bevoegdheid betreft, het niet gebruikmaken van die bevoegdheid en toewijzen van de voorlopige voorziening, ook zonder nadere motivering, impliceert dat het complexiteitsverweer niet is gehonoreerd. Het gaat hierbij niet om een essentieel verweer dat, bij gebreke aan een gemotiveerde bespreking ervan, die er hier dus wel is, een zelfstandige grond voor vernietiging van het arbitraal vonnis oplevert.

4.4.1 Ad 4.2.b – Het bestaan van een derdenbeding in de Recapitalization Commitment.

4.4.2 Zoals hiervoor is overwogen bevat de Recapitalization Commitment inderdaad een door Conservatrix inroepbaar derdenbeding. Dat was ook het oordeel van het scheidsgerecht. De motivering daarbij is te lezen in de overwegingen 6.6 tot en met 6.13 van het arbitraal vonnis. Daaruit blijkt dat en waarom de betwisting van het derdenbeding door Lindberg c.s. geen doel heeft getroffen. Lindberg c.s. zijn het daar niet mee eens, maar dat is iets anders dan dat een motivering ontbreekt. Die motivering is er en is – anders dan de betwisting van het derdenbeding door Lindberg c.s. – bovendien steekhoudend. In de overwegingen 6.16 en 6.17 van het arbitraal vonnis zet het scheidsgerecht daarnaast uiteen waarom onjuist is het subsidiaire argument van Lindberg c.s. dat het arbitraal beding uit het Submission Protocol geldt en niet dat uit de Recapitalization Commitment. Zie in dit verband wat hierboven onder 3.2 is overwogen.

4.5.1 Ad 4.2.c – Verweren van Lindberg c.s. met betrekking tot de berekening van de SCR-ratio. Lindberg c.s. noemen in dit verband de volgende, direct hierna behandelde, verweren (i), (ii) en (iii).

4.5.2.1 Ad (i) Conservatrix berekent de SCR-ratio onterecht op basis van een proxy

R. Dalauker Kroese sworn translator Wbtv-nr. 3133 Beëdigd vertaler

4.5.2.2 Naar aanleiding van deze kritiek wordt in de eerste plaats overwogen dat uit het arbitraal vonnis niet blijkt dat de daarin tegen Lindberg c.s. uitgesproken veroordeling berust op (door Conservatrix wekelijks gemaakte berekeningen op basis van) proxies. Voor die veroordeling verwijst het arbitraal vonnis naar de lagere rating van CBL en het in 3.28 van het vonnis aangehaalde bericht van 22 december 2019 van de Rehabilitator van CBL aan Conservatrix, inhoudende: '[a]s a result of this disavowal, the Treaty is deemed to be void ab initio, and we will be seeking a judicial determination as to the proper distribution of assets in the Trust Account.' Het scheidsgerecht verwerpt de tegenwerping van Lindberg c.s. dat 'the write-down of the value of the reinsurance contract has no influence on the Solvency Capital Requirement and thus also not on the SCR.' En overweegt dan: 'The arbiter tribunal accepts the fact that there is a shortfall in the SCR and assumes that the downgrading of CBL, also in view of the recent disavowal of the reinsurance agreement by the Rehabilitat in CBL as mentioned under 3.28 above, must in all likelihood have its effect on the outcome of the actual calculation of the SCR, using the calculation method as used by the board of Conservatrix since March 2017.'

4.5.2.3 Los hiervan heeft Conservatrix er onweersproken op gewezen dat zij in het arbitraal geding niet alleen proxies heeft overgelegd, maar ook de berekeningen zoals die waren vervat in de kwartaalrapportages aan DNB. Die berekeningen lieten over 2019 een (sterk) dalende SCR-ratio zien. Naar het oordeel van het scheidsgerecht bestond tussen partijen overeenstemming over de wijze waarop die berekeningen waren uitgevoerd: 'On this basis, the arbitral tribunal is satisfied that Respondents agreed with the method of calculation, which was the basis of Conservatrix' reporting to DNB.' Zie ook hieronder: 4.5.4.2.

4.5.3.1 Ad (ii) SCR-ratio berekend zonder inachtneming van art. 135q Wft (oud).

4.5.3.2 Lindberg c.s. stellen (a) dat dit artikel het mogelijk maakt om af te wijken van de gangbare berekeningsmethode van de SCR-ratio en (b) dat van die mogelijkheid gebruik is gemaakt. Nadat Conservatrix er bij conclusie van antwoord op had gewezen

R. Dalauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

dat onduidelijk was op welke afwijking werd gedoeld, hebben Lindberg c.s. bij conclusie van repliek gesteld (4.5.13) dat in de transactiedocumenten is afgesproken dat het risico mitigerende effect van de herverzekering en het onderpand meegenomen zou worden in de berekening van de SCR-ratio. Daarmee is echter niet gezegd dat de problemen waarin herverzekeraar CBL en Lindberg na de overname waren terechtgekomen en de (krediet)risico's die dit voor Conservatrix meebracht, buiten beschouwing zouden moeten worden gelaten. Het andersluidende standpunt is in het arbitraal vonnis (terecht en) gemotiveerd verworpen (zie de citaten aan het slot van 4.5.2.2 hiervoor en zie ook de verwijzingen genoemd in de conclusie van antwoord, pag. 38 tweede alinea).

4.5.4.1 Ad (iii) Daling rating CBL niet relevant. Meenemen collateral/onderpand.

4.5.4.2 Het arbitraal vonnis behelst als constatering (6.31) dat de wijze waarop de SCR-ratio ten tijde van de overname in 2017 was berekend in de periode nadien niet is gewijzigd. Die berekeningsmethode was, zoals Conservatrix heeft toegelicht, in overeenstemming met de relevante regelgeving. Om ervoor te zorgen dat aan de (met inachtneming van die berekeningswijze) vastgestelde SCR-ratio van 135% in 2017 werd voldaan, hebben Lindberg c.s. een herverzekeringsconstructie toegepast; het leeuwendeel van de kapitaalversterking van Conservatrix bestond uit een herverzekering die zij Conservatrix lieten aangaan met CBL. Het spreekt voor zich dat die herverzekering minder risicolimitering bood toen (a) CBL vanwege liquiditeitszorgen onder 'rehabilitation' werd geplaatst, (b) haar rating als gevolg daarvan werd verlaagd, en (c) haar 'Rehabilitator' de herverzekering met terugwerkende kracht ongeldig achtte en zocht naar 'a judicial determination as to proper distribution of assets in the Trust Account.'

4.5.4.3 Lindberg c.s. dienden er volgens de in de Recapitalization Commitment bevestigde afspraak voor te zorgen dat de SCR-ratio van Conservatrix weer op het afgesproken niveau werd gebracht. Het andersluidende betoog van Lindberg c.s. is in

R. Dalauker Kroese sworn translator Wbtv-nr. 3133 Beëdigd vertaler

het arbitraal vonnis besproken en verworpen (onderdeel C.1 en C.2 van het arbitraal vonnis).
De (veronder)stelling van Lindberg c.s. dat de lagere rating van CBL niet relevant is of behoort te zijn 'gegeven de zogeheten equivalentie van de Verenigde Staten en de overeenkomst tussen DNB en met Conservatrix' mist een behoorlijke toelichting en onderbouwing. Dit gebrek aan toelichting en onderbouwing is er ook met betrekking tot hun stelling dat een vordering van US$ 70 miljoen op CBL ten onrechte niet op dezelfde wijze is behandeld als een vordering op een Europese herverzekeraar.
Lindberg c.s. hebben niets aangevoerd dat erop wijst dat, wat Conservatrix ontkent, de financiële problemen en lagere rating van CBL buiten beschouwing zouden zijn of moeten worden gelaten indien CBL een Europese herverzekeraar zou zijn geweest.
Lindeberg c.s. hebben daarmee niet duidelijk gemaakt dat de equivalentie van belang was voor het oordeel van het scheidsgerecht dat de herverzekering bij CBL minder risicolimitering bood vanwege de problemen bij CBL. Er is daarom geen grond voor het oordeel dat het scheidsgerecht het punt van de equivalentie expliciet had moeten benoemen, althans vanwege die equivalentie niet had mogen concluderen tot een verwerping van het standpunt van Lindberg c.s. dat de financiële problemen bij en lagere rating van CBL geen negatieve invloed hadden op de SCR-ratio van Conservatrix.

4.5.4.4 Wat het onderpand/collateral betreft heeft Conservatrix erop gewezen dat wat Lindberg c.s. collateral/onderpand noemen een andere benaming is voor het 'trust account', waar in het (aan het slot van 4.5.4.2 bedoelde) bericht van de Rehabilitatior op wordt gedoeld. Diens beroep op 'disavowal' had, afgaande op dat bericht, ook effect op de verdeling van dit onderpand. Lindberg c.s. hebben niet gemotiveerd uiteengezet waarom dit bericht niettemin buiten beschouwing kon worden gelaten. Het risico van de disavowal is door het scheidsgerecht (dan ook terecht) meegewogen bij het oordeel dat sprake was van een solvabiliteitstekort. Lindberg c.s. hebben hier tegenover niet aannemelijk gemaakt (i) dat de gehele herverzekering door collateral/de trust was afgedekt, (ii) dat ondanks de lagere rating van de herverzekeraar de collateral/de trust, of onderdelen daarvan, voldoende zekerheid bood/boden om de SCR-ratio van

R. Datauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

Conservatrix op de afgesproken 135% te houden, en (iii), even belangrijk, dat zij dit, anders dan in de onderhavige procedure, wel gemotiveerd hebben uiteengezet in het arbitraal geding. Ook in het arbitraal geding hebben zij niet, bijvoorbeeld, een bevestiging van de Rehabilitator overgelegd dat er voor Conservatrix voldoende zekerheid/onderpand overbleef om de afgesproken SCR-ratio te halen.
Overigens zijn Lindberg c.s. ook dubbel in hun stellingname. Want terwijl zij enerzijds – zonder onderbouwing – stellen dat er voldoende onderpand was, verwijten zij Conservatrix anderzijds dat het wegvallen van de herverzekering en van het onderpand op het conto van Conservatrix zelf komt; zie hun conclusie van repliek 4.7.2, waarover hieronder nader.

4.6.1 Ad 4.2.d – Essentiele verweren ten aanzien van de interpretatie van de overeenkomsten niet behandeld.

4.6.2 Ook voor dit verwijt van Lindberg c.s. geldt dat een behoorlijke toelichting en onderbouwing ontbreekt. In hun conclusie van repliek stellen zij (4.6.1 e.v.) dat de Recapitalization Commitment 'valt of staat op grond van het begrip "viable business case" zoals dat door […] Conservatrix moet worden uitgevoerd en met DNB overeengekomen.' Volgens de Recapitalization Commitment (artikel 1.2 sub b) geldt het vereiste van een 'viable business case' echter voor verdere kapitalisatie zodra Conservatrix 'is stabilized'. In het arbitraal vonnis is het door Lindberg c.s. aangevoerde argument dat Conservatrix was 'stabilized' genoemd (in 6.38 sub b), besproken en verworpen (6.44 en 6.45). Daarom konden Lindberg c.s. zich – om aan hun verplichting inzake de afgesproken SCR-ratio te ontkomen – volgens het arbitraal vonnis niet met succes beroepen op het ontbreken van een 'viable business case'. Van een voorbijgaan aan een al dan niet essentieel verweer is hier geen sprake.

4.7.1 Ad 4.2.e – Essentiële verweren ten aanzien van de eigen verantwoordelijkheid van Conservatrix onbehandeld gelaten.

R. Datauker Kroese sworn translator Wbtv-nr. 3133 beëdigd vertaler

4.7.2 Naar aanleiding van dit verwijt/deze stelling van Lindberg c.s. heeft Conservatrix erop gewezen (c.v.a. onder 5.3.4) dat het arbitraal vonnis onder meer inhoudt (6.48): '[…] Respondents have failed to sufficiently substantiate where Conservatrix caused the situation on itself. Moreover, Respondents overlook that Conservatrix, not having been qualified to have been stabilized, is still in a situation that DNB had imposed certain limitations in respect of its business operations.' Gelet op dit citaat is onjuist de stelling van Lindberg c.s. (dagvaarding, punt 7.39) dat het 'Scheidsgerecht […] geen woord [heeft] besteed aan de eigen verantwoordelijkheid van Conservatrix,'
Het scheidsgerecht heeft daarnaast verworpen (6.36) 'the submission of Respondents that the write-down of the value of the reinsurance contract has no influence on the Solvency Capital Requirement and thus also not on the SCR.' Het was dan ook terecht, zo ligt in het toewijzende arbitrale vonnis besloten, dat Conservatrix actie heeft ondernomen naar aanleiding van deze waardedaling (en de negatieve impact op haar SCR-ratio). Voor zover Lindberg c.s. haar hiervan niettemin bedoeld heeft een verwijt te maken, is dat verwijt ongegrond. Daarin is dus geen grond gelegen voor het oordeel dat het scheidsgerecht in de motivering had moeten betrekken dat de negatieve gevolgen voor haar SCR-ratio (toch ook) aan Conservatrix zelf zijn te wijten.

4.8 De balans opmakend moet worden geconstateerd dat (ook) alle stellingen die Lindberg c.s. hebben geponeerd met betrekking tot de in hun ogen onjuist, want te laag, vastgestelde SCR-ratio wegens feitelijke onjuistheid of een gebrek aan onderbouwing moeten worden verworpen. Hetzelfde geldt voor hun stellingen die op die of andere gronden opkomen tegen hun veroordeling tot versterking van de kapitaalpositie van Conservatrix. Zij kunnen niet leiden tot een geslaagd beroep op een vernietigingsgrond.

*Slotsom*

5. De slotsom is dat de vordering van Lindberg c.s. tot vernietiging van het tussen partijen gewezen arbitrale vonnis dient te worden afgewezen. Aan bewijsvoering wordt

R. Dataukar Kroese beëdigd vertaler sworn translator Wbtv-nr. 3133

niet toegekomen; de stellingen van Lindberg c.s. zijn gemotiveerd betwist en tegenover die betwisting niet voorzien van een behoorlijke onderbouwing.
Lindberg c.s. moeten als de in het ongelijk gestelde partij de proceskosten dragen.

**De beslissing**

Het hof:

- wijst de vordering af;
- veroordeelt Lindberg c.s. hoofdelijk in de kosten van het geding – inclusief de gebruikelijke nakosten (zowel zonder als met betekening) – te vermeerderen met de wettelijke rente vanaf veertien dagen na de datum van dit arrest, welke kosten tot aan deze uitspraak aan de zijde van de curatoren van het failliete Conservatrix worden bepaald op € 760,- aan verschotten en op € 4.320,- aan salaris voor de advocaat;
- verklaart deze uitspraak ten aanzien van de kostenveroordeling uitvoerbaar bij voorraad.

Aldus gewezen door mrs. J.M. van der Klooster, P. Volker en J. van der Kluit en uitgesproken ter openbare terechtzitting van 29 maart 2022 in aanwezigheid van de griffier.

Voor grosse aan:
Uitgegeven aan mr. D. Haneman
Advocaat van app./geint.
De Griffier van het Gerechtshof
te Den Haag

R. Dataulor Kroese sworn translator Wbtv-nr. 3133 Beëdigd vertaler