**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| WILLEM JAN M. VAN ANDEL, LLM and ELEONORA L. ZETTELER, LLM, in their capacity as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.;<br><br>Petitioners,<br><br>v.<br><br>GREG EVAN LINDBERG; TRIER HOLDING B.V.; NETHERLANDS INSURANCE HOLDINGS, INC.; and NIH CAPITAL, LLC;<br><br>Respondents. | Civil Action No. 1:23-CV-879 |

**<u>PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENTS NETHERLANDS INSURANCE HOLDINGS, INC. AND NIH CAPITAL, LLC'S MOTION TO DISMISS AMENDED PETITION TO CONFIRM ARBITRATION AWARD</u>**

> Arbitration can be an effective way to resolve a dispute in less time, at less expense, and with less rancor than litigating in the courts. Arbitration loses some of its luster, though, when one party refuses to abide by the outcome and the courts are called in after all for enforcement. This is one of those situations.

*Publicis Commc'n v. True N. Commc'ns, Inc.*, 206 F.3d 725, 727 (7th Cir. 2000).

## STATEMENT OF FACTS

### I. The Award Was Fully Litigated in the Netherlands, Over a Four-Year Period, and It Has Twice Been Upheld by the Dutch Appellate Courts.

On January 31, 2020, the Dutch arbitral tribunal issued its award ("Award"), ordering the Respondents to specifically perform their obligations and replenish the shortfall in the solvency capital ratio of Nederlandsche Algemeene Maatschappij van Levensverzekering "Conservatrix" N.V. ("Conservatrix") to 135% within 60 days. ECF No. 24-2, ¶ 9.1. The Award provides that Trier Holding B.V.'s ("Trier") shareholders, Greg Lindberg ("Lindberg"), Netherlands Insurance Holdings, Inc. ("NIH"), and NIH Capital, LLC ("NIH Capital"), are required to pay a penalty of €150 million if Trier does not timely replenish the shortfall. *Id.* The tribunal issued the Award on an expedited basis in a summary proceeding because of the risk of undercapitalization. *See id.* ¶¶ 6.24–6.27.

On February 17, 2020, the Court of Rotterdam granted "leave for the enforcement of the attached arbitration award." ECF No. 24-4.

Instead of complying with the Award and the court order enforcing the Award, Trier, Lindberg, NIH, and NIH Capital (collectively, "Respondents") appealed to the Court of Appeal of the Hague, on April 23, 2020, to set aside the Award. ECF No. 24-6, at 3. On December 8, 2020, Conservatrix was forced into liquidation because Respondents failed to comply with the Award to replenish the capital shortfall. *See id.* Petitioners in this case are Conservatrix's successors in interest and are acting in their capacity as Conservatrix's insolvency practitioners. *See* ECF No. 24-1, ¶ 3.

On March 29, 2022, the Court of Appeal of the Hague ruled in favor of Conservatrix and denied Trier's attempts to set aside the Award. *Id.* at 21.

Still refusing to comply, Respondents appealed to the Supreme Court of the Netherlands on June 24, 2022. *See* ECF No. 23-1, ¶ 17. On September 1, 2023, the Supreme Court of the Netherlands also rejected Respondents' efforts to set aside the Award. *Id.* ¶ 27.

Nearly four years after the Award that should have replenished Conservatrix's capital reserves and saved the company, and following the exhaustion of all appeals, Petitioners filed this proceeding to confirm the Award in the United States and to finally recover for Conservatrix's policyholders the money Respondents have refused to pay. *See* ECF No. 1.

After years litigating before the arbitral tribunal, the Court of Rotterdam, the Court of Appeal of the Hague, and the Supreme Court of the Netherlands, Respondents now argue that the Award should not be enforced – principally claiming that the Award is not "binding." None of Respondents' arguments justify setting aside years of litigation. The Award should be enforced under the Federal Arbitration Act ("FAA") or North Carolina law.

## I. The Petition and the Arbitration Award.

In 2017, Conservatrix was experiencing financial difficulties, and its supervisor, De Nederlandsche Bank N.V. ("DNB"), intervened by forcing a transfer of Conservatrix's shares to Trier. ECF No. 24.2, ¶ 3.2. To this effect, DNB and Trier executed a contract, by

which Trier became the shareholder of Conservatrix. *See generally* ECF No. 23-4; ECF No. 24.3, ¶ 3.4. Among other commitments, this contract required Trier to make a capital contribution that created a solvency ratio of at least 135% in Conservatrix and to commit to maintaining the ratio. ECF No. 24-2, ¶¶ 3.4, 3.5; ECF No. 24-3, at 4, 18. Trier further agreed that disputes concerning the obligation to maintain the capital ratio would be subject to arbitration in the Netherlands pursuant to the rules of the Netherlands Arbitration Institute. ECF No. 24-3, at 18.

On March 18, 2019, Lindberg was indicted for allegedly bribing the insurance commissioner of North Carolina. ECF No. 24.2, ¶ 3.13. Lindberg is the primary shareholder of all Respondent entities. *Id.* ¶ 3.3. After Lindberg's indictment, Trier failed to comply with its commitment to maintain the 135% solvency ratio, which led to the arbitration. *Id.* Conservatrix brought the arbitration against Trier, Lindberg, Netherlands Insurance Holdings, Inc., and NIH Capital, LLC. *Id.* ¶ 2.1.

After taking evidence and submissions from Trier, Lindberg, NIH, and NIH Capital, *id.* ¶¶ 2.5, 2.11–2.17, the arbitral tribunal issued the Award – supported by a reasoned, 32-page opinion. *See* ECF No. 24-2. In the Award, the arbitral tribunal ordered Trier to replenish the shortfall in the solvency capital ratio of Conservatrix and ordered NIH, NIH Capital, and Lindberg to procure that Trier did the same. *Id.* ¶ 9.1. It further ordered that if the shortfall was not replenished within 60 days of the Award, NIH, NIH Capital, and Lindberg would be subject to a €150-million penalty. *Id.*

## II. Relevant Information Concerning Dutch Summary Proceedings and Provisional Remedies.

Conservatrix brought the arbitration pursuant to Netherlands Arbitration Institute summary proceedings, seeking specific performance of the requirement to fund the capital shortfall, as a provisional remedy. *See id.* ¶¶ 2.1, 4.1. As the arbitration tribunal found,

> Conservatrix has demonstrated its urgent interest in the claim. Conservatrix has demonstrated that for the continuity of its business activities, an immediate decision is needed. DNB as Conservatrix' supervisor has in no uncertain terms notified Conservatrix and its shareholders of the shortfall . . . . [T]here is a real threat for Conservatrix that DNB will intervene and will revoke Conservatrix' license and request its bankruptcy.

*Id.* ¶ 6.25.

Even though the arbitral tribunal attempted to resolve the matter fast enough to save Conservatrix, Respondents' numerous appeals and refusals to comply ultimately led to Conservatrix's liquidation. *See* ECF No. 24-6, 3.

Dutch summary proceedings are designed to handle situations that are urgent and require immediate attention. *See* Netherlands Arbitration Institute, *Arbitration Rules*, Art. 36 (2015), https://nai.nl/wp-content/uploads/2023/09/20230828-NAI-Arbitration-Rules-and-Explanation-1.pdf [hereinafter 2015 NAI Rules]. In these summary proceedings, the tribunal may issue provisional relief. 2015 NAI Rules, Art. 35. Provisional relief may "take the form of an arbitral award." *Id.*

Under the Netherlands Arbitration Institute Rules, any arbitral award, including an award for provisional relief in a summary proceeding or any other arbitration under the NAI "shall be binding upon the parties with effect from the day on which it is made. *Id.* at Art. 46. By agreeing [to] arbitration before or by the NAI or according to the Rules of the NAI, the parties shall be deemed to have accepted the obligation to comply with the award as soon as possible." *Id.* Because the awards are binding when issued (whether as part of a provisional remedy or a decision on the merits), "a decision in summary arbitral proceedings [may] be enforced outside of the Netherlands in accordance with the provisions of the 1958 New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards." Netherlands Arbitration Institute, *Arbitration Rules*, Introduction § 9.3 (2010), https://nai.nl/wp-content/uploads/2023/09/NAI-Arbitration-Rules-1-January-2010.pdf [hereinafter 2010 NAI Rules].[1]

The Netherlands Arbitration Act similarly emphasizes that awards granted as provisional relief in summary arbitral proceedings are binding. It states that "a decision by the arbitral tribunal on the request to grant an interim measure constitutes an arbitral award to which the provisions of Title 1, Sections 3 to 5 inclusive are applicable." Exhibit A, Alex Burrough et al., *Code of Civil Procedure: Selected Sections and NCC Rules, A Bilingual Collection* §§ 3–5 (2d ed. 2022) [hereinafter Netherlands Code of Civil Procedure].

[1] The 2015 rules applied at the time of the arbitral proceedings at issue, but the 2015 Rules do not contain introductory commentary, as the 2010 Rules do. The provisions relating to awards rendered in summary arbitral proceedings do not significantly differ between the two sets of rules. *Compare* 2015 NAI Rules, §§ 4A, 5, *with* 2010 NAI Rules, §§ 4A, 5.

Sections Three to Five, Article 1043b, Subsection 4, which also apply to arbitral awards in merits proceedings, concern "The arbitral award," "Enforcement of the arbitral award," and "Setting aside and revocation of the arbitral award." *Id.* Thus, the Code treats all arbitral awards the same for enforcement purposes, demonstrating that under Dutch law, summary arbitral awards – regardless of whether they are on the merits – are binding and enforceable. *See id.* Further emphasizing the point that provisional awards are binding when entered, provisional relief is available in summary proceedings "regardless of whether arbitral proceedings on the merits are pending." 2015 NAI Rules, Art. 35(2).

**III. The Main Arbitration Proceeding.**

Conservatrix applied for a main arbitral proceeding before entry of the Award, but no arbitral tribunal was appointed as of the date of the Award. ECF No. 24-2, ¶ 1.3. Respondents can proceed in the main proceeding, and seek repayment of amounts paid pursuant to the Award, and if Respondents do so, "[t]he decision on the provisional relief shall not in any way prejudice the arbitral tribunal's ultimate ruling in the arbitral proceedings on the merits." *See* 2015 NAI Rules, Art. 35(5). But even after the years of appeals trying to set aside the Award, there has been no action in the main proceeding.

## ARGUMENT

**I. Respondents Cannot Move to Dismiss the Petition Under Rule 12(b)(6).**

Because there is strong public policy favoring confirmation of foreign arbitral awards, *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n.15 (1974), "judicial review of an arbitration award has been characterized as 'among the narrowest known to the law.'"

*Westvaco Corp. v. United Paperworkers Int'l Union ex rel. Local Union 676*, 171 F.3d 971, 974 (4th Cir. 1999) (quoting *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978)).

The FAA provides that a petition to confirm an arbitral award should be a summary proceeding that is treated as a motion. *See* 9 U.S.C. § 13.[2] It makes sense then that "a petition to enforce an arbitral award under the New York Convention is adjudicated in a summary proceeding in which the standards governing Rule 12(b)(6) motions are simply not applicable." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 72 (2d Cir. 2022) (citing cases). For similar reasons, Rule 12(b)(6) is not applicable to recognition and confirmation proceedings under North Carolina law either. *See Jenner v. Ecoplus, Inc.*, 737 S.E.2d 121, 124 (N.C. Ct. App. 2012) (the North Carolina Recognition Act "is a statute of inclusion with a strong presumption that foreign-country judgments will be recognized").

## II. Respondents Have Not Met Their Burden to Show that the Award is Not Subject to Recognition Under the FAA.

If the Court reaches the merits of the Motion to Dismiss, a party challenging recognition of a foreign arbitration bears the burden of showing that the award is not capable of recognition and enforcement. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention"), 21 U.S.T. 2517, art. V. Under Article V of the New York Convention, refusal or deferral of

[2] Although 9 U.S.C. § 207 is housed in Chapter 2 of the FAA, "Chapter 1 applies to actions and proceedings brought under [Chapter 2] to the extent that [Chapter 1] is not in conflict with [Chapter 2] or the Convention as ratified by the United States." 9 U.S.C. § 208.

recognition is only appropriate where a party is incapacitated, the arbitration is invalid by law, there was improper notice of the arbitration, the decision or terms of the arbitration were beyond the scope contemplated by the agreement, the composition of the arbitral authority was contrary to the arbitration agreement or law, the award was not binding or was set aside, the subject matter was not capable of settlement in the country at issue, or recognition would be contrary to public policy. *See id.*

Respondents move on the basis that the Award is supposedly not binding and that the statute of limitations for enforcement ran during the lengthy delays caused by Respondents' appeals. Neither argument is persuasive, and the Motion to Dismiss should be denied.

**A. The Award is Binding and Enforceable Under the FAA.**

Respondents' primary argument is that the Award is not binding or enforceable under the FAA because it was issued as a provisional remedy in a summary proceeding, as opposed to an award on the merits in a main proceeding. *See* ECF No. 28, at 6–8. According to Respondents, it cannot be binding for purposes of the FAA because the parties never requested or consented to the entry of the Award as a decision on the merits in the summary proceeding. *See id.* at 7. The law is to the contrary. Provisional awards in summary proceedings are just as binding, enforceable, and confirmable as any other award.

The Seventh Circuit addressed and rejected Respondents' position in *Publicis Communication v. True North Communications, Inc.*, 206 F.3d 725 (7th Cir. 2000). In *Publicis*, the petitioner sought an interim arbitration award from the respondent requiring

the respondent to turn over various tax records. *Id.* at 728. The court cited several cases where the court had found "an interim order of security" and "interim final order providing temporary equitable relief necessary to make potential final award meaningful" were sufficiently binding for review. *Id*. at 729 (citing and quoting *Yasuda Fire & Marine Ins. Co. of Eur. v. Cont'l Cas. Co.*, 37 F.3d 345, 347–48 (7th Cir. 1994), *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022–23 (9th Cir. 1991); *Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984); *Sperry Int'l Trade v. Israel*, 689 F.2d 301, 304 n.3 (2d Cir. 1982)). Following those cases, the Seventh Circuit correctly held as follows:

> In the situation at hand, whether or not Publicis had to turn over the tax records is the whole ball of wax. The tribunal's order resolved the dispute, or was supposed to, at any rate. Producing the documents wasn't just some procedural matter—it was the very issue True North wanted arbitrated . . . . Requiring the unrelated issues to be arbitrated to finality before allowing True North to enforce a decision the tribunal called urgent would defeat the purpose of the tribunal's order.

*Id*. The Seventh Circuit continued:

> If the tribunal's decision wasn't final, if the tribunal didn't really intend to finalize it until eons later, if True North had to wait to enforce this urgent matter until all the other issues were arbitrated to finality, then the October 30 decision was a meaningless waste of time. Despite some possible superficial technical flaws, and despite its designation as an "order" instead of an "award," the arbitration tribunal's decision—as to this chunk of the case—was final. And this is our final judgment.

*Id*. at 730–31.

While there is no direct Fourth Circuit law affirming a provisional award in a foreign proceeding, like in *Publicis*, Fourth Circuit law is in complete accord with the Seventh Circuit's well-reasoned opinion:

> Temporary equitable relief in arbitration may be essential to preserve assets or enforce performance which, if not preserved or enforced, may render a final award meaningless. However, if temporary equitable relief is to have any meaning, the relief must be enforceable at the time it is granted, not after an arbitrator's final decision on the merits. Arbitrators have no power to enforce their decisions. Only courts have that power.
>
> Consequently, courts in other circuits that have been faced with arbitrators' temporary equitable awards have not characterized them as non-final awards on the merits which can only be reviewed in extreme cases. Rather, they have characterized them as confirmable, final awards on an issue distinct from the controversy on the merits.

*Arrowhead Glob. Sols., Inc. v. Datapath, Inc.*, 166 F. App'x 39, 44 (4th Cir. 2006).

Here, the Award requiring (i) Trier to replenish the capital reserves of Conservatrix and (ii) the other Respondents to procure that Trier does so, subject to a penalty, is plainly binding. The NAI Rules say that the Award is binding. 2015 NAI Rules, Art. 46. The Dutch Arbitration Act says that the provisional awards are binding. *See* Netherlands Code of Civil Procedure, §§ 3–5. The tribunal said that the relief was urgent. ECF No. 24-2, ¶ 6.25. The Court of Rotterdam enforced the award. *See* ECF No. 24-4; *cf.* ECF No. 24-4, ¶ 1.8 (noting that provisional enforcement was unnecessary because "[a]gainst a final or partial final arbitral award, only the remedies of setting aside and revocation are available in the civil courts"). And, after years of further litigation, both Dutch appellate courts refused to set aside the Award. *See* ECF No. 24-6, at 21; ECF No. 24-8; *see also* ECF No. 24-1, ¶ 17.

Parroting *Publicis*, "if [Petitioners] had to wait to enforce this urgent matter until all the other issues were arbitrated to finality, then [the last four years of litigation and appeals] was a meaningless waste of time." *Publicis*, 206 F.3d at 730–31.

Regardless of what Respondents may or may not do in the future in the main proceeding, the Dutch courts refused to set aside the Award, and Respondents should pay everything **<u>that they have delayed paying through nearly four years of appeals</u>**. The binding provisional Award to replenish the solvency reserve is a "final award[] on an issue distinct from the controversy on the merits." *Arrowhead*, 166 F. App'x at 44. The Motion to Dismiss should be denied.

**B. No Time Bar Applies to Block Confirmation of the Award.**

Respondents erroneously contend that the Petition is time-barred under 9 U.S.C. § 207. *See* ECF No. 28, at 8–11. However, Respondents cite Second Circuit law and ignore the applicable law of the Fourth Circuit. *See id.* "Under Chapter 1 of the Federal Arbitration Act ("FAA"), within one year after an award is made pursuant to an arbitration, a party to the arbitration may apply to a court for confirmation of the award." *First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, No. 1:23-mc-1, 2023 WL 6221771, at *4 (E.D. Va. Sept. 22, 2023) (citing 9 U.S.C. § 9). "Under Chapter 2 of the FAA, "[w]ithin three years after an arbitral award . . . is made, any party . . . may apply to any court . . . for an order confirming the award." 9 U.S.C. § 207. For over 30 years, the law in the Fourth Circuit has been that the one-year limitations period in Chapter 1 is "a permissive provision which does not bar the confirmation of an award beyond a one-year

period." *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 151, 156 (4th Cir. 1993) ("An examination of the FAA's language gives rise to the inference that Congress understood the plain meaning of 'may' to be permissive."). The three-year limitations period in Chapter 2 is similarly permissive. *See First Kuwaiti Gen. Trading & Contracting W.L.L.*, 2023 WL 6221771, at *4 (comparing 9 U.S.C. § 9 with 9 U.S.C. § 207 in holding that the time limitation in Chapter 2 is permissive). Accordingly, the time limitation in 9 U.S.C. § 207 is permissive and does not bar the Petition.

## III. The Judgment from the Court of Rotterdam is Enforceable Under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act or the Principles of Comity.

Respondents argue that because the Dutch "rulings" did not "explicitly adopt the monetary award granted in the summary arbitral proceedings," they are not judgments within the meaning of the North Carolina Uniform Foreign-County Money Judgments Recognition Act ("North Carolina Recognition Act"), but Respondents cite nothing to support this. *See* ECF No. 28, at 13. To the extent that Respondents argue that the Court of Rotterdam's judgment does not require payment, the order from the Court of Rotterdam "grants leave for the enforcement" of the Award, and the Award orders NIH, NIH Capital, and Lindberg to pay Conservatrix sum of money – €150 million – if the shortfall is not replenished within 60 days of the Award. ECF No. 24.2, ¶ 9.1. This "(essentially) relate[s] to the payment of an amount of money." *See id.*

Alternatively, when viewed through the lens of equitable relief, the judgment is enforceable under principles of comity.[3] "'Comity' . . . . is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens." *Southern v. Southern*, 258 S.E.2d 422, 424 (N.C. Ct. App. 1979). It allows courts to enforce foreign orders so long as the foreign court had jurisdiction over the matter and parties. *State ex rel. Anson v. Peele*, 523 S.E.2d 125, 129 (N.C. Ct. App. 1999) (citing *Southern*, 258 S.E.2d at 424). Under these principles, North Carolina courts have often enforced judgments from foreign countries. *See, e.g.*, *State ex rel. Anson*, 523 S.E.2d at 129 (affirming the trial court's enforcement of a German judgment of paternity and order for child support under comity principles).

Other courts have extended comity to judgments and orders for interim equitable relief. For example, a Florida court held that the trial court properly enforced a Guatemalan judgment that enjoined the respondent from removing money from his bank accounts, pending the outcome of a domestic-relations dispute. *Cardenas v. Solis*, 570 So. 2d 996, 999 (Fla. Dist. Ct. App. 1990). In doing so, it relied on principles of comity and cited that public policy dictates that "debtors abroad ought not to be able to walk away from their foreign court-imposed obligations by spiriting away their money or assets to the United States." *Id.* While *Cardenas v. Solis* left some uncertainty about how far comity should

[3] The North Carolina Recognition Act specifically provides that the Act "does not prevent the recognition under principles of comity or otherwise of a foreign-country judgment to which this Article does not apply." N.C. Gen. Stat. § 1C-1852(d).

extend, the court later clarified, in an action concerning a Dutch ruling, that comity applies to "any" foreign decree, so long as the parties had notice and an opportunity to be heard, the foreign court had original jurisdiction, and the foreign decree does not offend Florida public policy. *Nahar v. Nahar*, 656 So. 2d 225, 229 (Fla. Dist. Ct. App. 1995); *accord Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1213–15 (9th Cir. 2006) (noting that foreign-country injunctions will be enforced so long as they are not repugnant to public policy).[4]

Here, there are no concerns that granting comity would violate public policy. In fact, enforcing the judgment furthers public policy by not allowing Respondents to escape the obligations that they agreed to in 2017, and have been evading since 2019. *See* ECF No. 24-2, ¶¶ 3.15–3.28.

Thus, as an alternative to enforcing the arbitral Award under the FAA, the judgment can be enforced under the North Carolina Recognition Act or under principles of comity.

[4] In *Pilkington Brothers P.L.C. v. AFR Industries Inc.*, 581 F. Supp. 1039 (D. Del. 1984), a court declined to enjoin the defendant from disclosing protected information, when an identical *ex parte* injunction had been issued in England but, in doing so, acknowledged that under different circumstances, an interim injunction may be recognized. *Id.* at 1045–46. *Pilkington Brothers* is distinguishable because the defendant had not violated the English injunction in the four months between issuance and oral argument in the United States, and the respondent stated that it had no intention of violating the injunction. *See id.* at 1042 n.4. Additionally, arbitration between the parties was still ongoing. *See id.* In contrast, Respondents have been in violation of the Court of Rotterdam's judgment for more than four years, and their obligation to replenish the capital for almost five years. *See* ECF No. 24-2, ¶¶ 3.15–3.28; ECF No. 24-4. Additionally, arbitration is not ongoing and Respondents have exhausted all appeals.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully request that the Court deny Respondents' Motion to Dismiss.

Respectfully submitted, this the 15th day of March, 2024.

*/s/* Jeffrey E. Oleynik
Jeffrey E. Oleynik (NC Bar No. 14416)
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
2000 Renaissance Plaza
230 N. Elm Street
Greensboro, NC 27401
Tel: (336) 271-3182
Fax: (336) 232-9182
joleynik@brookspierce.com

Kate E. Giduz (NC Bar No. 60887)
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, NC 27601
Tel: (919) 882-2546
Fax: (336) 232-9046
kgiduz@brookspierce.com

Sergio F. Oehninger (*pro hac vice*)
Colin S. Harris (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP

1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 739-3000
Fax: (213) 739-3001
sergio.oehninger@morganlewis.com
colin.harris@morganlewis.com

Andrew J. Enschedé (*pro hac vice*)
POTOMAC LAW GROUP PLLC
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, DC 20006
Tel: (202) 558-5557
Fax: (202 318-7707
aenschede@potomaclaw.com

*Counsel for Petitioners*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing document complies with the word count limits established in Local Civil Rule 7.3(d)(1). Specifically, the document contains 4325 words, as counted in compliance with Local Civil Rule 7.3(d)(1).

/s/ Jeffrey E. Oleynik
Jeffrey E. Oleynik
*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon counsel of record through the Court's Case Management and Electronic Case Filing System.

This the 15th day of March, 2024.

*/s/* Kate E. Giduz
Kate Elizabeth Giduz
*Counsel for Petitioners*