IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

<table>
<tr><td>WILLEM JAN M. VAN ANDEL,<br>LLM and ELEONORA L.<br>ZETTELER, LLM, in their capacity<br>as insolvency practitioners in the<br>insolvency of Nederlandsche<br>Algemeene Maatschappij van<br>Levensverzkering<br>“CONSERVATRIX” N.V.;<br><br>Petitioners,<br>v.<br><br>GREG EVAN LINDBERG; TRIER<br>HOLDING B.V.; NETHERLANDS<br>INSURANCE HOLDINGS, INC.;<br>and NIH CAPITAL, LLC;<br><br>Respondents.</td><td>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§</td><td>Civil Action No. 1:23-CV-00879-JEP</td></tr>
</table>

---

**RESPONDENTS NETHERLANDS INSURANCE HOLDINGS, INC. AND NIH CAPITAL, LLC’S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED PETITION TO CONFIRM ARBITRATION AWARD**

---

Respondents Netherlands Insurance Holdings, Inc. ("Netherland Insurance") and NIH Capital, LLC ("NIH") (collectively "NIH Respondents") submit this reply in support of their Motion to Dismiss Amended Petition to Confirm Arbitration Award filed by Willem Jan M. Van Andel, LLM and Eleonora L. Zetteler, LLM, in their capacity as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij van Levensverzkering "Conservatrix" N.V. ("Conservatrix") (collectively, "Petitioners"). The NIH Respondents reply to the arguments set forth in Petitioners' Opposition to NIH Respondents' Motion to Dismiss, as follows.

### A. This Court has Previously Recognized Rule 12(b)(6) Motions to Dismiss in the Context of Petitions to Confirm an Arbitration Award.

Petitioners first contend Rule 12(b)(6) motion to dismiss standards are inapplicable to Petitions to Confirm an Arbitration Award. *See* (Doc. 33), p. 8. In support of this proposition, Petitioners rely exclusively on Second Circuit authority. Petitioners then attempt to apply the Second Circuit's holding that motion to dismiss standards are not applicable to recognition and confirmation proceedings under the FAA to a claim under North Carolina state law. *Id*.

First, looking to cases in this circuit, this Court has previously considered and decided motions to dismiss in the context of Petitions to Confirm Arbitration Awards. *See e.g.*, *Stafford v. Discover Bank*, 350 F. Supp. 2d 695, 699 (M.D.N.C. 2004)(granting Defendant's Motion to Dismiss Plaintiff's complaint seeking to confirm an arbitration award pursuant to the Federal Arbitration Act.).

Moreover, there does not appear to be any Fourth Circuit or North Carolina state

law (nor do Petitioners point to any such law) that supports Petitioners' assertion that a motion to dismiss is unavailable to a Respondent contesting a claim under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act ("North Carolina Recognition Act"). In fact, the Second Circuit's rationale behind its holding that Rule 12(b)(6) standards are inapplicable to petitions to confirm arbitration awards under the FAA (which NIH Respondents deny) is not logically applicable to Petitioners' North Carolina Recognition Act claim. Namely, the Second Circuit argues that because applications under Chapter 1 of the FAA shall be "made and heard in the manner provided by law for the making and hearing of motions," Rule 12(b)'s pleading requirements cannot be applicable as such requirements only pertain to pleadings. *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 112 (2d Cir. 2012). Under the North Carolina Recognition Act, however, "if recognition or nonrecognition of a foreign-country judgment is sought in some other action, the issue of recognition may be raised by complaint, counterclaim, cross-claim, or affirmative defense." N.C.G.S. § 1C-1855. Because Petitioners' North Carolina Recognition Act claim "is sought in some other action" (i.e., not as an original matter) in this present case, such claim can only be raised "by complaint, counterclaim, cross-claim, or affirmative defense," and thus, Rule 12(b)(6)'s pleading requirements apply. *See id*.

As a result, Petitioners attempt to have it both ways. On one hand, Petitioners argue their Amended Petition is not a "pleading" and thus, under Second Circuit law, is not subject to a motion to dismiss. *See* (Doc. 33), p. 8. On the other hand, Petitioners amended their Original Petition to include an additional state law claim that, in this case, must be

raised "by complaint, counterclaim, cross-claim, or affirmative defense" (i.e., a pleading). *See* N.C.G.S. § 1C-1855. The Amended Petition cannot be a "pleading" for one claim and a motion for the other. Due to this inconsistency, coupled with this Court's previous consideration of motions to dismiss for claims under the FAA, NIH Respondents' Motion to Dismiss is proper.

In the alternative, should this Court decide NIH Respondents' Motion to Dismiss is misplaced in this context, such Motion to Dismiss should appropriately be construed as a merits opposition to the Amended Petition rather than a Rule 12(b)(6) Motion. *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 72 (2d Cir. 2022) ("Regardless of how [Respondent] styled its submission responding to [Petitioner]'s petition for enforcement, it is appropriately construed as a merits opposition to the petition rather than a Rule 12(b)(6) motion.").

**B. The Summary Arbitral Award is Not a Final, Binding Award Capable of Enforcement under the FAA.**

Petitioners next argue that even though the arbitration award is a provisional remedy in a summary proceeding, it is enforceable because other circuits, notably not the Fourth Circuit, have affirmed interim arbitration awards in other contexts. *See* (Doc. 33), p. 10.

Despite the deferential standard of review accorded to arbitration awards, it is error for a district court to affirm an arbitration award that is not "final." *Norfolk S. Ry. Co. v. Sprint Communications Co. L.P.*, 883 F.3d 417, 422 (4th Cir. 2018). "An award is not 'final' under the FAA if it fails to resolve an issue presented by the parties to the arbitrators." *Id*. (citing *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d

174, 177 (2d. Cir. 1998) (concluding an arbitration award is "final" if it "resolve[s] all issues submitted to arbitration") (alteration in original) (citation omitted)); *cf. Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1069 (8th Cir. 2003) (suggesting an award is not "final" if conditioned on the outcome of future court proceedings); *Remmey v. PaineWebber, Inc*., 32 F.3d 143, 150 (4th Cir. 1994) (award stating that all claims made by claimant "shall be and are hereby dismissed in all respects" was "final" and "definite" under the FAA).

As outlined in more detail in NIH Respondents' brief in support of their Motion, the award at issue is an award for provisional relief pursuant to summary arbitral proceedings under Articles 35 and 36 of the 2015 Netherlands Arbitration Institute ("NAI") Arbitration Rules. *See* (Doc. 28), pp. 6-7. To reiterate, "[t]he decision on the provisional relief shall not in any way prejudice the arbitral tribunal's ultimate ruling in the arbitral proceedings on the merits." 2015 NAI Arbitration Rules, Article 35, ¶ 5. In fact, the only way a summary arbitral tribunal may make a decision on the merits is "at the unanimous request of the parties." *Id*., ¶ 6. This did not occur.

Because an arbitration award is only final if it "resolve[s] all issues submitted to arbitration," and by rule, the summary arbitral tribunal cannot make or otherwise prejudice an ultimate ruling on the merits, the arbitration award at issue in this case cannot be a final award capable of enforcement in the Fourth Circuit.

Moreover, only "an 'interim' award that finally and definitively disposes of a separate independent claim may be confirmed notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration." *Arrowhead Glob.*

*Sols., Inc. v. Datapath, Inc.*, 166 Fed. Appx. 39, 44 (4th Cir. 2006). Thus, the ultimate question becomes "whether [the] Award was '[a] ruling on a discrete, time sensitive issue." *Id*.

Here, the provisional award is not a ruling on a discrete issue separate from the issues subject to the main arbitration proceeding, but rather, an improper ruling on the merits of all issues before the arbitral tribunal. *See* (Doc. 24-2), ¶ 9.1. The primary dispute forming the basis of the arbitration proceedings arises from Petitioners' allegation that Respondents failed to maintain Conservatrix's minimum solvency capital requirement ratio ("Minimum SCR Ratio") at 135% as mandated in a Recapitalization Commitment between Respondents and De Nederlandsche Bank N.V. ("DNB"), dated March 17, 2019. *See* (Doc. 24-2), ¶¶ 3.14-3.26). In its award for provisional relief that "shall not in any way prejudice the arbitral tribunal's ultimate ruling in the arbitral proceedings on the merits," the summary arbitral panel concluded Respondents failed to maintain a Minimum SCR Ratio, rejected Respondents' defenses, and ordered the shortfall replenished, potential monetary penalties, and costs against Respondents.[1] *See* (Doc. 24-2), ¶ 9.1. This is not an interim award on a "discrete, time sensitive issue" that is capable of enforcement. *See Arrowhead Glob. Sols., Inc.*, 166 Fed. Appx. at 44. Rather, it is an improper "provisional" award on the merits of all claims at issue and thus, cannot be enforced under the FAA without a final, binding arbitration award. *See Arrowhead Glob. Sols., Inc. v. Datapath,*

---

[1] Interestingly, in July of 2022, after the summary arbitral award, it was publicly announced that Conservatrix had sold its entire book of business to Chesnara PLC. Therefore, it appears that Conservatrix no longer has any policyholder liabilities that would require capital to support, and this minimum solvency capital ratio is moot at this point in time.

*Inc*., 166 Fed. Appx. at 44 (only "an 'interim' award that finally and definitively disposes of a separate independent claim may be confirmed notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration."); Convention Done at New York June 10, 1958;, T.I.A.S. No. 6997 (U.S. Treaty Dec. 29, 1970) ("Recognition and enforcement may be refused. . . [if] [t]he award has not yet become binding on the parties."). Thus, this Court should grant NIH Respondents' Motion to Dismiss.

### C. The Arbitration Award is Time-Barred under the Three-Year Statute of Limitations Period of the FAA.

Petitioners next contend that the three-year statute of limitations under 9 U.S.C. § 207 is not mandatory but is "permissive" and, as such, it does not bar their untimely Petition. *See* (Doc. 33), pp. 12-13.

In making this argument, Petitioners cite to Fourth Circuit case law interpreting the limitations period under Chapter 1 of the FAA, which provides a one-year limitation to confirm a domestic arbitration award. *See* 9 U.S.C. § 9; *see also* (Doc. 33), pp. 12-13. Section 9 reads as follows:

> <u>If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration</u>, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9 (emphasis added). Importantly, this provision applies to confirmation of domestic arbitration awards (rather than foreign arbitral awards) and contains an additional

requirement not found in Section 207 (the provision applicable to foreign arbitral awards). *See id*. Namely, Section 9 applies solely in instances where the parties have already agreed that a judgment shall be entered upon the issuance of an arbitration award. *Id*. Because parties have already agreed a judgment should be entered in circumstances where Section 9 is applicable, a Petition to Confirm an award after the limitations period is unlikely to result in prejudice.

Here, on the other hand, the Parties made no such agreement. Thus, Section 9 is not directly analogous to Section 207 as argued by Petitioners. *See* (Doc. 33), p. 13. While Section 207 does contain the same "may" language as Section 9 which has been interpreted as "permissive" by some courts, Petitioners do not cite to any authority holding the statute of limitations under Section 207 is similarly "permissive." *See* (Doc. 33), pp. 12-13. Petitioners do cite to a Virginia federal district court decision, *First Kuwaiti Gen. Trading*, as standing for such proposition. *Id*. at 13; *see also First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, No. 1:23-MC-1, 2023 WL 6221771, at *4 (E.D. Va. Sept. 22, 2023). However, *First Kuwaiti Gen. Trading* specifically acknowledges that "it appears the Fourth Circuit has not decided whether the three-year time limitation in chapter 2 is permissive or mandatory." *Id*. Admittedly, the Court suggests the similar use of "may" in both Section 9 and Section 207 counsels that Section 207's time limitation would also be permissive. *Id*. However, this is far from controlling precedent and, in light of the additional requirement under Section 9 highlighted above, it is not clear that is the case.

Even more, with respect to the "permissive" nature of the limitations period under

Section 9, other district courts in this circuit have expressed hesitancy that the Fourth Circuit's interpretation is correct. *See Maryland Transit Admin. v. Nat'l R.R. Passenger Corp.*, 372 F. Supp. 2d 478, 484 (D. Md. 2005)(acknowledging the Fourth Circuit's binding interpretation but disregarding and refusing to apply as such interpretation "is a candidate for reconsideration"); *see also United Gov't Sec. Officers of Am. v. Special Operations Group, Inc.*, 436 F. Supp. 2d 790, 795 (E.D. Va. 2006)(acknowledging the Second Circuit's reasoning as "sound" and "compelling" but applying the Fourth Circuit's interpretation of the permissive nature of the time limitation in Section 9 due to its binding nature).

Regardless, the Fourth Circuit has <u>not</u> held the three-year statute of limitations period under Section 207 is permissive, nor is such an interpretation logical. Aside from the differences between Section 9 and Section 207 already discussed, if the statute of limitations prescribed by Section 207 were "permissive," then such provision would be rendered entirely superfluous. *Corley v. United States*, 556 U.S. 303, 129 S. Ct. 1558, 1560, 173 L. Ed. 2d 443 (2009), judgment entered, No. 08A881, 2009 WL 10803935 (U.S. Apr. 13, 2009)("[a] statute should be construed [to give effect] to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

In addition, the use of the word "may" in Section 207 does not render the statute of limitations as "permissive," but rather, correctly states that a party "may" apply to a court to confirm an arbitration award, although such application is not required. *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an

order confirming the award as against any other party to the arbitration."). If the statute were to insert the word "shall" rather than "may," it would require a party to apply for confirmation of every foreign arbitration award, no matter the circumstances. *See id*. Thus, Petitioners' desired interpretation that the statue of limitations under Section 207 be considered optional is (1) not mandated by the Fourth Circuit, (2) disregards basic canons of statutory interpretation, and (3) is illogical. As such, NIH Respondents request that this Court grant its Motion to Dismiss Petitioners' confirmation of the arbitration award as time-barred under Section 207 of the FAA.

### D. The Ruling from the Court of Rotterdam is Not a Judgment Enforceable under the North Carolina Uniform Foreign-Money Judgments Recognition Act.

Lastly, Petitioners argue the order from the Court of Rotterdam "(essentially) relate[s] to the payment of an amount of money" and thus, constitutes a foreign-country money judgment capable of enforcement under the North Carolina Recognition Act. (Doc. 33), p. 13. Because "essentially relating" to the payment of money is not sufficient under the Act, the order from the Court of Rotterdam cannot be confirmed under the North Carolina Recognition Act.

Specifically, the North Carolina Recognition Act "applies to a foreign-country judgment to the extent that the judgment: (1) Grants or denies recovery of a sum of money; and (2) Under the law of the foreign country where rendered, is final, conclusive, and enforceable." N.C. Gen. Stat. Ann. § 1C-1852. In addition to the finality issues previously discussed, the order from the Court of Rotterdam Petitioners cite as providing the basis for enforcement under the North Carolina Recognition Act merely "grants leave for

enforcement of the [] arbitral award." *See* (Doc. 33), p. 13; *see also* (Doc. 24-4), ¶ 2.1. This is a far-cry from a judgment "grant[ing] or deny[ing] a sum of money." *See* N.C. Gen. Stat. Ann. § 1C-1852. As stated in NIH Respondents' Motion, there is no grant of <u>monetary</u> relief to enforce. *See* (Doc. 28), pp. 13-14.

Even more, indulging Petitioner's argument that the order's "leave for enforcement" of the arbitral award allows the Court to look to the substance of the arbitration award to determine whether there is an enforceable grant of monetary relief, the arbitration award itself does not provide for monetary relief. *See* (Doc. 33), p. 13; *see also*, (Doc. 24-2), ¶ 9.1. Rather, the summary arbitral award requires the replenishment of the shortfall in the solvency capital ratio of Conservatrix to 135%, and only provides for monetary penalties should such replenishment not occur. (Doc. 24-2), ¶ 9.1. This is not a granting of a recovery of a sum of money, but rather, monetary penalties should the specified action not occur. *See* N.C. Gen. Stat. Ann. § 1C-1852.

Because the order from the Court of Rotterdam does not specifically grant recovery of any sum of money and the summary arbitral award itself only provides for monetary penalties should certain actions not be taken, there is no order capable of enforcement under the North Carolina Recognition act that "(1) Grants or denies recovery of a sum of money; and (2) Under the law of the foreign country where rendered, is final, conclusive, and enforceable." *See* N.C. Gen. Stat. Ann. § 1C-1852. Thus, this Court should grant NIH Respondents' Motion to Dismiss as to this claim.

With respect to Petitioners' argument that principles of international comity require confirmation of the arbitration award and/or the order from the Court of Rotterdam, there

does not appear to be (nor do Petitioners cite to) any instance where a court in the Fourth Circuit applies principles of international comity to enforce a foreign, provisional summary arbitration award (or corresponding judgment granting "leave to enforce" the award) that is otherwise unenforceable under the FAA and North Carolina Recognition Act. Nor do Petitioners cite any good reason for this to be the first instance for this Court to do so.

## CONCLUSION

For the foregoing reasons, the Amended Petition to Confirm Arbitration Award should be dismissed under Rule 12(b)(6) and the case should be dismissed in its entirety. NIH Respondents also respectfully requests such other and further relief to which they are entitled.

This the 29th day of March, 2024.

*/s/ Brian A. Kilpatrick*

Aaron Z. Tobin
Texas Bar No. 24028045
NC Bar No. 50019
atobin@condontobin.com
Brian A. Kilpatrick
(*Special Appearance Counsel*)
Texas Bar No. 00784392
bkilpatrick@condontobin.com
**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: 214.265.3800
Facsimile: 214.691.6311

*Attorneys for Respondents Netherlands Insurance Holdings, Inc. and NIH Capital, LLC*

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rules 7.3(d), this certifies that the foregoing brief contains less than 3,125 words (excluding the caption, signature lines, and certificates) as reported by the word processing software used to prepare this filing.

This the 29th day of March, 2024.

/s/Brian A. Kilpatrick
Brian A. Kilpatrick

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of March, 2024, I electronically filed the foregoing document with the Clerk of the Court through the ECF system which will send notification of such filing to all attorneys of record.

*/s/ Brian A. Kilpatrick*
Brian A. Kilpatrick