IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WILLEM JAN M. VAN ANDEL, LLM ) <br> and ELEONORA L. ZETTELER, LLM, ) <br> in their capacity as insolvency ) <br> practitioners in the insolvency of ) <br> Nederlandsche Algemeene Maatschappij ) <br> van Levensverzekering ) <br> "CONSERVATRIX" N.V., ) <br> ) <br> Petitioners, ) <br> ) <br> v. ) <br> ) <br> GREG EVAN LINDBERG; TRIER ) <br> HOLDING B.V.; NETHERLANDS ) <br> INSURANCE HOLDINGS, INC.; and ) <br> NIH CAPITAL, LLC, ) <br> ) <br> Respondents. ) | 1:23-CV-879 |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Court Judge.

The petitioners, conservators of a Dutch insurance company, seek confirmation of an arbitration award directing the respondents, who each hold ownership interests in the company, to pay money to the company to improve its solvency. Three respondents, Greg Lindberg, Netherlands Insurance Holdings, Inc., and NIH Capital, LLC, move to dismiss the petition. They contend that the arbitration award is not a binding order or, in the alternative, that the petition is barred by a statute of limitations in the Federal Arbitration Act, and that the award is not a judgment enforceable under North Carolina law. Because the arbitration award is binding, the time restriction in the FAA is not mandatory, and the Dutch court order constitutes a judgment, the motion will be denied.

## I. Overview

Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V. is a Dutch insurance company. Doc. 24-2 at p. 5 ¶ 2.1, p. 8 ¶ 3.2.[1] The respondents own the company and were responsible for maintaining a minimum solvency capital ratio. *Id.* at p. 8 ¶ 3.3, pp. 13–14 ¶ 3.11 (subsection 1.1.1). Conservatrix initiated summary arbitration proceedings to enforce this obligation, Doc. 24-1 at ¶ 8, asking only for immediate "interim relief." Doc. 24-2 at p. 18 ¶ 4.1.

In January 2020, the arbitrator entered an award and ordered the respondents to increase the solvency capital ratio immediately. Doc. 24-1 at ¶ 9; Doc. 24-2 at p. 34 ¶¶ 9.1(a)–(b). A Dutch court enforced the arbitral award. Doc. 24-4 at p. 3 ¶ 2.1. Even though its appeals were unsuccessful, Doc. 24-1 at ¶¶ 14, 27; Doc. 24-6 at 21, the respondents did not comply with the order. Without adequate funding, Conservatrix was placed in liquidation, and the petitioners were named its conservators. Doc. 24-1 at ¶ 13.

In October 2023, the petitioners, on Conservatrix's behalf, filed this action to confirm the arbitration award in the United States, where three respondents are citizens. Doc. 1 at 7; Doc. 24 at ¶¶ 1, 5–8. They seek confirmation under the Federal Arbitration Act and, in the alternative, under a North Carolina law. Doc. 24 at ¶¶ 39–53.

Respondents NIH and NIH Capital move to dismiss the amended petition, Doc. 27, and Mr. Lindberg joins in that motion. Doc. 36. Respondent Trier has not yet been

---

[1] All citations to the record use the pagination appended by the CM-ECF system; paragraph or section numbers are also provided when available.

served.[2]  First, the movants contend that the arbitration award is a "non-binding, interim award incapable of enforcement under the FAA," Doc. 28 at 6 (cleaned up), or, in the alternative, that the petition to confirm should be dismissed because it is barred by a statute of limitations in the FAA. *Id.* at 8.  Second, they say the North Carolina statute does not apply because the Dutch courts' orders are not "judgments." *Id.* at 12.

## II. Facts

A Dutch court in 2017 ordered the transfer of De Nederlandsche Bank N.V.'s shares in Conservatrix to respondent Trier Holding B.V., a Dutch corporation. Doc. 24 at ¶ 6; Doc. 24-2 at p. 8 ¶¶ 3.2, 3.4.  Respondent Mr. Lindberg, through respondents NIH and NIH Capital, Delaware and North Carolina corporations, respectively, is the ultimate shareholder of Trier. Doc. 24 at ¶¶ 7–8; Doc. 24-2 at p. 8 ¶ 3.3.

Under European regulation and the Dutch Financial Supervision Act, insurance companies must maintain a solvency capital ratio of at least 100% "to ensure that the insurer can meet its obligations to policyholders . . . over the following 12 months with a 99.5% probability." Doc. 24-2 at p. 9 ¶ 3.7.  In March 2019, the respondents agreed to maintain Conservatrix's minimum solvency capital ratio at 135%. *Id.* at pp. 13–14 ¶ 3.11 (subsection 1.1.1).  But in August 2019, a financial report showed Conservatrix's solvency capital ratio had fallen below the minimum threshold. *Id.* at p. 15 ¶ 3.15.

In December 2019, Conservatrix initiated summary arbitral proceedings against the respondents before the Netherlands Arbitration Institute. Doc. 24-1 at ¶ 8.  Under the

---

[2] *See* Doc. 25 (order extending time to obtain service).

3

rules applicable to NAI summary proceedings, *see* Doc. 37-1 at 22–25 (NAI Arbitration Rules § 4A), a party to an arbitration agreement can ask for "immediately enforceable provisional relief" in an urgent case, "regardless of whether arbitral proceedings on the merits are pending." *Id.* at p. 22 ¶ 2. And that is what Conservatrix did; it asked the arbitral tribunal to order the respondents "to replenish the shortfall in the [solvency capital ratio] of Conservatrix to a [ratio] of 135%." Doc. 24-2 at p. 18 ¶ 4.1(a)(i). Conservatrix characterized this remedy as "interim relief and in the form of an arbitral award." *Id.* at p. 18 ¶ 4.1.[3]

The arbitral tribunal held a hearing on January 17, 2020, Doc. 24-1 at ¶ 9, and issued a detailed ruling and arbitral award on January 31, 2020. *Id.* at ¶ 10; Doc. 24-2 at 35. The arbitrator treated Conservatrix's petition as a request for "provisional measures" under Article 36 of the NAI rules. Doc. 24-2 at p. 24 ¶ 6.20, pp. 34–35 ¶ 9.1; *see* Doc. 37-1 at 23–25 (NAI Arbitration Rules Art. 36). While noting there was "a potential restitution risk" that Conservatrix might not be able to repay the money if it did not ultimately prevail on the merits, the arbitrator found that unlikely. Doc. 24-2 at p. 26 ¶ 6.27. The arbitrator noted that a "request for main arbitral proceedings" was made at the January 17, 2020, hearing, but the arbitrator did not identify the requesting party and stated that no tribunal was immediately appointed. *Id.* at p. 5 ¶ 1.3.[4]

---

[3] The citation is not to the request for arbitration, which is not part of the record, but to the arbitral award, which quotes the demand for relief in detail and, as far as the Court can tell, in full.

[4] The citation is not to the written request for main arbitral proceedings, which is not part of the record, but to the arbitral award, which makes reference to the request.

4

Among other things, the arbitral tribunal ordered respondent Trier to "replenish the shortfall in the solvency capital ratio of [Conservatrix] to 135% with core equity contributions" and ordered the other respondents to "procure" Trier's compliance. *Id.* at p. 34 ¶¶ 9.1(a)–(b). If they did not comply within 60 days, the tribunal ordered the movants to pay Conservatrix €150 million. *Id.* at p. 34 ¶ 9.1(c). The tribunal also ordered the respondents to pay Conservatrix specified arbitration fees, *id.* at p. 35 ¶ 9.1(d), and legal fees. *Id.* at p. 35 ¶ 9.1(e).

A Dutch court promptly granted leave to enforce the arbitration award in February 2020. Doc. 24-4 at p. 3 ¶ 2.1. Trier asked a Dutch appeals court to nullify the award in April 2020. Doc. 24-1 at ¶ 12. Before the appeals court reached a decision, Conservatrix was put into liquidation, and petitioners van Andel and Zetteler took over the proceedings on its behalf. *See id.* at ¶¶ 13–14.

In March 2022, the appeals court ruled in favor of Conservatrix, denying the effort to nullify the arbitration award. *Id.* at ¶ 14; Doc. 24-6 at 2, 20–21. Trier appealed to the Supreme Court of the Netherlands, Doc. 24-1 at ¶ 17, which in September 2023 also denied the request to nullify the award. *Id.* at ¶ 27. The petitioners filed this action on October 17, 2023. Doc. 1 at 7.

There is nothing in the record to indicate whether anything has happened in the proceedings on the merits since the arbitrator referenced that possibility in the arbitral award. *See* Doc. 24-2 at p. 5 ¶ 1.3. The petitioners say in their briefing that the respondents may initiate an arbitration on the merits but that "even after the years of

5

appeals trying to set aside the Award, there has been no action in the main proceeding." Doc. 33 at 7. The movants do not say otherwise.

## III.  The New York Convention and the Federal Arbitration Act

"The Convention on the Recognition and Enforcement of Foreign Arbitral Awards is an international treaty aimed at encouraging the recognition and enforcement of commercial arbitration agreements in international contracts." *Reddy v. Buttar*, 38 F.4th 393, 398 (4th Cir. 2022) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)) (cleaned up). The United States is a signatory to the New York Convention and has an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 390 (4th Cir. 2012). "[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes" support this policy. *Mitsubishi Motors*, 473 U.S. at 629.

Congress enacted Chapter Two of the FAA, 9 U.S.C. §§ 201–08, to implement the Convention.[5] *See Reddy*, 38 F.4th at 398. Section 203 of the FAA gives federal courts original jurisdiction over "an action or proceeding falling under the Convention." § 203; *see Reddy*, 38 F.4th at 398.

---

[5] The Netherlands acceded to the Convention in 1964. *See Status: Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, UNITED NATIONS COMM'N ON INT'L TRADE L., https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited Apr. 24, 2024).

6

### A. The Arbitral Award is Binding.

Under § 207 of the FAA, a reviewing court must confirm a foreign arbitration award unless "it finds one of the grounds for refusal . . . of recognition or enforcement of the award specified in the . . . Convention." § 207; *see also Three S. Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007). The only ground asserted by the movants is that the award "has not yet become binding on the parties" as required by Article V.1.(e) of the Convention. Doc. 28 at 8. The movants have the burden of establishing the grounds for refusal to confirm the award. *See AO Techsnabexp. v. Globe Nuclear Servs. and Supply GNSS, Ltd.*, 404 F. App'x 793, 797 (4th Cir. 2010).

The movants have failed to show that the arbitral award is not binding, and, indeed, all of the evidence shows that it is. Conservatrix asked for "an arbitral award," Doc. 24-2 at p. 18 ¶ 4.1, and the arbitrator's decision is entitled "Arbitral Award in Summary Proceedings." *Id.* at p. 4. Article 46 of the NAI rules, which applies to requests for arbitral proceedings for provisional relief,[6] states that an "arbitral award shall be binding upon the parties with effect from the day on which it is made." Doc. 37-1 at 30. The Court of Rotterdam enforced the award, *see* Doc. 24-4 at p. 3 ¶ 2.1, a decision that was upheld by two Dutch appellate courts. *See* Doc. 24-1 at ¶¶ 14, 27. The award petitioners seek to enforce is binding.

---

[6] In Section Four, Article 36, the second article dealing with summary proceedings for provisional relief, the rules provide that the articles in Section Five apply in full to summary arbitral proceedings for provisional relief. *See* Doc. 37-1 at p. 23 ¶ 1. Article 46 is part of Section Five. *See* Doc. 37-1 at p. 27 (beginning of Section Five), p. 30 (Article 46).

7

The movants rely on language in Article 35 of the NAI arbitration rules to contend that the award is only provisional and thus cannot be a "binding final award" as required for enforcement. Doc. 28 at 7–8. Article 35 does talk about provisional relief, *see* Doc. 37-1 at p. 22 ¶ 2, and the arbitrator characterized the relief requested and granted as "provisional." Doc. 24-2 at p. 24 ¶ 6.20. But that very section of the rules also says that at the request of any party the arbitral tribunal may grant "immediately enforceable provisional relief," whether arbitral proceedings on the merits are or are not pending. Doc. 37-1 at p. 22 ¶ 2. Such a decision may be in the form of an order or an arbitral award. *Id.* at p. 22 ¶ 4. And, as previously noted, Article 36 makes such awards binding. *See supra* note 6.

It is possible that someone may pursue further action in arbitration to determine whether the amount the arbitrator required the respondents to pay should be adjusted or whether some refund might be due, but that does not mean the award as issued is not binding. First, the NAI arbitration rules, to which the movants agreed, say the arbitral award is binding, and to hold otherwise would be disrespectful to the capacity of both the arbitrator and the foreign courts that upheld the arbitral award. *See Mitsubishi Motors*, 473 U.S. at 629.

Second, a number of courts, including the Fourth Circuit, have enforced provisional equitable awards, domestic and foreign. For instance, in *Publicis Communication v. True North Communications, Inc.*, the Seventh Circuit held that a foreign provisional decision in arbitration requiring the respondent to turn over tax records was binding and could be confirmed because requiring "the unrelated issues to be

8

arbitrated to finality before allowing [petitioner] to enforce a decision the tribunal called urgent would defeat the purpose of the tribunal's order" and be "a meaningless waste of time." 206 F.3d 725, 729–31 (7th Cir. 2000). Here, too, the tribunal was satisfied that granting the equitable relief was urgent. *See* Doc. 24-2 at p. 25 ¶ 6.25.

Cases involving domestic arbitrations subject to the finality rule in § 10 of the FAA similarly enforce provisional equitable relief under appropriate circumstances. For example, in *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, the Ninth Circuit upheld confirmation of an arbitration panel's interim final order establishing an escrow account to preserve funds in dispute, noting that "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful . . . are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA." 935 F.2d 1019, 1023 (9th Cir. 1991). That is exactly the case here.

The Fourth Circuit cited *Publicis* and *Pacific Reinsurance* with approval in a case involving a domestic provisional award enjoining a telecommunications company from performing certain work to prevent the misuse of trade secrets while arbitration proceedings were ongoing. *See Arrowhead Glob. Sols., Inc. v. Datapath, Inc.*, 166 F. App'x 39, 41, 43–44 (4th Cir. 2006). There, the Fourth Circuit held that "arbitration panels must have the power to issue temporary equitable relief . . . and district courts must have the power to confirm and enforce that equitable relief as 'final' in order for the equitable relief to have teeth." *Id.* at 44; *accord T-Mobile USA Inc. v. Verity Wireless Inc.*, No. 21-CV-733, 2021 WL 4295845, at *5 (W.D. Wash. July 22, 2021) (noting that

9

"temporary equitable relief . . . must be confirmed when granted to ensure that a final award may be meaningful"). While none of these cases provide binding precedent, they are persuasive.

Finally, the movants contend that an arbitration award is not final or binding unless it resolves "a discrete, time sensitive issue" within a broader dispute. *See* Doc. 35 at 5–6; *see also Arrowhead*, 166 F. App'x at 43–44; *Univ. of Notre Dame (USA) in Eng. v. TJAC Waterloo, LLC*, 49 F.4th 13, 20–21 (1st Cir. 2022) (discussing case law). Assuming but not deciding that is so, the award here does precisely that. It resolves a discrete, time sensitive issue – whether to immediately require the owners of an undercapitalized insurance company to provide required capital support in order to avoid liquidation. *See* Doc. 24-2 at p. 14 ¶ 3.11 (subsection 1.1.1), p. 18 ¶ 4.1(a)(i). Granting and confirming Conservatrix's request for temporary, provisional relief on a time-sensitive matter is essential to protect the public and to ensure the possibility of meaningful equitable and merits relief in the long-term. *See Arrowhead*, 166 F. App'x at 44.

The movants have not met their burden of establishing that the arbitration award is not yet binding on the parties. The motion to dismiss based on a non-binding award will be denied.

**B.     The FAA Time Restriction Provision is Not Mandatory.**

Section 207 of the FAA, governing confirmation of foreign arbitration awards, provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having

10

> jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.

§ 207. The movants contend that because the petitioners filed the petition on October 17, 2023, more than three years after the arbitrator entered the award on January 31, 2020, the petition must be dismissed. *See* Doc. 28 at 11; *see also Faircloth v. Nat'l Home Loan Corp.*, 313 F. Supp. 2d 544, 552 (M.D.N.C. 2003), *aff'd sub nom. Faircloth v. Fin. Asset Sec. Corp. Mego Mortg. Homeowner Loan Tr.*, 87 F. App'x 314 (4th Cir. 2004) ("When it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss.").

But the Fourth Circuit has interpreted identical language in § 9 of the FAA to the contrary. Section 9 provides that for domestic arbitrations, "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award." § 9. That limitation period, the Fourth Circuit held, is "permissive" and "does not bar the confirmation of an award beyond a one-year period." *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 156 (4th Cir. 1993). The court reasoned that Congress did not intend to require parties to petition a federal court to enforce arbitration awards and that reading the one-year limitations period as mandatory would undermine the purpose of the FAA to encourage resolution of disputes outside of federal court. *See id.* at 155–56.

The Fourth Circuit has not yet interpreted the three-year language in § 207, but the operative language in § 207 is nearly identical to that in § 9; both state that "any party to the arbitration may apply" to a court to confirm the award within a specified time. §§ 9,

11

207. At least one other court in this circuit has concluded that "for the reasons outlined in *Sverdrup* . . . the time limitation in [§ 207] is also permissive." *See First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, No. 23-CV-1, 2023 WL 6221771, at *4 (E.D. Va. Sept. 22, 2023), *appeal docketed on other grounds*, No. 23-2121 (4th Cir. Oct. 26, 2023). And whatever the criticisms of the reasoning in *Sverdrup* made by other courts,[7] its holding cannot reasonably be distinguished from the issue at hand.[8]

Here the arbitral tribunal issued its ruling and award on January 31, 2020. *See* Doc. 24-1 at ¶ 10; Doc. 24-2 at 35. The petitioners filed their petition on October 17, 2023, *see* Doc. 1 at 7, more than three years from the time the arbitrator entered the arbitral award.[9] But because § 207's three-year period is permissive, it does not bar

---

[7] *See Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 156–57 (2d Cir. 2003) (disagreeing with *Sverdrup* in part because its logic renders the statute of limitations provisions "wholly superfluous"); *In re Consol. Rail Corp.*, 867 F. Supp. 25, 31–32 (D.D.C. 1994) (disagreeing with *Sverdrup*'s rationale that enforcing the limitations provision would force parties to file a motion to confirm awards in every case and that it would undermine the intent of the FAA to reduce demand on the federal courts); *Md. Transit Admin. v. Nat'l R.R. Passenger Corp.*, 372 F. Supp. 2d 478, 483–84 (D. Md. 2005) (recognizing that *Sverdrup* is binding in the circuit but expressing view that it "is a candidate for reconsideration"); *United Gov't Sec. Officers of Am. v. Special Operations Grp., Inc.*, 436 F. Supp. 2d 790, 795 (E.D. Va. 2006) (praising Second Circuit's opposition to *Sverdrup* as "sound, indeed compelling" but recognizing that "*Sverdrup* remains controlling precedent in this circuit").

[8] The respondents contend that *Sverdrup* is not controlling in the § 207 context because § 9 includes an additional requirement before a court can confirm an award: that "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." § 9; Doc. 35 at 7–8. But the *Sverdrup* court based its analysis and holding on § 9's "use of the word 'may,' as opposed to mandatory language" and did not discuss the provision the respondents cite here. *See* 989 F.2d at 150–52.

[9] Because the time limit is permissive, the question of when it begins to run is irrelevant; the Court makes no decision on that point. In other circuits where the time limit is enforced, courts generally find it to run from the time the arbitral award is entered or when it becomes binding.

12

confirmation of the award beyond a three-year period. *See Sverdrup*, 989 F.2d at 156. The movants' motion to dismiss based on a time bar will be denied.

**IV.     The Award is a Foreign-Country Judgment under North Carolina law.**

Apparently in the alternative to enforcement under the FAA, the petitioners seek to confirm the arbitration award under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act. *See* Doc. 24 at ¶¶ 3, 48–53. That Act "is a statute of inclusion with a strong presumption that foreign-country judgments will be recognized." *Jenner v. Ecoplus, Inc.*, 224 N.C. App. 275, 279, 737 S.E.2d 121, 124 (2012). It "provides the guidelines for recognition or nonrecognition of a foreign-county money judgment," *Rozumiei v. Uhnyuk*, 273 N.C. App. 710, 848 S.E.2d 314 (table), 2020 WL 5902831, *1 (2020), and calls for recognition "to the extent that the judgment: (1) Grants or denies recovery of a sum of money; and (2) Under the law of the foreign country where rendered is final, conclusive, and enforceable." N.C. Gen. Stat. § 1C-1852(a).

The Act defines "foreign-country judgment" as a "judgment of a court of a foreign country." § 1C-1851(2). Such a judgment "need not take a particular form–any order or decree that meets the requirements" of the Act is sufficient. § 1C-1851 cmt. 3. Decisions of arbitral tribunals are not covered under the Act, but "[a] judgment of a foreign court confirming or setting aside an arbitral award . . . would be covered by [the] Act." *Id.* "[T]he party resisting recognition of a foreign-country judgment bears the burden of showing grounds for nonrecognition." *Rozumiei*, 2020 WL 5902831, at *1.

---

*See, e.g., Univ. of Notre Dame in England v. TJAC Waterloo, LLC*, 49 F.4th 13, 17 (1st Cir. 20220) (collecting and discussing cases).

13

The movants contend that the Dutch court orders are not "foreign country judgments," but the record does not support this claim. *See* Doc. 28 at 12 (cleaned up). In February 2020, a Dutch court issued an order that "grants leave for the enforcement of the attached arbitral award." Doc. 24-4 at p. 3 ¶ 2.1. That award required the movants to pay a sum of money, €150 million, if they did not procure the replenishment of the shortfall in the solvency capital ratio of Conservatrix within 60 days and required all respondents to pay €134,725 for arbitration fees and €200,000 for legal fees. *See* Doc. 24-2 at pp. 34–35 ¶ 9.1. In March 2022, the Dutch appeals court denied the respondents' motion to nullify the award, *see* Doc. 24-1 at ¶ 14; Doc. 24-6 at 2, 20–21, which the Dutch Supreme Court upheld. *See* Doc. 24-1 at ¶ 27. The Dutch court order enforcing the arbitral award is "final, conclusive, and enforceable." § 1C-1852(a)(2). It constitutes a foreign-country judgment under the Act.

The movants contend that the Dutch decision is "not a judgment, but rather, a collection of court orders/rulings that fail to explicitly adopt the monetary award granted in the summary arbitral proceedings." Doc. 28 at 13. But the movants cite nothing to support the proposition that the foreign court must label a judgment as such or must "explicitly adopt" a money judgement. And an explanatory comment to the Act states that a judgment "need not take a particular form." § 1C-1851 cmt. 3. The language of the Dutch court's order is sufficient because it identifies and attaches the arbitral award, which includes the order to pay €150,334,725, and specifically "grants leave for the enforcement of the attached arbitral award." *See* Doc. 24-4 at p. 3 ¶ 2.1.

14

In their reply brief, the movants make a new and conclusory argument that the Act prohibits confirmation of the award because it constitutes a monetary penalty. *See* Doc. 35 at 11. The Court declines to consider a new argument first raised in a reply brief. *See, e.g., Price v. Grasonville Volunteer Fire Dep't*, No. 14-CV-1989, 2014 WL 7409891, at *8 (D. Md. Dec. 30, 2014) (noting general rule that courts decline to consider arguments first raised in reply briefs and collecting cases). Moreover, the movants have not provided any authority to support their argument, and it is not the court's job to undertake the analysis and legal research needed to support a perfunctory argument. *See, e.g., Lab'y Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 459–60 (M.D.N.C. 2015); *see also* LR 7.2(a)(4) (requiring litigants to refer to statutes, rules, and authorities in support of their arguments); *Hughes v. B/E Aerospace, Inc.*, No. 12-CV-717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do.").

The motion to dismiss the petition to enforce the judgment under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act will be denied.

It is **ORDERED** that the motion to dismiss filed by respondents NIH and NIH Capital, Doc. 27, and joined by Mr. Lindberg, Doc. 36, is **DENIED.**

This the 29th day of April, 2024.

_____
UNITED STATES DISTRICT JUDGE

15

Case 1:23-cv-00879-CCE-JEP   Document 38   Filed 04/29/24   Page 15 of 15