**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1898**

J. ROBERT VAN FAASSEN, LLM and ELEONORA L. ZETTELER, LLM, in their capacities as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.,

Petitioners – Appellees,

v.

GREG EVAN LINDBERG; TRIER HOLDING B.V.; NETHERLANDS INSURANCE HOLDINGS, INC.; NIH CAPITAL, LLC,

Respondents – Appellants.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Catherine C. Eagles, Chief District Judge. (1:23-cv-00879-CCE-JEP)

Argued: December 10, 2025 Decided: July 14, 2026

Before RUSHING and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

Reversed and remanded by published opinion. Judge Rushing wrote the opinion, in which Judge Heytens and Senior Judge Floyd joined.

**ARGUED:** Michael Gregory Newell, Fayetteville, North Carolina, for Appellants. Jeffrey Edward Oleynik, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP, Greensboro, North Carolina, for Appellees. **ON BRIEF:** Monica Langdon Jackson, Raleigh, North Carolina, for Appellants. Kate E. Giduz, BROOKS, PIERCE,

MCLENDON, HUMPHREY & LEONARD, LLP, Greensboro, North Carolina, for Appellees.

RUSHING, Circuit Judge:

In this case, an insolvent Dutch life insurance company seeks to collect on a foreign arbitration award in federal court. The company pursued two routes to that end. It petitioned to confirm the arbitration award under the Federal Arbitration Act and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and it also petitioned under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act to enforce the judgment of a Dutch court confirming the arbitration award. Although the petition was filed beyond the statute of limitations in the Federal Arbitration Act, the district court found that the limitations period was merely "permissive" and confirmed the award under federal law.

Because the three-year statute of limitations in 9 U.S.C. § 207 is mandatory, not permissive, we reverse confirmation of the arbitration award. Nevertheless, we agree with the district court that the Dutch court judgment confirming the award constitutes a foreign court judgment recognizable under the North Carolina Act, so we remand the case to the district court for further proceedings on the company's motion to enforce that judgment under North Carolina law.

I.

Petitioners are the trustees of Nederlandsche Algemeene Maatschappij van Levensverzekering "Conservatrix" N.V., a Dutch life insurance company. Respondents own Conservatrix and agreed to maintain its minimum solvency capital ratio at 135% to ensure that the company could fulfill its obligations to policyholders. When the solvency capital ratio dropped below the minimum threshold, Conservatrix initiated summary

arbitral proceedings against Respondents before the Netherlands Arbitration Institute (NAI). Under the rules applicable to NAI summary proceedings, a party to an arbitration agreement can request "immediately enforceable provisional relief" in an urgent case, "regardless of whether arbitral proceedings on the merits are pending." J.A. 309. Conservatrix did just that, asking the arbitrator to order Respondents to replenish the solvency capital ratio as required by the parties' agreement.

After a hearing, the arbitrator issued an award in Conservatrix's favor on January 31, 2020. The award ordered Respondents to restore the company's solvency capital ratio to "135% with core equity contributions" and imposed a €150,000,000 penalty if they did not comply within sixty days. J.A. 64–65. The arbitrator also ordered Respondents to pay Conservatrix specified arbitration costs and legal fees.

On February 17, 2020, the Court of Rotterdam granted Conservatrix's application for leave to enforce the arbitration award. The Court of Appeal of the Hague and the Supreme Court of the Netherlands upheld the lower court's judgment. Despite these rulings, Respondents still did not comply with the arbitration award. Without adequate funding, Conservatrix was placed in liquidation, and Petitioners were appointed its trustees.

Based on Respondent Greg Lindberg's residency in Durham, North Carolina, Petitioners filed a petition to confirm the arbitration award in the Middle District of North Carolina on October 17, 2023. In their subsequent amended petition, Petitioners advanced two grounds for relief. First, Petitioners sought to confirm the foreign arbitration award under the New York Convention, as implemented in the Federal Arbitration Act (FAA). *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10,

1958, 21 U.S.T. 2517, 330 U.N.T.S. 3; 9 U.S.C. § 207. Second, Petitioners asked the court to recognize and enforce the Dutch judgment under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act. *See* 2009 N.C. Sess. Laws 525 (codified as amended at N.C. Gen. Stat. § 1C-1850 *et seq.*).

Respondents moved to dismiss the petition. Regarding the FAA, they argued that the arbitral award was not enforceable under the New York Convention and that the petition was untimely because it was filed beyond the FAA's three-year statute of limitations for foreign awards. Regarding the North Carolina law, they argued that the Dutch judgment did not qualify as an enforceable foreign-country judgment. The district court denied the motion, finding that the arbitration award is enforceable, the statute of limitations is not mandatory but permissive, and the Dutch court order constitutes a foreign-country judgment. *See generally Van Andel v. Lindberg*, 732 F. Supp. 3d 476 (M.D.N.C. 2024).

Petitioners then moved for confirmation on both grounds.[1] The district court confirmed the arbitration award under the FAA and entered final judgment against Respondents in U.S. dollars. *See Van Andel v. Lindberg*, No. 1:23-cv-879, 2024 WL 3718168, at *4 (M.D.N.C. Aug. 8, 2024); J.A. 425–426. The court did not rule on Petitioners' alternative request for enforcement under North Carolina law. Respondents

[1] In opposition, Respondents argued that the district court should adjourn enforcement until a later time as authorized under the Convention based on the factors laid out in *Europcar Italia v. Maiellano Tours, Inc.*, 156 F.3d 310, 317–318 (2d Cir. 1998), or otherwise stay enforcement pending the possibility of further arbitral proceedings. The district court denied those requests, and Respondents have not challenged those decisions on appeal.

appealed, and we have jurisdiction. *See* 9 U.S.C. §§ 16(a)(1)(D), 208; 28 U.S.C. § 1291; *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022) (en banc).

II.

Respondents argue that Petitioners' effort to confirm the Dutch arbitration award under the New York Convention is barred by the FAA's three-year statute of limitations. There is no dispute that Petitioners filed this action to confirm the award in the district court more than "three years after" the award was "made." 9 U.S.C. § 207; *see Univ. of Notre Dame (USA) v. TJAC Waterloo, LLC*, 49 F.4th 13, 16–17 (1st Cir. 2022); *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 581 (2d Cir. 1993). But Petitioners contend that the statute of limitations imposes no limit because it is merely permissive, not mandatory. Reviewing de novo, we disagree. *See First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellog Brown & Root Int'l, Inc.*, 141 F.4th 522, 529 (4th Cir. 2025).

A.

Chapter 2 of the FAA implements the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C. § 201. As relevant here, it provides: "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." *Id.* § 207.

Petitioners argue that Section 207 imposes no time limit on filing an application to the court for a confirmation order because the word "may" in the statute is permissive rather than mandatory. It is true that the word "may" "connotes discretion." *Bouarfa v.*

*Mayorkas*, 145 S. Ct. 24, 30 (2024) (internal quotation marks omitted); *see United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion."). But when Congress grants discretion in a statute, it may also "prescribe[] how that discretion must be exercised." *Bouarfa*, 145 S. Ct. at 30.

In Section 207, Congress imposed a time limit on a party's discretionary exercise of its right to seek confirmation of a foreign arbitration award. By stating that any party to the arbitration "may apply" for an order confirming the award, Section 207 *permits* parties to seek confirmation in federal court. No party to an arbitral award is *required* to apply for confirmation. *See Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022) ("The use of the word 'may' . . . makes clear that . . . the [individual] has the authority, but not the duty" to act. (internal quotation marks omitted)). In that sense, "may apply" is permissive. But the adverbial phrase "[w]ithin three years after an arbitral award falling under the Convention is made" limits the scope of the discretion granted. 9 U.S.C. § 207. By specifying that a party may apply for confirmation "[w]ithin three years," Congress declined to authorize an application for confirmation *beyond* three years. The time limit is a mandatory boundary on the permissive right to petition for confirmation.

Holding otherwise would render the adverbial phrase meaningless. Under Petitioners' interpretation, a permissive three-year filing window imposes no limit at all; a party may file an application for confirmation whenever it likes. Unless the adverbial phrase creates a time limitation, it lacks any operative significance. Such an interpretation—which would render a statutory phrase wholly ineffective—should be

avoided. *See Pulsifer v. United States*, 144 S. Ct. 718, 731–732 (2024); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012).

Petitioners invoke judicial efficiency and Congress's general purpose to encourage arbitration. If an FAA petition is time-barred, Petitioners argue, parties will bring claims to enforce arbitration awards at common law, which are less efficient than the FAA's expedited procedures. We do not doubt Congress's intent in Chapter 2 of the FAA to implement the New York Convention and create an efficient mechanism for enforcing foreign arbitral awards in federal court. "But it is quite mistaken to assume that any interpretation of a law that does more to advance a statute's putative goal must be the law." *Stanley v. City of Sanford*, 145 S. Ct. 2058, 2067 (2025) (internal quotation marks and alterations omitted). In Petitioners' view, Congress's purposes would be better served by allowing a party to file an application for confirmation at any time. Yet in Section 207, Congress imposed a three-year limitations period, after which summary confirmation proceedings are no longer available. This "textual limitation[] upon [the] law's scope must be understood as no less a part of its purpose than its substantive authorizations." *Id.* (internal quotation marks omitted). Petitioners' policy arguments cannot alter the plain statutory text.

B.

Our precedent does not dictate otherwise. In *Sverdrup Corp. v. WHC Constructors, Inc.*, this Court held that the one-year filing period in a different statute—9 U.S.C. § 9—is a "permissive provision which does not bar the confirmation of an award beyond" that time period. 989 F.2d 148, 156 (4th Cir. 1993). Section 9 is part of Chapter 1 of the FAA

governing domestic arbitration and provides that "any party to the arbitration may apply to the court . . . for an order confirming the award" "at any time within one year after the award is made." 9 U.S.C. § 9. Although the Court recognized that its permissive "interpretation of § 9 leaves the one-year period for summary confirmation without any real meaning," it reasoned that this outcome was consistent with a policy favoring arbitration. 989 F.2d at 151–152. "[R]eading § 9 as a strict statute of limitations," the Court explained, would cause "individuals who prevailed in arbitration and failed to confirm within the one-year time limit" to "resort to filing actions at law" to enforce their awards, which would "lead to inefficiency, delay and court congestion." *Id.* at 155. "Such consequences," the Court concluded, "are repugnant to the intent of the FAA." *Id.* at 156.

*Sverdrup* does not control here because it concerned a different statutory provision about a different set of arbitration awards. Section 9, in Chapter 1 of the FAA, addresses domestic arbitration, while Section 207, in Chapter 2, implements the New York Convention and addresses international arbitration. *See* 9 U.S.C. § 202; *First Kuwaiti Gen. Trading*, 141 F.4th at 529. The statutes were enacted by different Congresses decades apart. *See* Act of July 30, 1947, Pub. L. 80-392 § 9, 61 Stat. 669, 672; Act of July 31, 1970, Pub. L. 91-368 § 207, 84 Stat. 692, 693. And in the years since *Sverdrup*, the Supreme Court has cautioned that "[t]he answer" to the meaning of the word "may" in the FAA "is not to be had from comparing phrases" across different provisions. *Cortez Byrd Chips, Inc. v. Harbert Constr. Co.*, 529 U.S. 193, 199 (2000).

Petitioners suggest that Section 208 requires us to apply *Sverdrup*'s construction of Section 9 directly to Section 207. That is incorrect. Section 208 instructs that "Chapter 1

applies to actions and proceedings brought under [Chapter 2] to the extent that" Chapter 1 "is not in conflict with" Chapter 2 or the New York Convention. 9 U.S.C. § 208; *see GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1639, 1645 (2020) (applying Section 208 and asking whether "the text of the Convention . . . prohibit[s] the application of [the] domestic" doctrine at issue). That provision does not operate here because Chapter 2 has its own statute of limitations that is different from the limitations period in Chapter 1. Section 9's one-year time period "conflict[s] with" the three-year limitations period in Section 207; therefore, Section 9 does not apply to proceedings brought under Chapter 2. 9 U.S.C. § 208.

Even taking *Sverdrup* on its own terms, the policy rationale that the Court found dispositive there carries less force in the different context of international arbitration. The *Sverdrup* Court reasoned that the alternative to summary confirmation proceedings under Section 9—actions at law to enforce arbitration awards—would undermine the FAA's purposes of efficiency and judicial economy and so parties should be encouraged to use Section 9's procedures instead. 989 F.2d at 155. Foreign arbitral awards, however, may be enforced through additional efficient options. As this case illustrates, for example, a party may reduce a foreign arbitral award to a foreign court judgment which can be domesticated in straightforward judgment-recognition proceedings. Moreover, Chapter 2's purpose "to facilitate international commercial arbitration" is "not undermined—and frequently will be advanced—through recourse to parallel enforcement mechanisms that exist independently of the FAA." *Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 330 (D.C. Cir. 2014); *see also* New York Convention, art. VII ("The provisions

of the present Convention shall not . . . deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law . . . of the country where such award is sought to be relied upon.”).

Finally, Petitioners have not identified any court of appeals that has adopted their reading of Section 207. Other circuits have treated it as a true statute of limitations and have enforced its three-year end point. *See*, *e.g.*, *Seetransport*, 989 F.2d at 580–581. While *Sverdrup* is on one side of a circuit split regarding Section 9, no similar disagreement exists regarding Section 207. We decline to create a new circuit split here.

Because Petitioners filed their petition to confirm the Dutch arbitration award after the three-year statute of limitations in Section 207 had run, we reverse the district court's judgment confirming the award under federal law.[2]

III.

Petitioners alternatively moved to enforce the Dutch court judgment under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act. The district court did not resolve that motion, given its ruling confirming the arbitration award directly under the FAA. Respondents, however, urge us not to remand this case for the district court to consider Petitioners' alternative request because, Respondents argue, the district court erred in denying their motion to dismiss this claim. Because the district court correctly

[2] We do not address whether Section 207's statute of limitations is subject to equitable tolling. While Petitioners pleaded some allegations portending an equitable tolling argument, they did not advance that theory to the district court and have expressly declined to raise it on appeal.

denied Respondents' motion to dismiss, we remand for further proceedings on Petitioners' motion to enforce the judgment under North Carolina law.

The North Carolina Uniform Foreign-Country Money Judgments Recognition Act provides that state courts "shall recognize a foreign-country judgment," N.C. Gen. Stat. § 1C-1853(a), "to the extent that the judgment . . . [g]rants or denies recovery of a sum of money" and "[u]nder the law of the foreign country where rendered, is final, conclusive, and enforceable," *id.* § 1C-1852(a). A foreign-country judgment is "[a] judgment of a court of a foreign country." *Id.* § 1C-1851(2). A "judgment" is "'the final decision of the court resolving the dispute and determining the rights and obligations of the parties, and the law's last word in a judicial controversy.'" *Savage v. Zelent*, 777 S.E.2d 801, 805–806 (N.C. Ct. App. 2015) (ultimately quoting *Poole v. Miller*, 464 S.E.2d 409, 411 (N.C. 1995)). The party seeking recognition of the judgment bears the burden of proving that the Act applies, while the party resisting recognition bears the burden to establish certain defenses. *See* N.C. Gen. Stat. §§ 1C-1852(c), 1C-1853(b)–(c), (f)–(g).

The district court correctly concluded that the judgment of the Court of Rotterdam is a foreign-country judgment subject to recognition under the Act. The Dutch court issued an order that "grants leave for the enforcement of the attached arbitral award," which required Respondents to pay a sum of money: €150,000,000 if they did not replenish Conservatrix's solvency capital ratio within sixty days, €134,725 for arbitration fees, and €200,000 for legal fees. J.A. 90. The Court of Appeal of the Hague and the Supreme Court of the Netherlands affirmed, rejecting Respondents' effort to nullify the award. The Dutch

court order confirming the arbitral award is therefore "final, conclusive, and enforceable." N.C. Gen. Stat. § 1C-1852(a)(2).

Respondents emphasize that the Act does not cover "foreign arbitral awards," which are not rendered by "court[s]." *Id.* § 1C-1851 cmt. 3; *see id.* § 1C-1851(2). That is true. But the Act does cover "[a] judgment of a foreign court confirming . . . an arbitral award," which is what we have here. *Id.* § 1C-1851 cmt. 3; *see Savage*, 777 S.E.2d at 804–806, 808–809 (using the official commentary to construe the Act).

Respondents also argue that the Act does not apply to the Dutch judgment because the judgment does not "explicitly adopt" the monetary award granted in the arbitral proceedings. Opening Br. 17. As noted, however, the Dutch judgment "grants leave for the enforcement of the attached arbitral award." J.A. 90. While the judgment does not restate the contents of the arbitral award within its four corners, it identifies and attaches the award. Respondents cite nothing to support the proposition that a foreign court must "explicitly adopt" a monetary arbitral award in some other fashion. And an explanatory comment to the Act states that "[t]he foreign-country judgment need not take a particular form." N.C. Gen. Stat. § 1C-1851 cmt. 3. We therefore find Respondents' argument unpersuasive.

Accordingly, we conclude that the district court correctly denied Respondents' motion to dismiss Petitioners' state-law claim for enforcement. We remand the case for the district court to address Petitioners' motion to enforce the Dutch judgment.

IV.

We reverse the district court's order confirming the foreign arbitral award under the FAA because the petition was untimely filed. However, we conclude that the North Carolina Uniform Foreign-Country Money Judgments Act applies and so remand the case for further proceedings on Petitioners' motion to enforce the Dutch judgment under North Carolina law.

*SO ORDERED*