**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| J. ROBERT VAN FAASSEN, LLM, and ELEONORA L. ZETTELER, LLM, in their capacities as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.,<br><br>Petitioners,<br><br>v.<br><br>GREG EVAN LINDBERG; TRIER HOLDING B.V.; NETHERLANDS INSURANCE HOLDINGS, INC.; NIH CAPITAL, LLC,<br><br>Respondents. | Case No. 1:23-cv-00879-CCE-JEP |

## JOINT STATUS REPORT

The parties submit this Joint Status Report following issuance of the Fourth Circuit's mandate. Part I sets out the procedural history, on which the parties agree. Part II states Petitioners' position, to which Respondents do not agree. Part III states Respondents' position, to which Petitioners do not agree.

## I. PROCEDURAL HISTORY

On October 17, 2023, Petitioners petitioned this Court on two grounds: to confirm a January 31, 2020 arbitral award of the Netherlands Arbitration Institute under the New York Convention and Chapter 2 of the Federal Arbitration Act; and to recognize and enforce a February 17, 2020 order of the Court of Rotterdam under

the North Carolina Uniform Foreign-Country Money Judgments Recognition Act, N.C. Gen. Stat. § 1C-1850 *et seq.* (the "NC Act"). *See* ECF No. 24.

This Court denied Respondents' motion to dismiss. ECF No. 38; *see also Van Andel v. Lindberg*, 732 F. Supp. 3d 476 (M.D.N.C. 2024). It then confirmed the award under the Federal Arbitration Act and entered judgment. ECF Nos. 52–53; *see also Van Andel v. Lindberg*, No. 1:23-cv-879, 2024 WL 3718168 (M.D.N.C. Aug. 8, 2024). It did not reach the alternative request for recognition and enforcement under the NC Act. *See generally* ECF No. 52.

On July 14, 2026, the Fourth Circuit reversed under the Federal Arbitration Act. It held that the three-year period in 9 U.S.C. § 207 is a mandatory limitations period and that the petition to confirm was untimely. ECF No. 64. The Fourth Circuit also held that "[t]he party seeking recognition of the judgment bears the burden of proving that the Act applies, while the party resisting recognition bears the burden to establish certain defenses." ECF No. 64 at 12; *see also van Faassen v. Lindberg*, 181 F.4th 480, 487 (4th Cir. 2026). Further, it found that the Rotterdam order "is a foreign-country judgment subject to recognition under the Act." ECF No. 64 at 12–13; *see also van Faassen*, 181 F.4th at 487–88. It affirmed the denial of the motion to dismiss, and remanded "for the district court to address Petitioners' motion to enforce the Dutch judgment." ECF No. 64 at 13–14; *see also van Faassen*, 181 F.4th at 488.

On July 15, 2026, this Court entered the Text Order "direct[ing] counsel to meet and confer and to file, no later than three business days after the mandate

issues, a joint status report and case management plan."[1] On August 5, 2026, the Fourth Circuit's mandate issued, *see* ECF No. 66, making the joint status report due by August 10, 2026. Later on August 5, 2026, Kenneth N. Barnes and Vivek Ramachandran noticed appearances on behalf of Respondents. *See* ECF Nos. 67, 68. On August 6, 2026, Respondents moved for an extension of time through August 20, 2026 to file the joint status report, *see* ECF No. 70, and the Court granted the motion. *See* ECF No. 71. The parties conferred on August 18, 2026.

## II. PETITIONERS' POSITION

The Fourth Circuit's opinion, the panel's instructions therein, and the mandate dictate the status of these proceedings on remand. Petitioners submit that no further briefing is necessary and all that remains is for the Court to enter an order on Petitioners' motion to recognize and enforce the judgment of the Court of Rotterdam (the "Dutch Judgment") under the NC Act.

### A. Procedural History

Petitioners' petition to confirm the arbitration award "advanced two grounds for relief." *See* ECF No. 64 at 4. "First, Petitioners sought to confirm the foreign arbitration award under the New York Convention, as implemented in the Federal Arbitration Act," and "[s]econd, Petitioners asked the court to recognize and enforce the Dutch judgment under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act." *Id.* at 4–5. Respondents moved to dismiss the petition

[1] In light of the parties' differing views on the status of the case and how it should proceed, the parties were unable to agree on a case management plan.

and, with respect to the NC Act, arguing that the Dutch Judgment was not a judgment but was instead a "collection of court orders/rulings." *See* ECF No. 28 at 13. Respondents did not make any arguments regarding § 1C-1852(b)(2). *See generally id.* This Court denied Respondents' motion to dismiss the petition, holding in relevant part that the Dutch Judgment constitutes a foreign-country judgment under the NC Act and is "final, conclusive, and enforceable." ECF No. 38 at 14; *see also* ECF No. 64 at 5.

Petitioners then moved both to confirm the award and enter judgment thereon under the FAA and to recognize and enforce the Dutch Judgment under the NC Act. ECF No. 64 at 5. In responding to this motion, Respondents made no arguments under N.C. Gen. Stat. § 1C-1853. *See* ECF No. 49. This Court granted Petitioner's motion and confirmed the award under the FAA; it did not rule on the aspect of the motion that separately sought recognition and enforcement of the Dutch Judgment under the NC Act. ECF No. 64 at 5. The Court thereafter entered judgment "for the reasons stated separately" in its Order, ECF No. 53 at 1, and Respondents appealed. ECF No. 64 at 5–6.

The Fourth Circuit reversed this Court's "order confirming the foreign arbitral award under the FAA." *Id.* at 14. It held, however, that this Court "correctly concluded that **the judgment of the Court of Rotterdam is a foreign-country judgment subject to recognition under the [NC] Act**." *Id.* at 12 (emphasis added). It also found that the Dutch Judgment is "final, conclusive, and enforceable." *Id.* at 12–13.

Accordingly, the Fourth Circuit remanded the case with specific instructions for the limited proceedings this Court is to conduct on remand: "We remand the case for the district court to address Petitioners' motion to enforce the Dutch judgment." *Id.* at 13; *see also id.* at 14 ("[W]e conclude that the North Carolina Uniform Foreign-Country Money Judgments Act applies and so remand the case for further proceedings on Petitioners' motion to enforce the Dutch judgment under North Carolina law.").

**B. The Fourth Circuit's mandate is clear, and Petitioners' motion is ripe for resolution.**

Petitioners have already fully briefed their motion to recognize and enforce, and it has been submitted to the Court. *See* ECF Nos. 42–43, 49, 51. It is ripe for decision. Consistent with the Fourth Circuit's opinion and mandate, all that is left for the Court to do is rule on Petitioners' motion. *See Doe v. Chao*, 511 F.3d 461, 465–66 (4th Cir. 2007) ("Any issue conclusively decided by this court on the first appeal is not remanded, and any issue that could have been but was not raised on appeal is waived and thus not remanded. If the appellate court determines questions put before it, the orderly resolution of the litigation requires the district court to recognize those interests served by final judgments and to implement the appellate mandate faithfully." (cleaned up)); *see also R.A. v. McClenahan*, 122 F.4th 143, 149 (4th Cir. 2024) (concluding that district court violated mandate and thus reversing district court's denial of dismissal and redirecting district court to dismiss claims that appellate court had instructed district court to dismiss in mandate from initial appeal, noting that district courts are required to "implement both the letter and

spirit" of appellate court mandates); *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 415 (4th Cir. 2005) ("[F]ew legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" (quoting *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 168 (1939))); *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court" in addition to "foreclos[ing] litigation of issues decided by the district court but foregone on appeal or otherwise waived" (citation omitted)).

No further briefing is warranted or necessary. Respondents submitted an opposition to Petitioners' motion to recognize and enforce in which they had the opportunity to raise any and all arguments and defenses against enforcement under the NC Act. *See* ECF No. 49. Respondents, however, limited their opposition to asking solely that the Court deny the motion or stay the proceedings based on Respondents' allegations of potentially conflicting Dutch proceedings. *See id.* They had the opportunity at that time to raise arguments for nonrecognition under N.C. Gen. Stat. § 1C-1853(c) but did not do so. Respondents therefore have waived and/or forfeited any additional arguments or defenses in opposition to the motion to enforce.

The NC Act and caselaw applying it confirms as much. The NC Act provides that "[i]f recognition of a foreign-country judgment is sought as an original matter, the issue of recognition shall be raised by filing an action seeking recognition of the foreign-country judgment." N.C. Gen. Stat. § 1C-1855. It places the burden on the

party opposing recognition to establish defenses to recognition. N.C. Gen. Stat. § 1C-1853(f)–(h); *see also* ECF No. 64 at 12 ("[T]he party resisting recognition bears the burden to establish certain defenses." (citations omitted)). Defenses to the NC Act are thus affirmative defenses. *See de Fontbrune v. Wofsy*, 409 F. Supp. 3d 823, 832 (N.D. Cal. 2019), *rev'd and remanded on other grounds*, 39 F.4th 1214 (9th Cir. 2022) ("A court must recognize the foreign judgment unless the resisting party can carry its burden. The Recognition Act's defenses are, therefore, affirmative defenses." (citations omitted)).

North Carolina courts have emphasized that if a plaintiff moves for recognition under the NC Act, a court cannot deny it if the defendant does not present evidence sufficient for nonrecognition. In *Jenner v. Ecoplus, Inc.*, 224 N.C. App. 275, 737 S.E.2d 121 (2012), the plaintiffs filed a complaint to recognize a foreign-country money judgment and, shortly thereafter, filed a motion to recognize the judgment and requested a hearing on the same. *Id.* at 276; 737 S.E.2d at 123. The defendant filed a motion to strike, or in the alternative, for relief from the plaintiff's motion. *Id.,* 737 S.E.2d at 123. The defendant argued that, because the plaintiff raised the issue of recognition through a complaint, the defendant was entitled to respond to the complaint within the time to answer the complaint and that the hearing on the motion could not be set before time expired for the defendant to respond to the complaint. *Id.,* 737 S.E.2d at 123. The hearing moved forward and, at the hearing, the defendant made no substantive argument for nonrecognition. *Id.* at 277, 737

S.E.2d at 123. The court *sua sponte* found that the foreign court entered judgment prematurely and denied the plaintiff's motion. *Id.* at 277, 737 S.E.2d at 123.

The Court of Appeals reversed and remanded. *Id.* at 282, 737 S.E.2d at 126. It first determined that the motion had been properly before the trial court, holding that the NC Act does not require that a defendant be given an opportunity to answer. *Id.* at 280, 737 S.E.2d at 125. It explained that the Act was not intended to offer "the full constellation of judicial procedure found in other civil actions" and is "a statute of inclusion with a strong presumption that foreign-country judgments will be recognized." *Id.* at 279, 737 S.E.2d at 124. It next determined that, because the NC Act places the burden of nonrecognition on the defendant, and because the defendant presented no evidence or argument to satisfy its burden in opposing recognition, the trial court had no basis to deny recognition. *Id.* at 281, 737 S.E.2d at 125. Thus, the trial court was obligated to recognize the judgment and erred in not doing so. *Id.*, 737 S.E.2d at 125.

Respondents here have waived any opportunity to establish any ground for nonrecognition. Petitioners filed an amended petition to confirm the arbitration award and recognize the Dutch Judgment under the NC Act. *See* ECF No. 24. Respondents moved to dismiss the amended petition and, in their motion to dismiss, argued that the Dutch Judgment was "not a 'foreign-county judgment' capable of enforcement in North Carolina." *See* ECF No. 27 at 2; *see also* ECF No. 28 at 12–15. The Court denied Respondents' motion and found that the Dutch Judgment "constitutes a foreign-country judgment under the Act." *See* ECF No. 38 at 14. To do

so, the Court found that the Dutch Judgment was "final, conclusive, and enforceable" and was not "a fine or other penalty." *See* ECF No. 38 at 14–15; N.C. Gen. Stat. § 1C-1852. Petitioners next filed a motion to confirm the award and recognize and enforce the Dutch Judgment. *See* ECF No. 42. In response, Respondents did not make any substantive arguments in opposition to the motion nor did they even mention the NC Act. *See* ECF No. 49. As in *Ecoplus*, because Respondents presented no evidence supporting nonrecognition when Petitioners moved for recognition, they cannot do so now, and there is no basis to deny recognition.

Accordingly, in response to the Court's request for a status update and case management plan, Petitioners' position is that this case is on remand solely for a ruling on Petitioners' already-submitted motion to recognize and enforce under the NC Act and entry of judgment thereon.[2]

## III. RESPONDENTS' POSITION

One fact has changed since this Court last considered this case, and it changes everything. On February 5, 2026, the District Court of Amsterdam held that De Nederlandsche Bank N.V. — the Dutch prudential regulator — committed fraud in the judicial proceeding that produced the 2017 forced transfer of Conservatrix. Rb. Amsterdam 5 februari 2026, ECLI:NL:RBAMS:2026:1107. Respondents will lodge

[2] Petitioners disagree with Respondents' newfound arguments concerning the Dutch Judgment, arguments which Petitioners believe fall outside the scope of the status report the Court requested. Petitioners likewise oppose Respondents' requests/motions for relief, which are not properly brought through a position statement in a joint status report. If the Court believes that Respondents' arguments could inform the Court's decision as to the proper scope of proceedings upon remand, Petitioners respectfully request an opportunity to be heard on such matters.

the judgment in the original Dutch together with an English translation. That transfer is the origin of the obligation Petitioners ask this Court to enforce. The decision did not exist when this Court entered judgment in August 2024. This Court is the first court in a position to weigh it.

The Fourth Circuit has told the parties who must prove what. It held that "[t]he party seeking recognition of the judgment bears the burden of proving that the Act applies, while the party resisting recognition bears the burden to establish certain defenses." *van Faassen v. Lindberg*, 181 F.4th 480, 487 (4th Cir. 2026). Petitioners must prove the Act applies to the Rotterdam order. Respondents may then establish grounds for nonrecognition. And if a ground is established, it is Petitioners — not Respondents — who must persuade the Court that recognition would nevertheless be reasonable. Those burdens cannot be carried on the existing record.

One matter of nomenclature, which Respondents note because it frames what follows. The January 31, 2020 arbitral award was rendered in *summary* proceedings and granted **provisional relief**. Respondents refer to it as the provisional award, and to the February 17, 2020 order of the Court of Rotterdam granting leave to enforce it as the Rotterdam order. **No merits award has ever been rendered.**

### A. The Fourth Circuit allocated the burdens and left the merits open.

Petitioners will describe the remand as narrow. The opinion says otherwise. The panel assigned burdens for proceedings yet to occur: "The party seeking recognition of the judgment bears the burden of proving that the Act applies, while the party resisting recognition bears the burden to establish certain defenses." 181

F.4th at 487 (citing N.C. Gen. Stat. §§ 1C-1852(c), 1C-1853(b)–(c), (f)–(g)). A court does not allocate burdens on questions it has already answered.

Four points follow. What the panel affirmed was the denial of a *motion to dismiss* — a ruling on the pleadings. 181 F.4th at 488. This Court "did not rule on Petitioners' alternative request for enforcement under North Carolina law," *id.* at 484, so the motion has never been adjudicated by anyone. The panel never addressed § 1C-1852(b)(2), which withdraws the Act from judgments that are "[a] fine or other penalty"; the words do not appear in the opinion. And the panel recorded that Petitioners "did not advance [equitable tolling] to the district court and have expressly declined to raise it on appeal." *Id.* at 486 n.2.

Petitioners contend Respondents waived every ground for nonrecognition by not raising § 1C-1853(c) in their 2024 opposition. The contention does not survive Petitioners' own authorities. *Doe v. Chao* forecloses only "any issue that could have been but was not raised on appeal." 511 F.3d at 465. *Bell* forecloses only issues "decided by the district court but foregone on appeal." 5 F.3d at 66. *Invention Submission* makes the mandate controlling only "as to matters within its compass." 413 F.3d at 415. Each formulation carries the same predicate: an issue that was available, and a ruling that could have been appealed. Neither was present here. The Rechtbank Amsterdam entered its judgment on February 5, 2026 — after the opposition, after briefing, and while the appeal was pending. A defense resting on evidence that did not yet exist is not a defense that "could have been" raised. Respondents' notice of appeal had in any event divested this Court of jurisdiction over

the aspects of the case involved in the appeal, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), and a party cannot be charged with failing to present an argument to a court that lacked authority to receive it. *Bell* supplies the answer one page after the passage Petitioners quote. The mandate rule "is not without exception," and among the recognized exceptions is that "significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light." 5 F.3d at 67. That describes this record precisely. Nor did diligence lapse once the evidence appeared. Within seven weeks of the Amsterdam judgment — and while this Court remained without jurisdiction — Respondents filed a verified complaint against these Petitioners in their capacities as insolvency practitioners, pleading the same findings and attaching the February 5, 2026 judgment as an exhibit. *Lindberg v. Zetteler*, No. 2026-006354-CA-01 (Fla. 11th Cir. Ct. filed Mar. 26, 2026), is pending, designated complex business litigation, and assigned to Judge Lisa Walsh. Respondents did not sit on this evidence. They pleaded it, under oath, in the first forum with authority to receive it, and they have pressed it there continuously since. Whatever else may be said of the record, it does not show a want of diligence. The Fourth Circuit has addressed the timing of the diligence inquiry only once, in an unpublished decision, observing there that it had "found no case discussing when the due diligence period should begin in the context of the mandate rule." *United States v. Williams*, 162 F. App'x 254, 257 (4th Cir. 2006) (unpublished). *Williams* fixed the trigger at the earliest point at which the party had reason to pursue the evidence — there, entry of judgment rather than the conclusion of appellate review — and found no diligence

where the defendant then waited nearly four years. *Id.* at 259–60. Here the evidence could not have been pursued at all before February 5, 2026, and Respondents acted on it within seven weeks.

Waiver, moreover, is "the intentional relinquishment or abandonment of a known right," and is "different from forfeiture." *United States v. Olano*, 507 U.S. 725, 733 (1993). Nothing was intentionally relinquished. Nor can any ground be waived on a motion no court has decided; there is no ruling to which waiver could attach and no law of the case. *Jenner v. Ecoplus, Inc.*, 224 N.C. App. 275, 737 S.E.2d 121 (2012), involved a party that offered no evidence or argument of any kind at a hearing the court actually held. The Act itself fixes no deadline and prescribes no exclusive vehicle: recognition or nonrecognition "may be raised by complaint, counterclaim, cross-claim, or affirmative defense." N.C. Gen. Stat. § 1C-1855(b). Petitioners themselves characterize the grounds under § 1C-1853 as affirmative defenses, and an affirmative defense is pleaded and proved on the facts as they stand when the issue is joined. In all events Petitioners' burden under § 1C-1852(c) is their own, and it does not shrink according to what Respondents argued.

**B. What the Amsterdam judgment held — and what it does not.**

In 2017 De Nederlandsche Bank told a Dutch court that the incoming owner would strengthen Conservatrix's balance sheet through a capital injection, and the court approved the transfer. The Amsterdam court held that account false in a way that mattered: the regulator knew the recapitalisation would run principally through a reinsurance structure whose premium — more than €100 million — would be

funded from Conservatrix's own assets, and that fact was kept out of the proceeding. Because the reinsurance was withheld, no substantive debate could occur on less far-reaching alternatives, and the court concluded its 2017 decision rested on fraud committed in the proceeding. It ordered the regulator to produce the recapitalisation agreements, the reinsurance contract, and the supporting financial substantiation. The court stated the governing standard: *"Van bedrog in deze zin is al sprake wanneer een partij in de procedure belet dat feiten aan het licht komen die voor de tegenpartij tot een gunstige afloop van die procedure zouden hebben kunnen leiden."* In English: "Fraud in this sense already exists where a party in the proceedings prevents facts from coming to light that could have led to a favourable outcome of those proceedings for the opposing party."

Respondents state plainly what the judgment is not. The applicant was Conservatrix Groep, the pre-2017 shareholder, not Respondents. The finding runs against the regulator, not against Petitioners, who were not parties. The operative disposition denied revocation. And the regulator has taken cassation, so the decision is not final. Respondents accordingly assert no theory of preclusion. They offer the judgment as what it is: **evidence** — a reasoned finding by a court of the very country whose judgment Petitioners ask this Court to enforce. Sections 1C-1852(b) and 1C-1853(c) do not ask whether a foreign finding is preclusive. They ask this Court to make findings of its own.

### C. The Amsterdam court ran out of remedies. This Court has not.

Petitioners will invoke the outcome of that proceeding rather than its finding. The Amsterdam court did not doubt the fraud; it found it. What it lacked was a remedy. Revocation would have required unwinding the 2017 transfer, and by 2026 there was nothing left to unwind — Conservatrix had been bankrupt since December 2020, its portfolio transferred to a third-party insurer, its policyholders' positions restructured in the insolvency. The court declined revocation on that ground alone and pointed instead to a claim for damages. **No Dutch court has excused this fraud, and none has rejected it. One Dutch court found it and ran out of remedies.**

This Court faces no such obstacle, because it is not asked to undo anything. Recognition operates prospectively. No writ has issued, no property has changed hands under the Rotterdam order, and the federal judgment that briefly existed was vacated by the mandate. Declining recognition would disturb no completed transaction and no third party. Granting it is the step that resists reversal: under § 1C-1856 the order would become enforceable here as a domestic judgment, and execution against assets is not readily unscrambled. **The Amsterdam court was asked to undo something, and it was too late. This Court is asked to do something, and it is not.**

### D. The grounds Respondents will present.

The chain is short and undisputed. The 2017 order transferred the shares; the transfer produced the commitment to maintain a 135% solvency capital ratio; the

arbitrator enforced that commitment in summary proceedings and imposed a €150,000,000 penalty; the Court of Rotterdam granted leave to enforce that provisional award. Section 1C-1853(c)(3) reaches not only "[t]he judgment" but "the cause of action or claim for relief **on which the judgment is based**." The General Assembly wrote a look-through into the statute.

First, as a threshold matter, Petitioners cannot establish that the Act applies. § 1C-1852(c). The Act does not reach a judgment "to the extent that" it is "[a] fine or other penalty." *Id.* § 1C-1852(b)(2). What the Rotterdam court authorized is enforcement of a Dutch *dwangsom* — a coercive sum imposed "without prejudice to the right to damages," bearing no relation to any loss — the entire measured loss is €334,725 in costs and fees — and never liquidated by any Dutch court. Article 611a of the Dutch Code of Civil Procedure imposes the *dwangsom* "without prejudice to the right to damages," so it runs alongside compensation rather than in place of it. Within the European Union such an award cannot cross a border unliquidated. Regulation (EU) No 1215/2012, art. 55 ("A judgment ... which orders a payment by way of a penalty shall be enforceable in the Member State addressed only if the amount of the payment has been finally determined by the court of origin."). Respondents acknowledge contrary authority and will address it: *de Fontbrune v. Wofsy*, 838 F.3d 992, 1002 (9th Cir. 2016); *State of the Netherlands v. MD Helicopters, Inc.*, 248 Ariz. 533, 462 P.3d 1038 (Ct. App.), *aff'd*, 250 Ariz. 235, 478 P.3d 230 (2020). In each the sum had been judicially fixed. No comparable step has occurred here. The exclusion is squarely open. Respondents raised this exclusion in the district court. The Court

declined to reach it because it arrived in a reply brief and was unsupported by authority. *Van Andel v. Lindberg*, 732 F. Supp. 3d 476, 485 (M.D.N.C. 2024). That was a ruling on the manner of presentation, not on the merits, and the Fourth Circuit did not address the question. Petitioners state that this Court "found that the Dutch Judgment was … not 'a fine or other penalty.'" It did not. The Court expressly declined to reach the question: "The Court declines to consider a new argument first raised in a reply brief. Moreover, the movants have not provided any authority to support their argument …." *Van Andel v. Lindberg*, 732 F. Supp. 3d 476, 485 (M.D.N.C. 2024). The Court's holding under § 1C-1852 was that the Rotterdam order is "final, conclusive, and enforceable." The exclusion in § 1C-1852(b)(2) has never been adjudicated by any court.

Second, recognition should be refused under § 1C-1853(c). Respondents will present the grounds stated in subsections (c)(3) (the claim for relief is repugnant to public policy), (c)(8) (the proceeding leading to the judgment was fundamentally unfair), and (c)(7) (circumstances raising substantial doubt about the integrity of the rendering court with respect to the judgment), and preserve the ground stated in (c)(2). Respondents cast no aspersion on the Dutch judiciary: a Dutch court has found that a Dutch regulator misled a Dutch court, and Respondents follow that finding rather than quarrel with it.

### E. The Rotterdam order enforces provisional relief, and the merits have never been decided.

The award underlying the Rotterdam order was interim relief. Under the rules governing Netherlands Arbitration Institute summary proceedings, a party "can

request ‘immediately enforceable provisional relief’" in an urgent case, "regardless of whether arbitral proceedings on the merits are pending." 181 F.4th at 482.

The merits proceeding is NAI Case No. 4794, between these same parties. It has been pending since 2019 and was in document production as recently as February 2026. The claim there exceeds €150 million — the same commitment, the same parties, the same subject matter. The tribunal is composed of Mr. W.H. van Baren as chair, Prof. Dr. J.B.S. Hijink, and Mr. P. Ingelse. Claimants filed their initial statement of claim in December 2019; the case was held in abeyance pending the Dutch annulment litigation, which concluded September 1, 2023. Procedural Order No. 1 issued in 2024; a Statement of Claim was served January 17, 2025; Respondents served their Statement of Defense and Counterclaim on September 15 and 16, 2025; document production requests and objections followed through December 2025; and documents were produced in February 2026. Respondents’ counterclaim was treated as withdrawn under Article 53(5) of the NAI Rules for non-payment of the deposit; the facts underlying it remain pleaded as defenses to causation and quantum.

Petitioners thus ask this Court to convert provisional relief into a permanent domestic judgment while the merits remain undecided in the forum the parties chose. **Provisional relief is meant to hold a position until the merits are decided. It is not meant to outlive the merits proceeding and be enforced abroad as though it were the merits.**

## F. The Court should defer decision.

Three pending proceedings will materially clarify the questions before this Court: the cassation from the February 5, 2026 judgment, now before the Supreme Court of the Netherlands; NAI Case No. 4794; and *Lindberg v. Zetteler*, No. 2026-006354-CA-01 (Fla. 11th Cir. Ct.), where the same Petitioners are defendants. Because § 1C-1853(g) makes reasonableness "under the circumstances" an element of Petitioners' case, those outcomes are not collateral. They are the circumstances.

This Court has the power to wait. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). Respondents can make the showing *Landis* requires. Petitioners identify no prejudice beyond delay. *Landis* requires neither identity of parties nor identity of issues, 299 U.S. at 254, and asks whether the movant shows "a clear case of hardship or inequity in being required to go forward," *id.* at 255. Absent a stay, Respondents must litigate the reasonableness of recognizing a €150,000,000 penalty while the Supreme Court of the Netherlands decides whether the transaction that produced it was procured by fraud, while the chosen tribunal has yet to decide whether the obligation was breached at all, and without the documents the Amsterdam court ordered produced.

## G. Relief requested.

Respondents ask the Court to confirm that the motion is contested and will be briefed, to direct that no writ of execution issue pending decision, to stay these

proceedings or in the alternative defer execution, and to set a briefing schedule. Respondents will give notice under Fed. R. Civ. P. 44.1 of the issues of Dutch law raised above and will submit the February 5, 2026 judgment in the original Dutch together with an English translation and the relevant provisions of the Dutch Code of Civil Procedure. The parties' respective proposals are set out in Part IV.[3]

### H. Respondents' Proposed Schedule

1. **Scope of the remand and burdens.** Respondents' position is that it is contested and cannot be decided as the papers stand, because the Fourth Circuit allocated burdens no party has yet discharged and the evidence bearing on them postdates this Court's judgment. 181 F.4th at 487. Two of those allocations run against Petitioners: under § 1C-1852(c) they must establish that the Act applies, including that the Rotterdam order is not to any extent "[a] fine or other penalty" under § 1C-1852(b)(2); and under the second sentence of § 1C-1853(g), once a subsection (c) ground is established, they must establish that recognition "would nevertheless be reasonable under the circumstances." Neither has been briefed.[4]

---

[3]Petitioners state that they have not responded to Respondents' position because it "fall[s] outside the scope of the status report the Court requested," while reserving an opportunity to be heard if the Court disagrees. Petitioners' own statement of position argues waiver, forfeiture, the mandate rule, and the merits of recognition at length, with citation to seven decisions. Having briefed those questions in this document, Petitioners cannot characterize Respondents' answer to them as beyond the scope of the same document. Respondents do not oppose Petitioners being heard. That is what a briefing schedule is for.

[4]Petitioners' footnote states that the parties "were unable to agree on a case management plan." Respondents proposed the schedule set out below. Petitioners proposed none, because their position is that no further proceedings should occur at all. The absence of an agreed plan reflects that disagreement about whether the case proceeds, not a dispute about dates.

2. **Execution.** Respondents request a stipulation that no writ of execution issue pending decision.

3. **Stay.** Respondents request a stay pending the Dutch cassation, the merits arbitration, and the Florida action.

4. **Briefing.** Respondents propose a schedule for briefing Petitioners' motion to enforce the Rotterdam order under N.C. Gen. Stat. § 1C-1850 *et seq.*: Respondents' response within thirty days of entry of the scheduling order, and Petitioners' reply within fifteen days thereafter.

5. **Section 207.** Respondents request confirmation that Petitioners do not intend to advance equitable tolling of 9 U.S.C. § 207, which the Fourth Circuit recorded they expressly declined to raise. 181 F.4th at 486 n.2.

Dated: August 20, 2026

Respectfully submitted,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

*/s/ Vivek Ramachandran*
Vivek Ramachandran
Dhamma Law, PLLC
418 Broadway, Suite N
Albany, NY 12207
202-860-4084
Email: barnesatty@aol.com

*Counsel for Greg E. Lindberg*

/s/ *Kate E. Giduz*

Jeffrey E. Oleynik (NC Bar No. 14416)
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP
2000 Renaissance Plaza
230 N. Elm Street
Greensboro, NC 27401
Tel: (336) 271-3182
Fax: (336) 232-9182
joleynik@brookspierce.com

Kate E. Giduz (NC Bar No. 60887)
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, NC 27601
Tel: (919) 882-2546
Fax: (336) 232-9046
kgiduz@brookspierce.com

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon counsel of record through the Court's Case Management and Electronic Case Filing System.

This the 20th day of August 2026.

/s/ Kate E. Giduz
Kate E. Giduz

*Counsel for Petitioners*