**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| J. ROBERT VAN FAASSEN, LLM and ELEONORA L. ZETTELER, LLM, in their capacity as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.,<br><br>Petitioners,<br><br>v.<br><br>GREG EVAN LINDBERG; TRIER HOLDING B.V.; NETHERLANDS INSURANCE HOLDINGS, INC.; and NIH CAPITAL, LLC,<br><br>Respondents. | Case No. 1:23-CV-879<br><br>Chief Judge Catherine C. Eagles |

# RESPONDENTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO PETITIONERS' MOTION TO CONFIRM ARBITRAL AWARD AND DUTCH JUDGMENT (DOC. 42)

Respondents Greg Evan Lindberg, Trier Holding B.V., Netherlands Insurance Holdings, Inc., and NIH Capital, LLC respectfully submit this supplemental response in opposition to Doc. 42, to the extent the petitioners seek recognition under North Carolina law, pursuant to the Court's Order of August 26, 2026. Doc. 74 ¶ 3.

## INTRODUCTION

Two questions remain, and neither has been decided.

The first is whether a North Carolina judgment may be entered for €150,000,000 that no court has ever fixed as owing. That sum was never determinate. It was a conditional consequence attached to an order to *act*—payable only if the respondents failed to restore a solvency ratio within sixty days. No Dutch court has found that the condition occurred, and none has liquidated the amount. The Court of Rotterdam granted leave to enforce on February 17, 2020, seventeen days after the award and roughly six weeks *before* the sixty-day period expired. Doc. 64 at 4.

The second is whether recognition should be denied under § 1C-1853(c)(3). What the petitioners seek is final enforcement of a provisional, coercive sum, sought by an estate in liquidation, while the merits remain undecided — and the approval that produced the obligation has since been held by a Dutch court to have been "based on fraud committed by DNB." Ex. A ¶ 5.28.[1]

The Court of Appeals held that the Rotterdam order is a foreign-country judgment within § 1C-1852(a). Doc. 64 at 12–13. Neither question here disturbs that holding.

## I. No court has ever liquidated the €150,000,000.

### A. What the arbitrator imposed, and what Dutch law calls it.

The arbitrator did not order payment of money. He ordered an act—to "replenish the shortfall in the solvency capital ratio of [Conservatrix] to [a ratio of]

[1]Exhibit A is submitted in full. The respondents rely on ¶¶ 5.8–5.13, 5.18–5.20 and 5.28. The judgment also recites, without resolving, contentions of Conservatrix Group concerning the 2017 reinsurance; as to those the court said whether Trier made a capital contribution of more than €18 million "has also not become clear to the Court." Ex. A ¶ 5.27. Those recitals were made in a proceeding to which the respondents were not parties.

135%." Doc. 24-2 at p. 34 ¶¶ 9.1(a)–(b). The €150,000,000 was attached as a consequence of disobedience: "[i]f they did not comply within 60 days." Id. ¶ 9.1(c); Doc. 38 at 5.

That device has a name in Dutch law, and the petitioners placed the statute in this record. Article 1056 of the Dutch Code of Civil Procedure provides: "In those events where the court may impose a penalty for non-compliance, the arbitral tribunal has such power as well." Doc. 33-1 at 34 (petitioners' translation). The Dutch term is *dwangsom*. Article 1056 makes the power expressly subject to "Articles 611a to 611h inclusive," and under Article 611d the sum may be lifted, suspended, or reduced. *Id.*[2]

### B. Liquidation is what makes such an award cognizable.

The Ninth Circuit has examined the closest analogue—the French *astreinte*—under a materially identical recognition statute. *de Fontbrune v. Wofsy*, 838 F.3d 992 (9th Cir. 2016). There were two French judgments. The first, in 2001, enjoined the defendant "under penalty of [astreinte] of 10,000 francs by proven infraction"—the threat, not what was presented for recognition. Eleven years later a French enforcement judge, on an application for *liquidation d'astreinte*, found a violation and

[2]The respondents preserve, but do not press, the contention that the €150,000,000 falls outside the Act as "[a] fine or other penalty" under § 1C-1852(b)(2). No North Carolina court has construed that exclusion; courts elsewhere applying the uniform language have held coercive payments of this kind are not penalties within its meaning. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 1007 (9th Cir. 2016); *State of Netherlands v. MD Helicopters, Inc.*, 248 Ariz. 533, 545, 462 P.3d 1038, 1050 (Ct. App. 2020). Dutch law itself treats the sum as severable: where a penalty has been imposed contrary to Article 1056, "the denial covers only the enforcement of the penalty." Art. 1063(1); Doc. 33-1 at 44.

"[a]ward[ed] the [astreinte] . . . in the amount of 2,000,000 euros." *Id.* at 995. It was that liquidated judgment the court held cognizable.

The distinction is not formal. On the French-law evidence the court recounted, the amount is "within the discretion of the judge" and "can be modified before it is reduced to judgment." *Id.* at 1003. Article 611d preserves the same discretion here. Doc. 33-1 at 34.

### C. Nothing was liquidated here, and leave to enforce did not do it.

No Dutch court has found the respondents failed to comply within sixty days, exercised the discretion Articles 611a–611h reserve, or fixed €150,000,000 as due.

This is not the argument made in 2024. Then the respondents contended that the Rotterdam order does not "[g]rant[] or den[y] recovery of a sum of money" and so falls outside § 1C-1852(a). Doc. 35 at 11. The Court of Appeals rejected that, and it is not renewed. Doc. 64 at 12–13. The question here arises only because the Act *does* apply: given that it applies, what sum may be reduced to a North Carolina judgment. The panel held that the order requires payment of "€150,000,000 *if* they did not replenish Conservatrix's solvency capital ratio within sixty days." Doc. 64 at 12. Whether that condition occurred, and what is therefore owed, no court has decided.

The petitioners will answer that leave to enforce supplied the liquidation. The dates foreclose it. The award issued January 31, 2020; the sixty-day period ran to about March 31; leave to enforce was granted February 17. Doc. 64 at 4. A court cannot have determined on February 17 that a condition maturing March 31 had occurred.

Nor does an exequatur perform that office, and Dutch law says so. Leave to enforce may be refused "only where the court determines, *on a summary enquiry*, that a setting aside action is likely to be successful." Dutch Code of Civil Procedure art. 1063(1); Doc. 33-1 at 44. A court asking whether an award is likely to be set aside is not finding that a sixty-day condition matured, is not exercising the discretion Article 611d reserves, and is not fixing a sum. The permission is itself contingent: setting aside or revocation of the award "entails, by operation of law," revocation of the permission. *Id.* art. 1062(4). What followed confirms the point. The Court of Appeal of the Hague and the Supreme Court of the Netherlands considered an effort to *nullify* the award, Doc. 64 at 4; neither liquidated anything.

European law draws the same line. A judgment ordering "a payment by way of a penalty shall be enforceable in the Member State addressed *only if the amount of the payment has been finally determined by the court of origin*." Regulation (EU) No 1215/2012, art. 55; *cf.* Council Regulation (EC) No 44/2001, art. 49. Neither governs here. Both reflect the understanding of the legal order that produced this award: a coercive payment does not travel until it is fixed.

This Court is not asked to decide whether the respondents complied, but to decline to enter judgment for a sum no court, anywhere, has determined is owed.

## II. Nothing has been waived.

The petitioners contend that the respondents waived every ground for nonrecognition by not raising § 1C-1853 in 2024. The contention has two parts. Neither holds.

### A. The mandate rule does not reach evidence that did not exist.

The petitioners' own authorities state the rule with its predicate attached. *Doe v. Chao* forecloses "any issue that *could have been* but was not raised on appeal." 511 F.3d 461, 465 (4th Cir. 2007). *United States v. Bell* forecloses issues "decided by the district court but foregone on appeal." 5 F.3d 64, 66 (4th Cir. 1993). *Invention Submission* makes the mandate controlling "as to matters within its compass." 413 F.3d 411, 415 (4th Cir. 2005). Each presupposes an available issue and an appealable ruling. Neither was present.

*Bell* states the governing exception one page after the passage the petitioners quote. The mandate rule "is not without exception," and among the recognized exceptions is that "significant new evidence, not earlier obtainable in the exercise of due diligence[, has come to light]." 5 F.3d at 67. The Amsterdam judgment issued on February 5, 2026. Briefing in the Court of Appeals had long closed and the appeal had been argued on December 10, 2025. Doc. 64 at 1.

The exception asks whether the *evidence* was earlier obtainable, and evidence that did not exist cannot have been obtained. Nor could it have been put before the panel. Rule 28(j) permits a party to bring supplemental *authorities* to a court of appeals' attention; it is not a vehicle for new evidence, and a court of appeals does not find facts. *Cf. Freedman, Levy, Kroll & Simonds v. Mendelson*, 197 F.R.D. 276, 279–80 (D.D.C. 2000). This Court, meanwhile, had been divested of jurisdiction by the notice of appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).[3]

[3]Rule 62.1 supplies no forum. It permits an indicative ruling only "in conjunction with a separate motion seeking relief," *SmartSky Networks, LLC v. Wireless Sys. Sols., LLC*, 630 F. Supp. 3d 718, 727

### B. Nothing was waived in this Court either.

The second branch is that the respondents forfeited all § 1C-1853 grounds by not raising them in opposing Doc. 42. Five answers.

First, the Act fixes no deadline and prescribes no exclusive vehicle. The petitioners quote § 1C-1855, but only subsection (a), which governs recognition sought "as an original matter" and provides that the issue "*shall* be raised by filing an action." Recognition here was sought within an existing action, so subsection (b) governs: "the issue of recognition *may* be raised by complaint, counterclaim, cross-claim, *or affirmative defense*." § 1C-1855(b). The General Assembly used "shall" in one subsection and "may" in the next. The contrast is deliberate, the list is disjunctive, and no deadline appears anywhere in the section. The Act's only limitations provision, § 1C-1858, governs the commencement of an *action* to recognize, not a defense raised in one. Subsection (b) is not new to this case: the respondents quoted it to this Court in 2024, and the petitioners did not then suggest it was inapplicable. Doc. 35 at 3.

Second, and as the petitioners themselves urge, the grounds stated in § 1C-1853 are affirmative defenses. An affirmative defense is raised when the claim it answers is adjudicated. The petitioners' state-law claim has never been adjudicated. This Court "did not rule on Petitioners' alternative request for enforcement under North Carolina law." Doc. 64 at 5. It confirmed the award under the Federal Arbitration Act instead, and that judgment has been reversed.

---

(M.D.N.C. 2022), and the only judgment then in existence was the FAA confirmation the Court of Appeals reversed. There was no ruling on the North Carolina claim from which relief could be sought, and an indicative ruling is in any event a statement of what a court would do, not a decision.

Third, there is accordingly no ruling to which waiver or the law of the case could attach, and what the petitioners describe is not waiver at all. Waiver is "the intentional relinquishment or abandonment of a known right"; forfeiture is different. *United States v. Olano*, 507 U.S. 725, 733 (1993). The Fourth Circuit keeps the two apart and attaches different consequences: "[f]orfeiture refers to a party's inadvertent failure to raise an argument," and "a court has discretion to reach a forfeited issue," while a knowing abandonment forecloses one. *Stokes v. Stirling*, 64 F.4th 131, 136 n.3 (4th Cir. 2023); *see Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012). A defense resting on a foreign judgment that would not issue for another nineteen months was not a known right in 2024. Nothing was knowingly relinquished.

Fourth, even forfeiture would not bar the defense. The Fourth Circuit has held an affirmative defense preserved although the district court never ruled on it, *Martin v. Southwestern Virginia Gas Co.*, 135 F.3d 307, 309 n.1 (4th Cir. 1998), and has held such forfeiture "is not absolute" and may be excused in "exceptional circumstances," *Woodson v. Allstate Ins. Co.*, 855 F.3d 628, 635 (4th Cir. 2017). A foreign judgment of fraud entered nineteen months after the answer, on a motion still undecided, is such a circumstance. The petitioners identify no prejudice, and none exists.

*Jenner v. Ecoplus, Inc.*, 224 N.C. App. 275, 277, 737 S.E.2d 121, 123 (2012), is inapposite. The party resisting recognition there had a hearing and raised no ground under the Act; here there has been neither a hearing nor a ruling.

Diligence did not lapse. The Amsterdam court found that the grounds "first became clear" to the applicant on February 25, 2025, and rejected the contention that

they had been available earlier. Ex. A ¶¶ 5.8–5.13. Within seven weeks of the February 5, 2026 judgment, Mr. Lindberg filed a verified complaint against these petitioners pleading the same findings. *Lindberg v. Zetteler*, No. 2026-006354-CA-01 (Fla. 11th Cir. Ct. filed Mar. 26, 2026).

## III. Recognition should be denied under § 1C-1853(c)(3).

### A. The standard, and what the presumption of recognition does and does not do.

The petitioners will invoke the Act's "strong presumption that foreign-country judgments will be recognized." *Jenner*, 224 N.C. App. at 279, 737 S.E.2d at 124. The presumption is real, and it operates *within* the Act's structure rather than against it. Subsection (c) is part of that structure. Where a subsection (c) ground is found, the same statute directs that recognition "*shall be denied* unless the court determines, as a matter of law, that recognition would nevertheless be reasonable under the circumstances." § 1C-1853(c). A presumption of inclusion is not a presumption against the grounds the statute itself creates. It does its work where no ground is established.

The standard is stringent. Recognition offends public policy only where it would "tend clearly to injure the public health, the public morals, or *the public confidence in the administration of the law*." *Savage v. Zelent*, 243 N.C. App. 535, 546, 777 S.E.2d 801, 809 (2015) (quoting N.C. Gen. Stat. § 1C-1853 cmt. 8). A difference in foreign law or procedure, however significant, will not do. The respondents rely on the third branch, and on the first prong of subsection (c)(3)—"the judgment" itself.

## B. The judgment itself: final enforcement of a provisional coercive sum.

Subsection (c)(3) reaches "[t]he judgment, or the cause of action or claim for relief on which the judgment is based." The first prong is not surplusage. It was added deliberately, and to correct a construction of the earlier statute. The 1962 uniform act reached only "[t]he cause of action on which the judgment is based." *See, e.g.*, Conn. Gen. Stat. § 50a-34(b)(3). The drafters of the 2005 act observed that "[b]ased on this 'cause of action' language, some courts interpreting the 1962 Act have refused to find that a public policy challenge based on something other than repugnancy of the foreign cause of action comes within this exception," and explained that the new subsection "rejects this narrow focus by providing that the forum court may deny recognition if either the cause of action or the judgment itself violates public policy." N.C. Gen. Stat. § 1C-1853 cmt. 8.

Decisions construing the 1962 formulation are therefore of limited force here. *Cf. Jaffe v. Accredited Sur. & Cas. Co.*, 294 F.3d 584 (4th Cir. 2002); *Society of Lloyd's v. Mullin*, 255 F. Supp. 2d 468 (E.D. Pa. 2003). Both predate the 2005 revision, and neither construed the language North Carolina enacted.

Courts have denied recognition on the first prong where the *effect* of enforcement, rather than the nature of the claim, offended the forum's policy. In *In re Carmona*, 580 B.R. 690 (Bankr. S.D. Tex. 2018), the court found the underlying cause of action not repugnant, yet held the foreign judgments themselves repugnant because they determined fault a second time, in the teeth of a forum policy condemning exactly that.

Enforcement here would produce a comparable result. The €150,000,000 was never measured by any loss; no finding of loss in that amount was made. It was granted as "provisional measures" in summary proceedings, and the arbitrator granted it while acknowledging a "potential restitution risk"—that Conservatrix might be unable to repay if it did not prevail on the merits—which he thought unlikely. Doc. 38 at 4; Doc. 24-2 at p. 24 ¶ 6.20, p. 26 ¶ 6.27. Conservatrix is now in liquidation. No award on the merits has ever been rendered. Doc. 38 at 5.

The petitioners said as much in 2024, representing to this Court in opposing dismissal that "[r]espondents can proceed in the main proceeding, and seek repayment of amounts paid pursuant to the Award," and that under the governing rules "[t]he decision on the provisional relief shall not in any way prejudice the arbitral tribunal's ultimate ruling in the arbitral proceedings on the merits." Doc. 33 at 7 (quoting 2015 NAI Rules art. 35(5)). That was their answer to the provisional character of the award, and it cannot be given today. Conservatrix is in liquidation, and their further representation—that "there has been no action in the main proceeding," *id.*—is no longer accurate.

To convert that provisional sum into a final North Carolina judgment now—while the merits remain open, and while the party that would collect could not restore the money if it did not prevail—is to transform an interim security device into a permanent recovery untethered to loss. The safeguard the arbitrator built in disappears, and the risk he discounted falls entirely on the respondents.

### C. The Amsterdam judgment.

On February 5, 2026, the District Court of Amsterdam held that "[t]he Court's decision on the original application in 2017 was therefore based on fraud committed by DNB in the proceedings, as referred to in Article 382(a) of the Code of Civil Procedure." Ex. A ¶ 5.28. The 2017 decision so described approved the transfer of Conservatrix to Trier Holding B.V. on the representation that the acquirer would provide capital sufficient to bring the solvency capital ratio to at least 135 percent. *Id.* ¶ 5.18. That representation is the recapitalization commitment the arbitrator enforced. Doc. 38 at 3; Doc. 24-2 at pp. 13–14 ¶ 3.11.[4]

The ground invoked is subsection (c)(3), not subsection (c)(2), which reaches fraud in the rendering proceeding itself. Subsection (c)(3) poses a different question: whether *this judgment*, enforced by this Court on these facts, would injure public confidence in the administration of the law. A provisional coercive sum, unliquidated, sought while the merits are undecided, arising from an approval a court of the rendering country has adjudged procured by fraud upon it, is that case.

The petitioners will answer that the fraud was DNB's, that DNB is not a party here, and that the applicant in Amsterdam was the former shareholder rather than Mr. Lindberg. Nothing in § 1C-1853 conditions a ground for nonrecognition on the resisting party's participation in the proceeding where the facts were found. The subsection asks what recognition would do, not who litigated abroad.

---

[4] Proceedings before the Enterprise Chamber of the Amsterdam Court of Appeal to determine compensation for the 2017 transfer remain pending, with a court-appointed expert investigation underway. Ex. A ¶¶ 3.12–3.15. The respondents do not ask the Court to await them.

Nor is it an answer that the fraud was found in a different proceeding. That is the reason the ground is available. The rule the petitioners invoke exists to stop a losing litigant from relitigating what it could have contested: the fraud "must relate to matters *other than issues that could have been litigated*." *Mullin*, 255 F. Supp. 2d at 473 (quotation omitted). These facts could not have been contested anywhere.

The Act's commentary draws the same line in the neighbouring subsection, distinguishing *extrinsic* fraud—conduct depriving a party of the opportunity to present its case—from *intrinsic* fraud, such as false testimony at a hearing actually held. § 1C-1853 cmt. 7. DNB's concealment was of the first kind. It did not corrupt the proof at a hearing; it kept the subject out of every forum.

The concealment was practised by the supervisory authority itself, upon the court that approved the transfer, and DNB withheld the documents that would have revealed it—the Submission Protocol, the Recapitalization Commitment, the reinsurance treaty—invoking supervisory confidentiality. Ex. A ¶¶ 5.19–5.20, 6.2. Those documents were ordered produced for the first time on February 5, 2026. *Id.* ¶ 6.2. DNB was not a party to the arbitration and was subject to no arbitral process. No tribunal in the chain that produced the Rotterdam order—not the arbitrator in summary proceedings, not the Court of Rotterdam on an exequatur application—had power to reach the regulator or its file.

That separates this from the fraudulent inducement of a contract, which a defendant meets with discovery and cross-examination in the same case. A regulator's concealment, shielded by statutory confidentiality, cannot be met by a

party that is not the supervised entity, in a forum to which the regulator is a stranger. The result is an obligation no court has been able to test. Enforcing it finally and in full is what would injure public confidence in the administration of law.

**D. The second prong of subsection (c)(3) is pressed and preserved.**

Subsection (c)(3) reaches not only the judgment but "the cause of action or claim for relief on which the judgment is based." That claim for relief is the 135 percent recapitalization commitment, a condition of a transfer plan approved on a record a Dutch court has held was procured by fraud upon it. Ex. A ¶¶ 5.18, 5.28. The clause speaks of the claim for relief, not the abstract form of action pleaded. The respondents know of no North Carolina decision applying it to an obligation of that origin, and none rejecting it. The ground is pressed and preserved.

**E. Comity supplies no alternative route.**

The petitioners have also asked, since 2024, for judgment "under N.C. Gen. Stat § 1C-1853 *or under principles of comity*." Doc. 43 at 7; *see* § 1C-1852(d). Comity offers no separate path. Their own authority conditions it: a foreign decree earns comity where the parties had notice and an opportunity to be heard, the rendering court had jurisdiction, and the decree does not offend public policy. *Nahar v. Nahar*, 656 So. 2d 225, 229 (Fla. Dist. Ct. App. 1995), *cited in* Doc. 43 at 6. The Supreme Court's formulation is the same, conditioning comity on there being "nothing to show . . . fraud in procuring the judgment." *Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895). What defeats recognition under § 1C-1853(c)(3) defeats comity for the same reasons.

**F. The burden of reasonableness belongs to the petitioners.**

If the Court finds a subsection (c) ground, the inquiry does not end with the respondents. "A party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in subsection (c) of this section exists. *The party seeking recognition of the judgment has the burden of establishing that, as a matter of law, recognition would nevertheless be reasonable under the circumstances.*" § 1C-1853(g). The Court of Appeals' allocation of burdens cites that subsection. *Van Faassen v. Lindberg*, 181 F.4th 480, 487 (4th Cir. 2026). Whatever the petitioners say about the 2017 transaction, they say it carrying that burden, and must carry it as a matter of law.

**CONCLUSION**

The respondents respectfully request that the Court (1) decline to enter judgment for €150,000,000, no court having determined that the sixty-day condition occurred or fixed that sum as due; (2) deny recognition of the Rotterdam order under § 1C-1853(c)(3) unless the petitioners establish, as a matter of law, that recognition would nevertheless be reasonable, § 1C-1853(g); and (3) state the facts specially and state separately its conclusions of law as to each ground, as § 1C-1853(i) requires.

[SIGNATURE PAGE FOLLOWS]

Dated: September 18, 2026

Respectfully submitted,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

*/s/ Vivek Ramachandran*
Vivek Ramachandran
Dhamma Law, PLLC
418 Broadway, Suite N
Albany, NY 12207
202-860-4084
Email: vramachandran@dhammalaw.com
Special Appearance Counsel

*Counsel for Respondents Greg Evan Lindberg, Trier Holding B.V., Netherlands Insurance Holdings, Inc., and NIH Capital, LLC*

## CERTIFICATE OF WORD COUNT

Pursuant to the Court's Order of August 26, 2026 (Doc. 74 ¶ 3), the undersigned certifies that this supplemental response contains 3,982 words, exclusive of the caption, signature blocks, and certificates, and therefore complies with the 4,000-word limit.

Dated: September 18, 2026

*/s/ Kenneth Barnes*
Kenneth Barnes

*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: September 18, 2026

*/s/ Kenneth Barnes*
Kenneth Barnes

*Counsel for Respondents*