IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| J. ROBERT VAN FAASSEN, LLM, and ELEONORA L. ZETTELER, LLM, in their capacities as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.,<br><br>Petitioners,<br><br>v.<br><br>GREG EVAN LINDBERG; TRIER HOLDING B.V.; NETHERLANDS INSURANCE HOLDINGS, INC.; NIH CAPITAL, LLC,<br><br>Respondents. | Case No. 1:23-cv-00879 |

**SUPPLEMENTAL REPLY IN SUPPORT OF PETITIONERS' MOTION TO CONFIRM DUTCH JUDGMENT**

This Court and the Fourth Circuit have already determined that the February 17, 2020 judgment of the Court of Rotterdam (the "Dutch Judgment") is a "final, conclusive, and enforceable" judgment under the North Carolina Uniform Foreign-Country Money Judgments Recognition Act (the "NC Act"). That determination cannot be revisited, and Respondents have not carried their burden to establish any statutory ground for nonrecognition. The Court should therefore grant Petitioners' Motion to Confirm.

**PROCEDURAL HISTORY**

Petitioners petitioned both to confirm a January 31, 2020 arbitral award (the "Award") of the Netherlands Arbitration Institute under Chapter 2 of the Federal

Arbitration Act ("FAA") and to recognize and enforce the Dutch Judgment under the NC Act. *See* ECF No. 24. In response, Respondents moved to dismiss both claims. *See* ECF No. 27. This Court denied Respondents' motion to dismiss, holding that the Dutch Judgment "constitutes a foreign-country judgment under the [NC] Act." ECF No. 38 at 14.

Thereafter, Petitioners filed a motion to confirm the Award under the FAA and to enforce and recognize the Dutch Judgment under the NC Act or comity ("Motion to Confirm"). *See* ECF No. 42. Following briefing, this Court confirmed the Award under the FAA, *see* ECF Nos. 52–53, but did not reach Petitioners' alternative requests for recognition and enforcement under the NC Act or comity. *See generally* ECF No. 52.

The Fourth Circuit later reversed under the FAA but, like this Court, held that the Dutch Judgment "is a foreign-country judgment subject to recognition under the [NC] Act," *van Faassen v. Lindberg*, 181 F.4th 480, 487 (4th Cir. 2026), i.e., that the Dutch Judgment falls under the NC Act. The panel further acknowledged that "[t]he party seeking recognition of the judgment bears the burden of proving that the Act applies, while the party resisting recognition bears the burden to establish certain defenses." *Id.* It thus affirmed the denial of the motion to dismiss and remanded "for the district court to address Petitioners' motion to enforce the Dutch judgment" under the NC Act. *Id.*

On remand, the Court imposed a briefing schedule allowing Respondents to file a supplemental response to the Motion to Confirm. *See* ECF No. 74. It stated that, in resolving the Motion to Confirm, the Court would consider the briefing filed at ECF Nos. 43, 49, and 51 and relevant briefing incorporated by reference into those briefs. *See* ECF

No. 74. The Court directed Respondents not to rehash "old and already rejected arguments." ECF No. 74 at 5.

## ARGUMENT

Many of Respondents' arguments are foreclosed by this Court's prior rulings, the Fourth Circuit's decision, and Respondents' failure to timely raise previously available defenses. To the extent there are any arguments that are not foreclosed, Respondents have not established a statutory ground for nonrecognition, recognition remains reasonable under the circumstances, and the Dutch Judgment is independently entitled to comity.

### I. All arguments, other than certain arguments in support of nonrecognition under N.C. Gen. Stat. § 1C-1853, are foreclosed.

Respondents argue—for the first time—that no Dutch court has found that Respondents failed to comply with the Award or "liquidated" the Award, so this Court cannot enter judgment on the Dutch Judgment. *See* ECF No. 78 at 4–5. They claim that this is not the same argument that this Court and the Fourth Circuit have rejected, *see id.* at 4—that the judgment is not final—but it is.

If a judgment falls under the NC Act, recognition can only be refused if grounds for nonrecognition listed in N.C. Gen. Stat. § 1C-1853 exist. Respondents do not claim that the alleged lack of "liquidation" triggers any of those grounds. Thus, their argument must depend on the Dutch Judgment not falling under the NC Act as a foreign-country money judgment to begin with. But this Court has already held, and the Fourth Circuit has already affirmed, that the Dutch Judgment is a "final, conclusive, and enforceable" money judgment under the NC Act. ECF No. 38 at 14; *van Faassen*, 181 F.4th at 487.

Additionally, a party cannot raise an issue for the first time after remand, *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 103 (4th Cir. 2013) (quotation omitted), if the issue was known at the time it could first have been raised. *See United States v. Chittenden*, 896 F.3d 633, 639 (4th Cir. 2018). Respondents do not claim—nor could they—that this argument was unavailable to them before this Court held, and the Fourth Circuit affirmed, that the Dutch Judgment falls under the NC Act.[1]

Even if Respondents had not waived this argument, they cite nothing to support that an obligation must be "liquidated" to be enforceable under the NC Act. In *de Fontbrune v. Wofsy*, 838 F.3d 992 (9th Cir. 2016), which concerned French *astreinte*, the petitioner did not seek to enforce the earlier liability judgment—he only sought to enforce the judgment imposing the penalty for noncompliance with the earlier judgment. *See id.* at 995. And the EU regulations Respondents cite merely provide that the amount of a penalty payment needs to be determined. *See* ECF No. 78 at 5 (citing EU Regulation No. 1215/2012, art. 55; EC Regulation No. 44/2001, art. 49). The amount of the payment here, however, has already been determined and was found to be "immediately payable." ECF No. 24-2 at 34–35. Moreover, the 60 days have elapsed, and Trier Holding B.V. ("Trier") did not restore Conservatrix's solvency capital ratio ("SCR").

---

[1] These same reasons foreclose Respondents' argument, which they "preserve, but do not press," that the Dutch Judgment imposes a penalty. *See* ECF No. 78 at 3.

## II. Respondents have not met their burden of establishing grounds for nonrecognition.

Courts may refuse recognition of judgments that fall under the NC Act only if the party resisting recognition proves that specific enumerated grounds for nonrecognition in N.C. Gen. Stat. § 1C-1853(c) are met. N.C. Gen. Stat. §§ 1C-1853(a), (g). The grounds for nonrecognition in N.C. Gen. Stat. § 1C-1853(c) are "nonmandatory," meaning "[t]he forum court has discretion to decide whether or not to refuse recognition based on one of these grounds," N.C. Gen. Stat. § 1C-1853, cmt. 3.[2]

Respondents' only argument for nonrecognition is that "[t]he judgment, or the cause of action or claim for relief on which the judgment is based, is repugnant to the public policy of this State or of the United States." N.C. Gen. Stat. § 1C-1853(c)(3). This is a "stringent test":

> Public policy is violated only if recognition or enforcement of the foreign-country judgment would tend clearly to injure the public health, the public morals, or the public confidence in the administration of law, or would undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel.

N.C. Gen. Stat. § 1C-1853, cmt. 8 (quotation omitted); *see also Savage v. Zelent*, 243 N.C. App. 535, 546, 777 S.E.2d 801, 809 (2015).

---

[2] Respondents do not assert any mandatory grounds for nonrecognition. *See* N.C. Gen. Stat. § 1853(b), cmt. 3.

**A. Respondents' argument that the Dutch Judgment represents a "provisional sum" does not warrant denying recognition.**

Respondents argue that enforcing the Dutch Judgment would offend public policy because it represents a "provisional sum," unmeasured by loss. *See* ECF No. 78 at 11. This is just another way of arguing that the Dutch Judgment is not "final, conclusive, and enforceable," contrary to what this Court and the Fourth Circuit already have held. Even assuming otherwise, Respondents could have made this argument before but did not, thereby waiving it. And even on the merits, the argument fails.

*i. Respondents are foreclosed from asserting grounds for nonrecognition that are not based on new evidence.*

As already explained, Respondents cannot on remand raise an issue for the first time that they could have raised initially. *Liberty Univ.*, 733 F.3d at 103; *Chittenden*, 896 F.3d at 639. Nothing about the Dutch Judgment's supposed "provisional" nature has changed since Respondents responded to the Motion to Confirm years ago. In that response, Respondents raised no grounds for nonrecognition. *See generally* ECF No. 49. They cannot now assert new grounds for nonrecognition based on an argument that was previously available to them.

Additionally, the NC Act places the burden on the party opposing recognition to establish defenses to recognition. N.C. Gen. Stat. § 1C-1853(f)–(h); *see also van Faassen*, 181 F.4th at 487 ("[T]he party resisting recognition bears the burden to establish certain defenses." (citations omitted)). Defenses to the NC Act are thus affirmative defenses. *See Jenner v. Ecoplus, Inc.*, 224 N.C. App. 275, 737 S.E.2d 121 (2012) (defendant presented

no evidence or argument to satisfy its burden in opposing recognition and thus "the trial court was obligated to recognize the judgment"); *cf. de Fontbrune v. Wofsy*, 409 F. Supp. 3d 823, 832 (N.D. Cal. 2019), *rev'd and remanded on other grounds*, 39 F.4th 1214 (9th Cir. 2022); *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11, 38 (D.D.C. 2023) (noting that whether a judgment is repugnant to public policy is an affirmative defense). And Federal Rule of Civil Procedure 8 requires that affirmative defenses generally be set forth in a responsive pleading. *Holland v. Cardiff Coal Co.*, 991 F. Supp. 508, 515 (S.D. W. Va. 1997) (citing *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983)).

Respondents cite nothing to support that "[a]n affirmative defense is raised when the claim it answers is adjudicated," *see* ECF No. 78 at 7, and Federal Rule of Civil Procedure 8 suggests otherwise. Indeed, Respondents' argument would mean that an affirmative defense need not even be raised until *after* liability on the underlying claim is settled. That is not how affirmative defenses work. *Martin v. Southwestern Va. Gas Co.*, 135 F.3d 307 (4th Cir. 1998), which Respondents claim supports their argument that forfeiture does not bar their defense, *see* ECF No. 78 at 8, is inapposite; there, unlike here, the defendants did, in their answer, raise the affirmative defense at issue, the court just did not rule on it. *See Martin*, 135 F.3d at 309 n.1.

*ii. A judgment representing a "provisional sum" is not a valid ground for denying recognition.*

To argue that the Dutch Judgment represents a "provisional sum" unmeasured by loss, Respondents suggest that recognizing the Dutch Judgment given the possibility of a

second judgment concerning the same dispute between the parties would violate public policy. Even if Respondents had not waived this argument, and to the extent that the Court has not already rejected it, it is unpersuasive.

First, although couched as an argument for nonrecognition, the alleged provisional nature of the Dutch Judgment is really an argument that the Dutch Judgment is not final. This Court has already rejected the premise of this argument, *see* ECF No. 38 at 14, and determined that enforcing the Award even if merits proceedings were ongoing raises no "concerns of inequity." ECF No. 52 at 7; *see also* ECF No. 38 at 8 ("It is possible that someone may pursue further action in arbitration to determine whether the amount the arbitrator required the respondents to pay should be adjusted or whether some refund might be due, but that does not mean the award as issued is not binding.").

Second, Respondents do not cite anything to suggest that recognition in light of the possibility of a second judgment violates North Carolina or United States public policy. Respondents cite a decision in which a court found that enforcing a foreign judgment that concerned the same rights to property that had already been settled in a prior judgment would offend Texas public policy. *See* ECF No. 78 at 10 (citing *In re Carmona*, 580 B.R. 690 (Bankr. S.D. Tex. 2018)); *In re Carmona*, 580 B.R. at 713–14. The court found that recognition of the *second* judgment would violate *Texas* public policy because "all claims and controversies—including the [sale of the property]—were settled by the [final divorce decree]." *In re Carmona*, 580 B.R. at 714 (citation omitted). It then found that recognition would also be barred by *res judicata* because the prior divorce decree meant that the second

judgment conflicted with another final and conclusive judgment, the divorce decree. *Id*. at 717.

The burden is on Respondents to prove repugnancy "to the public policy of *this State or of the United States*." N.C. Gen. Stat. § 1C-1853(c)(3) (emphasis added); N.C. Gen. Stat. § 1C-1853(g). Respondents cite nothing about North Carolina or United States public policy, rather they cite a case analyzing inapplicable Texas public policy and addressing a different factual scenario than here, i.e., recognition of a judgment that resolved rights to property that had been resolved by a prior judgment. Here, there is no second judgment, much less attempt to enforce a second judgment—there is merely the *possibility* of a second judgment at some later date. Respondents have not met their burden to show that recognizing the Dutch Judgment when that possibility exists would violate North Carolina or United States public policy.[3] Unlike in *Carmona*, there is only one judgment in front of the Court and thus no risk of recognition allowing double recovery.

**B. Nothing in the ruling from the Amsterdam District Court suggests that the Dutch Judgment violates public policy.**

Respondents next argue that recognition in the face of an order (the "Amsterdam Order") from the Amsterdam District Court (the "Amsterdam Court") finding that Conservatrix's regulator committed fraud against Conservatrix's former shareholder would

[3] Respondents have presented no evidence—nor does any such evidence exist—of pending claims against Conservatrix or the existence of any proceedings that could result in Conservatrix's obligation to pay Respondents. Respondents have also presented no evidence that Conservatrix would be unable to pay Respondents if a judgment arose in Respondents favor.

injure public confidence such that this Court should exercise its discretion to bar recognition under N.C. Gen. Stat. § 1C-1853(c)(3). *See* ECF No. 78 at 12. What would injure public confidence is letting Respondent Greg Lindberg benefit from his own wrongdoing at the expense of policyholders.

Conservatrix Groep, Conservatrix's former shareholder, was forced to transfer its Conservatrix shares to Trier—a Lindberg-owned company—through a May 15, 2017 court order (the "2017 Order"). ECF No. 78-2 at 24. Conservatrix Groep later sought to revoke the 2017 Order. It alleged that De Nederlandsche Bank ("DNB"), Conservatrix's regulator, had, at the time of the transfer, informed Conservatrix Groep that Trier would be contributing capital to increase Conservatrix's SCR but concealed that Conservatrix would also be entering a reinsurance arrangement with Colorado Bankers Life Insurance Company ("CBL"), another Lindberg-owned company, to increase Conservatrix's SCR. ECF No. 78-2 at 24, 42, 44; ECF No. 24-6 at 4. The Amsterdam Court found that DNB fraudulently withheld this information from Conservatrix Groep and the court, which prevented "full debate" of whether less-drastic alternatives to the forced transfer existed. ECF No. 78-2 at 24, 48. Importantly, though, the court declined to revoke the 2017 Order. *Id.* at 24.

To be clear, the 2017 Order *benefited* Respondents. It allowed Respondents to acquire Conservatrix's shares as part of Lindberg's scheme to enter reinsurance agreements and "engage[] in circular, non-economic transactions among [his] web of entities using insurance company funds" through false and misleading statements to insurance

policyholders and regulators. *See* Factual Basis at 1–2, *United States v. Lindberg*, No. 3:23-cr-00048 (W.D.N.C. Nov. 11, 2024) (ECF No. 42). The withheld information detailed *Respondents'* plan to reinsure Conservatrix with another company that Lindberg, who recently pled guilty to making "fraudulent statements . . . to regulators about his insurance businesses," owned. *See* Def's Sentencing Memo. at 7, *United States v. Lindberg*, No. 3:23-cr-00048 (W.D.N.C. May 14, 2026) (ECF No. 145). Information about the existence of Lindberg's *own reinsurance agreement* with Conservatrix was never withheld from Respondents, and they were not the victims of fraud.

Respondents cite *Society of Lloyd's v. Mullin*, 255 F. Supp. 2d 468 (E.D. Pa. 2003), for the proposition that fraud that violates public policy must "relate to matters other than issues that could have been litigated," ECF No. 78 at 13 (quoting *Mullin*, 255 F. Supp. 2d at 473), suggesting that the Amsterdam Order falls within that scope. The full quote from *Mullin* reads: "the fraud must relate to matters other than issues that could have been litigated and must be a fraud *on the court*." *Mullin*, 255 F. Supp. 2d at 473 (quotation omitted). In stating this, *Mullin* was analyzing fraud under a provision analogous to N.C. Gen. Stat. § 1C-1853(c)(2)—a provision that Respondents claim not to invoke.[4] *See* ECF

---

[4] Under, N.C. Gen. Stat. § 1C-1853(c)(2), courts have discretion to deny recognition if the "judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case." N.C. Gen. Stat. § 1C-1853(c)(2). "[O]nly extrinsic fraud—conduct of the prevailing party that deprived the losing party of an adequate opportunity to present its case—is sufficient." N.C. Gen. Stat. § 1C-1853, cmt. 7. Intrinsic fraud is not a proper basis for denying recognition because such fraud should be raised and dealt with in the rendering court. *Id.*

No. 78 at 12; *Mullin*, 255 F. Supp. 2d at 473 (quotation omitted). And Respondents do not invoke it for good reason: because the Dutch Judgment at issue here was not procured by fraud on the rendering court.[5] There are no allegations of fraud in the Dutch Judgment proceedings or in the underlying arbitral proceedings.

N.C. Gen. Stat. § 1C-1853(c)(3) provides a discretionary basis for nonrecognition when a judgment or cause of action or claim on which a judgment is based—here the Dutch Judgment and an award based on breach of contract—is repugnant to North Carolina or United States public policy. Recognizing a judgment based on breach of contract is not repugnant to North Carolina or United States public policy, and Respondents have not proved otherwise, nor have they articulated what relevant public policy recognition would violate.

The Amsterdam Order is irrelevant. Not only were none of the parties to this case parties to the proceeding in the Amsterdam Court, but the order does not address Respondents' breach that was the subject of the arbitration proceedings that led to the judgment that Petitioners seek to recognize, and the Amsterdam Court declined to revoke the 2017 Order. *See, e.g.*, *Shanghai Com. Bank Ltd. v. Chang*, 183 Wash. App. 1007 (2014) (holding that respondent had not established grounds for nonrecognition where asserted grounds conflated two separate, parallel foreign actions and analyzed grounds under action

[5] Although the order from the Amsterdam District Court has no impact on the Dutch Judgment, even if it did, as this Court has already observed, "should the arbitrator later conclude that respondents are entitled to a refund or adjustment, there is nothing to indicate the petitioners would not comply." ECF No. 52 at 6.

that petitioner was not seeking to recognize judgment from). Additionally, Respondents have not provided evidence as to when they discovered this fraud—only when the Amsterdam Order was issued. *See* ECF No. 78 at 6. They have thus not met their burden to show that this evidence was unavailable during earlier briefing and has not been waived. *See supra* Part I; Section II.A.i.

**III. Recognition is reasonable.**

If a party resisting recognition meets its burden of establishing a ground for nonrecognition under § 1C-1853(c), the judgment will still be recognized if the party seeking recognition establishes, as a matter of law, that recognition would be reasonable under the circumstances. N.C. Gen. Stat. § 1C-1853(g). Even if a discretionary ground for nonrecognition applied, recognition would be reasonable.

If anything, recognizing and enforcing the Dutch Judgment would further public policy by preventing Respondents from evading the obligations they undertook in 2017—obligations an arbitral panel found they breached, a determination affirmed by the Court of Appeals of The Hague and the Netherlands' highest court, and obligations Respondents have been evading since 2019. *See* ECF No. 24-2, ¶¶ 3.15–3.28; ECF Nos. 24-6, 24-8. Respondents cannot use evidence that a third party was defrauded—to Respondents' benefit—to escape their obligations that arose from Lindberg's fraud, which resulted in CBL being put into rehabilitation and breaching its reinsurance agreement with Conservatrix. *See* ECF No. 24-2 at 15.

It would instead be reasonable to attempt to make whole Conservatrix's policyholders, who had no role in the fraud and who are the ones who stand to benefit from enforcement of the Dutch Judgment. Lindberg was placed in a state court receivership,[6] and a Special Master was appointed to calculate the losses suffered by each of Lindberg's victims, calculate "any amounts already received by each victim," and "liquidate and/or repatriate any [of Lindberg's] available assets for the benefit of [Lindberg's] victims." Order Appointing Special Master at 6, *United States v. Lindberg*, No. 3-23-cr-00048 (W.D.N.C. Jan. 23, 2025) (ECF No. 56). The Special Master has already facilitated the distribution of hundreds of millions of dollars to Lindberg's victims, and it is important that the Dutch Judgment is recognized so that Conservatrix's policyholders can be repaid for the harm Respondents inflicted on them.

## IV. Comity is extended to orders for interim equitable relief.

Respondents argue that for the same reasons recognition should be denied under § 1C-1853(c)(3), the Dutch Judgment is not entitled to comity. ECF No. 78 at 14. For the same reasons Respondents' asserted public policy violations do not bar recognition under the NC Act, public policy is not a bar to extending the Dutch Judgment comity. And, as

---

[6] Order Appointing a General Receiver over Debtor Greg E. Lindberg and his Assets at 13-14, *Universal Life Ins. Co. v. Lindberg*, No. 24CV021246 (Wake Co. Super. Ct. Aug. 25, 2024), *appeal docketed*, No. P24-546 (N.C. Ct. App. Aug. 9, 2024), https://portal-nc.tylertech.cloud/app/RegisterOfActions/#/DF29EAD3491C72A5B69E7560D3311F901FBB964BBFF789217DBC828DE1434BED473146E2E4F89F1707187EB9C1BB2463804F2C2FF6920A9FD580C6F8FD6B379304EAAA92A897B60BE917AADECFE93C51/anon/portalembed.

Petitioners have observed, public policy dictates that "debtors abroad ought not to be able to walk away from their foreign court-imposed obligations by spiriting away their money or assets to the United States." ECF No. 33 at 14 (quoting *Cardenas v. Solis*, 570 So. 2d 996, 999 (Fla. Dist. Ct. App. 1990)); *cf. Sparrow v. Fort Mill Holdings, LLC*, 272 N.C. App. 322, 330, 846 S.E.2d 533, 539 (2020) (as applied to sister-state judgments, the public policy exception has been narrowed "almost to the vanishing point").

**CONCLUSION**

For the reasons above, in Petitioners' Memorandum in Support of Motion to Confirm, ECF No. 43, and Petitioners' Reply in Support of Motion to Confirm, ECF No. 51, Petitioners request an order granting their Motion to Confirm, ECF No. 42, by recognizing and enforcing the Dutch Judgment under N.C. Gen. Stat. § 1C-1853 *et seq.* or under principles of comity and entering judgment thereon.

Respectfully submitted, this the 5th day of October, 2026.

*/s/* Kate E. Giduz
Jeffrey E. Oleynik (N.C. Bar No. 14416)
Brooks, Pierce, McLendon,
Humphrey & Leonard, LLP
2000 Renaissance Plaza
230 N. Elm Street
Greensboro, NC 27401
Tel: (336) 271-3182
Fax: (336) 232-9182
joleynik@brookspierce.com

Greg Gaught (N.C. Bar No. 57616)
Kate E. Giduz (N.C. Bar No. 60887)
Brooks, Pierce, McLendon,

Humphrey & Leonard, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, NC 27601
Tel: (919) 882-2528
Fax: (336) 232-9108
ggaught@brookspierce.com
kgiduz@brookspierce.com

*Counsel for Petitioners*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing document complies with the word count limits established in Local Civil Rule 7.3(d) and this Court's August 26, 2026 Order Authorizing Limited Supplemental Briefing, *see* ECF No. 74.

*/s/* Kate E. Giduz
Kate E. Giduz
*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon counsel of record through the Court's Case Management and Electronic Case Filing System.

This the 5th day of October, 2026.

*/s/* Kate E. Giduz
Kate E. Giduz
*Counsel for Petitioners*