# EXHIBIT I

Vijftiende openbare verslag in het faillissement van Nederlandsche Algemeene Maatschappij van Levensverzekering Conservatrix N.V.
(Fifteenth public report of the bankruptcy trustees of Conservatrix N.V.)
dated Utrecht, 31 July 2026, signed by Noor Zetteler and Robert van Faassen, Curatoren Conservatrix

Pages 2–12: the report as published by the petitioners at www.conservatrix.nl/openbare-verslagen/ (11 pages, in Dutch), downloaded 8 October 2026.
Pages 14–21: machine-generated English translation (not certified; the Dutch text controls).

The estate position as of 31 July 2026 is at paragraph 3.1 (Dutch pages 2–3 = Ex. I at 3–4).

WYN STAEL ADVOCATEN

# VIJFTIENDE OPENBARE VERSLAG IN HET FAILLISSEMENT VAN NEDERLANDSCHE ALGEMEENE MAATSCHAPPIJ VAN LEVENSVERZEKERING CONSERVATRIX NV

**Inhoudsopgave**


| | | |
|---|---|---|
| 1. | Inleiding | p. 1 |
| 2. | Portefeuille-overdracht | p. 1 |
| 3. | Toestand van de boedel | p. 2 |
| 4. | Verificatievergadering | p. 4 |
| 5. | Crediteurencommissie | p. 5 |
| 6. | Communicatie met polishouders | p. 5 |
| 7. | Lopende procedures | p. 6 |
| 8. | Politieke aandacht voor Conservatrix | p. 10 |
| 9. | Onderzoek oorzaken faillissement | p. 11 |
| 10. | Opvolgend curator en volgend openbaar verslag | p. 11 |


## 1 Inleiding

1.1 Dit is het vijftiende openbare verslag van curatoren ex art. 73a Faillissementswet. Het eerste verslag werd uitgebracht op 18 december 2020, het tweede verslag op 19 maart 2021, het derde verslag op 23 juni 2021, het vierde verslag op 20 september 2021, het vijfde verslag op 23 december 2021, het zesde verslag op 5 april 2022, het zevende verslag op 22 juli 2022, het achtste verslag op 30 december 2022, het negende verslag op 6 juni 2023, het tiende verslag op 24 november 2023, het elfde verslag op 30 maart 2024, het twaalfde verslag op 30 juli 2024, het dertiende openbare verslag op 31 januari 2025 en het veertiende openbare verslag op 31 juli 2025.[1]

Aan dit verslag kunnen geen rechten worden ontleend.

## 2 Portefeuille-overdracht

2.1 Voor een uitgebreidere toelichting over de portefeuille-overdracht verwijzen curatoren naar het negende openbare faillissementsverslag. Als gevolg van de gemaakte afspraken met Waard Leven N.V. komt een gedeelte van de uitbetalingen en nabetalingen voor rekening van de boedel. In totaal gaat het om een geschat bedrag van afgerond € 16.614.000,=. Tot op heden hebben curatoren hiervan een bedrag van afgerond € 16.350.000,= kunnen uitkeren. In de afgelopen

[1] Deze verslagen zijn gepubliceerd op www.conservatrix.nl

WYN STAEL ADVOCATEN

verslagperiode is een bedrag van afgerond € 272.000,= uitgekeerd, zodat er nog een bedrag van € 263.000,= resteert dat aan de polishouders die daar recht op hebben, kan worden uitgekeerd. De uitkering van dit bedrag kan echter nog steeds niet plaatsvinden, omdat curatoren niet beschikken over alle daartoe door de polishouder of begunstigde aan te leveren stukken/informatie. Curatoren blijven zich inspannen om ervoor te zorgen dat het resterende bedrag van € 263.000,= alsnog aan de polishouders kan worden uitgekeerd.

2.2 Ter voorkoming van misverstanden merken curatoren op dat voornoemde bedragen betrekking hebben op uitkeringen ten aanzien van verzekerde voorvallen die zich vóór de overdracht van de verzekeringsportefeuille aan Waard Leven N.V. hebben voorgedaan, maar waarvan het nog niet gelukt is de polishouder en/of de begunstigde te traceren. De uitkeringen hebben geen betrekking op de tijdens de verificatievergadering vastgestelde vorderingen.

2.3 In afgelopen verslagperiode hebben curatoren wederom getracht de ontbrekende informatie te verkrijgen, zodat de polishouders de bedragen ontvangen waar zij recht op hebben. Curatoren zullen deze werkzaamheden in de komende periode voortzetten om alsnog de benodigde informatie te verkrijgen.

## 3 Toestand van de boedel

3.1 De toestand van de boedel per 31 juli 2026 is als volgt weer te geven:

<u>Activa</u>

| | | | |
|---|---|---|---|
| Liquide saldi per 30 juli 2025 | € | 4.310.724,= | (1) |
| Commerciële hypothecaire leningen (afgerond) | € | 1.254.124,= | (2) |
| Onderhandse lening | € | 5.000,= | (3) |
| Vordering op Lindberg | | p.m. | (4) |

<u>Passiva</u> (in rang gecategoriseerd van hoog naar laag)

| | | |
|---|---|---|
| Nog te betalen boedelkosten | p.m. | (5) |
| Nog te betalen vennootschapsbelasting over 2021 | p.m. | (6) |

| | | | |
|---|---|---|---|
| Nog te verrichten 90%-uitbetalingen (schatting) | € | 263.000,= | (7) |
| Verzekeringsvorderingen (art. 213m lid 3 sub d Fw) | € | 59.065.819,=[2] | (8) |
| Schadevorderingen (art. 213m lid 3 sub f Fw) | € | 40.490.552,= | (9) |
| Premiedepotvorderingen | € | 13.275,= | |
| Belastingdienst: | € | 285.476,= | |
| Concurrent erkend: | € | 231.815,= | |

Toelichting

(1) Dit betreft het totaal van de saldi op de faillissementsrekening bij ABN AMRO en de (oorspronkelijke) betaalrekening van Conservatrix bij de Rabobank. In de afgelopen verslagperiode hebben curatoren ruim € 272.000,= aan nog niet uitbetaalde uitkeringen aan de polishouders voldaan (zie ook hiervoor paragraaf 2.1). Daarnaast hebben curatoren in de afgelopen verslagperiode een bedrag van afgerond € 550.000,= ontvangen als aflossing van verschillende commerciële hypotheken. Tevens zijn de lopende verplichtingen voor het in stand houden van de benodigde systemen (ICT, Finance, polisadministratie) voldaan. De verschillende mutaties hebben invloed op de hoogte van de liquide saldi.

(2) De commerciële hypothecaire leningen zijn niet overgenomen door Waard Leven N.V. De dekkingsgraad van de leningen (qua onderpand) is goed. De boedel ontvangt maandelijks afgerond € 8.300,= aan rente en aflossingen. In de afgelopen verslagperiode is in verband met verschillende aflossingen van commerciële hypotheken een bedrag van afgerond € 550.000,= ontvangen.

(3) Op deze lening wordt jaarlijks € 5.000,= afgelost. De rente bedraagt 3%. Curatoren verwachten dat de lening in komende verslagperiode volledig zal worden afgelost.

(4) De vordering op Lindberg bedraagt nominaal € 150 miljoen en vloeit voort uit een in het eerste kwartaal van 2020 ten gunste van Conservatrix gewezen arbitraal kort geding uitspraak. Voor de stand van zaken in de procedures

[2] Op de verificatievergadering is een bedrag van € 99.012.026,= geverifieerd. Dit bedrag is hoger omdat voor de polishouders die gedurende het faillissement een tussentijdse uitkering hebben ontvangen, niet de restantvordering van 10% is geverifieerd, maar de volledige vordering van 100%. Aan tussentijdse uitkeringen is tot op heden afgerond € 40.000.000,= uitgekeerd. Bij een eventuele toekomstige uitkering zal rekening worden gehouden met deze reeds gedane uitkeringen, zodat het voor de polishouders de facto geen verschil maakt dat een hoger bedrag is geverifieerd. Voor de leesbaarheid en het inzicht in een eventuele toekomstige uitkering hanteren curatoren in het openbare verslag het bedrag dat voor alle polishouders is gebaseerd op de restantvordering van 10%.

tegen Lindberg verwijzen curatoren naar paragraaf 7 van dit verslag.

(5) Dit zijn de lopende kosten die voortvloeien uit de werkzaamheden ten behoeve van de afwikkeling van het faillissement. Daarbij kan onder meer gedacht worden aan de kosten van curatoren en door hen in te schakelen adviseurs (onder wie advocaten in de VS en actuarieel geschoolde adviseurs) en aan de kosten om de IT-systemen, die nodig zijn voor een goede afwikkeling, draaiende te houden. In afgelopen verslagperiode hebben curatoren alle data en IT-systemen naar een nieuwe dienstverlener overgezet. Met de overgang naar de nieuwe dienstverlener wordt een maandelijkse besparing van afgerond € 20.000,- gerealiseerd.

(6) Over het jaar 2021 heeft de boedel een substantiële fiscale winst gerealiseerd. Daarover is vennootschapsbelasting verschuldigd. Over 2022 is een negatief fiscaal resultaat gerealiseerd. Eind 2024 hebben curatoren de aangifte vennootschapsbelasting over 2022 bij de Belastingdienst ingediend. De Belastingdienst heeft de aangifte vennootschapsbelasting 2022 – conform de aangifte van Conservatrix – in januari 2026 definitief vastgesteld. In overleg met de Belastingdienst heeft Conservatrix in afgelopen verslagperiode voor de vennootschapsbelasting over de jaren 2023 en 2024 een nihilaangifte kunnen indienen.

(7) Dit betreft de in paragraaf 2.1 bedoelde uitbetalingen, die pas kunnen plaatsvinden indien en zodra curatoren toereikende informatie ontvangen hebben van de betreffende polishouders c.q. begunstigden.

(8) Dit betreft het nog niet uitbetaalde deel van de vorderingen van de polishouders als gevolg van de generiek doorgevoerde korting van 10%.

(9) Dit betreft de aanspraken van polishouders als gevolg van het vervallen van winstdelingsregelingen en rendementsgaranties op toekomstige premiebetalingen.

## 4 Verificatievergadering

4.1 Het verificatieproces ten aanzien van de vorderingen van crediteuren (daaronder ook verstaan de verzekeringsvorderingen en de schadevorderingen van de polishouders) is afgerond. Voor een nadere toelichting op het verificatieproces

wordt verwezen naar de eerdere openbare verslagen (te raadplegen via de website www.conservatrix.nl).

## 5 Crediteurencommissie

5.1 Bij beschikking van 3 maart 2021 heeft de rechtbank Amsterdam op verzoek van enkele polishouders op de voet van artikel 74 Faillissementswet een voorlopige commissie van schuldeisers ingesteld, bestaande uit drie personen. De rechter-commissaris heeft een reglement voor deze commissie vastgesteld. Tijdens de verificatievergadering op 8 maart 2024 hebben curatoren aangegeven dat zij het wenselijk achten dat een definitieve crediteurencommissie wordt ingesteld.

5.2 Als gevolg van de afronding van de overdracht van de verzekeringsportefeuille van Conservatrix aan Waard Leven N.V., zijn de werkzaamheden van de crediteurencommissie aanzienlijk afgenomen. In overleg met de rechter-commissaris en het overgebleven lid van de crediteurencommissie hebben curatoren beoordeeld of het wenselijk is dat de crediteurencommissie gehandhaafd blijft. Dat is niet het geval. Curatoren zijn de leden van de crediteurencommissie erkentelijk voor hun adviezen en danken hen hierdoor voor de tijd en energie die zij als lid van de crediteurencommissie hebben besteed aan het faillissement.

## 6 Communicatie met polishouders

6.1 Alle schuldeisers (zowel de polishouders als de reguliere faillissementsschuldeisers) zijn voorafgaand aan de verificatievergaderingen geïnformeerd dat toekomstige communicatie vanuit curatoren niet meer per post, maar via de website van Conservatrix (www.conservatrix.nl) en per e-mail zal plaatsvinden.

6.2 Om ook in de toekomst door curatoren geïnformeerd te kunnen worden, is het van belang dat curatoren beschikken over de juiste contactgegevens van alle schuldeisers. Indien contactgegevens van schuldeisers wijzigen, kunnen zij de juiste contactgegevens via de website (www.conservatrix.nl/contactformulier) doorgeven.

WYN STAEL ADVOCATEN

## 7 Lopende procedures

7.1 Conservatrix is sinds begin 2020 partij bij een tweetal procedures tegen de heer Lindberg en aan hem gelieerde vennootschappen ("**Lindberg c.s.**"). Daarnaast is de heer Lindberg verwikkeld in een groot aantal (civiel- en strafrechtelijke) procedures in de Verenigde Staten. Ook deze procedures beïnvloeden (mogelijk) de positie van Conservatrix en worden hierna op hoofdlijnen toegelicht.

Procedures waarbij Conservatrix en/of curatoren partij zijn

7.2 Zoals gezegd is Conservatrix partij bij twee procedures tegen Lindberg c.s. De eerste procedure liep bij het Gerechtshof Den Haag en is door Lindberg c.s. jegens Conservatrix aanhangig gemaakt. Lindberg c.s. vorderen in die procedure vernietiging van een op 31 januari 2020 gewezen arbitraal kort geding vonnis. Voor de achtergronden van deze procedure verwijzen curatoren naar hun tweede openbare verslag onder 8.2 en 8.3. Op 29 maart 2022 heeft het gerechtshof een arrest gewezen dat als bijlage aan het zesde openbare verslag gehecht is. Curatoren zijn door het gerechtshof volledig in het gelijk gesteld. Dit betekent dat het genoemde arbitraal kort geding vonnis in stand blijft en dat Lindberg c.s. de dwangsom van € 150 miljoen nog steeds verschuldigd zijn. Lindberg c.s. hebben cassatie tegen dit arrest ingesteld. Op 26 mei 2023 concludeerde de Advocaat-Generaal tot verwerping van het cassatieberoep van Lindberg c.s. Op 1 september 2024 heeft de Hoge Raad het cassatieberoep van Lindberg c.s. verworpen. Daarmee is de arbitrale kort geding uitspraak definitief en zijn Lindberg c.s. een dwangsom van € 150 miljoen aan Conservatrix verschuldigd.

7.3 Op 19 oktober 2023 hebben curatoren bij de District Court for the Middle District of North Carolina (VS) een zogenoemde *petition to confirm* ingediend. De inzet van deze procedure is de erkenning in de Verenigde Staten van het arbitrale kort geding vonnis. Lindberg c.s. zijn verschenen in de erkenningsprocedure en hebben verweer gevoerd tegen het verzoek tot erkenning. Op 14 augustus 2024 heeft deze rechtbank einduitspraak gedaan in deze zaak. Het verzoek van de curatoren is (volledig) toegewezen. The District Court for the Middle District of North Carolina heeft het arbitrale kort geding vonnis erkend en daarnaast verduidelijkt dat Lindberg c.s. als gevolg van dat vonnis een bedrag van ruim $ 166 miljoen (het equivalent van € 150 miljoen inclusief rente) aan curatoren verschuldigd zijn. Op 12 september 2024 hebben Lindberg c.s. hoger beroep ingesteld tegen deze uitspraak bij The Fourth Circuit Court of Appeals. Op 14 juli 2026 heeft het Fourth Circuit Court of

Appeals het vonnis in eerste aanleg op één grond vernietigd en de zaak voor de verdere behandeling op een tweede grond terugverwezen naar de lagere rechter. In die terugverwijzingsprocedure zullen curatoren verzoeken om de vordering alsnog op de tweede grond toe te wijzen. Van belang is en blijft ook in het kader van deze procedure dat het de vraag is of er überhaupt verhaal mogelijk is op het vermogen van Lindberg c.s. in het geval van toewijzing van de vordering van curatoren.

7.4 Naast bovengenoemde procedure loopt er sinds begin 2020 een zogenoemde arbitrale bodemprocedure tegen Lindberg c.s. waarin door Conservatrix een schadevergoeding wordt gevorderd van Lindberg c.s. Deze procedure was geruime tijd aangehouden, maar is in juli 2024 hervat op initiatief van Lindberg c.s. In deze procedure zullen Lindberg c.s. zonder advocaat procederen, aangezien de voormalige advocaten van Lindberg c.s. niet langer voor hen optreden en zich dus hebben onttrokken. In de afgelopen verslagperiode hebben curatoren en Lindberg c.s. over en weer documenten opgevraagd die, indien de arbiters daartoe opdracht gaven, ter beschikking zijn gesteld. Vervolgens is de mondelinge behandeling gepland op 29 en 30 september 2026. Vanwege het feit dat Lindberg thans een gevangenisstraf uitzit, zal de zitting digitaal plaatsvinden.

7.5 Tot slot heeft Lindberg bij de Florida Court in de VS een procedure aanhangig gemaakt met als doel curatoren aansprakelijk te stellen voor een bedrag van € 348 miljoen (€ 88 miljoen voor kapitaalinjecties die hij heeft gedaan in het kader van de overname van Conservatrix in 2017, € 250 miljoen (schatting) in verband met schade die hij zou hebben geleden als gevolg van de verkoop van de portefeuille en € 10 miljoen aan honoraria en kosten die hij heeft gemaakt voor zijn verweer tegen de arbitragevorderingen van de curatoren). Curatoren hebben ten aanzien van deze procedure rechtsbijstand gezocht bij Amerikaanse advocaten.

<u>Overige procedures Lindberg c.s.</u>

7.6 De heer Lindberg is eigenaar van het Amerikaanse financiële conglomeraat Eli Global en (daarmee) van verschillende (verzekerings)bedrijven. De hiervoor besproken procedures tussen Lindberg c.s. en Conservatrix zijn twee van de vele procedures waarbij de heer Lindberg en zijn verzekeringsbedrijven betrokken zijn. De bij curatoren bekende procedures van Lindberg c.s. spelen zich alle af in de Verenigde Staten. Curatoren volgen deze procedures nauwgezet en worden daarin bijgestaan door een team van Amerikaanse advocaten.

7.7 Lindberg c.s. zijn ten eerste verwikkeld in een aantal civielrechtelijke procedures. De heer Lindberg en zijn bedrijven hebben te maken met oplopende schulden. Als gevolg van deze schulden zijn de heer Lindberg en zijn bedrijven op 22 april 2024 onder curatele gesteld ("*placed into receivership*") door de General Court of Justice of North Carolina. Daarnaast is de heer Lindberg op 25 augustus 2024 op verzoek van een schuldeiser (een andere verzekeraar) met een vordering van $ 524 miljoen persoonlijk onder curatele gesteld. De rechter heeft de heer Lindberg (onder andere) bevolen om onmiddellijk afstand te doen van al zijn activa en eigendommen en deze over te dragen aan de "*receiver*". De "*receiver*" heeft (onder meer) als taak om te voorkomen dat de heer Lindberg zijn activa en eigendommen verbergt van of achterhoudt voor zijn schuldeisers.

7.8 De heer Lindberg is eveneens strafrechtelijk aangesproken en door de Amerikaanse autoriteiten beschuldigd van omkoping en fraude in verband met zijn verzekeringsmaatschappijen. In één strafzaak is de heer Lindberg schuldig bevonden door de jury, in een tweede strafzaak heeft hij schuld bekend. Op 26 mei 2026 is hij vanwege deze strafbare feiten veroordeeld tot 144 maanden cel, gevolgd door een periode van 3 jaar "*supervised release*". In de tweede strafzaak dient de heer Lindberg de slachtoffers van zijn misdaden (d.w.z. de verzekeringsmaatschappijen en hun polishouders) te compenseren door hen een schadevergoeding te betalen.

7.9 Op 23 januari 2025 heeft de District Court van het Western District of North Carolina in dat kader een zogenaamde "*Special Master*" aangesteld, die haar moet helpen bij het oplossen van eventuele problemen in verband met deze restitutie aan de slachtoffers. De "*Special Master"* heeft aanbevolen dat de District Court zou vaststellen dat, op grond van de federale wet inzake restitutie, Conservatrix en haar polishouders geen slachtoffers waren van de misdrijven die de heer Lindberg heeft bekend. In een voorlopige beschikking heeft de District Court deze aanbeveling overgenomen door Conservatrix niet aan te merken als slachtoffer. Voorts is bepaald dat de heer Lindberg aan diverse andere slachtoffers $ 1.655.000.000,- dient te betalen. Conservatrix heeft de beslissing om haar niet als slachtoffer aan te merken aangevochten. De Fourth Circuit Court of Appeals heeft echter geweigerd zich te mengen in de voorlopige beschikking van de District Court. Een definitieve beschikking, waarvan niet wordt verwacht dat deze ook slachtoffers buiten de in de voorlopige beschikking geïdentificeerde slachtoffers zal omvatten, is nog niet afgegeven. De heer Lindberg heeft zowel zijn strafoplegging als de voorlopige

restitutiebeschikking aangevochten. Er is nog geen zicht op de tijdlijnen voor de beslechting van die hoger beroepen.

7.10 Curatoren voeren doorlopend overleg met hun Amerikaanse advocaten, die deze procedures zorgvuldig monitoren. Om ervoor te zorgen dat de belangen van de polishouders van Conservatrix ook in deze procedures gewaarborgd worden in deze procedures, hebben de Amerikaanse advocaten nauw contact met zowel de "*receiver"* als de "*Special Master"*.

Procedure Conservatrix Group tegen de Staat

7.11 Conservatrix Groep heeft in 2017 bij de Ondernemingskamer van het Gerechtshof Amsterdam een verzoekschrift ingediend op de voet van artikel 3:159ab (oud) Wft tot vaststelling van een aanvullende schadeloosstelling in verband met de gedwongen overdracht van de aandelen Conservatrix. De verwerende partij in deze procedure is de Staat der Nederlanden.

7.12 De Ondernemingskamer heeft in 2024 een deskundigenbericht gelast ter beantwoording van de vraag naar de waarde van de aandelen in Conservatrix. Bij verzoekschrift van 20 mei 2025 heeft Conservatrix Groep de Ondernemingskamer – kort gezegd – verzocht de beschikkingen van 24 augustus 2021 en 20 december 2024 op voet van artikel 387 Rv te herroepen en het deskundigenonderzoek aan te houden. Bij beschikking van 31 juli 2025 heeft de Ondernemingskamer het herroepingsverzoek afgewezen.[3] Conservatrix Groep heeft de Ondernemingskamer in september 2025 bericht het voorschot voor de deskundige niet te zullen betalen. De Ondernemingskamer heeft Conservatrix Groep en de Staat der Nederlanden in september 2025 geïnformeerd dat zij over het verdere verloop van de procedure bij beschikking zal beslissen. Deze beschikking is tot op heden aangehouden. Curatoren zijn geen partij in deze procedure.

Procedure Conservatrix Group tegen DNB

7.13 Op 20 mei 2025 heeft Conservatrix Group S.à.R.L (de voormalig aandeelhouder van Conservatrix) de rechtbank verzocht haar beschikking van 15 mei 2017 te herroepen. In die beschikking heeft de rechtbank op de voet van artikel 3:159 lid 1 (oud) van de Wet op het financieel toezicht (Wft) een overdrachtsplan van DNB goedgekeurd, dat ertoe strekte dat alle aandelen van Conservatrix Group in

[3] Hof Amsterdam (OK) 31 juli 2025, ECLI:NL:GHAMS:2025:2200.

Conservatrix tegen betaling van € 1 overgingen naar Trier Holding B.V. Bovendien heeft Conservatrix Group inzage in diverse stukken gevraagd. Curatoren zijn geen partij in deze procedure.

7.14 In haar beschikking van 5 februari 2026 heeft de rechtbank Amsterdam het herroepingsverzoek niet-ontvankelijk verklaard omdat de overdrachtsbeschikking zich naar haar aard verzet tegen herroeping: de aandelen in Conservatrix zijn overgedragen en Conservatrix verkeert inmiddels bovendien in staat van faillissement.[4]

7.15 De rechtbank heeft daarnaast (kort gezegd) geoordeeld dat in de procedure die tot de overdracht leidde sprake was van "bedrog in het geding gepleegd" als bedoeld in art. 382 onder a Rv, omdat het feit dat er een herverzekeringsovereenkomst gesloten zou worden, door DNB in 2017 buiten de procedure is gehouden.[5] DNB heeft op 19 februari 2026 cassatieberoep ingesteld tegen de uitspraak van de rechtbank Amsterdam op dit punt.

7.16 Tot slot heeft de rechtbank DNB veroordeeld om binnen 30 dagen na het wijzen van de beschikking diverse stukken aan Conservatrix Group te verstrekken, met het oog op de schadeloosstellingsprocedure die bij de Ondernemingskamer loopt, dan wel een mogelijke aansprakelijkheidsclaim tegen DNB en de Staat.[6] De beschikking waarbij het bevel is gegeven, is uitvoerbaar bij voorraad verklaard.

7.17 DNB heeft hoger beroep ingesteld tegen de beschikking. Zij heeft een incident opgeworpen waarin zij het hof verzocht om de uitvoerbaarheid bij voorraad van de bestreden beschikking te schorsen. Het hof heeft dat verzoek toegewezen. De hoofdzaak – waarin de vraag centraal staat of DNB de gevorderde stukken moet verstrekken – is op dit moment nog aanhangig.

## 8 Politieke aandacht voor Conservatrix

8.1 Conservatrix staat sinds haar faillietverklaring in de belangstelling van de politiek. Verwezen zij in dit verband naar hoofdstuk 10 van het zesde openbare verslag.

[4] Rb. Amsterdam 5 februari 2026, ECLI:NL:RBAMS:2026:1107, ro. 5.29.
[5] Rb. Amsterdam 5 februari 2026, ECLI:NL:RBAMS:2026:1107, ro. 1.5 en 5.28.
[6] Rb. Amsterdam 5 februari 2026, ECLI:NL:RBAMS:2026:1107, ro. 5.34 en 6.2.

## 9 Onderzoek oorzaken faillissement

9.1 Curatoren zijn wettelijk verplicht om een onderzoek te doen naar de oorzaken van het faillissement van Conservatrix. Curatoren hebben in afgelopen verslagperiode het onderzoek voortgezet en de resultaten van hun onderzoek worden vastgelegd in een concept-rapport (het ‘**Concept-Rapport’**). Curatoren zijn voornemens het Concept-Rapport zo snel mogelijk voor hoor en wederhoor aan de betrokkenen te sturen. Na verwerking van de input van betrokkenen, zal het definitieve rapport (het **‘Rapport’**) worden opgeleverd.

9.2 In het vorige verslag werd vermeld dat curatoren in overleg met en na toestemming van de rechter-commissaris met DNB overlegd hebben over de eventuele toezichtvertrouwelijkheid van in de administratie aangetroffen informatie. Dat proces is inmiddels naar tevredenheid van curatoren afgerond.

9.3 Vanwege diverse ontwikkelingen in de afgelopen verslagperiode, is het integrale concept-rapport nog niet met betrokkenen gedeeld voor hoor en wederhoor. Eén van die ontwikkelingen betreft de in par. 7.3 besproken procedure tussen Conservatrix Groep en DNB. Deze procedure ziet onder meer op de toedracht van de overdracht per 15 mei 2017. Omdat het oorzakenonderzoek onder meer de feitelijke toedracht van de overdracht omvat, volgen curatoren deze procedure op de voet.

9.4 Nadat het onderzoek naar de oorzaken van het faillissement is afgerond, zal het integrale Concept-Rapport gelijktijdig met betrokkenen – waaronder DNB – voor hoor en wederhoor worden gedeeld. Na afloop van de reactietermijn en de beoordeling van het ontvangen commentaar, zal het Rapport worden opgemaakt en zullen de resultaten van het onderzoek gepubliceerd worden.

## 10 Volgend openbaar verslag

10.1 In overleg met de rechter-commissaris is de verslagtermijn vastgesteld op één jaar. Curatoren zullen hun volgende openbare verslag daarom eind juli 2027 uitbrengen.

Utrecht, 31 juli 2026

Noor Zetteler en Robert van Faassen,
Curatoren Conservatrix

# MACHINE-GENERATED ENGLISH TRANSLATION

of the Fifteenth Public Report (Ex. I at 2–12)

Produced by machine translation for the Respondents. Not a certified translation. Offered for the Court’s convenience only; the Dutch text controls.

Machine-generated English translation of the Dutch original, “Vijftiende openbare verslag in het faillissement van Nederlandsche Algemeene Maatschappij van Levensverzekering Conservatrix NV,” Utrecht, 31 July 2026, reproduced at Ex. I pages 2–12. The translation was produced by machine translation for the Respondents and is not a certified translation; it is offered for the Court’s convenience only, and the Dutch text controls.

Terminology: “curatoren” is rendered “the trustees” (the bankruptcy trustees); “rechter-commissaris” as “supervisory judge”; “dwangsom” as “penalty payment (dwangsom)” (the award of 31 January 2020 itself uses “penalty (in Dutch: dwangsom)”); “arbitraal kort geding vonnis” as “award in summary arbitral proceedings”; “arbitrale bodemprocedure” as “arbitral proceedings on the merits”; “Lindberg c.s.” as “Lindberg et al.”; “Ondernemingskamer” as “Enterprise Chamber of the Amsterdam Court of Appeal”; “Wft” as the Financial Supervision Act; “Fw” as the Bankruptcy Act; “Rv” as the Code of Civil Procedure; “p.m.” (pro memoria) denotes an item carried without a value.

Amounts are shown in English number format (the original writes, for example, “€ 16.614.000,=”). The page references in the table of contents are those of the Dutch original. Footnotes of the original are reproduced in brackets immediately after the paragraph in which they appear. Words in square brackets are translator’s notes.

# FIFTEENTH PUBLIC REPORT IN THE BANKRUPTCY OF NEDERLANDSCHE ALGEMEENE MAATSCHAPPIJ VAN LEVENSVERZEKERING CONSERVATRIX NV

**Table of contents**


| | | |
|---|---|---|
| 1. | Introduction | p. 1 |
| 2. | Portfolio transfer | p. 1 |
| 3. | Condition of the estate | p. 2 |
| 4. | Verification meeting | p. 4 |
| 5. | Creditors’ committee | p. 5 |
| 6. | Communication with policyholders | p. 5 |
| 7. | Pending proceedings | p. 6 |
| 8. | Political attention for Conservatrix | p. 10 |
| 9. | Investigation into the causes of the bankruptcy | p. 11 |
| 10. | Successor trustee and next public report | p. 11 |


## 1 Introduction

1.1 This is the fifteenth public report of the trustees pursuant to Article 73a of the Bankruptcy Act. The first report was issued on 18 December 2020, the second report on 19 March 2021, the third report on 23 June 2021, the fourth report on 20 September 2021, the fifth report on 23 December 2021, the sixth report on 5 April 2022, the seventh report on 22 July 2022, the eighth report on 30 December 2022, the ninth report on 6 June 2023, the tenth report on 24 November 2023, the eleventh report on 30 March 2024, the twelfth report on 30 July 2024, the thirteenth public report on 31 January 2025 and the fourteenth public report on 31 July 2025.[1]

[Footnote 1: These reports have been published on www.conservatrix.nl]

No rights can be derived from this report.

## 2 Portfolio transfer

2.1 For a more extensive explanation of the portfolio transfer, the trustees refer to the ninth public bankruptcy report. As a result of the arrangements made with Waard Leven N.V., part of the payments and additional payments is for the account of the estate. In total this concerns an estimated amount of € 16,614,000 (rounded). To date the trustees have been able to pay out approximately € 16,350,000 of this. In the past reporting period an amount of approximately € 272,000 was paid out, so that an amount of € 263,000 remains that can be paid out to the policyholders entitled to it. The payment of this amount still cannot take place, however, because the trustees do not have all the documents/information that the policyholder or beneficiary has to provide for that purpose. The trustees continue to make efforts to ensure that the remaining amount of € 263,000 can still be paid out to the policyholders.

2.2 To avoid misunderstanding, the trustees note that the aforementioned amounts relate to payments in respect of insured events that occurred before the transfer of the insurance portfolio to Waard Leven N.V., but for which it has not yet been possible to trace the policyholder and/or the beneficiary. The payments do not relate to the claims established at the verification meeting.

2.3 In the past reporting period the trustees again tried to obtain the missing information, so that the policyholders receive the amounts to which they are entitled. The trustees will continue this work in the coming period in order still to obtain the necessary information.

## 3 Condition of the estate

3.1 The condition of the estate as at 31 July 2026 can be presented as follows:

| **Assets** | | |
|---|---|---|
| Cash balances as at 30 July 2025 [translator's note: so in the original] | € 4,310,724 | (1) |
| Commercial mortgage loans (rounded) | € 1,254,124 | (2) |
| Private loan | € 5,000 | (3) |
| Claim against Lindberg | p.m. | (4) |
| **Liabilities (categorised by rank from highest to lowest)** | | |
| Estate costs still to be paid | p.m. | (5) |
| Corporate income tax for 2021 still to be paid | p.m. | (6) |
| 90% payments still to be made (estimate) | € 263,000 | (7) |
| Insurance claims (Article 213m(3)(d) Bankruptcy Act) | € 59,065,819[2] | (8) |
| Damages claims (Article 213m(3)(f) Bankruptcy Act) | € 40,490,552 | (9) |
| Premium deposit claims | € 13,275 | |
| Tax Administration: | € 285,476 | |
| Ordinary (unsecured) claims, admitted: | € 231,815 | |

[Footnote 2: At the verification meeting an amount of € 99,012,026 was verified. This amount is higher because, for the policyholders who received an interim distribution during the bankruptcy, it was not the remaining claim of 10% that was verified but the full claim of 100%. To date approximately € 40,000,000 has been paid out in interim distributions. In any future distribution these distributions already made will be taken into account, so that de facto it makes no difference to the policyholders that a higher amount was verified. For readability and insight into any future distribution, the trustees use in the public report the amount that is based on the remaining claim of 10% for all policyholders.]

*Explanatory notes*

(1) This concerns the total of the balances on the bankruptcy account at ABN AMRO and the (original) current account of Conservatrix at Rabobank. In the past reporting period the trustees paid more than € 272,000 in not yet paid distributions to the policyholders (see also paragraph 2.1 above). In addition, in the past reporting period the trustees received an amount of approximately € 550,000 as repayment of various commercial mortgages. The current obligations for maintaining the necessary systems (ICT, Finance, policy administration) were also paid. The various movements affect the level of the cash balances.

(2) The commercial mortgage loans were not taken over by Waard Leven N.V. The coverage ratio of the loans (in terms of collateral) is good. The estate receives approximately € 8,300 per month in interest and repayments. In the past reporting period an amount of approximately € 550,000 was received in connection with various repayments of commercial mortgages.

(3) On this loan € 5,000 is repaid annually. The interest rate is 3%. The trustees expect that the loan will be repaid in full in the coming reporting period.

(4) The claim against Lindberg amounts to € 150 million in nominal terms and arises from an award in summary arbitral proceedings rendered in favour of Conservatrix in the first quarter of 2020. For the state of affairs in the proceedings against Lindberg, the trustees refer to paragraph 7 of this report.

(5) These are the current costs arising from the work for the winding-up of the bankruptcy. This includes, among other things, the costs of the trustees and of the advisers to be engaged by them (including lawyers in the United States and actuarially trained advisers) and the costs of keeping running the IT systems that are needed for a proper winding-up. In the past reporting period the trustees migrated all data and IT systems to a new service provider. The move to the new service provider achieves a monthly saving of approximately € 20,000.

(6) For the year 2021 the estate realised a substantial taxable profit. Corporate income tax is owed on it. For 2022 a negative taxable result was realised. At the end of 2024 the trustees filed the corporate income tax return for 2022 with the Tax Administration. In January 2026 the Tax Administration finally assessed the 2022 corporate income tax return in accordance with Conservatrix's return. In consultation with the Tax Administration, Conservatrix was able in the past reporting period to file a nil return for corporate income tax for the years 2023 and 2024.

(7) This concerns the payments referred to in paragraph 2.1, which can only take place if and as soon as the trustees have received sufficient information from the policyholders or beneficiaries concerned.

(8) This concerns the not yet paid part of the policyholders' claims as a result of the generally applied reduction of 10%.

(9) This concerns the claims of policyholders as a result of the lapse of profit-sharing arrangements and guaranteed returns on future premium payments.

## 4 Verification meeting

4.1 The verification process in respect of the claims of creditors (including the insurance claims and the damages claims of the policyholders) has been completed. For a further explanation of the verification process, reference is made to the earlier public reports (available via the website www.conservatrix.nl).

## 5 Creditors' committee

5.1 By decision of 3 March 2021, at the request of a number of policyholders, the Amsterdam District Court set up, on the basis of Article 74 of the Bankruptcy Act, a provisional creditors' committee consisting of three persons. The supervisory judge adopted rules for this committee. At the verification meeting on 8 March 2024 the trustees indicated that they considered it desirable that a definitive creditors' committee be set up.

5.2 As a result of the completion of the transfer of Conservatrix's insurance portfolio to Waard Leven N.V., the activities of the creditors' committee have decreased considerably. In consultation with the supervisory judge and the remaining member of the creditors' committee, the trustees assessed whether it is desirable for the creditors' committee to be maintained. That is not the case. The trustees are grateful to the members of the creditors' committee for their

advice and thank them for the time and energy that they devoted to the bankruptcy as members of the creditors' committee.

## 6 Communication with policyholders

6.1 Before the verification meetings, all creditors (both the policyholders and the ordinary bankruptcy creditors) were informed that future communication from the trustees will no longer take place by post, but via the Conservatrix website (www.conservatrix.nl) and by e-mail.

6.2 In order to be able to be informed by the trustees in the future as well, it is important that the trustees have the correct contact details of all creditors. If creditors' contact details change, they can pass on the correct contact details via the website (www.conservatrix.nl/contactformulier).

## 7 Pending proceedings

7.1 Since the beginning of 2020 Conservatrix has been a party to two proceedings against Mr. Lindberg and companies affiliated with him ("Lindberg et al."). In addition, Mr. Lindberg is involved in a large number of (civil and criminal) proceedings in the United States. These proceedings too (possibly) affect the position of Conservatrix and are explained in outline below.

*Proceedings to which Conservatrix and/or the trustees are a party*

7.2 As stated, Conservatrix is a party to two proceedings against Lindberg et al. The first proceedings were pending before the Court of Appeal of The Hague and were brought by Lindberg et al. against Conservatrix. In those proceedings Lindberg et al. seek the setting aside of an award in summary arbitral proceedings rendered on 31 January 2020. For the background to these proceedings the trustees refer to their second public report under 8.2 and 8.3. On 29 March 2022 the Court of Appeal rendered a judgment, which is attached as an annex to the sixth public report. The Court of Appeal found entirely in favour of the trustees. This means that the aforementioned award in summary arbitral proceedings stands and that Lindberg et al. still owe the penalty payment (dwangsom) of € 150 million. Lindberg et al. lodged an appeal in cassation against this judgment. On 26 May 2023 the Advocate General advised that the appeal in cassation of Lindberg et al. be dismissed. On 1 September 2024 [translator's note: so in the original] the Supreme Court dismissed the appeal in cassation of Lindberg et al. The award in summary arbitral proceedings is thereby final, and Lindberg et al. owe Conservatrix a penalty payment (dwangsom) of € 150 million.

7.3 On 19 October 2023 the trustees filed a so-called petition to confirm with the District Court for the Middle District of North Carolina (USA). What is at stake in these proceedings is the recognition in the United States of the award in summary arbitral proceedings. Lindberg et al. appeared in the recognition proceedings and contested the request for recognition. On 14 August 2024 this court gave final judgment in this case. The trustees' request was granted (in full). The District Court for the Middle District of North Carolina recognised the award in summary arbitral proceedings and in addition clarified that, as a result of that award, Lindberg et al. owe the trustees an amount of more than $ 166 million (the equivalent of € 150 million including interest). On 12 September 2024 Lindberg et al. lodged an appeal against this judgment with the Fourth Circuit Court of Appeals. On 14 July 2026 the Fourth Circuit Court of Appeals set aside the judgment at first instance on one ground and remanded

the case to the lower court for further consideration on a second ground. In those remand proceedings the trustees will request that the claim still be granted on the second ground. What is and remains important, also in the context of these proceedings, is that it is questionable whether any recovery at all is possible against the assets of Lindberg et al. in the event that the trustees' claim is granted.

7.4 In addition to the above proceedings, so-called arbitral proceedings on the merits against Lindberg et al. have been pending since the beginning of 2020, in which Conservatrix claims damages from Lindberg et al. These proceedings were suspended for a considerable time, but were resumed in July 2024 at the initiative of Lindberg et al. In these proceedings Lindberg et al. will litigate without a lawyer, since the former lawyers of Lindberg et al. no longer act for them and have therefore withdrawn. In the past reporting period the trustees and Lindberg et al. requested documents from each other, which were made available where the arbitrators so ordered. The oral hearing has subsequently been scheduled for 29 and 30 September 2026. Because Lindberg is currently serving a prison sentence, the hearing will take place digitally.

7.5 Finally, Lindberg has brought proceedings before the Florida Court in the USA with the aim of holding the trustees liable for an amount of € 348 million (€ 88 million for capital injections that he made in the context of the acquisition of Conservatrix in 2017, € 250 million (estimate) in connection with damage that he allegedly suffered as a result of the sale of the portfolio, and € 10 million in fees and costs that he incurred for his defence against the trustees' arbitration claims). With respect to these proceedings the trustees have sought legal assistance from American lawyers.

*Other proceedings of Lindberg et al.*

7.6 Mr. Lindberg is the owner of the American financial conglomerate Eli Global and (thereby) of various (insurance) companies. The proceedings between Lindberg et al. and Conservatrix discussed above are two of the many proceedings in which Mr. Lindberg and his insurance companies are involved. The proceedings of Lindberg et al. known to the trustees all take place in the United States. The trustees follow these proceedings closely and are assisted in this by a team of American lawyers.

7.7 Lindberg et al. are, first, involved in a number of civil proceedings. Mr. Lindberg and his companies are faced with mounting debts. As a result of these debts, Mr. Lindberg and his companies were placed under guardianship ("placed into receivership") on 22 April 2024 by the General Court of Justice of North Carolina. In addition, on 25 August 2024, at the request of a creditor (another insurer) with a claim of $ 524 million, Mr. Lindberg was personally placed under guardianship. The court ordered Mr. Lindberg (among other things) to relinquish all his assets and property immediately and to transfer them to the "receiver". The "receiver" has (among other things) the task of preventing Mr. Lindberg from hiding his assets and property from, or withholding them from, his creditors.

7.8 Mr. Lindberg has also been prosecuted criminally and has been accused by the American authorities of bribery and fraud in connection with his insurance companies. In one criminal case Mr. Lindberg was found guilty by the jury; in a second criminal case he pleaded guilty. On 26 May 2026 he was sentenced for these offences to 144 months' imprisonment, followed by a period of 3 years of "supervised release". In the second criminal case Mr. Lindberg must compensate the victims of his crimes (i.e. the insurance companies and their

policyholders) by paying them damages.

7.9 On 23 January 2025 the District Court for the Western District of North Carolina appointed in that context a so-called "Special Master," who is to assist it in resolving any problems in connection with this restitution to the victims. The "Special Master" recommended that the District Court determine that, under the federal restitution statute, Conservatrix and its policyholders were not victims of the crimes to which Mr. Lindberg has pleaded guilty. In a preliminary order the District Court adopted this recommendation by not designating Conservatrix as a victim. It was further determined that Mr. Lindberg must pay $ 1,655,000,000 to various other victims. Conservatrix has challenged the decision not to designate it as a victim. The Fourth Circuit Court of Appeals, however, refused to intervene in the District Court's preliminary order. A final order, which is not expected to include victims beyond the victims identified in the preliminary order, has not yet been issued. Mr. Lindberg has challenged both his sentence and the preliminary restitution order. There is as yet no indication of the timelines for the resolution of those appeals.

7.10 The trustees are in continuous consultation with their American lawyers, who monitor these proceedings carefully. To ensure that the interests of Conservatrix's policyholders are safeguarded in these proceedings as well, the American lawyers are in close contact with both the "receiver" and the "Special Master".

*Proceedings of Conservatrix Group against the State*

7.11 In 2017 Conservatrix Group filed with the Enterprise Chamber of the Amsterdam Court of Appeal a petition on the basis of Article 3:159ab (old) of the Financial Supervision Act for the determination of additional compensation in connection with the compulsory transfer of the shares in Conservatrix. The defendant in these proceedings is the State of the Netherlands.

7.12 In 2024 the Enterprise Chamber ordered an expert report to answer the question of the value of the shares in Conservatrix. By petition of 20 May 2025 Conservatrix Group requested the Enterprise Chamber – in short – to revoke the decisions of 24 August 2021 and 20 December 2024 on the basis of Article 387 of the Code of Civil Procedure and to suspend the expert examination. By decision of 31 July 2025 the Enterprise Chamber rejected the request for revocation.[3] In September 2025 Conservatrix Group informed the Enterprise Chamber that it would not pay the advance for the expert. In September 2025 the Enterprise Chamber informed Conservatrix Group and the State of the Netherlands that it will decide on the further course of the proceedings by decision. That decision has been held over to date. The trustees are not a party to these proceedings.

[Footnote 3: Amsterdam Court of Appeal (Enterprise Chamber) 31 July 2025, ECLI:NL:GHAMS:2025:2200.]

*Proceedings of Conservatrix Group against DNB*

7.13 On 20 May 2025 Conservatrix Group S.à.R.L (the former shareholder of Conservatrix) requested the District Court to revoke its decision of 15 May 2017. In that decision the District Court, on the basis of Article 3:159(1) (old) of the Financial Supervision Act (Wft), approved a transfer plan of DNB which provided that all shares of Conservatrix Group in Conservatrix would pass to Trier Holding B.V. against payment of € 1. In addition, Conservatrix Group requested access to various documents. The trustees are not a party to

these proceedings.

7.14 In its decision of 5 February 2026 the Amsterdam District Court declared the request for revocation inadmissible, because the transfer decision by its nature precludes revocation: the shares in Conservatrix have been transferred and, moreover, Conservatrix is now in a state of bankruptcy.[4]

[Footnote 4: Amsterdam District Court 5 February 2026, ECLI:NL:RBAMS:2026:1107, para. 5.29.]

7.15 The District Court further held (in short) that in the proceedings that led to the transfer there had been "fraud committed in the proceedings" within the meaning of Article 382(a) of the Code of Civil Procedure, because the fact that a reinsurance agreement would be concluded was kept out of the proceedings by DNB in 2017.[5] On 19 February 2026 DNB lodged an appeal in cassation against the decision of the Amsterdam District Court on this point.

[Footnote 5: Amsterdam District Court 5 February 2026, ECLI:NL:RBAMS:2026:1107, paras. 1.5 and 5.28.]

7.16 Finally, the District Court ordered DNB to provide various documents to Conservatrix Group within 30 days after the decision was rendered, with a view to the compensation proceedings pending before the Enterprise Chamber or a possible liability claim against DNB and the State.[6] The decision in which the order was given was declared provisionally enforceable.

[Footnote 6: Amsterdam District Court 5 February 2026, ECLI:NL:RBAMS:2026:1107, paras. 5.34 and 6.2.]

7.17 DNB has lodged an appeal against the decision. It raised an interlocutory motion in which it requested the Court of Appeal to suspend the provisional enforceability of the contested decision. The Court of Appeal granted that request. The main proceedings – in which the central question is whether DNB must provide the documents claimed – are currently still pending.

## 8 Political attention for Conservatrix

8.1 Since its bankruptcy Conservatrix has been the subject of political interest. Reference is made in this connection to chapter 10 of the sixth public report.

## 9 Investigation into the causes of the bankruptcy

9.1 The trustees are legally obliged to investigate the causes of Conservatrix's bankruptcy. In the past reporting period the trustees continued the investigation, and the results of their investigation are being recorded in a draft report (the "Draft Report"). The trustees intend to send the Draft Report to the parties involved as soon as possible for comment. After processing the input of the parties involved, the final report (the "Report") will be delivered.

9.2 The previous report mentioned that the trustees, in consultation with and after permission from the supervisory judge, had consulted DNB about the possible supervisory confidentiality of information found in the records. That process has since been completed to the trustees' satisfaction.

9.3 Because of various developments in the past reporting period, the complete draft report has not yet been shared with the parties involved for comment. One of those developments concerns the proceedings between Conservatrix Group and DNB discussed in paragraph 7.3 [translator's note: so in the original; those proceedings are discussed in paragraphs

7.13–7.17]. Those proceedings concern, among other things, the circumstances of the transfer as of 15 May 2017. Because the investigation into the causes includes, among other things, the factual circumstances of the transfer, the trustees are following these proceedings closely.

9.4 After the investigation into the causes of the bankruptcy has been completed, the complete Draft Report will be shared simultaneously with the parties involved – including DNB – for comment. After the expiry of the response period and the assessment of the comments received, the Report will be drawn up and the results of the investigation will be published.

## 10 Next public report

10.1 In consultation with the supervisory judge, the reporting period has been set at one year. The trustees will therefore issue their next public report at the end of July 2027.

Utrecht, 31 July 2026

Noor Zetteler and Robert van Faassen,
Trustees of Conservatrix