# EXHIBIT J

Complaint, Lindberg v. Zetteler and van Faassen, in their capacity as insolvency practitioners in the insolvency of Conservatrix N.V., Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida, Case No. 2026-006354-CA-01 (Section CA44), e-filed March 26, 2026 (Filing # 244722242), pages 1–18 (the complaint without its exhibits).

Public court record. The exhibits to the complaint (172 pages as filed) are omitted; they are the Amsterdam District Court order of February 5, 2026 (Dutch and English), a press article, and two of the Respondents' submissions in the Arbitration.

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

Case No.: ___________________

**GREG EVAN LINDBERG,**
individually and as indirect beneficial owner
of Trier Holding B.V.,

Plaintiff,

v.

**MR. E.L. ZETTELER,**
in his capacity as insolvency practitioner in the
insolvency of Nederlandsche Algemeene Maatschappij
Van Levensverzekering "Conservatrix" N.V.,

and

**MR. J.R. VAN FAASSEN,**
in his capacity as insolvency practitioner in the
insolvency of Nederlandsche Algemeene Maatschappij
Van Levensverzekering "Conservatrix" N.V.,

Defendants.

_____________________________________________/

## PRELIMINARY STATEMENT

1. Plaintiff Greg Evan Lindberg ("Lindberg" or "Plaintiff") brings this action against Defendants Mr. E.L. Zetteler ("Zetteler") and Mr. J.R. van Faassen ("Van Faassen") (collectively, "Defendants" or the "Insolvency Practitioners"), in their capacity as insolvency practitioners (*curatoren*) in the insolvency of Nederlandsche Algemeene Maatschappij Van Levensverzekering "Conservatrix" N.V. ("Conservatrix"), for damages arising from Defendants' negligent and tortious conduct in the administration of the Conservatrix insolvency estate, which has caused Plaintiff direct financial injury in the State of Florida exceeding €348 million.

2. This action arises against the backdrop of a **binding judicial determination of fraud** by the Amsterdam District Court (*Rechtbank Amsterdam*) dated February 5, 2026 (ECLI:NL:RBAMS:2026:1107), Case No. C/13/769512 / HA RK 25-169 (the "Fraud Judgment"). In the Fraud Judgment, the Amsterdam District Court—the very court that approved the original 2017 forced transfer of Conservatrix's shares to Trier Holding B.V. ("Trier")—found as a matter of law that De Nederlandsche Bank N.V. ("DNB"), the Dutch central bank and prudential regulator, ***committed fraud in the judicial proceedings*** (*bedrog in het geding gepleegd*) within the meaning of Article 382(a) of the Dutch Code of Civil Procedure. A true and correct copy of the Fraud Judgment (original Dutch text) is attached hereto as Exhibit 1, and a certified English translation as Exhibit 2.

3. The Fraud Judgment establishes that the entire foundation upon which Conservatrix was transferred to Trier—and upon which the Insolvency Practitioners now premise their claims against Lindberg in pending Netherlands Arbitration Institute ("NAI") proceedings (Case No. 4794)—was procured through DNB's deliberate concealment of material facts from the court and the former shareholders. The Insolvency Practitioners, acting as *curatoren* of the Conservatrix estate, have negligently and tortiously failed to account for this judicially established fraud in their administration of the estate, have pursued claims against Plaintiff that are premised on a transaction obtained through fraud, have negligently destroyed valuable estate assets, and have sold estate assets at fire-sale prices, all to the direct financial detriment of Plaintiff, a Florida resident.

## THE PARTIES

4. Plaintiff Greg Evan Lindberg is a natural person and citizen of the United States who is domiciled in the State of Florida. At all times relevant to this action, Plaintiff has maintained his primary residence in the State of Florida. Plaintiff is the indirect beneficial owner of Trier Holding B.V., the entity that acquired all shares of Conservatrix in 2017 pursuant to the court-approved transfer plan. Plaintiff has been directly and personally injured in Florida by the tortious conduct of the Defendants as alleged herein.

5. Defendant E.L. Zetteler is a natural person and citizen of the Kingdom of the Netherlands. Zetteler serves as one of two court-appointed insolvency practitioners in the insolvency

of Conservatrix, having been appointed by the Amsterdam District Court. In his capacity as insolvency practitioner, Zetteler has directed communications into the State of Florida, has pursued arbitration claims against Plaintiff (a Florida resident) that have caused Plaintiff direct financial injury in Florida, and has committed tortious acts causing injury to Plaintiff in this State.

6. Defendant J.R. van Faassen is a natural person and citizen of the Kingdom of the Netherlands. Van Faassen serves as the second court-appointed insolvency practitioner in the insolvency of Conservatrix. In his capacity as insolvency practitioner, Van Faassen has directed communications into the State of Florida, has pursued arbitration claims against Plaintiff (a Florida resident) that have caused Plaintiff direct financial injury in Florida, and has committed tortious acts causing injury to Plaintiff in this State.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to Article V, Section 5(b) of the Florida Constitution and Section 26.012, Florida Statutes, as the amount in controversy exceeds $50,000, exclusive of interest, costs, and attorney's fees.

8. This Court has personal jurisdiction over the Defendants pursuant to Florida's long-arm statute, Section 48.193, Florida Statutes. Specifically, Defendants are subject to the jurisdiction of this Court under Section 48.193(1)(a)(2), Florida Statutes, which provides for jurisdiction over any person who commits "a tortious act within this state." Defendants have committed tortious acts causing direct injury to Plaintiff, a Florida domiciliary, within this State, including but not limited to: (a) directing telephonic and electronic communications into Florida in furtherance of tortious conduct; (b) pursuing improper claims against Plaintiff in Florida-directed arbitration proceedings that have caused Plaintiff direct financial injury in Florida; (c) negligently destroying valuable estate assets (the CBL reinsurance) that provided financial support to Plaintiff's investment, causing Plaintiff direct financial harm felt in Florida; and (d) negligently selling Conservatrix's assets at a fraction of their value, causing injury to Plaintiff's financial interests in Florida.

9. Personal jurisdiction over the Defendants comports with the requirements of due process under the Fourteenth Amendment to the United States Constitution. The Florida Supreme Court has established that "in order to commit a tortious act in Florida, a defendant's physical presence is not required." *Wendt v. Horowitz*, 822 So. 2d 1252 (Fla. 2002). Telephonic, electronic, or written communications into Florida can form the basis of personal jurisdiction under Section 48.193(1)(a)(2), Florida Statutes, if the alleged cause of action arises from the communications. *Id.* The two-step framework established in *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989), is satisfied here because: (1) Plaintiff has alleged sufficient facts to bring this action within the ambit of Section 48.193; and (2) Defendants have sufficient minimum contacts with Florida such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

10. Additionally, this Court has jurisdiction over the Defendants under Section 48.193(1)(a)(6), Florida Statutes, because Defendants' actions outside Florida have caused injury to Plaintiff within this State, and at the time of such injury, Defendants were engaged in solicitation and service activities directed toward Florida. Defendants' pursuit of arbitration claims against a known Florida resident, their direction of communications and demands into Florida, and their conduct in administering an estate in which a Florida resident had substantial financial interests, constitute sufficient purposeful availment of the privilege of conducting activities within the State of Florida such that Defendants should reasonably anticipate being haled into court here. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

11. Venue is proper in Miami-Dade County pursuant to Florida Statutes, because the cause of action accrued in part in this county, and because this county is a proper venue for claims involving nonresident defendants under Florida law.

## STATEMENT OF FACTS

### *A. The 2017 Forced Transfer of Conservatrix and DNB's Judicial Fraud*

12. Conservatrix was a Dutch life insurance company that operated under a license from and under the prudential supervision of DNB. All shares in Conservatrix were held by Conservatrix Group S.A.R.L. ("Conservatrix Groep") until May 15, 2017.

13. Beginning in 2014, DNB raised concerns about Conservatrix's solvency position and initiated a series of regulatory interventions, including the appointment of a curator over the management of Conservatrix, demands for recovery plans, and ultimately the preparation of a forced transfer plan pursuant to the Dutch Financial Supervision Act (Wet op het financieel toezicht, "Wft").

14. On March 22, 2017, DNB filed a petition with the Amsterdam District Court seeking approval of a transfer plan under which all shares in Conservatrix would be transferred to Trier Holding B.V. ("Trier")—an entity indirectly and beneficially owned by Plaintiff Lindberg—for a purchase price of €1. In its petition and throughout the proceedings, DNB represented to the court that Trier would make a capital contribution (*kapitaalstorting*) that would restore Conservatrix's solvency ratio to at least 135%.

15. On May 15, 2017, the Amsterdam District Court approved the transfer plan and ordered the transfer of all shares in Conservatrix to Trier. The court's decision was premised on the understanding—as represented by DNB—that Trier would make a direct capital injection of at least €58.1 million to restore Conservatrix's solvency.

16. The Fraud Judgment of February 5, 2026 now establishes as a matter of law that **DNB committed fraud in those 2017 proceedings**. The Amsterdam District Court found that DNB deliberately concealed from both the court and the former shareholders the fact that the capital strengthening of Conservatrix was to be achieved primarily through a *reinsurance arrangement* with Colorado Bankers Life Insurance Company ("CBL"), not through a direct capital contribution by Trier as DNB had represented. (Fraud Judgment §§ 5.15-16, 5.20).

17. The court found that DNB created a **false impression** in its 2017 petition and pleadings that a capital contribution of at least €58.1 million was required and would be paid by Trier. In reality, the capital strengthening consisted overwhelmingly of the CBL reinsurance, which was financed from Conservatrix's own funds. Out of a total capital strengthening

of approximately €79 million, only approximately €18.4 million came from a direct capital contribution by Trier; the remaining approximately €61 million was attributable to the reinsurance. (Fraud Judgment §§ 5.15, 5.23).

18. The court found that DNB knew of the reinsurance arrangement before it filed its petition. On March 17, 2017—five days *before* DNB filed its petition—DNB and Trier entered into a Submission Protocol containing the key agreements regarding the required 135% solvency ratio *and* the reinsurance. None of this was disclosed to the court or to Conservatrix Groep. (Fraud Judgment §§ 5.16, 3.11).

19. The Amsterdam District Court found the requisite causal connection between DNB's fraud and the court's 2017 decision, holding that it was *plausible* (*aannemelijk*) that the court's decision would have been different had the truth been known. The court specifically found that DNB's concealment prevented a "fully-fledged debate" (*volwaardig debat*) on whether less far-reaching alternatives could have saved Conservatrix without a forced transfer. (Fraud Judgment § 5.28).

20. The court expressly recognized that while reversal of the transfer was impossible (Conservatrix having been declared bankrupt on December 8, 2020), "a possible solution may be found in a claim for damages against the party that committed the (procedural) fraud." (Fraud Judgment § 5.30).

21. The Fraud Judgment also ordered DNB to produce an extensive package of documents within thirty days, including the Submission Protocol, the Post-Completion Covenants Agreement, the Recapitalization Commitment, the CBL Reinsurance Treaty, the Process Letter, and related financial documents. (Fraud Judgment § 6.2).

***B. Conservatrix's Stabilization and the Destruction of the CBL Reinsurance***

22. Following the transfer of shares on May 15, 2017, the CBL reinsurance was executed on that same day. Through the combined effect of the approximately €18.4 million capital contribution and the CBL reinsurance, Conservatrix's Solvency II ratio improved dramatically from negative 16% in 2016 to 188% as of December 31, 2017, as documented in Conservatrix's audited financial statements. This 188% Solvency Capital

Requirement ("SCR") ratio represented an 88% buffer above regulatory intervention levels and exceeded the European median of 196%.

23. The CBL reinsurance was the keystone of Conservatrix's solvency position, as the Fraud Judgment confirms. The court's own recitation of the 2017 financial statements reflects that Conservatrix's full-year 2017 result before tax increased significantly to €84.9 million from negative €18.3 million the previous year, driven mainly by the new reinsurance agreement with CBL.

24. The subsequent destruction of the CBL reinsurance—not any breach by Lindberg or Trier—was the direct and proximate cause of Conservatrix's eventual bankruptcy. The CBL reinsurance was destroyed as a result of politically motivated regulatory actions by the North Carolina Insurance Commissioner, Mike Causey, whose agents seized control of CBL in the United States and whose actions triggered a cascade of international regulatory consequences that ultimately led to Conservatrix's insolvency.

25. The Conservatrix management, under influence of persons acting at the direction of Commissioner Causey's agents who had taken control of CBL, negligently agreed to terminate the reinsurance agreement with CBL. This termination was purportedly based on CBL losing its rating; however, nothing in the reinsurance agreement required CBL to maintain any rating, and the assets backing the reserves were held in an entirely segregated account.

***C. The Insolvency Practitioners' Negligent and Tortious Conduct***

26. Following Conservatrix's declaration of bankruptcy on December 8, 2020, Defendants were appointed as *curatoren* (insolvency practitioners) of the Conservatrix estate. In that capacity, Defendants owed a duty of care—under Dutch law and under general principles of tort law applicable in this proceeding—to administer the estate competently, to maximize estate value for the benefit of all stakeholders, and to refrain from tortious conduct that would injure parties with legitimate financial interests in the estate, including Plaintiff.

27. Defendants have breached these duties through the following acts and omissions, each of which has caused Plaintiff direct financial injury in the State of Florida:

28. **Negligent Sale to Chesnara at Nominal Value.** In July 2022, Defendants agreed to sell Conservatrix's insurance portfolio to Chesnara PLC for a nominal sum, resulting in immediate windfall gains to Chesnara of approximately £14 million and ongoing gains of approximately £4 million annually for over a decade. The total loss to Plaintiff and the estate from this improvident sale exceeds £54 million. The sale transferred approximately 70,000 policies and £400 million in assets for grossly inadequate consideration.

29. **Negligent Timing of Sale.** The sale to Chesnara occurred at the worst possible time in decades. Long-term government bond rates were at historic lows at the time of sale. German 30-year bond rates have since risen to over 2.75%. Had Defendants exercised prudence and patience, the value of Conservatrix's book would have increased by well over €150 million. While insolvency practitioners need not wait indefinitely for optimal conditions, they must balance quick liquidation against value maximization. Defendants failed to exercise such prudence.

30. **Negligent Acceptance of CBL Reinsurance Termination.** Defendants negligently acquiesced in or failed to challenge the termination of the reinsurance agreement with CBL that provided over €70 million in capital support to Conservatrix. The termination lacked contractual or legal basis, as nothing in the reinsurance agreement required CBL to maintain any rating, and the assets backing the reserves were held in an entirely segregated account. This negligent conduct destroyed the very foundation of Conservatrix's financial stability, directly causing the solvency crisis that led to the fire sale of assets.

31. **Pursuit of Baseless Arbitration Claims.** Defendants have initiated and pursued arbitration claims against Plaintiff in NAI Case No. 4794, asserting that Plaintiff and other respondents breached the Recapitalization Commitment. These claims are premised on a forced transfer that the Amsterdam District Court has now found was procured through DNB's fraud. By pursuing these claims, Defendants have caused Plaintiff to incur substantial legal fees and costs, reputational harm, and the financial burden of defending

against claims whose factual foundation has been judicially determined to rest on fraud. These harms are directly felt by Plaintiff in the State of Florida, where he resides.

32. **Failure to Account for DNB's Fraud.** Despite the binding judicial determination in the Fraud Judgment that DNB committed fraud in the 2017 transfer proceedings, Defendants have failed to pursue the estate's claims against DNB for damages arising from that fraud. The Amsterdam District Court expressly recognized that a remedy for the procedural fraud may be found in a claim for damages against the party that committed the fraud. Defendants' failure to pursue this substantial claim against DNB, while simultaneously pursuing claims against Plaintiff that are premised on a fraudulently procured transfer, constitutes negligent administration of the estate.

## THE FRAUD JUDGMENT AND ITS SIGNIFICANCE TO THIS ACTION

33. The Fraud Judgment is of central and dispositive significance to this action. The Amsterdam District Court—a three-judge panel of competent Dutch jurisdiction, sitting in full adversarial proceedings with oral argument—made the following binding determinations:

34. **First,** the court found that DNB committed "fraud in the proceedings" (*bedrog in het geding gepleegd*) within the meaning of Article 382(a) of the Dutch Code of Civil Procedure. This is the broadest category of procedural fraud under Dutch law, encompassing any situation where a party's unfair litigation attitude prevents facts from coming to light that could have led to a favorable outcome for the opposing party.

35. **Second,** the court found that DNB deliberately concealed the CBL reinsurance arrangement from both the court and the former shareholders, creating the false impression that Trier would make a direct capital contribution of at least €58.1 million. In reality, only approximately €18.4 million came from Trier; the remaining capital strengthening of approximately €61 million came from the reinsurance financed from Conservatrix's own funds.

36. **Third,** the court found a causal connection between the fraud and the 2017 decision, holding it plausible that the court's decision would have been different had the truth been

disclosed. The concealment prevented any debate on whether less drastic measures were available.

37. **Fourth,** the court found that less drastic measures were in fact plausible, specifically a reinsurance arrangement with Heco Reassurantie N.V. or another reinsurer, since the CBL reinsurance was financed entirely from Conservatrix's own funds.

38. **Fifth,** the court rejected DNB's defense that the information was "supervisory confidential," finding that DNB had failed to explain why the documents could not have been disclosed in proceedings held behind closed doors with statutory protections for confidential information.

39. **Sixth,** the court ordered DNB to produce an extensive package of internal and contractual documents to Conservatrix Groep, recognizing Conservatrix Groep's interest in these documents for purposes of ongoing compensation proceedings and potential tort claims against DNB.

40. The Fraud Judgment was publicly reported by the *Financieel Dagblad* (the leading Dutch financial newspaper) on February 5, 2026, under the headline "DNB committed fraud in expropriation of Conservatrix, court rules." The article reported that the ruling "opens the way to a damages claim" that could "certainly exceed €100 million."

## <u>CAUSES OF ACTION</u>

### COUNT I: NEGLIGENCE / GROSS NEGLIGENCE

*(Against All Defendants)*

41. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42. As court-appointed insolvency practitioners (*curatoren*) of the Conservatrix estate, Defendants owed a duty of care to all parties with legitimate financial interests in the estate, including Plaintiff as indirect beneficial owner of Trier, to administer the estate

with the skill, diligence, and competence reasonably expected of insolvency practitioners of sufficient insight and experience.

43. Defendants breached this duty by: (a) negligently agreeing to or acquiescing in the termination of the CBL reinsurance agreement that provided over €70 million in capital support to Conservatrix, without contractual or legal basis; (b) negligently selling Conservatrix's insurance portfolio to Chesnara PLC for a nominal sum at the worst possible time in the interest rate cycle, resulting in losses exceeding €150 million in value destruction; (c) negligently failing to pursue the estate's substantial damages claim against DNB arising from the judicially established fraud; and (d) negligently pursuing baseless arbitration claims against Plaintiff that are premised on a forced transfer procured through DNB's fraud.

44. Defendants' negligent conduct was the direct and proximate cause of Plaintiff's damages. But for Defendants' negligent termination or acquiescence in the termination of the CBL reinsurance, Conservatrix would have maintained its strong solvency position. But for Defendants' negligent fire sale to Chesnara, Plaintiff's equity interest would have been preserved or significantly enhanced as interest rates rose.

45. As a direct and proximate result of Defendants' negligence and gross negligence, Plaintiff has suffered damages including but not limited to: (a) capital injections made without corresponding benefit totaling €88 million; (b) lost value from forced transactions at market lows totaling €150 million; (c) market timing losses from premature asset sales totaling €100 million; and (d) professional fees and costs incurred in defending against improper claims totaling €10 million. Total direct damages exceed €348 million.

**COUNT II: BREACH OF FIDUCIARY DUTY**

*(Against All Defendants)*

46. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. As court-appointed insolvency practitioners, Defendants occupied a position of trust and confidence with respect to the administration of the Conservatrix estate and owed fiduciary duties to all parties with legitimate interests in the estate, including Plaintiff. Under both Dutch law and the general principles of fiduciary law applicable to this proceeding, insolvency practitioners must act with the care and diligence reasonably expected of competent fiduciaries and must maximize estate value while balancing competing interests.

48. Defendants breached their fiduciary duties by: (a) failing to obtain adequate consideration for the sale of Conservatrix's assets; (b) failing to consider market timing within reasonable parameters before liquidating assets at historic interest rate lows; (c) failing to conduct appropriate marketing to maximize value; (d) failing to pursue substantial damages claims against DNB on behalf of the estate despite the binding Fraud Judgment; and (e) pursuing claims against Plaintiff that are premised on a fraudulently procured transfer, thereby dissipating estate resources in pursuit of meritless claims while ignoring legitimate claims against the actual wrongdoer (DNB).

49. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has suffered damages in excess of €348 million, as detailed above.

**COUNT III: FRAUD / CONSTRUCTIVE FRAUD**

*(Against All Defendants)*

50. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. Defendants have engaged in fraud and/or constructive fraud in the course of their administration of the Conservatrix estate by concealing from the NAI Arbitral Tribunal and from Plaintiff critical communications and documents proving that Conservatrix was stabilized by mid-2018, as evidenced by its 188% SCR ratio documented in the 2017 audited financial statements. Defendants possessed or had access to these documents and withheld them in furtherance of their claims against Plaintiff.

52. Defendants knew or should have known that DNB's conduct in the 2017 transfer proceedings constituted fraud, particularly after the publication of the Evaluation Report in December 2021, which disclosed DNB's concealment of the reinsurance arrangement. Despite this knowledge, Defendants continued to pursue claims against Plaintiff that were premised on the integrity of the 2017 transfer proceedings.

53. Plaintiff justifiably relied on the integrity of the judicial and arbitral proceedings in which Defendants participated, and has been directly and proximately injured by Defendants' fraudulent and/or constructively fraudulent conduct.

54. As a direct and proximate result of Defendants' fraud and/or constructive fraud, Plaintiff has suffered damages in excess of €348 million.

**COUNT IV: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

*(Against All Defendants)*

55. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. Plaintiff, through Trier, had existing and prospective business relationships with Conservatrix and its policyholders, including the right to manage and benefit from the insurance portfolio. These business relationships were known to Defendants.

57. Defendants intentionally and unjustifiably interfered with these business relationships by: (a) negligently terminating or acquiescing in the termination of the CBL reinsurance, which destroyed the foundation of Conservatrix's solvency and business viability; (b) selling Conservatrix's assets to a third party (Chesnara) for nominal consideration without adequate efforts to maximize value; and (c) pursuing claims in the NAI arbitration that are premised on a fraudulently procured transaction, thereby disrupting Plaintiff's ability to conduct business and preserve his investments.

58. As a direct and proximate result of Defendants' tortious interference, Plaintiff has suffered damages in excess of €348 million.

## COUNT V: UNJUST ENRICHMENT

*(Against All Defendants)*

59. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. Plaintiff conferred benefits upon Conservatrix through capital injections and the arrangement of the CBL reinsurance, totaling approximately €88 million. Defendants, in their administration of the estate, have retained or dissipated those benefits without providing any corresponding value to Plaintiff. Defendants sold estate assets to Chesnara for nominal consideration, transferring the value of Plaintiff's capital contributions to a third party who received immediate windfall gains.

61. Defendants have been unjustly enriched by Plaintiff's capital contributions to the estate, while simultaneously pursuing claims against Plaintiff for additional payments. It would be inequitable for Defendants to retain the benefit of Plaintiff's contributions without compensation.

62. As a direct result, Plaintiff has suffered damages in excess of €88 million.

## COUNT VI: CIVIL CONSPIRACY

*(Against All Defendants)*

63. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. Defendants, acting in concert with each other and with DNB and/or agents of the North Carolina Insurance Commissioner, engaged in a civil conspiracy to pursue claims against Plaintiff based on a transfer that they knew or should have known was procured through DNB's fraud, while simultaneously concealing documents and information that would have supported Plaintiff's defenses. The acts of co-conspirators performed in the forum state in furtherance of the conspiracy create sufficient minimum contacts to establish personal jurisdiction over all co-conspirators.

65. As a direct and proximate result of this conspiracy, Plaintiff has suffered damages in excess of €348 million.

## DAMAGES

66. As a direct and proximate result of Defendants' tortious conduct as alleged herein, Plaintiff has suffered and continues to suffer the following categories of damages:

67. **Direct Damages:** (a) Capital injections made by Plaintiff and his entities into Conservatrix without corresponding benefit: €88 million; (b) Lost value from forced transactions at market lows resulting from Defendants' negligent fire sale to Chesnara: €150 million; (c) Market timing losses from premature asset sales: €100 million; (d) Professional fees and costs incurred in defending against Defendants' improper arbitration claims: €10 million.

68. **Consequential Damages:** (a) Lost business opportunities resulting from the destruction of Conservatrix as a going concern and regulatory restrictions flowing from Defendants' conduct; (b) Reputational damage from the insolvency proceedings and Defendants' baseless claims; (c) Lost synergies from disrupted business plans.

69. **Lost Profits:** (a) Projected returns on the insurance portfolio absent improper interference; (b) Investment income on capital deployed; (c) Strategic value destruction from forced liquidation at market lows.

70. **Pre-judgment and Post-judgment Interest:** Plaintiff is entitled to pre-judgment interest at the applicable statutory rate from the dates of loss, and post-judgment interest as provided by law.

71. Total damages sought in this action exceed **€348 million** (equivalent to approximately $375 million at current exchange rates), plus pre-judgment and post-judgment interest, costs, and such further damages as may be proven at trial.

## DEMAND FOR JURY TRIAL

72. Plaintiff hereby demands a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Greg Evan Lindberg respectfully prays that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants on all Counts of this Complaint;

B. Award Plaintiff compensatory damages in an amount exceeding €348 million, to be proven at trial;

C. Award Plaintiff consequential damages and lost profits in amounts to be proven at trial;

D. Award Plaintiff pre-judgment interest at the applicable statutory rate from the dates of loss;

E. Award Plaintiff post-judgment interest at the applicable statutory rate;

F. Award Plaintiff his costs of this action;

G. Declare that the forced transfer of Conservatrix shares was procured through DNB's fraud as established by the Fraud Judgment of February 5, 2026 (ECLI:NL:RBAMS:2026:1107);

H. Declare that Defendants' pursuit of claims against Plaintiff in NAI Case No. 4794 based on the fraudulently procured transfer is improper and tortious;

I. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Greg E. Lindberg
**GREG EVAN LINDBERG**
*Plaintiff, Pro Se*
P.O. Box 159
Thonotosassa, FL 33592

Tel: (919) 308-9686

Email: gelindberg@gmail.com

## VERIFICATION

I, Greg Evan Lindberg, being duly sworn, depose and say that I am the Plaintiff in this action, that I have read the foregoing Complaint, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

*/s/ Greg E. Lindberg*
Greg Evan Lindberg, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Complaint for Damages has been served upon the following counsel of record for the Defendants:

Aaron M. Jacobs
(Fl. Bar No. 041218)
BUTLER WEIHMULLER KATZ CRAIG LLP
400 N. Ashley Dr. Suite 2300
Tampa, FL 33602
(813) 594-5130
ajacobs@butler.legal
*Counsel of Record for Defendants*

*/s/ Greg E. Lindberg*
Greg Evan Lindberg, Pro Se

<u>**LIST OF EXHIBITS**</u>

**Exhibit 1:** Order of the District Court of Amsterdam, February 5, 2026 (ECLI:NL:RBAMS:2026:1107), Conservatrix Group S.A.R.L. v. De Nederlandsche Bank N.V. (Case No. C/13/769512 / HA RK 25-169) (original Dutch text) ("The Fraud Judgment")

**Exhibit 2:** English Translation of the Fraud Judgment

**Exhibit 3:** Financieel Dagblad article dated February 5, 2026: "DNB committed fraud in expropriation of Conservatrix, court rules" (English translation)

**Exhibit 4:** Respondents' Comprehensive Statement of Defense and Counterclaim, NAI Case No. 4794, dated September 16, 2025

**Exhibit 5:** Respondents' Notice to the Tribunal of Judicial Finding of Fraud by DNB, NAI Case No. 4794, dated February 15, 2026