# EXHIBIT K

United States v. Lindberg, No. 3:23-cr-48 (W.D.N.C.)
Pages of the following filings, as filed:

ECF No. 245 (Special Master's Second Supplement, filed July 23, 2026) — page 35
ECF No. 245-1 (Proposed Final Order of Restitution, filed July 23, 2026) — page 6
ECF No. 308 (United States' Consolidated Position, filed August 17, 2026) — pages 7 and 8

in the North Carolina Insurance Companies' Non-Defendant Response is addressed in the portion of this Supplement discussing payment priorities, *infra*.

Conservatrix. The Special Master does not recommend that the Court treat Conservatrix as a person due restitution in this Case because Conservatrix was not harmed in the same manner that the Defendant harmed the other entities that the Special Master recommends the Court treat as persons due restitution in this Case. The Fourth Circuit appears to agree with the Special Master's reasoning in its order denying Conservatrix's petition for writ of mandamus.

ULICO. In addition to responding to support certain of the Special Master's positions and reserving the right to seek greater damages if the Court deviates from the Special Master's recommendations on loss methodology, ULICO's Non-Defendant Response seeks to increase ULICO's loss amounts for (1) loans listed in the IALA and MOU under "PBLA Main" and (2) for amounts paid to PBLA but not passed along to ULICO as PBLA's primary, if not only, creditor. The First Supplement already adjusted the Special Master's figures to account for additional sums loaned out from the "PBLA Main" deposit account that the Special Master could not trace back to funds originating with the other insurance company victims, thereby addressing the "PBLA Main" issue. The difference between payments to PBLA and how much PBLA passes along to ULICO is a dispute between ULICO and PBLA, as the Special Master's methodology effectively treats them as a single unit.

NOLHGA. NOLHGA's Non-Defendant Response essentially preserves NOLHGA's rights to oppose arguments made by the Bermuda Insurance Companies concerning priority or sequencing of restitution distributions, which positions are addressed in the portion of this Supplement discussing payment priorities, *infra*.

- the assets of which Defendant or Defendant's agents had some power to invest or otherwise control, directly or indirectly,
- which assets were in fact diverted to a Defendant-affiliated entity,
- to whom, or to whose regulators, Defendant or Defendant's agents made material misrepresentations or omissions concerning those affiliated investments or asset management strategies, and
- which diverted assets actually lost value as a proximate result of Defendant's activities.

Or (2)

- an insured of an insurance company described above (or a subrogee thereof),
- which actually suffered damages as a proximate result of Defendant's fraudulent activities.

The following victims qualify for restitution based on the foregoing criteria: CBL; BLIC; SNIC; SNRC; Northstar; Omnia; PBLA (including ULICO); and PBIHL.

Conservatrix does not qualify as a person due restitution because no unreturned assets belonging to Conservatrix were diverted to a Defendant-affiliated entity. It also appears that neither Defendant nor Defendant's agents made material misrepresentations or omissions concerning those affiliated investments or asset management strategies to Conservatrix or Conservatrix's regulator(s).

Vista does not qualify as a person due restitution because it does not appear that Vista relied on any material misrepresentations or omissions concerning those affiliated investments or asset management strategies made by Defendant or Defendant's agents to Vista or Vista's regulator(s), at least not in the same manner as those described in the indictment.

Defendant agrees with the Special Master that Defendant's restitution responsibility should be calculated based on the outstanding balances owed on Affiliate Investments, using the principal balances shown in the IALA as the starting point. The Court finds this to be an appropriate methodology for calculating restitution losses in this Case, including the exclusion of "non-IALA" investments from the analysis.

| Issues Related to Credits for Outstanding IALA Loan Balances for Which Defendant Claims Others Shared Responsibility | | | |
|---|---|---|---|
| 12 | *Credit for Losses Suffered on Investments Related to Agera* | $129,000,000 | **Disallow -** The Court should not apply this credit to the amount of restitution set forth in the Preliminary Restitution Order. Defendant agreed to include these loans in the IALA, and at the time of the IALA it appears that Defendant had a controlling ownership stake in Agera. Moreover, Defendant was aware of the Agera investments before he entered into an agreement with ULICO, and his false promises about fixing the issues with the Agera investments was part of his fraudulent conduct. |
| 15 | *Credit for Certain Affiliated Investments Purportedly Approved by Others at Eli Global Relating to insurance Holdco Debt* | $14,897,805 | **Disallow -** The Court should not apply this credit to the amount of restitution set forth in the Preliminary Restitution Order. Even if other LINDBERG employees were involved in these affiliated loans, given Defendant's admitted fraudulent conspiracy, the losses are properly included in restitution. |
| **Issues Related to Other Entities Claiming Restitution** | | | |
| C<br>Doc. 221<br>Doc. 238 | Whether Vista (Now Cell 1.16) is a Party Due Restitution and, if not, Should the Court Recoup the Approximately $23 Million Distribution that Vista/Cell 1.16 Received from NHC's Sale of the Clanwilliam Group | TBD | **Disallow -** Vista is not a party due restitution, but the Court cannot recoup the payment it received from the sale of the Clanwilliam Group, which the Court already approved (Doc. 68). While Vista was no doubt harmed by Defendant's conduct, it has not shown that it reasonably relied on Defendant's misrepresentations and the United States does not have sufficient evidence to prove it.[6] |
| D | Whether Conservatrix is a Party Due Restitution | €215,356,806 | **Disallow -** Conservatrix is not a party due restitution. While Conservatrix appears to |

[6] The Court heard argument on this at the August 10 hearing, so it will not be further addressed herein, except that the United States notes that the affidavit upon which Cell 1.16/Vista relies does not claim that the affiant (who had an economic interest in Cell 1.16/Vista and worked closely with LINDBERG) personally relied upon false rating reports when agreeing to invest in LINDBERG-related investments. Rather, it merely concludes that "Cell 1.16 relied on those ratings reports in its financial reporting to VT DFR" and "in concluding that the loans complied with the investment guidelines." (Doc. 113 at ¶¶ 21, 24).

| | | | |
|---|---|---|---|
| Doc. 130<br>Doc. 258 | | | have been harmed by Defendant's conduct, as the Fourth Circuit found, Conservatrix "fail[ed] to sufficiently connect the harm suffered by Conservatrix with Lindberg's criminal conduct." *In re: Zetteler, et al.*, Case 26-1749, Doc. 15 at 4 (June 13, 2026). The United States does not have sufficient evidence to demonstrate that Conservatrix was harmed by investing in LINDBERG related investments.[7] |
| **Issues Related to Payment Priority Among Parties Owed Restitution** | | | |
| E<br>Doc. 275<br>Doc. 297 | Whether the Court Should Order Restitution Payments on a Pro Rata Basis or Whether the Court Should Provide a Preference to the Bermuda Insurance Companies and/or ULICO Under 18 U.S.C. §§ 3664(j)(1) & (i) | N/A | **Disallow -** While the United States understands and agrees with the sentiment that the Court should endeavor to put the losses of individual policyholders above those of entities, it nevertheless agrees with the Special Master's position that a pro rata payment structure is most practical here. First, the North Carolina Insurance Companies are not a "provider of compensation" under § 3664(j)(i).[8] Second, unlike the process that allowed the Special Master to make payments directly to certain policyholders of the North Carolina Insurance Companies, there is no practical mechanism in place, or suggested, that could produce the same result for the policyholders of ULICO (which have not yet suffered any losses because of the actions of ULICO) or the Bermuda |

[7] Indeed, Conservatrix's filings in this case make a different loss claim, "it was entirely foreseeable that the Conservatrix policies would lose value because of Defendant's undercapitalization of Conservatrix" and "The losses Conservatrix suffered as a result of the non-performance of the Commitment total € 215,356,806." (Doc. 130 at 7-8; *see also* Doc. 258 at 10). Not providing capitalization or profit as promised – even if it may be actionable in other for a -- is different from taking money through deceit and misrepresentations.

[8] This is addressed in the Response filed by the North Carolina Insurance Companies (Doc. 123 at 6-7). In short, guarantee associations paid policyholders, not the insurance companies, and the insurance companies now owe the guarantee associations for those payments. That is much different than an insurance policy issuing a check to a victim to cover it loss. It is not surprising then, that numerous Courts have ordered restitution directly to failed insurance companies. (*See* cases collected in Doc. 137 at 3-4 and n.4).