**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| J. ROBERT VAN FAASSEN, LLM and ELEONORA L. ZETTELER, LLM, in their capacity as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V., | |
| Petitioners, | Case No. 1:23-CV-879 |
| v. | Senior District Judge Catherine C. Eagles |
| GREG EVAN LINDBERG; TRIER HOLDING B.V.; NETHERLANDS INSURANCE HOLDINGS, INC.; and NIH CAPITAL, LLC, | |
| Respondents. | |

# EXHIBIT N-1

Defendant Greg E. Lindberg's Update on the Arbitration in NAI Case No. 4794 and Response to Conservatrix's Response (Doc. No. 384) — PUBLIC VERSION — filed November 16, 2026 in United States v. Lindberg, No. 3:23-cr-48 (W.D.N.C.), with the cover pages of its sealed Exhibits S-13 through S-29.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>GREG E. LINDBERG,<br>Defendant. | Case No. 3:23-CR-48-MOC<br>Judge Max O. Cogburn, Jr. |

**PUBLIC VERSION — REDACTED**

**DEFENDANT GREG E. LINDBERG'S UPDATE ON THE ARBITRATION IN NAI CASE NO. 4794 AND RESPONSE TO CONSERVATRIX'S RESPONSE (DOC. NO. 384)**

Defendant Greg E. Lindberg respectfully submits this Update to his Notice of Developments Concerning Conservatrix N.V. (Doc. No. 362) and his Response of October 30, 2026 (Doc. No. 374). The evidentiary hearing in Netherlands Arbitration Institute Case No. 4794—the first hearing on the merits of the claim for which Eleonora L. Zetteler and J. Robert van Faassen, insolvency practitioners of Conservatrix N.V. (the "Trustees"), seek €215,356,806 in restitution in this case—was held on November 4 and 10, 2026. [REDACTED — FILED UNDER SEAL] What the Trustees and their own witnesses said at that hearing bears directly on whether Conservatrix can be a victim of the offense of conviction, and Defendant places it before the Court, under seal.

This Update is filed for four reasons. First, the hearing has concluded, and the Court that will determine restitution de novo should have its record.[1] Restitution under the Act "is plainly criminal punishment." *Ellingburg v. United States*, 607 U.S. 163, 166 (2026). And at "the sentencing proceeding where restitution is ordered, the Government, not the victim, is the party adverse to the defendant." *Id.* Second, the Tribunal declined to admit or to order a number of Conservatrix's and De Nederlandsche Bank's own documents, and this Court is not limited to the record the Tribunal admitted. Third, on November 12, 2026 the Trustees filed a Response asking that the arbitration materials be sealed permanently from everyone but themselves and Defendant, "including counsel for the Special Master and counsel for the United States," and stating that the materials "are unrelated to the restitution" they seek. Doc. No. 384 at 2 n.1, 3. This Update responds to that filing. Fourth, Defendant places this record before this Court so that a record exists that can be relied upon if the Trustees bring a second petition in the Fourth Circuit after the first one was denied on the merits. *In re Zetteler*, No. 26-1749, 2026 WL 1724731 (4th Cir. June 13, 2026), as amended (June 15, 2026) (per curiam) (Doc. No. 203 at 5) ("Petitioners do not identify facts closely tying those failures to Lindberg's criminal activities."). On that petition

[1] The Court has yet to determine, de novo, causation, offsets, and credits—whether on motions practice or at the hearing—which will further change the restitution determination. Defendant expressly reserves this determination.

Defendant had twelve hours' notice. Before that filing Defendant did not know what the 85.1 hours the Special Master's team recorded on Conservatrix, ex parte, were about. He still does not. Counsel for Defendant conferred with counsel for the Trustees and advised that this Update would be filed. It is also being filed in *van Faassen v. Lindberg*, No. 1:23-cv-879 (M.D.N.C.), where the Trustees seek to enforce the same claim.

## I. The Trustees Ask That the Evidence on Their Own Claim Be Kept from the Government and the Special Master.

In their Response the Trustees "disagree that Defendant . . . can permissibly disclose documents and communications from confidential arbitration proceedings," assert that Defendant "cites no legal basis for disclosing any information beyond that to which the Insolvency Practitioners consented," and ask that the materials "be permanently sealed to all parties and non-parties, including counsel for the Special Master and counsel for the United States." Doc. No. 384 at 1, 3. In a footnote they state that "[t]hese materials are unrelated to the restitution the Insolvency Practitioners seek under the Mandatory Victims Restitution Act." *Id.* at 2 n.1.

The Trustees did not follow the rule they invoke, even as to those four facts. Article 6 binds "all persons involved either directly or indirectly." Doc. No. 384 at 2. Before Defendant disclosed anything, the Trustees had themselves told this Court

and the Fourth Circuit that the arbitration exists, who the parties to it are, and what is claimed in it. Doc. No. 130 at 7 n.6 ("Conservatrix is pursuing, through Dutch arbitration proceedings, recovery of the damages its policyholders have suffered"); Doc. No. 189-1 at 238 n.6, 251; Doc. No. 258 at 10–12. They did so unilaterally, without Defendant's agreement and without asking the Tribunal, and they did so in the Fourth Circuit on a petition of which Defendant had twelve hours' notice. Having put the arbitration before two courts on their own, the Trustees now seek to restrict the response that their own breach made necessary.

Defendant does not oppose sealing from the public; he moved for it. Doc. No. 376. He opposes the rest. The Trustees ask this Court for €215,356,806 in criminal restitution. Doc. No. 189-1 at 33. The burden of demonstrating "the amount of the loss sustained by a victim as a result of the offense" is "on the attorney for the Government," 18 U.S.C. § 3664(e),[2] and the Trustees presented their claim to the Special Master ex parte, off the record. Doc. No. 106 at 18–19, 32; Doc. No. 258 at 11;

[2] Defendant applies the preponderance standard of 18 U.S.C. § 3664(e) for purposes of this Update without conceding its constitutionality. Because restitution under the Mandatory Victims Restitution Act is criminal punishment, *see Ellingburg v. United States*, 607 U.S. 163, 146 S. Ct. 564 (2026), Defendant contends that the Sixth Amendment requires the facts necessary to support a restitution award—including the identification of any victim and the amount of loss—to be found by a jury beyond a reasonable doubt, not by the Court by a preponderance of the evidence. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Southern Union Co. v. United States*, 567 U.S. 343, 360 (2012) (applying *Apprendi* to criminal fines). Defendant expressly reserves and preserves this issue and does not waive any Sixth Amendment, Ex Post Facto, or related challenge to the restitution determination.

Doc. No. 365 at 1–2. A claimant cannot seek a criminal penalty from this Court and at the same time ask the Court to keep the record on that claim from the party that bears the burden of proving it and from the Special Master to whom they presented it. Having made their case to the Special Master ex parte, the Trustees now ask that the Special Master not see the evidence that answers it. Nor is the record of the only proceeding in which the claim has been tried "unrelated" to it. Defendant does not agree that the arbitration is unrelated. The €150 million the Trustees pursue in the Middle District and the €215,356,806 they seek here are not separate matters. They are one obligation. On the Trustees' own account, the €150 million is the penalty attached to "a Dutch arbitral award ordering compliance with the Commitment," Doc. No. 258 at 10, and the €215,356,806 is that same Commitment "converted, by law, to an obligation to pay damages," with the damages "calculated as the replenishment that was needed to remedy the shortfall in the SCR." *Id.* at 12. [REDACTED — FILED UNDER SEAL] The arbitration can change the €150 million. The Trustees have said so. In the Middle District they describe the merits arbitration as "the possibility of a second judgment at some later date," and they rely on that court's observation that the arbitrator may determine "whether the amount the arbitrator required the respondents to pay should be adjusted or whether some refund might be

due." *van Faassen v. Lindberg*, No. 1:23-cv-879 (M.D.N.C.), Doc. 81 at 8, 9. They rely on the same court's statement that the arbitrator may "conclude that respondents are entitled to a refund or adjustment." *Id.* at 12 n.5. A proceeding that can adjust or refund the €150 million, and that will decide the €215,356,806, is not unrelated to either. Defendant preserves this position: so long as the Trustees pursue the €150 million in the Middle District and the €215,356,806 in this Court, the arbitration is related to both proceedings. It would cease to be related only if the Trustees withdrew their claims in both courts. Both sums turn on one question, which is the question before the Tribunal on the merits: whether the Recapitalization Commitment required Defendant to put in further capital. If the Tribunal decides that there was no recapitalization requirement, there is no obligation for the penalty to enforce and no shortfall for the claim to measure; the penalty would have no foundation, and neither would the sum claimed here as restitution. Defendant's position on this is clear and has not changed. The record of the arbitration is related to the Trustees' restitution claim, because it is the record on which that claim has been tried. The merits of the claim itself are unrelated to this criminal proceeding. It is a contractual dispute. It arises from the interest-rate environment and from Conservatrix's own refusal of the capital that was offered to it, Parts V, VIII and IX below, and not from the offense of

conviction. The Trustees told the Fourth Circuit that "[a]part from the penalty, Conservatrix is pursuing, through Dutch arbitration proceedings, recovery of the damages its policyholders have suffered." Doc. No. 189-1 at 238 n.6.[3] [REDACTED — FILED UNDER SEAL]

[REDACTED — FILED UNDER SEAL]

The Trustees also have no standing to make the request. The request is this: that the Court order the record of the arbitration "permanently sealed to all parties and non-parties, including counsel for the Special Master and counsel for the United States." Doc. No. 384 at 3. They would also confine Defendant to disclosing nothing "beyond that to which the Insolvency Practitioners consented." *Id.* at 1. Put plainly, the Trustees ask this Court to keep the record of their own claim from the Government and from the Special Master, and to make their consent the limit of what Defendant may place before the Court that will sentence him. They are not parties to

[3] The words "[a]part from the penalty" mischaracterize the relationship. The arbitration is not apart from the penalty. The €150 million penalty and the €215,356,806 are one obligation, and the same arbitration will decide whether that obligation existed and may adjust or refund what was awarded. On the Trustees' own account, the penalty attaches to "a Dutch arbitral award ordering compliance with the Commitment," Doc. No. 258 at 10, and the €215,356,806 is that same Commitment "converted, by law, to an obligation to pay damages," with the damages "calculated as the replenishment that was needed to remedy the shortfall in the SCR." *Id.* at 12. [REDACTED] Both depend on whether paragraph 1.2(b) required further capital; and the Trustees rely in the Middle District on the statement that the arbitrator may "conclude that respondents are entitled to a refund or adjustment" of the sum awarded. *van Faassen v. Lindberg*, No. 1:23-cv-879 (M.D.N.C.), Doc. 81 at 12 n.5. That relationship is a further reason the arbitration record is before this Court and before the Middle District.

this criminal case. Restitution under the Act "is plainly criminal punishment," *Ellingburg*, 607 U.S. at 166, and at "the sentencing proceeding where restitution is ordered, the Government, not the victim, is the party adverse to the defendant." *Id.* Conservatrix is bankrupt, and has been since December 8, 2020, Doc. No. 258 at 11; the Trustees appear here as the insolvency practitioners of its estate, and as claimants only. They cite no statute or rule that permits a restitution claimant to decide what a defendant may place before the court that will sentence him, or what the Court, the attorney for the Government, and the Special Master may see. Doc. No. 384 at 1–3. The Act gives a claimant no such role: it directs that the restitution record be disclosed "to both the defendant and the attorney for the Government," 18 U.S.C. § 3664(b), and it provides that any dispute as to restitution "shall be resolved by the court." *Id.* § 3664(e).

Still less can that request come from these claimants. The Special Master's own fee applications record 74 entries and 85.1 hours on Conservatrix, including 37 calls, e-mails, letters and submissions with the Trustees or their counsel between January 31, 2025 and June 11, 2026, to which Defendant was not a party. Doc. No. 365 at 1–2. For well over a year the Trustees presented their claim to the Special Master ex parte and Defendant was excluded. Having chosen who would hear their side and who

would not, the Trustees cannot now be heard to say that the same Special Master, and the Government, may not see Defendant's answer. Those ex parte communications have also tainted the record on which the Fourth Circuit decided the Trustees' first petition. The panel denied the petition, but the only account it had of the Trustees' dealings with the Special Master was that he "spoke with Petitioners' counsel multiple times and reviewed information submitted by Petitioners." *In re Zetteler*, Doc. No. 203 at 3. What was said and submitted in those communications was not before the Fourth Circuit or before Defendant Greg Lindberg, and the record that is now before this Court was not before the Fourth Circuit either.

The request also shows what the Trustees have kept from this Court. They have told the Court that Conservatrix is a victim of Defendant's offense. [REDACTED — FILED UNDER SEAL] They have not told the Court what their own contract provides: that "[a]s soon as the Company is stabilized," any further capitalization "shall be based on a viable business case for the Company." Part VI below. The Special Master's team recorded 85.1 hours on Conservatrix, ex parte. Doc. No. 365 at 1–2. Nothing on the record of this case shows that the Board's statements or the text of paragraph 1.2(b) were put before the Special Master in any of that time, and Defendant has not been given what the Trustees did put before him. Defendant still

does not know what the Special Master and the Government were told. He is still blind to it, and so is the Fourth Circuit, which has before it only what is on the record. The Trustees now ask that the documents in which those statements appear be kept from the Special Master and the Government permanently. Doc. No. 384 at 3.

Nor are the Trustees in a position to tell this Court what should and should not be done with this record. The propriety of the ex parte communications with the Special Master is a live issue in Defendant's pending appeal, Nos. 26-4309(L) and 26-4310 (4th Cir.). The Special Master's team recorded 85.1 hours on Conservatrix. Doc. No. 365 at 1–2. A lawyer representing a party in a matter pending before a tribunal may not, "unless authorized to do so by law or court order, communicate ex parte with the judge or other official regarding a matter pending before the judge or official," N.C. Rules of Pro. Conduct r. 3.5(a)(3), and an ex parte communication is one "that occurs in the absence of an opposing party, without notice to that party, and outside the record." *Id.* r. 3.5(d)(1). The Order appointing the Special Master does not authorize ex parte communications with him. Doc. No. 56. The Trustees' counsel should have known that communications of this kind and extent did not comport with those standards. That they were carried on in a criminal proceeding, where the result is punishment, and that the Trustees now describe the record of their own claim as

"unrelated" to the restitution they seek, Doc. No. 384 at 2 n.1, bears on the weight the Court should give their account of what is and is not accurate. The Trustees should refrain from asking the Court to restrict Defendant's use of that record while that issue is pending.

Defendant challenges the constitutionality of the Special Master's appointment, the ex parte determinations, and multiple other issues with the proceeding, which are pending on appeal or before this Court. Nothing in this Update waives or narrows any of those challenges. Until this Court or the Fourth Circuit decides them, the Order appointing the Special Master controls. Doc. No. 56. "[A]ll orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). An order "must be obeyed by the parties until it is reversed by orderly and proper proceedings." *Id.* at 459 (quoting *United States v. Mine Workers*, 330 U.S. 258, 293 (1947)). The same is true of the Trustees, the Government, and the Special Master. So long as that Order has not been held unconstitutional, the Special Master and the Government, who must follow it, need access to this record. Defendant will not engage in ex parte communications. He is filing these materials on

the docket of this case, under seal, and he has served all of them on the Government and on the Special Master. The Trustees ask instead for a seal that would shut both of them out. Doc. No. 384 at 3. Nothing in the Act or in Article 6 supports that request, and the Trustees cite nothing that does.

The legal basis is the one stated in Doc. No. 374 and in Part XII below. Article 6 of the NAI Rules, as the Trustees quote it, excepts disclosure that "ensues from the law." Doc. No. 384 at 2. The law from which this disclosure ensues is the law that governs this proceeding. Restitution under the Act "is plainly criminal punishment," *Ellingburg*, 607 U.S. at 166, and this is the proceeding in which that punishment is to be determined. A confidentiality rule of a private arbitration institute does not limit what a defendant may place before the court that will impose criminal punishment on him, or what the Government, which bears the burden of proving the loss, may see. 18 U.S.C. § 3664(e). [REDACTED — FILED UNDER SEAL] Their consent is not the measure of what a defendant may place before the court that will sentence him. The four facts to which they consented—the parties, the hearing date, the claim, and the existence of the arbitration, Doc. No. 384 at 2—would not have permitted Defendant to tell this Court what the Trustees' own counsel and witnesses said about the claim. That is set out below.

## II. The Hearing and the Schedule.

[REDACTED — FILED UNDER SEAL]

## III. Defendant Is Incarcerated and Appears in the Arbitration Without Counsel.

[REDACTED — FILED UNDER SEAL]

## IV. The Trustees Tell This Court the Arbitration Is Unrelated, and Tell the Tribunal About This Case.

The Trustees told this Court that the arbitration "is unrelated to the restitution they seek." Doc. No. 372 at 2. Defendant disagrees with that characterization. The arbitration is the proceeding in which the Tribunal will decide whether the Recapitalization Commitment required any further capital at all, and the sum the Trustees seek here does not exist without that requirement. Part I above. The Trustees themselves told the Fourth Circuit the opposite of what they tell this Court: "[a]part from the penalty, Conservatrix is pursuing, through Dutch arbitration proceedings, recovery of the damages its policyholders have suffered." Doc. No. 189-1 at 238 n.6. As shown in Part I, the arbitration is not apart from the penalty. And it was the Trustees, not Defendant, who put this case before the Middle District. In the Middle District they rely on the Factual Basis, Defendant's sentencing memorandum, and the Order appointing the Special Master in this case. *van Faassen v. Lindberg*,

No. 1:23-cv-879 (M.D.N.C.), Doc. 81 at 10–11, 14. [REDACTED — FILED UNDER SEAL]

[REDACTED — FILED UNDER SEAL] The Trustees' claim is a contract dispute, and it is not related to the conduct for which restitution may be ordered in this case.

## V. The Proceedings Are Related by the Sum Claimed and Unrelated in Every Way That Matters Under the Act.

The three proceedings—this case, *van Faassen v. Lindberg*, No. 1:23-cv-879 (M.D.N.C.), and NAI Case No. 4794—are related in one respect: in each the Trustees pursue money under the Recapitalization Commitment of March 17, 2017. They are unrelated in the respect the Mandatory Victims Restitution Act makes decisive. A victim is a person "directly and proximately harmed as a result of the commission of an offense," 18 U.S.C. § 3663A(a)(2), and the Government bears the burden of demonstrating "the amount of the loss sustained by a victim as a result of the offense." *Id.* § 3664(e). The Trustees' claim is for "the non-performance of the Commitment," measured by "the shortfall in the SCR as of December 8, 2020." Doc. No. 189-1 at 30–31; Doc. No. 258 at 11–12. [REDACTED — FILED UNDER SEAL]

There is a further reason this record is before this Court and before the Middle District at once, and it is the reason the arbitration is related to both. In each

proceeding the Trustees claim money for one loss. The Act does not allow one loss to be collected twice: "Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—(A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State." 18 U.S.C. § 3664(j)(2). North Carolina law is to the same effect: its courts act "to prevent double redress for a single wrong." *Smith v. Gulf Oil Corp.*, 239 N.C. 360, 368 (1954). The Middle District proceeding is a federal civil proceeding. The sum the Trustees pursue there is, on their own account, the same obligation as the sum they claim here. Doc. No. 258 at 12. And the arbitration will decide whether that obligation existed at all. What any one of these forums awards or denies therefore changes what can be claimed in the others. That is the sense in which the proceedings are related: by the sum claimed. Defendant does not concede that Conservatrix is a victim, that it sustained any loss as a result of the offense, or that any restitution is owed to it. Section 3664(j)(2) is cited to show that Congress treats a single loss pursued in several forums as a single loss.

[REDACTED — FILED UNDER SEAL]

## VI. The Text of Paragraph 1.2(b), and How It Came to Be Written.

[REDACTED — FILED UNDER SEAL]

## VII. [REDACTED — FILED UNDER SEAL]

[REDACTED — FILED UNDER SEAL]

## VIII. [REDACTED — FILED UNDER SEAL]

[REDACTED — FILED UNDER SEAL]

## IX. The €215 Million Figure Is Not a Measure of Loss.

[REDACTED — FILED UNDER SEAL]

The Trustees also pursue, in the Middle District of North Carolina, a €150 million penalty on the same Commitment and for the same alleged non-performance. *van Faassen v. Lindberg*, No. 1:23-cv-879 (M.D.N.C.). The penalty and the €215 million are not separate obligations. They are one, Part I above, and the Trustees claim both, with six years of interest. That is not compensation for a loss caused by an offense.

## X. This Court Is Not Limited to the Record the Tribunal Admitted.

[REDACTED — FILED UNDER SEAL]

## XI. The 2020 Summary Award Is Not a Merits Determination of the Trustees' Loss.

[REDACTED — FILED UNDER SEAL]

## XII. Why These Materials Are Before the Court.

Disclosure to this Court is required by the law the Trustees invoked. Restitution under the Act "is plainly criminal punishment." *Ellingburg v. United States*, 607 U.S. 163, 166 (2026). The Act requires disclosure of the restitution record "to both the defendant and the attorney for the Government," 18 U.S.C. § 3664(b), authorizes the Court to "require additional documentation or hear testimony," *id.* § 3664(d)(4), and provides that any dispute as to restitution "shall be resolved by the court." *Id.* § 3664(e). The Trustees presented their claim to the Special Master and his financial advisor ex parte rather than on the record, Doc. No. 258 at 11, and none of the 74 entries and 85.1 hours the Special Master's team recorded on Conservatrix has been shared with the defense. Doc. No. 365 at 1–2. Defendant thus faces a criminal penalty of €215,356,806 on submissions he has not been permitted to see. [REDACTED — FILED UNDER SEAL] Defendant has made that assessment. Disclosure to the sentencing court of the record on a claim for criminal restitution ensues from the law, and the materials are filed under seal.

The same is true of the Government's position. The Government has told the Court that Conservatrix "is not a party due restitution" but "appears to have been harmed by Defendant's conduct," and that its contract claim "may be actionable in

other fora." Doc. No. 308 at 7–8 & n.7. Nothing in the record of this case supports either statement, and the hearing record now contradicts them: [REDACTED — FILED UNDER SEAL][4] The claim was carried to the Fourth Circuit in the same way, on the figure alone and without the record that answers it. Doc. No. 189-1 at 33.

## XIII. The Trustees' Presentation Is Selective in Both Forums.

[REDACTED — FILED UNDER SEAL]

## CONCLUSION

The merits of the Trustees' claim have now been heard, and Defendant submits this Update so that the Court has the record of that hearing. For the reasons stated in Part I, the Trustees' request to bar counsel for the United States and counsel for the Special Master from the sealed materials, Doc. No. 384 at 3, has no place in a proceeding that determines criminal punishment. *Ellingburg*, 607 U.S. at 166. The accompanying motion asks that the unredacted version of this Update and Exhibits S-13 through S-29 be sealed until further order of the Court. Defendant reserves all objections stated in his pending motions. Doc. Nos. 281, 331, 332, 347, 356, 368, 369.

[4] The Government's statements about Conservatrix are consistent with its theory of the offense, which measured Defendant's conduct against a ten-percent limit on affiliated investments that, as the Court observed at sentencing, did not apply when the investments were made. That issue is no longer before this Court and is on appeal. Defendant notes it here only because the Government's position on Conservatrix has the same defect: it assigns to Defendant, after the fact, a consequence for which the record supplies no basis.

Causation fails on the Trustees' own record as well. A party that actively refuses investment, and says that there is no viable business case for it, cannot then argue that the absence of that investment caused its loss. [REDACTED — FILED UNDER SEAL] The shortfall the Trustees claim followed Conservatrix's own refusal of capital. It was not caused by the offense of conviction.

One point remains, and it is the last. The arbitration record further proves that causation does not exist and that the Trustees' claim has no relationship to Defendant's criminal conduct.[5] Nothing in the arbitration can or will change the determination on causation in *In re Zetteler*. The Fourth Circuit applied the test that the harm must be "closely related to the conduct inherent to the offense, rather than merely tangentially linked," Doc. No. 203 at 4–5 (quoting *In re McNulty*, 597 F.3d 344, 352 (6th Cir. 2010)), and concluded that the Trustees "fail to sufficiently connect the harm suffered by Conservatrix with Lindberg's criminal conduct," and that they "do not identify facts closely tying those failures to Lindberg's criminal activities." *Id.* The Tribunal is deciding a contract claim. Whatever it decides, it will not decide whether any loss was caused by the offense of conviction. That has not stopped the Trustees from arguing that this Court should abandon causation. They have told the Court

[5] In any case, the affiliated investments at issue in this case were themselves approved in writing by the North Carolina Department of Insurance in 2014 and reconfirmed in 2016, within limits the regulator set company by company. Doc. No. 174 at 15, 55–56; Doc. No. 281 at 19–20; Doc. No. 356-1 at 130.

that the Fourth Circuit's opinion "does not preclude the Court from including Conservatrix in a final order of restitution," and that "a district court need not follow an appellate court's mandate on remand if 'a blatant error in the prior decision will, if uncorrected, result in a serious injustice.'" Doc. No. 258 at 4, 5 n.2. Defendant makes these filings so that the question can never arise. Even on the merits of their own claim, the Trustees are due nothing.

## INDEX OF SEALED EXHIBITS TO THIS UPDATE

Exhibits S-13 through S-22 — Claimants' Statement of Reply (S-13); DNB letter of March 24, 2026 with memorandum (C-42) (S-14); Process Letter of February 24, 2017 (C-51) (S-15); Conservatrix letters to DNB of January 24 and May 24, 2019 (C-08, C-09) (S-16); Triggered Own Risk and Solvency Assessment of June 13, 2019 (S-17); DNB scorecard and report of September 2018 (C-45, C-47) (S-18); DNB letters of December 20, 2019 (C-27, C-28) (S-19); letter of René Collé of March 25, 2026 (C-43) (S-20); Annexes C, D and E to Expert Report CE-01 (S-21); hearing schedule and Claimants' opening presentation (S-22).

Exhibit S-23 — NAI Case No. 4794: Excerpts of Transcript of Hearing, Day 1 (November 4, 2026) (draft, as circulated November 12, 2026).

Exhibit S-24 — NAI Case No. 4794: Excerpts of Transcript of Hearing, Day 2 (November 10, 2026) (draft, as circulated November 12, 2026).

Exhibit S-25 — NAI Case No. 4794: Tribunal's communications of November 10 and 11, 2026 (post-hearing schedule).

Exhibit S-26 — Claimants' Exhibit C-22: Conservatrix N.V., Initial Recovery Plan (October 4, 2019).

Exhibit S-27 — NAI Case No. 4794: Tribunal's communication of October 7, 2026 concerning Article 6 of the NAI Arbitration Rules.

Exhibit S-28 — NAI Case No. 4794: Tribunal's decision of October 16, 2026 on the hearing schedule and on Respondents' requests.

Exhibit S-29 — Claimants' Exhibit C-01: Letter of De Nederlandsche Bank N.V. of May 15, 2017.

Dated: November 16, 2026

Respectfully submitted,

*/s/ Kenneth N. Barnes*
*Kenneth N. Barnes*
*Barnes Legal, PLLC*
*356 Travel Lite Dr.*
*Raleigh, NC 27603*
*919-524-1977*
*Email: barnesatty@aol.com*

*Vivek Ramachandran*
*Dhamma Law PLLC*
*418 Broadway, Suite N*
*Albany, NY 12207*
*202-860-4084*
*Email: vramachandran@dhammalaw.com*
*Admitted pro hac vice*

*Counsel for Greg E. Lindberg*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case. The unredacted version of this Update and Exhibits S-13 through S-29 were filed through the Court's sealed-document event and are not viewable through CM/ECF; copies were served on the same date by electronic mail on counsel for the United States, counsel for the Special Master, and counsel for Eleonora L. Zetteler and J. Robert van Faassen.

Dated: November 16, 2026

*/s/ Kenneth Barnes*
*Kenneth Barnes*
*Counsel for Greg E. Lindberg*

# EXHIBIT S-13

**FILED UNDER SEAL**

NAI Case No. 4794: Claimants' Statement of Reply (March 27, 2026)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-14

**FILED UNDER SEAL**

Claimants' Exhibit C-42: Letter of De Nederlandsche Bank N.V. to the Trustees of March 24, 2026, with Annexed Memorandum (Dutch Original and English Translation)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-15

**FILED UNDER SEAL**

Claimants' Exhibit C-51: Process Letter of De Nederlandsche Bank N.V.
(February 24, 2017)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-16

**FILED UNDER SEAL**

Claimants' Exhibits C-08 (Letter of Conservatrix N.V. to DNB of January 24, 2019) and C-09 (E-mail of Conservatrix N.V. to DNB of May 24, 2019), with English Translations

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-17

**FILED UNDER SEAL**

Conservatrix N.V., Triggered Own Risk and Solvency Assessment 2019 (June 13, 2019)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-18

**FILED UNDER SEAL**

Claimants' Exhibits C-45 (DNB E-mail with Scorecard, September 12, 2018) and C-47 (DNB Final Report, September 27, 2018)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-19

**FILED UNDER SEAL**

Claimants' Exhibits C-27 and C-28: Letters of De Nederlandsche Bank N.V. of December 20, 2019

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-20

**FILED UNDER SEAL**

Claimants' Exhibit C-43: Letter of René Collé to the Trustees (March 25, 2026)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-21

**FILED UNDER SEAL**

Annexes C, D and E to Claimants' Expert Report CE-01

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-22

**FILED UNDER SEAL**

NAI Case No. 4794: Hearing Schedule Fixed by the Tribunal (October 16, 2026) and Claimants' Opening Presentation (November 4, 2026)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-23

**FILED UNDER SEAL**

NAI Case No. 4794: Excerpts of Transcript of Hearing, Day 1 (November 4, 2026)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-24

**FILED UNDER SEAL**

NAI Case No. 4794: Excerpts of Transcript of Hearing, Day 2 (November 10, 2026)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-25

**FILED UNDER SEAL**

NAI Case No. 4794: Tribunal's Communications of November 10 and 11, 2026

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-26

**FILED UNDER SEAL**

Claimants' Exhibit C-22: Conservatrix N.V., Initial Recovery Plan (October 4, 2019)

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-27

**FILED UNDER SEAL**

NAI Case No. 4794: Tribunal's Communication of October 7, 2026 Concerning Article 6 of the NAI Arbitration Rules

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-28

**FILED UNDER SEAL**

NAI Case No. 4794: Tribunal's Decision of October 16, 2026 on the Hearing Schedule and on Respondents' Requests

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)

# EXHIBIT S-29

**FILED UNDER SEAL**

Claimants' Exhibit C-01: Letter of De Nederlandsche Bank N.V. of May 15, 2017

United States v. Lindberg, No. 3:23-CR-48-MOC (W.D.N.C.)